Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

[Additional counsel listed on following page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>          vs.<br><br>THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI,<br><br>                              Defendants. | Case No.  5:16-cv-06822-NC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing Date: March 1, 2017<br>Time: 1:00 PM<br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael Cousins |

1

2   COUNSEL CONTINUED:

3   Kathleen Goodhart (165659)
    COOLEY LLP
4   101 California Street, 5th Floor
    San Francisco, CA 94111
5   Telephone: +1 415 693 2012
    Facsimile: +1 415 693 2222
6   kgoodhart@cooley.com

7   Stephen C. Neal (170085)
    COOLEY LLP
8   3175 Hanover Street
    Palo Alto, CA 94304
9   Telephone: +1 650 843 5000
    Facsimile: +1 650 849 7400
10  nealsc@cooley.com

11  *Attorneys for Defendant Elizabeth Holmes*

12  Allison A. Davis (139203)
    DAVIS WRIGHT TREMAINE LLP
13  505 Montgomery Street, Suite 800
    San Francisco, CA 94111
14  Telephone: +1 415 276 6500
    Facsimile: +1 415 276 4880
15  allisondavis@dwt.com

16  Stephen M. Rummage (admitted *pro hac vice*)
    DAVIS WRIGHT TREMAINE LLP
17  1201 Third Avenue, Suite 2200
    Seattle, WA 98101-3045
18  Telephone: +1 206 757 8136
    Facsimile: +1 206 757 7136
19  steverummage@dwt.com

20  *Attorneys for Defendant Ramesh Balwani*

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822-NC

1

## TABLE OF CONTENTS

2 TABLE OF CONTENTS ........................................................................................................... i

3 TABLE OF AUTHORITIES ................................................................................................... ii

4 NOTICE OF MOTION AND MOTION ................................................................................. 1

5 STATEMENT OF RELIEF SOUGHT ................................................................................... 1

6 MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

7 I.       INTRODUCTION ........................................................................................................ 1

8 II.      BACKGROUND ........................................................................................................... 3

9       A.    Theranos And Its Investors ............................................................................... 3

10       B.    Theranos's Publicity For The Rollout Of Blood Testing Services ......................... 3

11       C.    Plaintiffs' Investments In Third-Party Funds .......................................................... 4

12            1.    Plaintiff Colman Invested In Lucas Venture Group XI ............................. 4

13            2.    Plaintiff Taubman-Dye Invested In Celadon Technology Fund VII .......... 5

14 III.    ARGUMENT ................................................................................................................ 6

15       A.    Plaintiffs State No Claim Under Cal. Corp. Code §§ 25400(d), 25500

16                (Count I) ................................................................................................... 7

17       B.    Plaintiffs State No Claim Under Cal. Corp. Code §§ 25401, 25501

18                (Count II) ................................................................................................ 13

19       C.    Plaintiffs Cannot State A Cal. Bus. & Prof. Code § 17200 Claim

20                (Count III) ............................................................................................... 15

21       D.    Plaintiffs Cannot State A Common Law Deceit Claim

22                (Counts IV, V, VII) ................................................................................ 19

23       E.    Plaintiffs Cannot State A Claim For Constructive Fraud

24                (Count VI) ............................................................................................... 21

25       F.    Plaintiffs Fail To Satisfy Rule 9(b) (All Claims) ................................................. 22

26 IV.    CONCLUSION ........................................................................................................... 24

27

28

1

**<u>TABLE OF AUTHORITIES</u>**

2

**CASES** **Page(s)**

3

*Alliance Mortg. Co. v. Rothwell,*
4
    900 P.2d 601 (Cal. 1995) ...................................................................................22

5

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,*
6
    70 Cal. Rptr. 3d 199 (Ct. App. 2007).........................................................13, 14

*Applestein v. Medivation, Inc.,*
7
    861 F. Supp. 2d 1030 (N.D. Cal. 2012) ...........................................................12

8

*Ashcroft v. Iqbal,*
9
    556 U.S. 662 (2009)........................................................................................9, 20

10

*Bao Yi Yang v. Shanghai Gourmet, LLC,*
    No. 07-CV-04482 NC, 2014 WL 2211617 (N.D. Cal. May 28, 2014) ...............8
11

*Barsky v. Spiegel Accountancy Corp.,*
12
    No. 14-CV-04957-TEH, 2015 WL 580574 (N.D. Cal. Feb. 11, 2015) ............11

13

*Bell Atl. Corp. v. Twombly,*
14
    550 U.S. 544 (2007)........................................................................................6, 11

15

*Berryman v. Merit Prop. Mgmt., Inc.,*
    62 Cal. Rptr. 3d 177 (Ct. App. 2007)...............................................................19
16

*Betz v. Trainer Wortham & Co.,*
17
    829 F. Supp. 2d 860 (N.D. Cal. 2011) .......................................................15, 16

18

*Bily v. Arthur Young & Co.,*
19
    834 P.2d 745 (Cal. 1992) ...................................................................................20

20

*Bowen v. Ziasun Techs., Inc.,*
    11 Cal. Rptr. 3d 522 (Ct. App. 2004).........................................................15, 16
21

*Cal. Amplifier, Inc. v. RLI Ins. Co.,*
22
    113 Cal. Rptr. 2d 915 (Ct. App. 2001).........................................................9, 11

23

*Canard v. Bricker,*
24
    No. 14-CV-04986-JSC, 2015 WL 846997 (N.D. Cal. Feb. 25, 2015) ..............7

25

*Carlson v. Murphy,*
    47 P.2d 1100 (Cal. 1935) .............................................................................20, 21
26

*DeLeon v. Wells Fargo Bank, N.A.,*
27
    No. 10-cv-01390-LHK, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ..........9, 21

28

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
    No. 14-CV-04809-HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) ...................16, 17

*Emp'rs Ins. of Wausau v. Granite State Ins. Co.*,
    330 F.3d 1214 (9th Cir. 2003) ...............................................................................8

*Feitelberg v. Credit Suisse First Boston, LLC*,
    36 Cal. Rptr. 3d 592 (Ct. App. 2005).................................................................17

*Gilmore v. Wells Fargo Bank N.A.*,
    75 F. Supp. 3d 1255 (N.D. Cal. 2014) ..................................................................7

*Hemming v. Alfin Fragrances, Inc.*,
    690 F. Supp. 239 (S.D.N.Y. 1988)......................................................................15

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)....................17

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ..............................................................20

*In re Access Cardiosystems, Inc.*,
    776 F.3d 30 (1st Cir. 2015)..................................................................................14

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................................10

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..............................................................................6

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ........................................................................22, 24

*In re Lehman Bros. Sec. & ERISA Litig.*,
    903 F. Supp. 2d 152 (S.D.N.Y. 2012).....................................................8, 11, 15

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    851 F. Supp. 2d 512 (S.D.N.Y. 2012).................................................................13

*In re Secure Computing Corp. Sec. Litig.*,
    120 F. Supp. 2d 810 (N.D. Cal. 2000) ..........................................................23, 24

*Jackson v. Fischer*,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013) ........................................................14, 15

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
    No. C-97-4618 MHP, 1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ........7, 11, 12

- iii -

*Kamen v. Lindly*,
 114 Cal. Rptr. 2d 127 (Ct. App. 2001)................................................................9

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .....................................................................17

*Lazar v. Super. Ct.*,
 909 P.2d 981 (Cal. 1996) ..........................................................................19

*Lipton v. Pathogenesis Corp.*,
 284 F.3d 1027 (9th Cir. 2002) ....................................................................12

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
 No. C 09-03529 JSW, 2011 WL 1152568 (N.D. Cal. Mar. 28, 2011) .......................11, 12

*May v. Borick*,
 No. CV 95-8407 LGB (EX), 1997 WL 314166 (C.D. Cal. Mar. 3, 1997) .......................24

*Maynard v. Wells Fargo Bank, N.A.*,
 No. 12CV1435 AJB, 2012 WL 4898021, at *6 (S.D. Cal. Oct. 15, 2012).......................20

*McMahon v. Marsh & McLennan Cos.*,
 No. B216003, 2010 WL 2308437 (Cal. Ct. App. June 10, 2010) ...................................7, 8

*McMahon v. Marsh & McLennan Cos.*,
 No. BC339808, 2009 WL 6633885 (Cal. Super. Ct. Jan. 8, 2009) ...................................8

*Mirkin v. Wasserman*,
 858 P.2d 568 (Cal. 1993) ......................................................................13, 19

*Opperman v. Path, Inc.*,
 87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................18, 20

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*,
 No. 15-CV-04301 NC, 2016 WL 362229 (N.D. Cal. Jan. 29, 2016) .................6, 7, 17, 23

*Rhynes v. Stryker Corp.*,
 No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)................................16, 17

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001) .....................................................................22

*Robinson v. C.R. Bard, Inc.*,
 No. 16-CV-00942-JST, 2016 WL 3361825 (N.D. Cal. June 17, 2016) ....................16, 17

