Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

[Additional counsel listed on following page.]

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI,<br><br>                              Defendants. | Case No.  5:16-cv-06822-NC<br><br>**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing Date: March 1, 2017<br>Time: 1:00 PM<br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael Cousins |

1

2    COUNSEL CONTINUED:

3    Kathleen Goodhart (165659)
     COOLEY LLP
4    101 California Street, 5th Floor
     San Francisco, CA 94111
5    Telephone: +1 415 693 2012
     Facsimile: +1 415 693 2222
6    kgoodhart@cooley.com

7    Stephen C. Neal (170085)
     COOLEY LLP
8    3175 Hanover Street
     Palo Alto, CA 94304
9    Telephone: +1 650 843 5000
     Facsimile: +1 650 849 7400
10   nealsc@cooley.com

11   *Attorneys for Defendant Elizabeth Holmes*

12   Allison A. Davis (139203)
     DAVIS WRIGHT TREMAINE LLP
13   505 Montgomery Street, Suite 800
     San Francisco, CA 94111
14   Telephone: +1 415 276 6500
     Facsimile: +1 415 276 6599
15   allisondavis@dwt.com

16   Stephen M. Rummage (admitted *pro hac vice*)
     DAVIS WRIGHT TREMAINE LLP
17   1201 Third Avenue, Suite 2200
     Seattle, WA 98101-3045
18   Telephone: +1 206 757 8136
     Facsimile: +1 206 757 7136
19   steverummage@dwt.com

20   *Attorneys for Defendant Ramesh Balwani*

21

22

23

24

25

26

27

28

---

DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
Case No. 5:16-cv-06822-NC

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ..................................................................................................1

     A.     The Court Should Dismiss Plaintiffs' Claim Under Cal. Corp. Code §§ 25400(d), 25500 (Count I) ..................................................................1

          1.     Plaintiffs Ignore Arguments Requiring Dismissal .....................1

          2.     Plaintiffs Did Not Purchase Theranos Securities ......................2

          3.     Plaintiffs Have Not Plausibly Pleaded That Defendants Intended The Challenged Statements To Induce Investment ....................5

     B.     The Court Should Dismiss Plaintiffs' Claim Under Cal. Corp. Code §§ 25401, 25501 (Count II) .................................................................7

     C.     The Court Should Dismiss Plaintiffs' UCL Claim (Count III) ...............8

     D.     Plaintiffs Have Not Pleaded Reliance, As Required For Their UCL And Deceit Claims, With Rule 9(b) Particularity (Counts III-VII) .............10

III.    CONCLUSION .............................................................................................13

1

**<u>TABLE OF AUTHORITIES</u>**

2

**CASES**                                                   **Page(s)**

3

4

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) ........................................................................13

5

*AMC Tech., LLC v. Cisco Sys., Inc.,*
    No. 11-CV-03403 PSG, 2012 WL 174949 (N.D. Cal. Jan. 20, 2012).................7

6

7

*Benson v. JPMorgan Chase Bank, N.A.,*
    Nos. C-09-5272 EMC, C-09-5560 EMC, 2010 WL 1526394
    (N.D. Cal. Apr. 15, 2010) ...............................................................................9

8

9

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723 (1975).........................................................................................3

10

11

*Bowen v. Ziasun Techs., Inc.,*
    11 Cal. Rptr. 3d 522 (Ct. App. 2004)..........................................................8, 9

12

13

*Comm'r v. Estate of Bosch,*
    387 U.S. 456 (1967).........................................................................................2

14

*Comm. on Children's Television, Inc. v. General Foods Corp.,*
    673 P.2d 660 (Cal. 1983) ...........................................................................11, 12

15

16

*Deutschman v. Beneficial Corp.,*
    841 F.2d 502 (3d Cir. 1988)............................................................................3

17

18

*Diamond Multimedia Sys., Inc. v. Super. Ct.,*
    968 P.2d 539 (Cal. 1999) ................................................................................5

19

*DiCampli-Mintz v. Cty. of Santa Clara,*
    289 P.3d 884 (Cal. 2012) ................................................................................3

20

21

*Engalla v. Permanente Med. Grp., Inc.,*
    938 P.2d 903 (Cal. 1997) ..............................................................................12

22

23

*Gold v. Lumber Liquidators, Inc.,*
    No. 14-CV-05373-TEH, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ...................11, 12

24

*Herrington v. Johnson & Johnson Consumer Cos.,*
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)...................12

25

26

*Higgins v. Farr Fin. Inc.,*
    No. C 07-02200 JSW, 2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) ................7

27

*Ill. Brick Co. v. Illinois,*
    431 U.S. 720 (1977).........................................................................................4

28

- ii -

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009)...................................................................9

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ...................................................................11, 12

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
    No. 2:08-md-1919 MJP, 2010 WL 2545415 (W.D. Wash. June 21, 2010) ...................2, 3

*Izsak v. Wells Fargo Bank, N.A.*,
    No. C 13-05362 SI, 2014 WL 262126 (N.D. Cal. Jan. 23, 2014).....................12

*Just Film, Inc. v. Merch. Servs., Inc.*,
    No. C 10-1993 CW, 2011 WL 3809908 (N.D. Cal. Aug. 29, 2011) ...........................1, 8

*Kamen v. Lindly*,
    114 Cal. Rptr. 2d 127 (Ct. App. 2001)..............................................................3

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................11

*McMahon v. Marsh & McLennan Cos.*,
    No. B216003, 2010 WL 2308437 (Cal. Ct. App. June 10, 2010) ......................2