*Rodas v. Porsche Cars N. Am., Inc.*,
 No. CV143747PSG-MRW-x, 2015 WL 12762064 (C.D. Cal. Feb. 13, 2015) ...........................................................................................18, 20

- iv -

*Ross v. A.H. Robins Co.*,
    No. 77 CIV. 1409, 1978 WL 1078 (S.D.N.Y. April 6, 1978)............................................15

*Sharp v. Arena Pharm., Inc.*,
    No. 10CV2111-CAB (BLM), 2013 WL 12094819 (S.D. Cal. Mar. 29,
    2013) ...............................................................................................................................13, 14

*Shersher v. Super. Ct.*,
    65 Cal. Rptr. 3d 634 (Ct. App. 2007)...............................................................................17

*Siegal v. Gamble*,
    No. 13-CV-03570-RS, 2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ......................15, 16

*Smit v. Charles Schwab & Co.*,
    No. 10-CV-03971-LHK, 2011 WL 846697 (N.D. Cal. Mar. 8, 2011) .............................17

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
    634 F. Supp. 2d 1009 (N.D. Cal. 2007) ..............................................................................7

*Spinner Corp. v. Princeville Dev. Corp.*,
    849 F.2d 388 (9th Cir. 1988) .............................................................................................16

*Subhani v. JPMorgan Chase Bank, Nat. Ass'n*,
    No. C 12-01857 WHA, 2012 WL 1980416 (N.D. Cal. June 1, 2012).........................21, 22

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...........................................................................................11

*Viterbi v. Wasserman*,
    123 Cal. Rptr. 3d 231 (Ct. App. 2011)...............................................................................14

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) ..............................................................................19

*Wright v. Bloom*,
    No. C 12-00746 WHA, 2012 WL 6000960 (N.D. Cal. Nov. 30, 2012) ..............................9

*Younan v. Equifax Inc.*,
    169 Cal. Rptr. 478 (Ct. App. 1980) .............................................................................21, 22

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)....................16, 17

**STATUTES, RULES, AND REGULATIONS**

Cal. Bus. & Prof. Code § 17200 .............................................................................................2, 15

Cal. Corp. Code § 25400(d) ................................................................2, 7, 9

Cal. Corp. Code § 25401 ...................................................................2, 13

Cal. Corp. Code § 25500 ...........................................................2, 7, 11, 12

Cal. Corp. Code § 25501 ....................................................................2, 13

Fed. R. Civ. P. 12 .................................................................................1

Fed. R. Civ. P. 23 .................................................................................2

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552 (1965) .............................................20

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822-NC

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 1, 2017, at 1:00 PM, or as soon thereafter as the matter may be heard, in Courtroom 7, located at San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendants Theranos, Inc., Elizabeth Holmes, and Ramesh Balwani will move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Class Action Complaint for Violations of California's Securities, Unfair Competition, and Common Laws.

This motion is based upon this Notice and Memorandum of Points and Authorities, oral arguments as permitted by the Court, and any such other matters that the Court deem appropriate.

**STATEMENT OF RELIEF SOUGHT**

Defendants Theranos, Inc., Elizabeth Holmes, and Ramesh Balwani respectfully request that the Court grant this motion to dismiss Plaintiffs' Class Action Complaint for Violations of California's Securities, Unfair Competition, and Common Laws for failure to state a claim.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Theranos, Inc. ("Theranos" or the "Company") is a private company founded in 2003, based in Palo Alto, California, and engaged in the business of developing blood testing technology.  Theranos has never issued securities to the public or sought public investment. Instead, over time, private investors have funded the Company through individually negotiated, private placement investments in Theranos shares.

Plaintiffs are **not** among Theranos's private investors.  They do **not** allege they ever purchased Theranos shares.  They do **not** allege they had any contact with Defendants.  Instead, Plaintiffs are two individuals who allegedly purchased interests in investment funds unaffiliated with Theranos (the "Third-Party Funds"), which in turn purchased Theranos shares.  Now, dissatisfied with those third-party investments, Plaintiffs have sued Theranos and two of its current or former officers under California law, relying on allegations lifted from complaints filed in litigation filed by other investors who did invest in Theranos.  Plaintiffs rely on the

- 1 -

1   implausible theory that Defendants intentionally induced them to invest in the Third-Party Funds

2   by publicizing a 2013 rollout of Theranos's blood testing services to consumers.

3       This action is brought by the wrong plaintiffs against the wrong defendants.  Among the

4   many reasons that warrant dismissal, Plaintiffs' Complaint exposes three facts, each of which

5   defeats one or more elements of Plaintiffs' seven claims: (1) Plaintiffs did not purchase any

6   security *offered by Defendants*; (2) Plaintiffs did not purchase any security *from Defendants*; and

7   (3) the statements Plaintiffs challenge were, on their face, statements promoting Theranos's

8   services, not statements intended induce these Plaintiffs—or any investors—to invest in

9   Theranos or the Third-Party Funds.

10      As a result of these facts, all apparent on the face of the Complaint, Plaintiffs' claim for

11   securities fraud under Cal. Corp. Code §§ 25400(d) and 25500 (Count I) fails because Plaintiffs

12   did not purchase any shares sold by Theranos.  Plaintiffs' claim for securities fraud under Cal.

13   Corp. Code §§ 25401 and 25501 (Count II) fails because Plaintiffs did not purchase any security

14   directly from Defendants.  Plaintiffs' claim for unfair competition under Cal. Bus. & Prof. Code

15   § 17200 ("UCL") (Count III) fails because the UCL does not apply to securities transactions.

16   Plaintiffs' common law claims for deceit (Counts IV, V and VII) fail because the face of the

17   Complaint makes clear that the challenged statements were not intended to induce these

18   Plaintiffs to make any investment.  And Plaintiffs' claim for constructive fraud (Count VI) fails

19   because the Complaint does not plead (and in fact negates) the existence of any relationship

20   between Plaintiffs and Defendants sufficient to give rise to the existence and breach of the

21   necessary fiduciary duty.

22      For all these reasons, and the other reasons set forth herein, the Court should dismiss

23   Plaintiffs' claims with prejudice.[1]

---

24   [1]      This Memorandum focuses primarily on dispositive legal issues that are not subject to
25   cure through repleading, and not the many reasons why Plaintiffs' allegations of falsity are
     factually unfounded.  This Memorandum also leaves for another day the many reasons why these
26   Plaintiffs could not prove that their claims are typical of the class they purport to represent, *see*
     Fed. R. Civ. P. 23(a)(3), and the many reasons why these Plaintiffs could not prove that common
27   questions predominate over the individualized questions regarding what each purported class
28   member relied upon in making their decision to invest, *see* Fed. R. Civ. P. 23(b)(3).

## II.     BACKGROUND

### A.     Theranos And Its Investors

Theranos was founded in 2003.  ¶ 19.[2]  It is a privately held company, focused on developing innovative blood-testing services.  *See* ¶¶ 19, 24.  Elizabeth Holmes ("Holmes") is Theranos's founder, Chief Executive Officer, and Chairperson of the Board.  ¶ 14.  Ramesh Balwani ("Balwani") is the former President and Chief Operating Officer, and former member of Theranos's Board.  ¶ 15.

Theranos has never offered securities to the public.  ¶ 79.  Instead, for the duration of its history, Theranos has privately sold its shares to private investors.  *See* ¶¶ 26, 41-42 & n.74.  Those private investors generally conducted their own due diligence before investing, including: (1) meeting with Theranos executives, *see* ¶¶ 43-49 (referencing Defendants' multiple in-person meetings with investors); (2) accessing and reviewing proprietary strategy and financial documents, *see* ¶¶ 44-45 (referencing presentation of Theranos's business strategy and rollout schedule); and (3) accessing and reviewing proprietary research and development data, *see* ¶ 46 (referencing presentation of comparative test data of Theranos's services).  Those investors generally decided whether to invest based on its own due diligence, *not* based on consumer-facing publicity campaigns.  *See* ¶ 44 (stating that information disclosed during due diligence justified price paid by investors).

### B.     Theranos's Publicity For The Rollout Of Blood Testing Services

Between 2003 and 2012, Theranos focused on research and development of its proprietary and innovative blood-testing services.  *See* ¶¶ 24, 48.  There is no allegation that Theranos made any misstatements, or even initiated any consumer publicity during that time.  *See* ¶¶ 2 (publicity began only in July 2013), 21 (first press release made in July 2013).  Despite that lack of publicity, Theranos nevertheless raised roughly one hundred million dollars in funding from private investors.  *See* ¶ 42 (detailing private investment dating back to 2004).

---

[2]      "¶" refers to the paragraphs in Plaintiffs' Class Action Complaint for Violations of California's Securities, Unfair Competition, and Common Laws ("Complaint").  ECF Dkt. No. 1.

1   In 2012, Theranos entered an agreement with Walgreens to bring Theranos's blood-

2   testing services to consumers through "Theranos Wellness Centers" in Walgreens pharmacies.