*Ont. Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks, Corp.*,
    369 F.3d 27 (2d Cir. 2004)................................................................................3

*Openwave Sys. Inc. v. Fuld*,
    No. C 08-5683 SI, 2009 WL 1622164 (N.D. Cal. June 6, 2009).....................4

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ..............................................................13

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ......................................................12, 13

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    61 Cal. Rptr. 3d 29 (Ct. App. 2007)..................................................................9

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*,
    No. 15-cv-04301 NC, 2016 WL 362229 (N.D. Cal. Jan. 29, 2016) .................13

*People v. Miller*,
    238 Cal. Rptr. 168 (Ct. App. 1987) ..................................................................8

*Rodas v. Porsche Cars N. Am., Inc.*,
    No. CV 14-3747 PSG, 2015 WL 12762064 (C.D. Cal. Feb. 13, 2015) ...........10

- iii -

*Roskind v. Morgan Stanley Dean Witter & Co.*,
    95 Cal. Rptr. 2d 258 (Ct. App. 2000)................................................................9

*Talley v. State Farm Fire & Cas. Co.*,
    223 F.3d 323 (6th Cir. 2000) ............................................................................2

*Zelman v. JDS Uniphase Corp.*,
    376 F. Supp. 2d 956 (N.D. Cal. 2005) .............................................................3

**STATUTES, RULES, AND REGULATIONS**

17 C.F.R. § 230.502 ...........................................................................................6

17 C.F.R. § 230.506 ........................................................................................5, 6

78 Fed. Reg. 44771-01 (July 24, 2013) ............................................................6

Cal. Corp. Code § 25400..............................................................................1, 2

Cal. Corp. Code § 25401..............................................................................1, 7

Cal. Corp. Code § 25500..............................................................................1, 2

Cal. Corp. Code § 25501..............................................................................1, 7

Cal. Corp. Code § 25504.................................................................................7

Cal. Corp. Code § 25504.1..............................................................................7

**OTHER AUTHORITIES**

Thomas Lee Hazen, *The Law of Securities Regulation* § 12.4 (4th ed. 2002)................................3

1

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   INTRODUCTION**

3
    Plaintiffs' Opposition ("Opp.") makes evident that Plaintiffs cannot state a claim.

4
    ***First***, Plaintiffs did not purchase any security offered *by* Theranos, which bars their claim

5
under Cal. Corp. Code §§ 25400(d) and 25500.  Further, the Complaint fails to plead that

6
Theranos intended its consumer-facing publicity to induce investments, as Sections 25400(d) and

7
25500 require.  And Plaintiffs ignore other arguments requiring dismissal of Count I.

8
    ***Second***, Plaintiffs did not purchase any security *from* Defendants.  Because Cal. Corp.

9
Code §§ 25401 and 25501 undeniably require privity, the Court should dismiss Count II.

10
    ***Third***, settled law establishes that the UCL does not reach securities fraud claims, and

11
Plaintiffs cite no case to the contrary.  That principle requires dismissal of Count III.

12
    ***Finally***, Plaintiffs have not pleaded reliance on any particular challenged statement by a

13
Defendant, as Rule 9(b) demands.  That deficiency, which Plaintiffs cannot cure, bars the UCL

14
and common law claims asserted in Counts III, IV, V, VI, and VII.

15
    The Court should dismiss the Complaint in its entirety with prejudice.

16

**II.   ARGUMENT**

17

**A.   The Court Should Dismiss Plaintiffs' Claim Under Cal. Corp. Code §§**

18

**25400(d), 25500 (Count I)**

19

**1.   Plaintiffs Ignore Arguments Requiring Dismissal**

20
    Plaintiffs make no attempt to rebut arguments that dispose of Count I.  *See Just Film, Inc.*

21
*v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2011 WL 3809908, at *8 (N.D. Cal. Aug. 29, 2011)

22
(dismissing claims absent responsive argument to basis for dismissal).

23
    For instance, Plaintiffs do not contest that the Complaint lacks allegations giving rise to

24
the requisite "high level of scienter" required to plead a claim under Section 25500.  *See* Mot.

25
11-12.[1]  Plaintiffs simply repeat in a footnote the conclusory assertion that Defendants made

26
their statements to raise money.  *See* Opp. 10 n.27.  That is insufficient.  *See* Mot. 11-12.

27

28

---

[1]      "Mot." refers to Defendants' Notice of Motion and Motion to Dismiss Class Action
Complaint.  ECF Dkt. No. 29.

-1-

1    Nor do Plaintiffs contest that the Complaint fails to set forth facts giving rise to a

2    plausible inference that the alleged misstatements affected the price of LVG XI and Celadon

3    securities, *i.e.*, the securities Plaintiffs purchased.  Plaintiffs argue only that the alleged

4    misstatements impacted *Theranos* securities, but offer no facts or argument as to the impact on

5    the third-party instruments they purchased.  *Compare* Mot. 12-13 (establishing that Plaintiffs

6    must plead that misstatements impacted price of securities purchased), *with* Opp. 24 (addressing

7    only purported effect on *Theranos* securities).  This too requires dismissal.