3   *See* ¶ 20.  Following the successful launch of a single Theranos Wellness Center in early 2013,

4   Walgreens decided to publicly announce its collaboration with Theranos.  ¶¶ 20, 24.  Walgreens

5   did so in a joint press release with Theranos on September 9, 2013.  *Id.*  Theranos followed that

6   release by publicizing its services on its website and in Walgreens stores.  *See* ¶¶ 28, 31-40.

7   As Plaintiffs acknowledge, Theranos's publicity was an "advertising campaign," ¶ 89,

8   marketing and differentiating for consumers Theranos's blood testing services, *see* ¶¶ 23-24, 28,

9   30-40.  Specifically, Theranos advertised that it was capable of running blood tests on smaller

10  samples than competitors, and could do so quickly.  ¶ 23.  None of the publicity disclosed or

11  discussed the sort of information a prospective investor would require, such as Theranos's

12  financials, projections, or strategic plan.  *See* ¶¶ 28, 31-40.  By contrast, Plaintiffs allege actual

13  Theranos investors **did** receive proprietary strategy and financial documents, rollout schedules,

14  and comparative test data.  *See* ¶¶ 43-49.

15      **C.**   **Plaintiffs' Investments In Third-Party Funds**

16  Plaintiffs are two individuals who do not allege that they ever purchased or owned

17  Theranos shares.  *See* ¶¶ 11-12.  Plaintiffs do not allege that they had any contact with Theranos

18  at all.  *See id*.  Instead, Plaintiffs purchased investment interests in the two Third-Party Funds,

19  unaffiliated with any Defendant.  *See id.*

20      **1.**   **Plaintiff Colman Invested In Lucas Venture Group XI**

21  In 2013, as "a favor" to Donald A. Lucas ("Lucas"), the son of one of Theranos's original

22  investors, Theranos granted Lucas the right to participate in a limited follow-on extension of

23  Theranos's 2010 Series C preferred financing.  ¶ 11; *see also* ¶¶ 26, 41-42.  According to the

24  Complaint, Lucas then established non-party Lucas Venture Group XI, LLC ("LVG XI"), a

25  limited liability investment company managed by Lucas and having no affiliation with Theranos.

26  *See* ¶ 11.  LVG XI purchased Series C Theranos shares in September 2013.  *See* ¶¶ 11, 26, 41-42.

27  Nowhere does the Complaint allege that LVG XI's purchase of Theranos shares was contingent

28

- 4 -

on LVG XI's ability to raise the necessary funds. *See* Compl.  Nowhere does the Complaint allege that any Defendant knew who, other than Lucas, invested in LVG XI. *See id.*  And nowhere does the Complaint allege that Defendants had contact with any LVG XI investor other than Lucas. *Id.*

Plaintiff Robert Colman alleges that he purchased a "member interest" in LVG XI at some unspecified time in September 2013. ¶ 11.  Colman was "directly solicited" to invest in LVG XI by Lucas—*not* by any Defendant. *See* ¶ 11 ("Lucas directly solicited Mr. Colman's investment . . . .").  Nowhere does the Complaint allege what documents, if any, Colman received or read prior to making his investment in LVG XI.  And nowhere does the Complaint allege that Colman saw even a single statement by Defendants prior to making his investment, let alone that Colman *relied* on any specific statement by Defendants to do so.  The absence of any allegations that Colman relied on any specific challenged misstatement is not surprising given that the vast majority of challenged statements were made after Colman made his investment. *Compare* ¶ 11 (stating purchase made at unspecified time in September 2013), *with* ¶¶ 28, 30-40, 44-49, 51, 52a-52p, 56, 60, 62 (statements post-dating September 2013).  Nevertheless, without any allegations plausibly establishing that Colman relied on any challenged statement in making his investment, Colman conclusorily asserts that he purchased his interest in LVG XI in reliance on Theranos's publicity. *See* ¶ 11 (conclusorily asserting only that "Mr. Colman relied . . . on Theranos'[s] representations herein," and paraphrasing two alleged representations untethered to any challenged statement).

### 2.    Plaintiff Taubman-Dye Invested In Celadon Technology Fund VII

In the fall of 2015, non-party Celadon Technology Fund VII, LLC ("Celadon") acquired Theranos stock from an existing Theranos shareholder, not from Theranos.  ¶ 12.  Celadon did not participate in any direct offering by Theranos, or acquire shares in Theranos from either individual Defendant. *See* ¶ 12.  Nowhere does the Complaint allege that Celadon's purchase of Theranos shares was contingent on Celadon's ability to raise the necessary funds. *See* Compl.  Nowhere does the Complaint allege that any Defendant knew who had invested Celadon. *See id.*

1   And nowhere does the Complaint allege that Theranos had any contact with any investors in

2   Celadon.  *See id.*

3        Plaintiff Hilary Taubman-Dye alleges that she purchased Series B shares of Celadon at

4   some unspecified time in August 2015.  ¶ 12.  Taubman-Dye's purchase was solicited and

5   facilitated by non-party Sharepost Financial Corporation ("Sharepoint")—*not* by any Defendant.

6   *Id.*  Nowhere does the Complaint allege what documents, if any, Taubman-Dye read prior to

7   making her investment in Celadon.  And nowhere does the Complaint allege that Taubman-Dye

8   saw even a single statement by Defendants prior to making her investment, let alone that

9   Taubman-Dye *relied* on any statement by Defendants when deciding to invest.  As with Plaintiff

10   Colman, the absence of any allegations that Taubman-Dye relied on any specific challenged

11   misstatement is not surprising given that numerous challenged statements were made after she

12   made her investment.  *Compare* ¶ 12 (stating purchase made in August 2015), *with* ¶¶ 32a, 32i,

13   32ss, 32tt, 32uu, 32vv, 32ww, 51, 52a-52p, 56, 60, 62 (all post-dating August 2015), *and* ¶¶ 44-

14   46, 48 (documenting statements made *in private* to PIM investors only made public in October

15   2016).  Nevertheless, without any allegations plausibly establishing that Taubman-Dye relied on

16   any challenged statement in making her investment, Taubman-Dye conclusorily asserts that she

17   purchased her interest in Celadon in reliance on Theranos's publicity.  *See* ¶ 12 (conclusorily

18   asserting that "Taubman-Dye relied . . . on Theranos'[s] representations herein," and

19   paraphrasing two alleged representations untethered to any challenged statement).

20   **III.   ARGUMENT**

21        The Complaint is subject to dismissal if, even accepting Plaintiffs' well-pleaded

22   allegations as true, it fails to state a plausible claim for relief.  *See People for the Ethical*

23   *Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-CV-04301 NC, 2016 WL 362229,

24   at *2 (N.D. Cal. Jan. 29, 2016) (Cousins, J.).  Well-pleaded allegations do not include

25   "allegations that are merely conclusory," and the Court need not make any "unwarranted

26   deductions of fact[] or unreasonable inferences."  *Id.* (quoting *In re Gilead Scis. Secs. Litig.*, 536

27   F.3d 1049, 1055 (9th Cir. 2008)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)

28

1  (holding inferences unreasonable where there exists an "obvious alternative explanation").

2  Further, where, as here, Plaintiffs' claims sound in fraud, Plaintiffs must also plead each claim

3  with the particularity required by Rule 9(b).[3]

4      Here, Plaintiffs have failed to plead elements of each of their claims.

5      **A.      Plaintiffs State No Claim Under Cal. Corp. Code §§ 25400(d), 25500 (Count I)**

6      Plaintiffs' claim for securities fraud under Cal. Corp. Code §§ 25400(d) and 25500

7  ("Sections 25400(d) and 25500") fails because Plaintiffs' pleadings establish that they cannot

8  plead three essential elements: (1) that Defendant Theranos sold the same security purchased by

9  Plaintiffs; (2) that Defendants made their statements for the purpose of inducing the purchase of

10  any security; or (3) that Defendants' alleged wrongdoing affected the price of the security that

11  Plaintiffs did purchase.  For these reasons, and also for the additional pleading deficiencies set

12  forth below, the Court should dismiss Count I.

13      *First*, Plaintiffs' claim fails because they did not purchase the *same* security Theranos

14  offered.  Theranos can be liable for a Section 25400(d) violation only if it was "selling or

15  offering for sale . . . [a] security" and made a misrepresentation "for the purpose of inducing the

16  purchase or sale of *such* security."  Cal. Corp. Code § 25400(d) (emphasis added).  As courts

17  have repeatedly held, the phrase "such security" requires that Plaintiffs pursuing a claim under

18  Sections 25400(d) and 25500 have purchased the *same* security offered by Defendants—*not* any

19  other security the value of which Defendants' misstatements may have affected.  *See McMahon v.*

20  *Marsh & McLennan Cos.*, No. B216003, 2010 WL 2308437, at *13 (Cal. Ct. App. June 10, 2010)

21

22  [3]      *See People for the Ethical Treatment of Animals*, 2016 WL 362229, at *5 (dismissing

23  UCL claim predicated on misrepresentations for failure to comply with Rule 9(b)) (Count III);
   *Canard v. Bricker*, No. 14-CV-04986-JSC, 2015 WL 846997, at *6-7 (N.D. Cal. Feb. 25, 2015)

24  (dismissing fraud claim for failure to comply with Rule 9(b)) (Counts IV and V);  *Gilmore v.*
   *Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014) (dismissing negligent

25  misrepresentation claim for failure to comply with Rule 9(b)) (Count VII); *Sonoma Foods, Inc. v.*
   *Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007) (dismissing

26  constructive fraud claim for failure to comply with Rule 9(b)) (Count VI); *Kainos Labs., Inc. v.*
   *Beacon Diagnostics, Inc.*, No. C-97-4618 MHP, 1998 WL 2016634, at *12-13 (N.D. Cal. Sept.