8    **2.    Plaintiffs Did Not Purchase Theranos Securities**

9    Defendants' opening memorandum showed that the Court should dismiss Count I

10   because Plaintiffs did not purchase securities issued by Theranos.  *See* Mot. 7-8.  Two courts

11   (including the California Court of Appeal) have held, construing the precise statutory provisions

12   Plaintiffs cite, that a Section 25500 claim predicated on a Section 25400(d) violation requires

13   that Plaintiffs have purchased the same security Defendants sold.  *See id.*[2]

14   The Opposition cites no case holding the opposite.  *See* Opp. 10-16.  *In re Washington*

15   *Mutual, Inc. Securities, Derivative & ERISA Litigation* held only that sellers of nominally

16   different securities issued by the same issuer should not be treated differently for purposes of

17   Sections 25400(d) and Section 25500.  *See* No. 2:08-md-1919 MJP, 2010 WL 2545415, at *8-9

18   (W.D. Wash. June 21, 2010).  And in any event, the *In re Washington Mutual* court only

19   considered the Superior Court's decision in *McMahon*—not the decision of the Court of

20   [2]   Plaintiffs attempt to avoid the Court of Appeal decision in *McMahon v. Marsh &*

21   *McLennan Companies*, No. B216003, 2010 WL 2308437 (Cal. Ct. App. June 10, 2010), by
     noting that it is unpublished.  *See* Opp. 13.  But under both Ninth Circuit precedent and prior

22   decisions of this Court, the Court may consider unpublished decisions of the Court of Appeal,
     including as evidence of how the California Supreme Court may rule.  *See* Mot. 8 n.4.  Moreover,

23   the U.S. Supreme Court has made clear—without regard to whether the decision of the
     intermediate appellate court was published—that a judgment of an intermediate appellate state

24   court "is a datum for ascertaining state law which *is not to be disregarded* by a federal court
     unless it is convinced by other persuasive data that the highest court of the state would decide

25   otherwise."  *See Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (emphasis added); *cf.*

26   *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir. 2000) ("We may not disregard
     the decisions of a state appellate court unless we are convinced by other authority that the [state]

27   Supreme Court would decide otherwise, *irrespective of whether a state appellate decision is*
     *published or unpublished.*" (emphasis added; internal citations omitted)).

28

- 2 -

1    Appeal—and distinguished *McMahon* because "in *McMahon* . . . the [p]laintiffs were dealing in

2    securities not issued by the defendants or their company."  *Id.* at *9.  Here, as in *McMahon* (but

3    unlike in *In re Washington Mutual*), Plaintiffs dealt in securities not issued by Theranos.

4          Plaintiffs' citation to cases construing "any security" in Section 10(b) of the Exchange

5    Act, *see* Opp. 14-15, are inapposite because Sections 25400(d) and 25500 are modeled on

6    Section 9 of the Exchange Act, not Section 10(b).  *See Kamen v. Lindly*, 114 Cal. Rptr. 2d 127,

7    131 (Ct. App. 2001).  Plaintiffs do not cite, and Defendants are unaware of, any Section 9 case

8    permitting a claim by a plaintiff who purchased a security other than a security issued or sold by

9    the defendant.  In any event, the term "any security" as used in Section 10(b) does not authorize

10   claims relating to an unrelated third-party's securities, as Plaintiffs suggest.  Rather, "the phrase

11   indicates that the regulations reach *all types* of securities, and not *any affected company's*

12   securities."  *Ont. Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks, Corp.*, 369 F.3d

13   27, 32 (2d Cir. 2004) (citing Thomas Lee Hazen, *The Law of Securities Regulation* § 12.4 (4th ed.

14   2002)).  Any other reading would negate "the purchaser-seller requirement . . . that 'limits the

15   class of plaintiffs to those who have at least dealt in the security to which the . . . representation,

16   or omission relates.'"  *Id.* (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 747

17   (1975)).[3]

18         It is obvious why Plaintiffs cannot muster any legal support for their attempt to eviscerate

19   the "same security" requirement: doing so would lead to untenable results such as multiple

20   recoveries.  *See DiCampli-Mintz v. Cty. of Santa Clara*, 289 P.3d 884, 889 (Cal. 2012) ("[A]

21   statute 'must be given a reasonable and common sense interpretation consistent with the apparent

22   purpose and intention of the lawmakers, practical rather than technical in nature, which upon

23   application will result in wise policy rather than mischief or absurdity.'").  If Plaintiffs' position

24   _____

[3]        *See also Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504-05, 508 (3d Cir. 1988)
25   (construing "any security" to cover call options because they entitled the holder to acquire the
     defendant corporation's stock); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 959-63
26   (N.D. Cal. 2005) (construing "any security" in Section 10(b) to cover debt securities that
     "ma[d]e their owners into potential holders of the [defendant] corporation's common stock").
27   Here, there is no allegation that purchasing interests in LVG XI and Celadon entitled Plaintiffs in
     certain circumstances to convert those interests into Theranos securities.

28

1  were correct, Theranos could be liable not only to investors and funds that actually purchased

2  Theranos securities (*e.g.,* LVG XI and Celadon), but also to purchasers of interests in those funds

3  (*e.g.*, Plaintiffs)—all for the exact same loss, creating double recovery.  *Cf. Ill. Brick Co. v.*

4  *Illinois*, 431 U.S. 720, 729-36 (1977) (denying indirect purchasers standing to sue under the

5  Clayton Act given risk of multiple liability, and noting that joinder and class proceedings offer

6  inadequate protection).  Indeed, this case illustrates the problem: Plaintiffs' class definition

7  would include not only LVG XI and Celadon, but also those funds' investors, inviting

8  duplicative recovery.  *See* ¶¶ 10, 82.[4]  And the problem would not be unique to this case.  Under

9  Plaintiffs' approach, an S&P 500 company could be sued, not only by the company's own

10  shareholders, but also for double recovery by all purchasers of S&P 500 index mutual funds.