27  14, 1998) (dismissing misrepresentation claims brought under California Securities Act for
   failure to comply with Rule 9(b)) (Counts I and II).

28

- 7 -

1    (unpublished), *aff'g* No. BC339808, 2009 WL 6633885 (Cal. Super. Ct. Jan. 8, 2009)

2    (unpublished); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 903 F. Supp. 2d 152, 194

3    (S.D.N.Y. 2012) (dismissing Section 25400(d) and 25500 claim; holding that dealer in issuer's

4    common stock not liable to dealer of issuer's debt securities).

5            Thus, in *McMahon*, the plaintiffs wrote put options against their holdings of the

6    defendant's common stock, and sued under Sections 25400(d) and 25500 asserting that the price

7    of the defendants' common stock was manipulated through defendants' misstatements, which in

8    turn affected the price of their options.  Affirming the trial court's dismissal, the California Court

9    of Appeals explained that a Section 25500 claim for the violation of Section 25400(d) requires

10   that the plaintiff and the defendant deal in the *same security*.  Because plaintiffs sold a different

11   security (put options) than the one bought and sold by defendants (common stock), plaintiffs had

12   no claim.  *See* 2010 WL 2308437, at *13 ("Defendants did not offer for sale . . . put options;

13   rather, such options were bought and sold to and from third parties.  Therefore, liability does not

14   attach for the purchase or sale of the put options under [S]ection 25500.").[4]

15           Here, just as in *McMahon*, Plaintiffs did not purchase the same security sold by Theranos.

16   Theranos sold, or offered for sale, shares in Theranos.  ¶¶ 41-42.  Plaintiff Colman purchased a

17   "member interest" in LVG XI.  ¶ 11.  Plaintiff Taubman-Dye purchased Series B units of

18   Celadon.  ¶ 12.  Neither Plaintiff purchased Theranos shares.  Therefore, just as in *McMahon*,

19   Plaintiffs' failure to purchase the same security offered or sold by Theranos requires dismissal.

20   *See McMahon*, 2010 WL 2308437, at *13; *see also In re Lehman Bros.*, 903 F. Supp. 2d at 194

21   (dismissing Section 25400(d) and 25500 claim; holding that dealer in issuer's common stock not

22   liable to dealer of issuer's debt securities).

23           Moreover, for Defendants Holmes and Balwani, the problem is not merely a mismatch

24   between the security offered and the security Plaintiffs purchased; rather, nothing in the

25   _____

26   [4]     This Court may rely on *McMahon* as persuasive authority, *Emp'rs Ins. of Wausau v. Granite State Ins. Co*., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); *Bao Yi Yang v. Shanghai*

27   *Gourmet, LLC*, No. 07-CV-04482 NC, 2014 WL 2211617, at *8 n.10 (N.D. Cal. May 28, 2014) (Cousins, J.), and as evidence of how the California Supreme Court may decide the question,

28   *Granite State Ins. Co*., 330 F.3d at 1220 n.8.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822-NC

1   Complaint suggests Holmes or Balwani sold or offered to sell *any* security.  *See ¶¶* 11, 26, 41-

2   42 (referencing venture capital offerings by Theranos only), 12 (referencing sales of securities by

3   shareholders other than Defendants Holmes and Balwani).  Defendants violate Section 25400(d)

4   only if they are "person[s] selling or offering for sale . . . [a] security."  Cal. Corp. Code

5   § 25400(d).  Thus, Defendants may be liable to Plaintiffs pursuant to Section 25500 only if they

6   were the actual issuer or seller of a security; they cannot be liable under Section 25500 by virtue

7   of aiding, abetting, or otherwise participating in the sale.  *See Kamen v. Lindly*, 114 Cal. Rptr. 2d

8   127, 134 (Ct. App. 2001) ("[C]ivil liability pursuant to section 25500 applies only to a defendant

9   who is either a person selling or offering to sell or buying or offering to buy a security."); *see*

10  *also Wright v. Bloom*, No. C 12-00746 WHA, 2012 WL 6000960, at *2 (N.D. Cal. Nov. 30,

11  2012) (dismissing Section 25400(d) and 25500 claim; "The complaint alleges that BHB, in its

12  role as legal counsel, drafted documents for the Blooms and Kingsbridge in connection with the

13  incorporation of Kingsbridge and the sale of the securities to plaintiffs. Plaintiffs do not allege,

14  nor can they, that BHB was the seller (or buyer) in this securities offering.").

15      **Second**, Plaintiffs have not plausibly pleaded that Defendants' alleged misstatements in

16  consumer-facing publicity rolling out blood-testing services were made "for the purpose of

17  inducing" Plaintiffs to purchase any security.  Cal. Corp. Code § 25400(d); *Cal. Amplifier, Inc. v.*

18  *RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 921-22 (Ct. App. 2001) ("The statement also must be made

19  'for the purpose of inducing the purchase or sale of' a security by another person. A person must

20  have a specific intent to affect the price of a security in order to induce its purchase or sale."

21  (internal citation omitted)); *cf. Ashcroft v. Iqbal,* 556 U.S. 662, 686–87 (2009) ("Rule 9 merely

22  excuses a party from pleading . . . intent under an elevated pleading standard.  It does not give

23  him license to evade the less rigid—though still operative—strictures of Rule 8."); *DeLeon v.*

24  *Wells Fargo Bank, N.A.*, No. 10-cv-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28,

25  2011) ("While the heightened pleading requirements of Rule 9(b) do not apply to allegations

26  of . . . intent, Plaintiffs must still plead facts establishing scienter with the plausibility required

27  under Rule 8(a)." (internal citation omitted)).

28

- 9 -

1   It is implausible to claim that Theranos released consumer-facing publicity for the rollout

2   of blood testing services in Walgreens stores for the purpose of inducing Plaintiffs to invest in

3   Theranos shares, the only security Theranos offered for sale.  As the Complaint makes clear,

4   Theranos never sought *public* investment, ¶ 79, and the Complaint supplies no reason why

5   Theranos would embark on an advertising campaign to induce any *private* investment.  Indeed,

6   Theranos had been placing its own private securities with private investors—all without *any*

7   publicity, *see* ¶¶ 2 (publicity only began in July 2013), 21 (first press release made in July

8   2013)—for nearly 10 years before Plaintiff Colman acquired a "member interest" in non-

9   affiliated LVG XI, and for nearly 12 years before Plaintiff Taubman-Dye purchased Series B

10  shares of non-affiliated Celadon.  *See* ¶ 42.  And, according to the Complaint, when Theranos

11  solicited investment from potential private investors, those investors generally evaluated whether

12  to invest in Theranos based on direct contact with Defendants and by reviewing confidential

13  materials provided directly to those investors—*not* generic consumer-facing publicity.  *See*

14  ¶¶ 43-49 (reciting allegations from complaint filed in other litigation).[5]

15  Nor does anything in the Complaint suggest that Defendants intended Theranos's

16  consumer-facing publicity campaign to induce Plaintiffs' investments in the Third-Party Funds.

17  Neither Theranos nor the individual Defendants are alleged to have any affiliation with the

18  Third-Party Funds.  Nor do Plaintiffs allege that the Third-Party Funds' decision to acquire

19  Theranos shares was contingent on raising the capital to fund their Theranos investments, or that

20  Defendants had any knowledge regarding how the Third-Party Funds would raise the capital to

21  fund their Theranos investments.  Indeed, the Complaint does not supply any incentive for

22

23  [5]   To support some inference that Defendants intended to mislead investors, Plaintiffs
    regurgitate allegations in other litigation regarding what Defendants allegedly told its private

24  investors in private meetings Plaintiffs did not attend.  *See* ¶¶ 43-49 (parroting allegations of
    actual Theranos investors in section captioned: "Defendants' Private Solicitations are

25  Consistently Misleading and Demonstrate Intent to Mislead").  Aside from the fact that those
    allegations can demonstrate only that Defendants did not solicit investors based on statements

26  made to the general public (and therefore cannot possibly have intended their public statements
    to induce any investment), Plaintiffs' regurgitation of allegations in other litigation is *per se*

27  insufficient.  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008)
    (striking complaint allegations parroting uncorroborated allegations in another complaint).

28

- 10 -

1    Defendants to induce investment in the Third-Party Funds.  Theranos agreed to sell Theranos

2    shares to LVG XI as "a favor" to the son of an existing Theranos investor, and stood to receive

3    the proceeds of any sale regardless of how LVG XI raised its capital.  ¶ 11.  Celadon purchased

4    Theranos shares from an existing Theranos investor—not *Theranos*.  ¶ 12.  Theranos stood to

5    gain nothing as a result of Celadon's investment.