11  The *McMahon* court's construction of Section 25500 (requiring that a plaintiff purchase the same

12  security offered by the defendant) avoids the problem: the investment funds that actually

13  purchased Theranos securities (*e.g.*, LVG XI and Celadon) may seek to recover losses, which

14  may benefit their investors, but Plaintiffs cannot independently seek a double recovery.

15      This Court should not deviate from the California Court of Appeal's guidance on

16  Sections 25400(d) and 25500.  *Cf. Openwave Sys. Inc. v. Fuld*, No. C 08-5683 SI, 2009 WL

17  1622164, at *9 (N.D. Cal. June 6, 2009) ("In the absence of any authority adopting plaintiff's

18  interpretation of Section 25400[], the Court agrees with defendants . . . .").  Section 25500—the

19  provision granting a private civil remedy for a Section 25400(d) violation—specifies who has

20  standing to sue: those purchasers who purchased "any security" that is the subject of the Section

21  25400 violation at a price "affected" by that violation.  Plaintiffs allege no Section 25400

22  violation by these Defendants as to the securities Plaintiffs purchased; Plaintiffs therefore lack

23  standing to sue.[5]

24  _____

    [4]      "¶" refers to the paragraphs in Plaintiffs' Class Action Complaint for Violations of
25  California's Securities, Unfair Competition, and Common Laws.  ECF Dkt. No. 1.

26      [5]      Plaintiffs' citations to extraneous authority—some of which are cribbed almost verbatim
    from Judge Pechman's decision in *In re Washington Mutual, see, e.g.*, Opp. 13 n.42—do not
27  suggest otherwise.  Those authorities explain only that a Section 25500 "plaintiff must prove that
    the *defendant* was engaged in market activity at the time of the misrepresentations," *id.*
28  (emphasis added); they say nothing about the class of *plaintiffs* entitled to a remedy.  And the

- 4 -

1    Finally, the Court should not credit Plaintiffs' last-ditch arguments that the Court should

2    construe their purchases of third-party investments to meet the "same security" requirement.  *See*

3    Opp. at 10-16.  These arguments, if accepted, would cause the double recoveries discussed above.

4    Further, Plaintiffs make no sense arguing that their interests in LVG XI and Celadon give them

5    "fractionalized interests" in Theranos securities.  Plaintiffs have an interest in the third-party

6    funds in which they invested, nothing more.  That Rule 506 of Regulation D requires private

7    issuers to ensure investors in aggregator funds acquiring their securities fall within the offering

8    exemption, *see* 17 C.F.R. § 230.506(c), does not mean Plaintiffs purchased Theranos securities.

9    *Cf.* Opp. 11.  Plaintiffs also cite no supporting authority for their alternative assertion that they

10   "indirectly" (whatever that means) purchased Theranos securities through their purchase of

11   interests in LVG XI and Celadon.  *See* Opp. 16.  The statute requires an *actual* purchase of

12   Theranos securities; Plaintiffs cite no case or legal principle allowing them to dispense with that

13   requirement.

14       **3.    Plaintiffs Have Not Plausibly Pleaded That Defendants Intended The**

15           **Challenged Statements To Induce Investment**

16   The Court should also dismiss Count I because Plaintiffs have not plausibly pleaded that

17   the challenged statements reflected Defendants' attempt to induce the purchase of securities.  *See*

18   Mot. 9-11.  Plaintiffs do not contest that the challenged statements have nothing to do with

19   investing, securities, or any offering; instead, they are consumer-facing product advertisements

20   that discuss and coincide with the rollout of blood testing services.  *See id.*  Plaintiffs also do not

21   contest that—as the Complaint itself makes plain—Theranos's *actual* investors purchased

22

23

24   fact that *Diamond Multimedia Systems, Inc. v. Superior Court*, 968 P.2d 539 (Cal. 1999)
     construed the term "any person" in Section 25500 to include purchasers located outside

25   California has no bearing on whether purchasers of a security entirely different than the security
     that is the subject of the Section 25400 violation may assert a claim under Section 25500.  *Cf.*

26   Opp. 13-14 & n.44.  Indeed, the class of plaintiffs in *Diamond Multimedia* was limited to
     purchasers of the security that was the subject of the Section 25400 violation, and ensuring that

27   all such purchasers had a remedy, regardless of geography, did not expose the defendant to
     multiple liability for the exact same loss or create other anomalies.  *See* 968 P.2d at 557.

28

1   Theranos securities based on individualized due diligence, not based on consumer-facing

2   advertising.  *See id.*  The absence of any plausible allegations of intent requires dismissal.

3         Plaintiffs cannot alter the result by offering new allegations of intent (appearing nowhere

4   in the Complaint) that, because some of the challenged statements coincided with an SEC rule

5   change under the JOBS Act permitting general solicitation in private offerings, Theranos must

6   have been taking advantage of those regulations to make public solicitations for investments.

7   *See* Opp. 3, 7.  As an initial matter, JOBS Act regulations permit public advertisements *for a*

8   *private offering itself*.  *See* 17 C.F.R. § 230.506(c); *see also* 17 C.F.R. § 230.502(c).  Here, by

9   contrast, the challenged statements have nothing to do with any offering.