6         Simply put, Theranos had no reason to direct statements to Plaintiffs or anyone else to

7    induce them to invest in Theranos, LVG XI, or Celadon.  Instead, the obvious purpose of the

8    publicity, which coincided with the public launch of Theranos's services, was to promote

9    Theranos's blood testing services to the *consuming public*.  Cf. *Bell Atl. Corp. v. Twombly*, 550

10   U.S. 544, 567 (2007) (claim not plausible where there exists an "obvious alternative explanation"

11   for challenged conduct); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,

12   637 F.3d 1047, 1057 (9th Cir. 2011) (holding fraud claim implausible where there existed

13   obvious alternate explantion for non-disclosure); *Barsky v. Spiegel Accountancy Corp.*, No. 14-

14   CV-04957-TEH, 2015 WL 580574, at *3 (N.D. Cal. Feb. 11, 2015) (holding fraud claim

15   implausible where pleaded facts suggested "obvious alternative explanation" for false statement).

16        Similarly, Plaintiffs have not pleaded Defendants "willfully participate[d]" in a Section

17   25400(d) violation, as required to state a claim.  Cal. Corp. Code § 25500.  Section 25500's

18   "willful participation" requirement requires pleading a "high level of scienter."  *Cal. Amplifier*,

19   113 Cal. Rptr. 2d at 923 ("[T]he purpose and intent of the willful participation requirement is to

20   clarify and underscore the *high level of scienter* required for a violation of section 25500."

21   (emphasis added)); *see also In re Lehman Bros.*, 903 F. Supp. 2d at 194 (dismissing Section

22   25500 claim; implicitly equating willful intent with scienter standard under the PSLRA); *La. Pac.*

23   *Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09-03529 JSW, 2011 WL 1152568, at *9

24   (N.D. Cal. Mar. 28, 2011) (same); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, No. C-97-

25   4618 MHP, 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998) (same).

26        Here, for the same reasons Plaintiffs cannot plead facts showing Defendants made

27   product marketing statements for the purpose of inducing a purchase of securites, they have

28

- 11 -

1    pleaded no facts plausibly suggesting that Defendants "willfully participate[d]" in a Section

2    25400(d) violation.  *See* ¶¶ 89-91 (nowhere pleading willful participation in Count I); *cf. Kainos*,

3    1998 WL 2016634, at *13 (holding conclusory allegation that statements were "willful[]"

4    insufficient to survive motion to dismiss).  Plaintiffs' conclusory assertion in the introduction to

5    their Complaint, devoid of any supporting factual allegations, that Theranos issued its

6    misstatements for the "purpose [of] raising billions for Theranos and themselves," ¶ 2, adds

7    nothing.  Having agreed to permit LVG XI to acquire shares of Theranos as "a favor" to the son

8    of an existing investor, Theranos stood to receive the proceeds of that acquisition regardless of

9    any statements it made to the general public.  *See* ¶ 11.  And because Celadon acquired shares in

10   the secondary market from an existing investor, Theranos did not raise any funds from

11   investment in Celadon.  *See* ¶ 12.

12        In any event, Plaintiffs' bald declaration of Theranos's "purpose" of raising money does

13   not, as a matter of law, plead the "high level of scienter" required to plead "willful participation."

14   *See La. Pac. Corp.*, 2011 WL 1152568, at *8-9 (implicitly equating high level of scienter with

15   scienter standard under PSLRA, and holding desire to earn lucrative fees and commissions

16   insufficient to plead scienter for either Section 10(b) or Section 25500 claim); *cf. Lipton v.*

17   *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("PathoGenesis' alleged desires to

18   *obtain favorable financing* . . . are in themselves ordinary and appropriate corporate objectives.

19   Such routine business objectives, without more, cannot normally be alleged to be motivations for

20   fraud." (emphasis added)); *Applestein v. Medivation, Inc.,* 861 F. Supp. 2d 1030, 1041 (N.D. Cal.

21   2012) ("In general, courts have found that *a generic desire to raise capital* is insufficient to

22   demonstrate scienter." (emphasis added)).

23        ***Finally***, Plaintiffs have not pleaded that Defendants' statements "affected" the price at

24   which they purchased their interests in LVG XI or Celadon.  *See* Cal. Corp. Code § 25500.

25   Section 25500 permits a private right of action for violations of Section 24500(d) only upon a

26   showing that a security was purchased or sold "at a price which was *affected* by" the violation.

27   Cal. Corp. Code § 25500 (emphasis added).  Accordingly, Plaintiffs are required to plausibly

28

1   plead that the price at which they purchased their investments in the Third-Party Funds was

2   "affected" by the challenged misstatements.  *See In re Merrill Lynch Auction Rate Sec. Litig.*,

3   851 F. Supp. 2d 512, 541 (S.D.N.Y. 2012) (dismissing claim under Sections 25400(d) and 25500

4   claim for failure to plead that security price was "affected" by misstatements).

5          Here, Plaintiffs have pleaded virtually no facts about the Third-Party Funds or the shares

6   they acquired in those Funds, and certainly no facts supporting an inference that the challenged

7   misstatements affected the price at which they acquired interests in those Funds.  *Cf.* ¶¶ 11-12,

8   79-81, 88-91.  Absent pleaded facts plausibly demonstrating that the price at which they acquired

9   their investment was affected, Plaintiffs have no claim.  *See In re Merrill Lynch*, 851 F. Supp. 2d

10  at 541 (dismissing claim for failure to plead that security price was "affected" by misstatements;

11  holding plaintiffs theory for how misstatements affected price of security was implausible).

12         For all these reasons, Plaintiffs' have not pleaded—and cannot plead—required elements

13  of their claim for securities fraud under Sections 25400(d) and 25500.  The Court should dismiss

14  Count I with prejudice.

15     **B.     Plaintiffs State No Claim Under Cal. Corp. Code §§ 25401, 25501 (Count II)**

16         Plaintiffs' claim for securities fraud under Cal. Corp. Code §§ 25401 and 25501

17  ("Sections 25401 and 25501") fails because Plaintiffs and Defendants were not in privity.   A

18  person who violates Section 25401 is only "liable to the person who purchases a security *from*

19  *him*"; absent privity between Plaintiffs and Defendants, Plaintiffs have no claim.  Cal. Corp.

20  Code § 25501 (emphasis added).  In other words, "[u]nder Section 25501 the defendant is only

21  liable to the person *with whom he deals*."  *Mirkin v. Wasserman*, 858 P.2d 568, 581 (Cal. 1993)

22  (emphasis added); *accord Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr.

23  3d 199, 221 (Ct. App. 2007) ("Section 25501 on its face requires privity between the plaintiff

24  and the defendant.  The investors purchased their securities from eNucleus, not from Roth, which

25  acted as eNucleus's placement agent.  Consequently, Roth cannot be civilly liable for a violation

26  of section 25401."); *see also Sharp v. Arena Pharm., Inc.*, No. 10CV2111-CAB (BLM), 2013

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822-NC

1   WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013) (dismissing Section 25501 claim for failing to

2   plead privity); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063-64 (N.D. Cal. 2013) (same).

3           In *Sharp*, the plaintiff brought a claim pursuant to Sections 25401 and 25501, asserting

4   that he purchased the defendant pharmaceutical company's securities at a time when the

5   defendant misrepresented the safety and efficacy of its pharmaceuticals.  The plaintiff acquired

6   those securities on a public exchange, not from the defendant.  Dismissing the plaintiff's claim,

7   the court explained that "liability under Section 25401 requires '*strict privity*' between the

8   parties – *i.e*., the defendant must have sold the security directly to the plaintiff."  2013 WL

9   12094819, at *2 (emphasis added).  Because the plaintiff did not purchase his securities directly

10  from the defendant, the plaintiff had no claim.  *See id.*; *see also Jackson*, 931 F. Supp. 2d at

11  1063-64 (dismissing Section 25501 claim against directors and officers where the plaintiff "[did]

12  not claim that she purchase[d] shares . . . from the [director and officer] defendants").

13          Here, Plaintiffs did not purchase securities from Defendants.  Plaintiffs purchased

14  investment interests in and from LVG XI and Celadon.  ¶¶ 11, 12.  Thus, as a matter of law,

15  Plaintiffs cannot assert a claim under Sections 25401 and 25501.  *See Apollo*, 70 Cal. Rptr. 3d at

16  221 (affirming demurrer for failure to plead privity); *see also Sharp*, 2013 WL 12094819, at *2

17  (dismissing complaint for same); *Jackson*, 931 F. Supp. 2d at 1063-64 (same).