10         Further, Plaintiffs cite no facts even remotely suggesting that Theranos relied on JOBS

11   Act regulations to induce public investments.  *See* Opp. 3, 7.  Nor could they: Theranos did not

12   file the SEC's revised Form D, issued after implementing the JOBS Act, which specifically

13   requires that private companies disclose when an offering is made pursuant to general

14   solicitation or advertising.  *Compare* Eliminating the Prohibition Against General Solicitation

15   and General Advertising in Rule 506 and Rule 144A Offerings, 78 Fed. Reg. 44771-01 (July 24,

16   2013) ("We are also revising Form D to require issuers to indicate whether they are relying on

17   the provision that permits general solicitation or general advertising in a Rule 506 offering."),

18   *with* Opp. 2 n.3 (asking Court to take judicial notice of Theranos's most recent Form D, dated

19   July *2010*).  In fact, Theranos's decision not to file the requisite Form D establishes that

20   Theranos did *not* intend its consumer-facing advertising campaign to induce the purchase of any

21   securities.

22         Nor do Plaintiffs address Defendants' point that, according to the Complaint itself, the

23   initiation of Theranos's product rollout and attendant publicity was driven not by any regulatory

24   change but by *Walgreens's* insistence.  *See* ¶ 20 (stating that "[b]y late summer 2013, *Walgreens*

25   *was ready to publicly announce the relationship*" (emphasis added)).  And the Complaint

26   squarely contradicts Plaintiffs' new assertion that *Theranos* wrote to investors referencing an

27   article in *The Wall Street Journal*, *see* Opp. 7: the Complaint unequivocally states that "*Lucas*

28

1    wrote *its* investors on September 9, 2013"—*not* Theranos.  ¶ 26 (emphasis added).[6]

2          Finally, the mere fact that Theranos happened to receive new investments *after* initiating

3    a campaign to drive consumer demand falls far short of suggesting it *intended* to induce

4    investments through consumer-facing publicity.  Plaintiffs allege no facts from which the Court

5    could plausibly infer the required intent.  *Cf. AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-CV-

6    03403 PSG, 2012 WL 174949, at *3 n.21 (N.D. Cal. Jan. 20, 2012) ("[S]omething more than

7    nonperformance is required to prove the defendant's intent not to perform.").[7]

8        **B.**    **The Court Should Dismiss Plaintiffs' Claim Under Cal. Corp. Code §§ 25401,**

9              **25501 (Count II)**

10          Plaintiffs do not contest that privity—*i.e.*, the direct sale of a security from Defendants to

11   Plaintiffs—is an essential element of a claim under Sections 25401 and 25501 (Count II).

12   *Compare* Mot. 13-14, *with* Opp. 17-19.  This requirement compels dismissal because Plaintiffs

13   lack privity with Defendants.

14

15   _____

16   [6]      The Complaint's allegation that Theranos provided Lucas with statements that were
     "meant to be conveyed to potential investors," ¶ 27, is impermissibly conclusory and not
     supported by a single pleaded fact.  *See Higgins v. Farr Fin. Inc.*, No. C 07-02200 JSW, 2009
17   WL 3517597, at *1 (N.D. Cal. Oct. 26, 2009) ("Conclusory allegations without more are
     insufficient to defeat a motion to dismiss for failure to state a claim.").
18   [7]      This point also disposes of Plaintiffs' common law deceit claims.  Plaintiffs do not
     contest that their common law deceit claims require pleading that the challenged statements were
19   intended to induce the *specific transaction* at issue—here, purchasing shares of LVG XI and
     Celadon.  *See* Mot. 19-21.  But the Opposition tacitly concedes that Defendants could not have
20   had the specific intent to induce Plaintiffs' investment *in LVG XI and Celadon* given that:
     (1) there are no allegations that LVG XI or Celadon's acquisition of Theranos shares was
21   contingent on their ability to raise the necessary capital from investors like Plaintiffs; and
     (2) Theranos stood to benefit from LVG XI and Celadon's acquisition no matter how those funds
22   raised the necessary capital.  *See* Mot. 10-11.
           The Court should also reject Plaintiffs' new assertions that Defendants Holmes and
23   Balwani are liable for their Section 25500 claim as control persons of Theranos, *see* Opp. 10
     n.28, and as aiders and abettors, *see* Opp. 19.  Not only does the Complaint not assert either
24   theory of secondary liability, *see* ¶¶ 88-91, but neither type of secondary liability applies to
     Section 25500 violations.  *See* Cal. Corp. Code § 25504 (limiting control person liability to
25   "person[s] who directly or indirectly control[] a person liable under *Section 25501 or 25503*"—
     not Section 25500 (emphasis added)); Cal. Corp. Code § 25504.1 (limiting aiding and abetting
26   liability to "violation[s] of Section 25110, 25120, 25130, 25133, or 25401"—not Sections 25400
27   or 25500).