18          Furthermore, apart from the lack of privity between Plaintiffs and Defendants, Plaintiffs

19  have not pleaded that Defendants sold any security "by means of" any of the challenged

20  statements.  Establishing that the security was sold "by means of" the challenged statement

21  requires proving that Defendants "used" the statement to offer or sell the security.  *See In re*

22  *Access Cardiosystems, Inc*., 776 F.3d 30, 36 (1st Cir. 2015) (construing Massachusetts's

23  equivalent of Section 25401 by reference to construction of Section 12 of the Securities Act).[6]

24  Determining whether Defendants "used" a statement to sell a security is an objective inquiry,

25  evaluated based on the circumstances in which the statements were made.  *Id.*  Thus, for

26  _____

27  [6]      Because "Section 25401 . . . [is] modeled after section 12(2) of the Securities Act of
    1933, . . . federal cases construing federal securities laws are persuasive authority when
28  interpreting our state law."  *Viterbi v. Wasserman*, 123 Cal. Rptr. 3d 231, 238 (Ct. App. 2011).

1    substantially the same reasons why Plaintiffs cannot plausibly plead that Defendants intended

2    consumer-facing publicity concerning Theranos's rollout of blood testing services to induce

3    investors, much less these Plaintiffs, Plaintiffs cannot plausibly plead that Defendants "used"

4    such consumer-facing statements to sell any security.  *See* Section III.A *supra*; *see also*

5    *Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 244 (S.D.N.Y. 1988) (holding, for

6    purposes of Section 10(b)'s "in connection with" requirement, that promotional and advertising

7    materials are not made "in connection with" purchase or sale of securities; "The advertisement

8    described in the Amended Complaint concerns [the product's] qualities as a skin care treatment,

9    not as an investment choice."); *Ross v. A.H. Robins Co.*, No. 77 CIV. 1409, 1978 WL 1078, at

10   *3-4 (S.D.N.Y. April 6, 1978) (similar).[7]

11        Accordingly, the Court should dismiss Count II with prejudice.

12   **C.    Plaintiffs Cannot State A Cal. Bus. & Prof. Code § 17200 Claim (Count III)**

13        Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200 ("UCL") also fails.  The UCL

14   was intended to afford equitable relief to plaintiffs whose property is unlawfully obtained by

15   defendants through unfair competition.  It does not reach the transactions alleged here.

16        As courts have held, the UCL "does not apply to securities transactions."  *Bowen v.*

17   *Ziasun Techs., Inc.*, 11 Cal. Rptr. 3d 522, 533 (Ct. App. 2004); *see also Siegal v. Gamble*, No.

18   13-CV-03570-RS, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016) ("Plaintiffs' UCL claims

19   are not viable, however, because the UCL's protections do not extend to securities transactions

20   under any of the three prongs."); *Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 866

21   (N.D. Cal. 2011) ("No court . . . has allowed Section 17200 claims to proceed where, as here, the

22   predicate acts are securities transactions.").  That is because the UCL was intended "to protect

23   consumers from unethical business practices resulting in relatively small commercial injuries";

---

24   [7]        In the absence of a Section 25401 violation by Theranos, Plaintiffs' additional Section
25   25504 claim against Defendants Holmes and Balwani for control person liability necessarily fails.
     *See Jackson*, 931 F. Supp. 2d at 1064 ("[I]n the absence of a viable claim of primary liability,
26   plaintiff cannot state a claim against the [director and officer] defendants for control person
     liability under § 25504."); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 903 F. Supp. 2d 152,
27   195-96  (S.D.N.Y. 2012) (dismissing Section 25504 claim; absence of privity between plaintiff
28   and issuer defeated primary liability necessary for Section 25504 claim).

1  "[a]ctions involving securities . . . are not typically on the agenda of consumer advocates."

2  *Bowen*, 11 Cal. Rptr. at 531 (quoting *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 391

3  (9th Cir. 1988) (construing Hawaii's equivalent of the UCL)).

4       *Siegal* is instructive.  In addition to claims under Section 25401 and 25501, the plaintiffs

5  brought claims under the UCL.  At least one plaintiff asserted that he had purchased interests in

6  an aggregator fund in reliance upon misleading statements made by the defendants.  Dismissing

7  the claim, the court explained that "the only transactions at issue"—*i.e.*, the purchase of interests

8  in aggregator funds that in turn purchased shares in a company named Opus—"[were] securities

9  transactions."  2016 WL 1085787, at *7.  And, as the court explained, "the UCL's protections do

10  not extend to securities transactions."  *Id.*

11       Plaintiffs' UCL claim is almost identical to that in *Siegal*.  Plaintiffs allege that

12  Defendants made false statements to induce their investment in funds (*i.e.,* securities) that in turn

13  invested in Theranos.  *See* ¶¶ 98-99, 102 (alleging investment was "obtained" through unlawful,

14  fraudulent, and unfair business practices"); *see also* ¶¶ 10, 82 (purporting to represent a class of

15  persons or entities that "purchased or committed to purchase" securities).  Accordingly, Plaintiffs

16  have no UCL claim.  *See Siegal*, 2016 WL 1085787, at *7; *Betz*, 829 F. Supp. 2d at 866.

17       Plaintiffs also cannot state a UCL claim because the UCL's equitable relief is available

18  only where alternate legal claims cannot remedy Plaintiffs' loss.  *See Zapata Fonseca v. Goya*

19  *Foods Inc*., No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016)

20  (dismissing unfair competition claim where alternate legal claims sought damages); *Duttweiler v.*

21  *Triumph Motorcycles (Am.) Ltd*., No. 14-CV-04809-HSG, 2015 WL 4941780, at *8-9 (N.D. Cal.

22  Aug. 19, 2015) (same).  The fact that Plaintiffs' alternate legal claims may be deficient is

23  irrelevant.  *See Robinson v. C.R. Bard, Inc.*, No. 16-CV-00942-JST, 2016 WL 3361825, at *3 n.3

24  (N.D. Cal. June 17, 2016) (dismissing UCL claims given alternate legal remedies; "The fact that

25  [the plaintiff's] other claims have been barred by the statute of limitations does not affect the

26  court's analysis."); *Rhynes v. Stryker Corp*., No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D.

27  Cal. May 31, 2011) (same; "Plaintiffs' argument that they will have no adequate remedy at law if

28

1    their other claims fail is unavailing.  Where the claims pleaded by a plaintiff *may* entitle her to an

2    adequate remedy at law, equitable relief is unavailable." (emphasis original)).

3           Here, Plaintiffs have asserted six alternate legal claims, each seeking damages to

4    compensate Plaintiffs for the harm purportedly caused by Defendants.  *See* ¶¶ 88-91 (Count I;

5    seeking damages), 92-96 (Count II; same), 103-08 (Count IV; same), 109-113 (Count V; same),

6    114-18 (Count VI; same), 119-123 (Count VII; same).  Because those legal claims seek redress

7    for the same harm as Plaintiffs' UCL claim, Plaintiff's UCL claim must be dismissed.  *See*

8    *Zapata*, 2016 WL 4698942, at *7; *Robinson*, 2016 WL 3361825, at *3 n.3; *Duttweiler*, 2015 WL

9    4941780, at *8-9; *Rhynes*, 2011 WL 2149095, at *4.[8]

10          Finally, Plaintiffs cannot state a UCL claim because Plaintiffs have failed to plead

11   reliance on the alleged misstatements.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th

12   Cir. 2009) (satisfying Rule 9(b) for UCL claims sounding in fraud requires pleading "the

13   particular circumstances surrounding [the] representations," including "specify[ing] *which* sales

14   material he relied upon in making his decision" and "*when* [the plaintiff] was exposed to them"

15   (emphasis added)); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal.*, *Inc*.,

16   No. 15-CV-04301 NC, 2016 WL 362229, at *4 (N.D. Cal. Jan. 29, 2016) (Cousins, J.)

17   (satisfying Rule 9(b) for UCL claims requires "*specifically identify*[*ing*] what misleading

18   advertisements [the plaintiff] relied on" (emphasis added)); *Herrington v. Johnson & Johnson*

19   _____

20   [8]      Plaintiff Taubman-Dye's UCL claim fails for the additional reason that she cannot
     establish that any Defendant is liable to her for restitution.  The UCL's restitutionary relief
21   requires that Taubman-Dye establish that Defendants acquired money or property belonging to
     Taubman-Dye through its UCL violations.  *See Shersher v. Super. Ct.*, 65 Cal. Rptr. 3d 634, 639
22   (Ct. App. 2007) ("[T]he remedy the plaintiff seeks must be truly 'restitutionary in nature'—that
     is, it must represent the *return* of money or property the *defendant acquired* through its unfair
23   practices." (emphasis added)).  But here, where Celadon acquired Theranos shares in the
     secondary market—not from Theranos—Defendants did not, in any sense, acquire money or
24   property that originally belonged to Taubman-Dye.  At most, Taubman-Dye could seek
     compensation for the diminution in value of her investment, a nonrestitutionary remedy
25   unavailable under the UCL.  *See Smit v. Charles Schwab & Co.*, No. 10-CV-03971-LHK, 2011
     WL 846697, at *9-10 (N.D. Cal. Mar. 8, 2011) (dismissing purported UCL holder claim seeking
26   recovery for diminution in value of shares (applying *Feitelberg v. Credit Suisse First Boston,
     LLC*, 36 Cal. Rptr. 3d 592, 606, 609 (Ct. App. 2005) (holding nonrestitutionary disgorgement
27   unavailable remedy under UCL))).