28
                                                  - 7 -

1    Plaintiffs' only response is to argue, based on *People v. Miller* (a criminal case that did

2    not even address the statute that creates a civil privity requirement), that privity can exist

3    between two parties even where a third-party brokers the transaction. *See* Opp. 17-19. This

4    proposition, however, is unremarkable and irrelevant. Nothing in the Complaint suggests—or

5    pleads any facts to support the conclusion—that LVG XI and/or Celadon brokered transactions

6    between Theranos and Plaintiffs. *See* ¶¶ 11-12, 26. There are, for instance, no allegations: (i)

7    establishing a brokerage relationship between Theranos and LVG XI/Celadon, (ii) that title to

8    any property flowed from Defendants to Plaintiffs, (iii) of dealings or negotiations between

9    Plaintiffs and Theranos, (iv) of the existence of any purchase agreement or contract between

10   Plaintiffs and Theranos, or (v) that Theranos was even aware of Plaintiffs' purchases of interests

11   in the third-party funds. Instead, the Complaint makes plain that LVG XI and Celadon were not

12   brokering a transaction between Plaintiffs and Theranos, but rather were selling Plaintiffs third-

13   party fund investment interests.[8]

14   **C.    The Court Should Dismiss Plaintiffs' UCL Claim (Count III)**

15   The Opposition ignores Defendants' arguments for dismissal of the UCL claims under

16   the "unfair" and "unlawful" prongs. *Compare* Mot. 19 n.10, *with* Opp. 20-24. Thus, the Court

17   should dismiss those claims. *See Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2011

18   WL 3809908, at *8 (N.D. Cal. Aug. 29, 2011) (dismissing claims absent responsive argument to

19   basis for dismissal).

20   The Court should also dismiss Plaintiffs' claim under the UCL "fraudulent" prong.

21   Plaintiffs acknowledge that their claim is based on a securities transaction. But under *Bowen v.*

22

23   ───────────────

   [8]    The contrast between the Complaint here and facts of *People v. Miller* only highlights

24   that this is not a case involving a brokered transaction between Plaintiffs and Theranos. The

     investors in *Miller* purchased the securities at issue—promissory notes secured by interests in

25   real property—directly from the defendant: the promissory notes were signed on behalf of the

     defendants' corporation as payor, and made payable directly to the investors. 238 Cal. Rptr. 168,

26   170, 172 (Ct. App. 1987). The third-party mortgage company—the defendant's "agent"—

     merely identified the investors and placed their names on the promissory notes as the intended

27   payees; that is, the mortgage company brokered a securities transaction directly between the

     defendant and investors.

28

1    *Ziasun Technologies, Inc.*, 11 Cal. Rptr. 3d 522, 533 (Ct. App. 2004), Plaintiffs may not bring a

2    UCL claim based on a securities transaction.  Plaintiffs' only response is to misrepresent that

3    California state and federal courts have recognized UCL claims predicated on securities

4    transactions.  *See* Opp. 20-22.  They have not.

5         *Bowen* is the only case from the California Court of Appeal to address directly whether

6    the UCL applies to securities transactions, and it held the UCL does *not* apply.  *Bowen*, 11 Cal.

7    Rptr. 3d at 533.  The two cases from the California Court of Appeal on which Plaintiffs rely do

8    not address securities transactions at all.  *Overstock.com, Inc. v. Gradient Analytics, Inc.*,

9    addressed whether the plaintiff could assert a UCL claim for defamatory analyst reports, and the

10   Court therefore made clear that "[the plaintiff's] *claims do not arise from any stock transactions*."

11   61 Cal. Rptr. 3d 29, 50-51 (Ct. App. 2007) (emphasis added).  And the UCL claim in *Roskind v.*

12   *Morgan Stanley Dean Witter & Co.* was based on a broker's failure to adhere to a client's

13   instruction and subsequent self-dealing.  95 Cal. Rptr. 2d 258, 259, 261-65 (Ct. App. 2000).

14        Nor do the federal decisions on which Plaintiffs rely "reject[]" *Bowen*, as Plaintiffs claim.

15   Opp. 21.  The UCL claim in *Benson v. JPMorgan Chase Bank, N.A.*, was based on a bank's

16   material assistance in facilitating a third-party's operation of a Ponzi scheme by offering banking

17   services to the schemers; the Court in fact expressly confirmed that "actual securities

18   transactions are excluded" from the UCL.  Nos. C-09-5272 EMC, C-09-5560 EMC, 2010 WL

19   1526394, at *8 (N.D. Cal. Apr. 15, 2010) ("*Roskind* and *Overstock* hold that the UCL should

20   apply to a broad array of contexts, including securities . . . . Only actual securities transactions

21   are excluded.").  And the UCL claim in *In re Charles Schwab Corporation Securities Litigation*

22   asserted that the defendants had changed their investment concentration policy without a vote of

23   shareholders; the Court distinguished *Bowen* precisely because the plaintiffs' claims "[did] not

24   concern fraud in the sale of securities."  257 F.R.D. 534, 553 (N.D. Cal. 2009).

25

26

27

28

1

2

### D.      Plaintiffs Have Not Pleaded Reliance, As Required For Their UCL And Deceit Claims, With Rule 9(b) Particularity (Counts III-VII)[9]

3      Defendants have already demonstrated that Plaintiffs' deceit and UCL claims fail because

4   the Complaint fails to plead reliance: it lacks requisite particularity concerning *which* challenged

5   statements Plaintiffs saw and relied upon, and *when.  See* Mot. 17-20.  Instead, the Complaint

6   quotes a host of public statements—including statements the Defendants did not author (*e.g.*,

7   news articles) and statements post-dating Plaintiffs' investment—with no pleaded facts

8   concerning Plaintiffs' receipt or review of *any* statements, leaving Defendants and the Court to

9   guess at what (if anything) Plaintiffs actually read and relied on in investing.  *See* Mot. 22-24.