28

1    *Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010)

2    (satisfying Rule 9(b) for UCL claims requires that the plaintiffs "plead the circumstances in

3    which they were exposed to these statements," and "plead upon which of these

4    misrepresentations they relied").

5         Nowhere have Plaintiffs pleaded *which* of the various challenged statements they even

6    read, much less relied upon.  And, thus, Plaintiffs also necessarily have not pleaded *when* they

7    relied on those statements.  The only thing either Plaintiff has pleaded is the conclusion that he or

8    she "relied, at least in part, on Theranos'[s] representations herein."  *See* ¶¶ 11, 12.[9]  Such

9    conclusory pleading is insufficient.  *See Rodas v. Porsche Cars N. Am., Inc.*, No. CV 14-3747

10   PSG (MRW-x), 2015 WL 12762064, at *10 (C.D. Cal. Feb. 13, 2015) (dismissing UCL claim;

11   rejecting as conclusory the plaintiffs' allegation that the plaintiff "relied on the representations

12   made by Porsche prior to purchasing the Carrera GT"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d

13   1018, 1046-47, 1052 (N.D. Cal. 2014) (dismissing UCL claim; rejecting as conclusory allegation

14   that the plaintiff "visited [the defendant's] website" and was "aware of [the defendant's]

15   representations regarding the safety and security of [products] prior to purchasing").

16        Indeed, Plaintiffs' failure to identify which statements they relied upon, and when they

17   did so, is particularly problematic because many of the alleged misstatements were made long

18   *after* Plaintiffs made their investments.  Plaintiff Colman has not identified when in September

19   2013 he made his investment, leaving open the possibility that he invested in LVG XI prior to

20   the first challenged statement being made public on September 8, 2013.  *See* ¶ 11.  But in any

21   event, apart from a handful of statements made in September 2013, almost all of the challenged

22   misstatements post-date Plaintiff Colman's investment.  *Compare* ¶ 11 (stating purchase made at

23   some unspecified time in September 2013), *with* ¶¶ 28, 30-40, 44-49, 51, 52a-52p, 56, 60, 62

---

24   [9]      Notably, although Plaintiffs allege that Lucas forwarded several of the alleged
25   misstatements to prospective LVG XI investors in September 2013, *see* ¶¶ 11, 26-27 ("Plaintiffs
     began considering an investment in Theranos through intermediaries and investment funds, or
26   directly," "Lucas directly solicited Mr. Colman's investment," and "Lucas wrote to its investors
     on September 9, 2013 . . . includ[ing] statements provided by Defendants."), Plaintiff Colman,
27   who invested in LVG XI, *nowhere alleges that he saw those statements*, let alone relied upon
     them in making his investment, *cf.* ¶¶ 11, 26-27.
28

1   (statements post-dating September 2013).  Similarly, many challenged statements were made

2   after Plaintiff Taubman-Dye made her investment in August 2015.  *Compare* ¶ 12 (stating

3   purchase made in August 2015), *with* ¶¶ 32a, 32i, 32ss, 32tt, 32uu, 32vv, 32ww, 51, 52a-52p, 56,

4   60, 62 (all post-dating August 2015), *and* ¶¶ 44-46, 48 (documenting statements made *in private*

5   to PIM investors only made public in October 2016).  And it is axiomatic that a plaintiff cannot

6   have relied upon—and therefore has no basis for challenging—statements they saw only *after*

7   they invested.  *See, e.g.*, *World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp.

8   3d 1233, 1237 (N.D. Cal. 2014) ("These statements do nothing to support [the plaintiff's] fraud

9   claims because the ink was already dry on the deal documents by the time they were allegedly

10  made, and consequently [the plaintiff] could not have relied upon them as a basis for entering

11  into the contracts or relationship.").[10]

12       For all these reasons, Plaintiffs cannot state a claim under the UCL.

13       **D.    Plaintiffs Cannot State A Common Law Deceit Claim (Counts IV, V, VII)**

14       Plaintiffs' common law deceit claims for fraud, fraudulent concealment, and negligent

15  misrepresentation also fail because Plaintiffs failed adequately to plead that they relied on the

16  challenged statements, much less that Defendants intentionally induced them to do so.

17       Every one of Plaintiffs' deceit claims requires pleading and proof of reliance.  "It is

18  settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must

19  plead that he or she actually relied on the misrepresentation."  *Mirkin v. Wasserman*, 858 P.2d

20  568, 570 & n.2 (Cal. 1993) (considering both intentional and negligent misrepresentation); *see*

21  *also Lazar v. Super. Ct.*, 909 P.2d 981, 984 (Cal. 1996) (explaining that justifiable reliance is an

22  element of fraudulent concealment).  And, as noted in Section III.C above, Plaintiffs' conclusory

23  allegations of reliance, without any supporting factual allegations, fall far short of what the law

---

24  [10]    Plaintiffs' claim under the UCL unlawfulness prong, ¶ 98, also fails because the only

25  predicate legal violations are their six other causes of action, all of which fail for the reasons set

    forth herein.  *See Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 186 (Ct. App. 2007)

26  (dismissing UCL claim for "unlawful" business practice where plaintiff failed to plead predicate

    offenses).   Their claim that Theranos engaged in "unfair" business practices by providing flawed

27  blood testing, ¶ 100, also fails for lack of standing: Plaintiffs are investors, and they do not allege

28  use of the blood testing services or any harm caused by those services.

requires.  *Compare ¶¶* 11, 12, *with Rodas v. Porsche Cars N. Am., Inc.*, No. CV 14-3747 PSG (MRW-x), 2015 WL 12762064, at *10 (C.D. Cal. Feb. 13, 2015) (rejecting as conclusory the plaintiffs' allegation that the plaintiff "relied on the representations made by Porsche prior to purchasing the Carrera GT"), *and Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1046-47, 1052 (N.D. Cal. 2014) (rejecting as conclusory an allegation that the plaintiff "visited [the defendant's] website" and was "aware of [the defendant's] representations regarding the safety and security . . . prior to purchasing").  This, without more, disposes of the claims.

Moreover, because Plaintiffs have not even pleaded reliance, they necessarily have not met the additional requirement to plead plausibly that Defendants intended to induce reliance. Each of Plaintiffs' claims for common law deceit requires proving that Defendants intended Plaintiffs to rely on their statements to engage in the action in which Plaintiffs engaged—here, the purchase of an interest in LVG XI or Celadon.  *See Bily v. Arthur Young & Co.*, 834 P.2d 745, 768-69, 773 (Cal. 1992) (holding negligent misrepresentation requires proving intent to induce a particular class of persons to engage in a particular transaction (adopting Restatement (Second) of Torts § 552 (1965))); *Carlson v. Murphy*, 47 P.2d 1100, 1103 (Cal. 1935) ("[T]o state a cause of action for legal relief, based upon actual fraud, a plaintiff must allege an intention on the part of the defendant to induce the particular action which resulted in the damage."; construing Cal. Civ. Code §§ 1709, 1710).

For the reasons set forth in Section III.A above, Plaintiffs have failed to plead any facts permitting a plausible inference that Defendants intended to induce Plaintiffs' purchase of *any* security, let alone the interests in LVG XI and Celadon that Plaintiffs actually acquired.  The absence of any facts permitting a plausible inference of intent to induce reliance is fatal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) ("Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard.  It does not give him license to evade the less rigid—though still operative—strictures of Rule 8."); *see also, e.g.*, *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013) (dismissing deceit claim; "[The plaintiff] does not allege any facts supporting a reasonable inference that [the defendant] had . . . an intent to

- 20 -

1   defraud."); *Maynard v. Wells Fargo Bank, N.A.*, No. 12CV1435 AJB JMA, 2012 WL 4898021,

2   at *6 (S.D. Cal. Oct. 15, 2012) (dismissing deceit claim; "Plaintiff cannot establish that

3   Defendants intended to induce Plaintiff to act in a particular way."); *DeLeon v. Wells Fargo*

4   *Bank, N.A.*, No. 10-cv-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011)

5   (dismissing deceit claim; "While the heightened pleading requirements of Rule 9(b) do not apply

6   to allegations of . . . intent, Plaintiffs must still plead facts establishing [intent] with the

7   plausibility required under Rule 8(a)." (internal citation omitted)).

8       The Court should dismiss Counts IV, V and VII with prejudice.

9       **E.**     **Plaintiffs Cannot State A Claim For Constructive Fraud (Count VI)**

10       The allegations in Plaintiffs' Complaint also establish that Plaintiffs cannot plead two

11   necessary elements of their claim for constructive fraud: (1) the existence and breach of a

12   fiduciary duty; and (2) reliance.