10      The few allegations Plaintiffs emphasize in their Opposition only highlight the problem.

11   The allegation that Lucas distributed a September 2013 press release and article in *The Wall

12   Street Journal* to his "investors," *see* Opp. 9 (citing ¶ 26), makes no difference where the

13   Complaint never alleges that Colman reviewed or relied on it.  *See, e.g.*, *Rodas v. Porsche Cars

14   N. Am., Inc.*, No. CV 14-3747 PSG (MRWx), 2015 WL 12762064, at *9-10 (C.D. Cal. Feb. 13,

15   2015) (dismissing complaint where plaintiff identified press release and representations therein,

16   but did not "plead *when* or even whether [he] *read* the press release" (emphasis added)).[10]

17   Similarly, that Plaintiff Taubman-Dye's "purchase occurred at the end of the Class Period" and

18   that she "attempted to cancel her transaction," Opp. 9, following negative Theranos publicity

19   says nothing about which of the challenged statements (if any) she saw and relied upon in

20   making her investment in the first place.

21      None of this comes close to Rule 9(b) compliance.  Simply put, if Plaintiffs read and

22   relied on a statement by a Defendant prior to making their investment, it is not too much to ask

23   that they plead what they saw, when they saw it, how they relied, and why it was false.  *See*

24

25   [9]      Although Plaintiffs have requested dismissal of their claim for constructive fraud (Count VI), *see* Opp. 1 n.1, their failure to plead reliance independently warrants dismissal of that claim.

26   [10]      The absence of specificity is particularly problematic given that the article in *The Wall Street Journal* was not authored by Defendants and, but for a few stray quotes, does not relay

27   any precise statement by Defendants.  *See* ¶¶ 22-23.  Absent an allegation of what Colman read and relied upon, the Court cannot determine if he relied on any statement by Defendants.

28

- 10 -

1     *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (affirming dismissal for

2     failure to comply with Rule 9(b) where plaintiff claimed marketing materials "led him to

3     believe . . . vehicles were inspected by specially trained technicians" but did not "specify *which*

4     sales material he relied upon in making his decision to buy a . . . vehicle" (emphasis added));

5     *Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015 WL 7888906, at *10 (N.D. Cal.

6     Nov. 30, 2015) (dismissing UCL claim where the complaint "never identifie[d] *which*

7     advertising or sales materials each named Plaintiff was allegedly exposed to" (emphasis added)).

8          Having failed to meet their Rule 9(b) pleading burden, Plaintiffs instead try repeatedly

9     (and unsuccessfully) to diminish it on legal grounds.

10          ***First***, contrary to Plaintiffs' assertions, *see* Opp. 5 n.10, every one of Plaintiffs' claims—

11     including their UCL and negligent misrepresentation claims—is subject to the heightened

12     pleading requirements of Rule 9(b).  Plaintiffs' claims are all predicated on the same unified

13     course of fraudulent conduct, namely, that Defendants allegedly lied to the public to induce their

14     investment.  *See* ¶¶ 1-10.  In these circumstances, Rule 9(b) applies to all claims.  *See Kearns*,

15     567 F.3d at 1125 (9th Cir. 2009) ("While fraud is not a necessary element of a claim under the

16     CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in . . .  a unified

17     course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim.

18     In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the

19     pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).").

20          ***Second***, Plaintiffs fare no better arguing that "[a]llegations of actual deception [and]

21     reasonable reliance . . . are unnecessary" elements of a UCL claim.  Opp. 9.  Controlling law is

22     to the contrary.  *See In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) ("[W]e conclude that a

23     plaintiff must plead and prove actual reliance . . . .").  The case on which Plaintiffs rely for that

24     proposition—*Committee on Children's Television, Inc. v. General Foods Corporation*, 673 P.2d

25     660 (Cal. 1983)—predated both Proposition 64 (which changed the requirements for UCL

26     standing) and *In re Tobacco II*.  Similarly, Plaintiffs' conclusory assertion that "[r]eliance may

27     be inferred 'wherever there is a showing that a misrepresentation was material,'" Opp. 9, is

28

1    beside the point because it does not excuse Plaintiffs' obligation to establish that they *saw* the

2    challenged statement.  *In re Tobacco II* merely noted—relying on *Engalla v. Permanente*

3    *Medical Group, Inc.*, 938 P.2d 903 (Cal. 1997)—that materiality permits an evidentiary

4    inference that the plaintiff actually relied on a materially misleading statement to which he was

5    *exposed*.  *In re Tobacco II*, 207 P.3d at 39.

6      ***Finally***, contrary to Plaintiffs' assertion, *see* Opp. 9, pleading a long-running advertising

7    campaign does not absolve Plaintiffs of their Rule 9(b) obligations.  The *state* case law on which

8    they rely says nothing about federal pleading standards.  *In re Tobacco II* addressed substantive

9    UCL *standing* requirements under California law, not Rule 9(b).[11]  Similarly, *Committee on*

10   *Children's Television* addressed *state* law pleading requirements for deceit.  673 P.2d 672-73.

11   As another judge in this Court explained, *Committee on Children's Television*'s "interpretations

12   of California procedural law are not binding on this Court which must review plaintiff's

13   complaint under Rule 9(b)'s pleading requirements."  *Izsak v. Wells Fargo Bank, N.A.*, No. C 13-

14   05362 SI, 2014 WL 262126, at *3 n.2 (N.D. Cal. Jan. 23, 2014).