13       *First*, Plaintiffs have failed to plead the existence and breach of the required duty owed to

14   Plaintiffs by Defendants.  The requisite duty Plaintiffs must plead is one that arises from a

15   fiduciary or confidential relationship.  *See Carlson v. Murphy*, 47 P.2d 1100, 1101 (Cal. 1935)

16   (explaining constructive fraud requires "confidential or fiduciary relations between plaintiffs and

17   defendants"); *Younan v. Equifax Inc.*, 169 Cal. Rptr. 478, 489–90 (Ct. App. 1980) ("Unlike

18   actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some

19   kind . . . . There being no fiduciary relationship alleged between plaintiff and anyone other than

20   defendant Home Assurance and there being no facts alleged sufficient to show that a confidential

21   relationship existed between plaintiff and the defendants . . . , the demurrer to the cause of  action

22   for constructive fraud was properly sustained by the court."); *see also Subhani v. JPMorgan*

23   *Chase Bank, Nat. Ass'n*, No. C 12-01857 WHA, 2012 WL 1980416, at *10 (N.D. Cal. June 1,

24   2012) (dismissing claim for constructive fraud where "[n]o facts establishing a fiduciary or

25   confidential relationship between plaintiff and defendant [were] pled").

26       Here, Plaintiffs have pleaded no facts allowing an inference that they and Defendants

27   were in a fiduciary or confidential relationship.  Indeed, the Complaint negates any inference of

28

1  such a relationship.  Plaintiff Colman invested in LVG XI, and his investment was "directly

2  solicited" by Lucas.  ¶ 11.  Plaintifff Taubman-Dye invested in Celadon, and her investment was

3  "managed and conducted" by Sharepoint.  ¶ 12.  Neither Plaintiff had any relationship with any

4  Defendant.  That alone requires dismissal.  *See Younan*, 169 Cal. Rptr. at 489-90 (sustaining

5  demurrer for failing to plead facts establishing fiduciary or confidential relationship); *Subhani*,

6  2012 WL 1980416, at *10 (granting motion to dismiss for same).

7          ***Second***, for all the reasons set forth in Section III.C and D above, Plaintiffs have not

8  pleaded reliance.  As it is for common law deceit, reliance is a necessary element of constructive

9  fraud.  *See Alliance Mortg. Co. v. Rothwell,* 900 P.2d 601, 608 n.4 (Cal. 1995) ("[J]ustifiable

10  reliance . . . [is] also [an] essential element[] of . . . constructive fraud."); *Younan*, 169 Cal. Rptr.

11  at 489 n.14 ("The elements of the cause of action for constructive fraud [include]: . . . reliance

12  and resulting injury (causation).").

13          Accordingly, the Court should dismiss Count VI with prejudice.

14      **F.       Plaintiffs Fail To Satisfy Rule 9(b) (All Claims)**

15          The Complaint's incurable infirmities, described above, warrant dismissal with prejudice.

16  In addition, the Court should dismiss the Complaint for failing to comply with Rule 9(b)

17  pleading requirements.[11]  Rule 9(b) requires that Plaintiffs specifically identify the portion of a

18  statement they claim is false and the facts demonstrating why that statement was false when

19  made.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994), *superseded by*

20  *statute as recognized by Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001) (explaining

21  federal securities claims subject to additional heightened pleading requirements of the PSLRA,

22  not merely Rule 9(b)).  Plaintiffs have done neither.

23          In many instances, the Complaint fails to adequately identify the statements it purports to

24  challenge.  For example, the Complaint references articles, press releases and advertisements

25  without identifying what portion is false or misleading.  *See* ¶¶ 31i, 31j, 32a, 32p, 32q, 32y, 32bb,

26

27  [11]      Each of Plaintiffs' claims is predicated upon an alleged "false" or "misleading" statement.
    *See* ¶¶ 89 (Count I), 93 (Count II), 99 (Count III), 104 (Count IV), 110 (Count V), 115 (Count
28  VI), 121 (Count VII).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822-NC

1    32kk, 32pp, 32qq, 32tt, 32uu, 33-40, 52c-52p.  For other statements, Plaintiffs quote at length

2    from a press release, article, or website, without identifying which of the numerous assertions

3    made therein—some of which are *obviously* true—are being challenged.  *See, e.g.,* ¶ 28 (block

4    quote from November 13, 2013 press release, including the obviously true statement: "Theranos,

5    Inc. and Walgreens . . . today celebrate the opening of new Theranos Wellness Centers located at

6    Walgreens stores . . . ."); *see also* ¶ 24 (block quote from September 9, 2013 press release).

7    Such broadside claims of falsity, which require Defendants and the Court to speculate precisely

8    what about each statement requires defending, do not satisfy Rule 9(b).  *See People for the*

9    *Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc*., No. 15-CV-04301 NC, 2016 WL

10   362229, at *5 (N.D. Cal. Jan. 29, 2016) (Cousins, J.) (dismissing complaint under Rule 9(b)

11   because "it [was] not clear whether the [p]laintiffs object to the white placards within the glass,

12   the statements on the top bar, the bottom bar, or all three"); *In re Secure Computing Corp. Sec.*

13   *Litig.*, 120 F. Supp. 2d 810, 815-16 (N.D. Cal. 2000) (dismissing complaint under Rule 9(b) that

14   required "speculat[ion]" regarding "which statements identified in the [complaint] were allegedly

15   false or misleading when made").

16          The Complaint also engages in puzzle pleading—failing to connect challenged statements

17   to reasons for why they are false or misleading.  For instance, Plaintiffs catalogue numerous

18   press releases that they assert, without any factual specificity, "repeat[ed] the 'false narrative' as

19   to the state of Theranos'[s] technology, capabilities and roll-out."  *See* ¶¶ 31a-31p.  They refer to

20   what they characterize as an "endless infomercial" of newspaper and journal articles, purportedly

21   based on interviews with Defendants, that "conducted" Theranos's "narrative."  ¶¶ 32a-32ww.

22   And Plaintiffs challenge statements made in "advertisements" on Theranos's website and in

23   Walgreen's stores, all of which are alleged to be false for "promot[ing] the 'Narrative.'"  ¶¶ 33-

24   40.  But instead of identifying with specificity why these statements are allegedly false, Plaintiffs

25   leave Defendants to guess which of the thirteen reasons for falsity Plaintiffs ultimately identify,

26   *fifty* paragraphs later, apply to each identified statement.  *See* ¶ 89.  Even for those few

27   challenged statements in September 2013, Plaintiffs merely collect in two paragraphs several

28

1   statements (all of which they presumably intend to challenge), and leave for Defendants and the

2   Court to guess which of the seven reasons collected in a third paragraph demonstrate the falsity

3   of each challenged statement.  *See* ¶¶ 23-25.

4          Courts routinely condemn this sort of puzzle-pleading as insufficient to satisfy Rule 9(b).

5   "A complaint is not a puzzle . . . and we are loathe to allow plaintiffs to tax defendants, against

6   whom they have levelled very serious charges, with the burden of solving puzzles in addition to

7   the burden of formulating an answer to their complaint."  *See In re GlenFed*, 42 F.3d at 1554;

8   *see also Secure Computing*, 120 F. Supp. 2d at 815 (dismissing claim pursuant to Rule 9(b);

9   "Defendants and the Court would be required to speculate . . . for each such statement, which of

10  the supposedly undisclosed adverse factors identified in the [complaint] rendered the statement

11  false or misleading. . . . A complaint that requires such efforts to understand it does not comply

12  with Rule 9(b)."); *May v. Borick*, No. CV 95-8407 LGB (EX), 1997 WL 314166, at *8 (C.D. Cal.

13  Mar. 3, 1997) (dismissing claim pursuant to Rule 9(b); "Plaintiff . . . merely sets out separate

14  lists of the allegedly false or misleading statements . . . and of the information whose omission

15  allegedly rendered the statements false or misleading. . . . Plaintiff . . . leav[es] Defendants and

16  the Court to piece together Plaintiff's claims with regard to particular statements.").

17         Accordingly, because Plaintiffs have not articulated in accordance with Rule 9(b) what

18  statements Plaintiffs challenge and why, the Court should, at a minimum, dismiss the Complaint

19  for failure to comply with Rule 9(b).

20  **IV.    CONCLUSION**

21         For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

22

23

24

25

26

27

28

Dated: January 17, 2017

By: /s/  Michael A. Mugmon
Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmehale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmehale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

/s/  Kathleen Goodhart
Kathleen Goodhart (165659)

COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2012
Facsimile: +1 415 693 2222
kgoodhart@cooley.com

Stephen C. Neal (170085)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400
nealsc@cooley.com

*Attorneys for Defendant Elizabeth Holmes*

-25-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/  Allison A. Davis
Allison A. Davis (139203)

DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: +1 415 276 6500
Facsimile: +1 415 276 4880
allisondavis@dwt.com

Stephen M. Rummage (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: +1 206 757 8136
Facsimile: +1 206 757 7136
steverummage@dwt.com

*Attorneys for Defendant Ramesh Balwani*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the the foregoing Notice of Motion and Motion to Dismiss Class Action Complaint.  In compliance with Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: January 17, 2017                     WILMER CUTLER PICKERING HALE
                                                          AND DORR LLP

                                            By:  /s/  Michael A. Mugmon
                                                     Michael A. Mugmon

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No.  5:16-cv-06822