15     Under federal pleading standards, the rule remains that, even in the case of an advertising

16   campaign, Plaintiffs must identify specifically *when* and *how* they were exposed to the

17   advertising campaign, and how it influenced them.  *See Opperman v. Path, Inc.*, 87 F. Supp. 3d

18   1018, 1050 (N.D. Cal. 2014) ("[I]n the absence of specific misrepresentations, a [UCL]

19   complaint subject to Rule 9(b)'s requirements should plead with particularity, *and separately*,

20   when and how each named plaintiff was exposed to the advertising campaign.  *It is not sufficient*

21   *to plead as a group, nor is it sufficient simply to allege general exposure without more detail*."

22

---

23   [11] *See, e.g.*, *Gold*, 2015 WL 7888906, at *10 ("Plaintiffs correctly point out they are 'not
     required to plead with an unrealistic degree of specificity that the plaintiff relied upon particular
24   advertisements or statements.'  What Plaintiffs have identified, however, is the standard for
     [UCL] statutory standing under California law, not the heightened standard for pleading fraud in
25   federal courts." (internal citation omitted)); *Herrington v. Johnson & Johnson Consumer Cos.*,
     No. C 09-1597 CW, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010) ("*In re Tobacco II*
26   merely provides that to establish UCL standing, reliance need not be proved through exposure to
     particular advertisements; the case does not stand for, nor could it, a general relaxation of the
27   pleading requirements under Rule 9(b).; rejecting the argument that UCL plaintiffs "are not
     required to allege which representations they specifically saw").

28

1   (second emphasis added)).  Plaintiffs' conclusory allegations that they "relied . . . on Theranos'[s]

2   representations herein," ¶¶ 11-12, without any specifics regarding when and how they were

3   exposed to the advertising, do not suffice.  *See Opperman*, 87 F. Supp. 3d at 1052 (dismissing

4   UCL claim; "It is not enough merely to allege that Plaintiffs 'viewed Apple's website, saw in-

5   store advertisements, and/or [were] aware of Apple's representations regarding the safety and

6   security of the iDevices prior to purchasing their own iDevices.'"); *see also People for the*

7   *Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301 NC, 2016 WL

8   362229, at *5 (N.D. Cal. Jan. 29, 2016) (Cousins, J.) (dismissing UCL claim; plaintiff failed to

9   plead when and the circumstances in which she was "exposed to [the advertising campaign]").[12]

10       For all of these reasons, the Court should dismiss every claim that requires reliance,

11   which includes Counts III-VII.[13]

12  **III.**     **CONCLUSION**

13       The Court should dismiss the Complaint.  Further, because Plaintiffs have not indicated

14   what, if any, additional facts they could plead to cure defects, the Court should dismiss with

15   prejudice.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("[A] district

16   court does not 'abuse its discretion in denying a motion to amend a complaint . . . when the

17   movant presented no new facts but only new theories and provided no satisfactory explanation

18   for his failure to fully develop his contentions originally.'").

19

20  [12]     Plaintiffs' reliance on Judge Tigar's later decision in *Opperman* offers no help.  *See*
    *Opperman v. Path, Inc.* 84 F. Supp. 3d 962 (N.D. Cal. 2015).  There, the plaintiffs alleged that

21  they viewed, heard, or read specific advertisements, attended conferences, and received emails
    containing the statements.  *Id.* at 978.  Plaintiffs make no such allegations here.

22  [13]     Plaintiffs chastise Defendants for not addressing falsity at length.  *See* Opp. 1 (claiming
    Defendants "admit" falsity), 7 (claiming Defendants "do not contest" falsity).  But Defendants

23  bear no burden to refute allegations of falsity at this stage, no matter how misguided those
    allegations may be.  Rather, Plaintiffs bear the burden of identifying what (if any) statements

24  they relied on and therefore are legitimately at issue.  Instead of meeting that burden, Plaintiffs
    have relied on puzzle pleading.  *See* Mot. 22-24.  The challenged statements self-evidently are

25  not uniform—the contents vary widely.  *See id.*  Plaintiffs protest that "a more extensive showing
    of Defendants' fraudulent statements" would burden the Court and hinder clarity, Opp. 6, but

26  their argument is backwards: their pleading is unclear precisely because they larded the
    Complaint with block quotations of statements they could not possibly have relied on (*e.g.*,

27  because they post-date investment).

28

| 1 | Dated: February 21, 2017 | By: /s/  Michael A. Mugmon |
|---|---|---|

Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmehale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmehale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*


/s/  Kathleen Goodhart
Kathleen Goodhart (165659)

COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2012
Facsimile: +1 415 693 2222
kgoodhart@cooley.com

Stephen C. Neal (170085)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400
nealsc@cooley.com

*Attorneys for Defendant Elizabeth Holmes*

-14-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/  Allison A. Davis
Allison A. Davis (139203)

DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: +1 415 276 6500
Facsimile: +1 415 276 6599
allisondavis@dwt.com

Stephen M. Rummage (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: +1 206 757 8136
Facsimile: +1 206 757 7136
steverummage@dwt.com

*Attorneys for Defendant Ramesh Balwani*

- 15 -

1

## **SIGNATURE ATTESTATION**

2
      I am the ECF User whose identification and password are being used to file the foregoing

3
Reply Memorandum in Further Support of Motion to Dismiss.  In compliance with Local Rule 5-

4
1(i)(3), I hereby attest that the other signatories have concurred in this filing.

5

6
Dated: February 21, 2017               WILMER CUTLER PICKERING HALE
                                  AND DORR LLP

7

8
                         By:  /s/  Michael A. Mugmon

9
                           Michael A. Mugmon

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28