Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman (*Pro Hac Vice* applied for)
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>THERANOS, INC., et al.,<br><br>　　　　　　　　　　Defendants. | No. 5:16-cv-06822-NC<br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FED. R. CIV. P. 23(d) TO PREVENT SETTLEMENTS WITH ABSENT CLASS MEMBERS PENDING DISCOVERY AND COURT REVIEW**<br><br>JUDGE:　Hon. Nathanael M. Cousins<br>DATE:　April 7, 2017 or TBD<br>TIME:　1:00 p.m.<br>CTRM:　7, 4th Floor |

949221v1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD..............................................................................................5

III. ARGUMENT ...........................................................................................................7

   A. The Court Must Scrutinize Defendants' Settlement Communications for Fairness ........................................................................................................7

   B. The Court Must Scrutinize Defendants Settlement Communications for Potential Interference with This Proceeding................................................9

   C. The Court Must Scrutinize Defendants Likely "Limited Fund" Status for Potential Interference with the Rights of Non-Settling Class Members................10

IV. CONCLUSION......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. Washington Mut. Fin. Grp., LLC*,
   193 Fed. App'x 294 (5th Cir. 2006) (unpublished) .................................................................. 4

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) ......................................................................................... 6, 8

*Cty. of Santa Clara v. Astra USA, Inc.*,
   2010 WL 2724512 (N.D. Cal. July 8, 2010) ................................................................. passim

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................................................. 5, 8

*Jacobs v. CSAA Inter-Insurance*,
   2009 WL 1201996 (N.D. Cal. May 1, 2009) ......................................................................... 7

*Jones v. Jeld-Wen, Inc.*,
   250 F.R.D. 554 (S.D. Fla. 2008) ............................................................................................ 7

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ...................................................................... 6, 8

*O'Connor v. Uber Techs., Inc.*,
   2014 WL 1760314 (N.D. Cal. May 2, 2014) ...................................................................... 5, 7

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ..................................................................................................... 3, 6, 10

*Perkins v. Benore Logistics Sys., Inc.*,
   2017 WL 445603 (E.D. Mich. Feb. 2, 2017) ......................................................................... 5

*Slavkov v. Fast Water Heater Partners I, LP*,
   2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ...................................................................... 6, 7

*Stott v. Capital Fin. Services, Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ............................................................................... 3, 4, 6, 10

*Williams v. Nat'l Sec. Ins. Co.*,
   237 F.R.D. 685 (M.D.Ala. 2006) ............................................................................... 3, 4, 10

*Wright v. Adventures Rolling Cross Country, Inc.*,
   2012 WL 2239797 (N.D. Cal. June 15, 2012) .............................................................. 3, 6, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

**Page**

Fed. R. Civ. P. 16 ............................................................................................................................. 5, 11

Plaintiffs Robert Colman and Hilary Taubman-Dye ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby respectfully request, by and through their undersigned counsel, that the Court, pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, prohibit Defendants Theranos, Inc. ("Theranos" or the "Company"), Elizabeth Holmes and Ramesh Balwani ("Defendants") from entering into any settlements with putative class members, pending: (1) Defendants' production to Plaintiffs of all settlement-related communications with putative class members; (2) the Court's review of those communications for potential interference with this proceeding, including to review the accuracy of those communications as they pertain to this Lawsuit, consider whether Defendants' offers of compromise would purport to release claims on behalf of absent class members who are not participants in settlement negotiations, and to determine whether limited funds are being directed to favored parties to the detriment of absent class members; and (3) the establishment of a protocol for communicating with putative class members prior to class certification. In support, Plaintiffs state as follows:

## I. INTRODUCTION

Defendants have launched an unprecedented campaign to preempt this putative class action before the Court even decides the sufficiency of Plaintiffs' Complaint.[1]

On Friday, March 24, 2017, *The Wall Street Journal* reported that, at the time of the hearing on the motion to dismiss, and for months prior, Defendants had been preparing to and were then negotiating with absent members of the putative class to release their claims in this lawsuit in exchange for additional Theranos shares provided by its founder and CEO, Elizabeth Holmes, who is also a Defendant in this action.[2] The article stated, based on information obtained from unnamed sources "familiar with the matter," that the settlement offers had been

---

[1] Class Action Complaint for Violations of California's Securities, Unfair Competition, and Common Laws (Dkt. No. 1) ("Complaint").

[2] *See* Christopher Weaver & John Carreyrou, *Theranos Seeks No-Sue Promise*, The Wall Street Journal, Mar. 24, 2017, at B1.  *See* Declaration of Reed R. Kathrein in Support of Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 23(d) to Prevent Settlements with Absent Class Members Pending Discovery and Court Review ("Kathrein Decl."), Ex. A, filed concurrently herewith.

1  directed at "Theranos' latest funding rounds, which ended in 2015 and brought in more than
2  $600 million."  Kathrein Decl., Ex. A at 1.  That article was the first public disclosure of
3  Defendants' negotiations with absent class members, but gave Plaintiffs no indication of what
4  information Defendants were providing to – or concealing from – putative class members to
5  convince them to agree such a deal.  If the article was accurate, it appeared, based on that
6  description, that settlement offers were being made to select absent members of the putative class
7  in this case, and that the offers were giving away limited assets available to Defendants to settle
8  claims against them.

9        On Tuesday, March 28, 2017, Plaintiffs sent a letter to defense counsel inquiring about
10  the article and asking Defendants to provide copies of the settlement communications and
11  identify the investors (*i.e.*, the absent class members) who participated in the funding rounds
12  where settlement offers have been made.  Kathrein Decl., Ex. B.

13        Defense counsel responded the following day, and confirmed Theranos had been "in
14  dialogue with holders of Theranos Series C-2 and C-1 Preferred Stock concerning an agreement
15  that would involve an exchange of shares ***and other consideration***, including a general release of
16  litigation claims by the shareholders."  Kathrein Decl., Ex. C at 2.  However, Defendants refused
17  to provide Plaintiffs with copies of the proposed agreement or any communications relating
18  thereto, or to identify the absent class members with whom they have been secretly negotiating
19  for a release of the claims asserted in this lawsuit.  *Id.*

20        On Thursday, March 29, 2017, Plaintiffs and Defendants met by telephone and Plaintiffs
21  repeated their demands for disclosure and also requested pertinent information relating to
22  Theranos' financial condition.  Defendants again refused disclosure.  Kathrein Decl.,¶¶3-4.

23        Today, March 31, 2017, Defendants notified Plaintiffs that those negotiations include
24  entities participating in the transactions by which one of the named plaintiffs in this action
25  acquired his shares, Defendants also confirmed that April 14th is the closing deadline for those
26  transactions, i.e., the date by which the proposed settlements have to be accepted by absent class
27  members or they will be left out. Kathrein Decl.,¶7.

28

Neither plaintiff Robert Colman, who invested through Lucas Ventures, nor Hilary Taubman-Dye, is aware of any offers. Kathrein Decl.,¶8. Don Lucas, however, has confirmed to another investor, that he has accepted the tender offer on behalf of the fund through which Plaintiff Colman participated, and will provide details next week. His attorney however has so far refused to provide any details. Kathrein Decl.,¶6.

Defendants' actions have significant potential to harm the interests of Plaintiffs and the absent class members to this action, and to interfere with this Court's ability to manage it consistent with Rule 23, and in a manner that is fair to all parties concerned. Absent discovery, this Court will not be in a position to judge whether: (i) the communications with absent class members fairly and accurately apprised them of the pendency of this litigation or have the purpose or effect of encouraging them not to participate as class members;[3] (ii) Defendants are attempting to enter into agreements that purport to settle the claims of the named Plaintiffs or other putative class members to this proceeding without their knowledge, participation or consent; (iii) Defendants are selectively distributing Defendants' assets – which are widely acknowledged to be insufficient to satisfy all of the claims asserted against them – in a manner that favors certain investors over others; or (iv) whether Defendants' settlements with some absent class members will leave the remaining class members in this case without the ability to collect on any judgment that may be obtained in their favor.[4]

---

[3] *See, e.g.*, *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797, at *4-*5 (N.D. Cal. June 15, 2012) ("'Courts have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made.' One example of an improper communication is a communication intended to undermine a class action by encouraging individuals not to join the suit." Finding communications with putative class members "improper because they plausibly could have a chilling effect on participation in the class action."); *Cty. of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) ("Examples of [pre-certification] communications that may warrant restraint include efforts by a defendant to encourage potential class members not to participate in the class action, thereby reducing potential liability. Courts also have limited communications to putative class members when those communications are shown to contain misleading information.").

[4] *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838 (1999) (defendant with "inadequate assets had no opportunity to benefit himself or claimants of lower priority by holding back on the amount distributed to the class."); *Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316, 347 (N.D. Tex. 2011) (certifying mandatory class and enjoining other claims and lawsuits); *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685 (M.D.Ala. 2006) (same).

Defendants appear to be selectively negotiating with only *some* of the purchasers of Theranos securities, raising significant questions over the impact of those settlements, if they are reached, on the parties to this lawsuit.  Indeed, it appears that Defendants may be "negotiating" with the very entities that Theranos set up to facilitate the sale of its securities to Plaintiffs and other putative class members (and which are run by persons who may have their own agency liability under the California securities laws), and structuring those deals in a manner that could purport to release the very claims that Plaintiffs have brought in this lawsuit.  Such negotiations with favored investors designed to destroy the rights of the Plaintiffs in this proceeding – if that is indeed what is occurring – have no place in class action litigation.  And where, as here, there are significant concerns over the sufficiency of the funds available to potentially resolve those claims, the need for Court scrutiny and oversight is even greater.[5]

Even worse, Defendants knew and hid these negotiations from the Court during the March 1, 2017 case management conference, when they objected to and the Court denied Plaintiffs' counsel's requests for class discovery.  Defense counsel's letter then uses the Order refusing discovery as grounds for refusing to provide Plaintiffs with any information about their communications with and settlement offers to absent class members.  Thus, unless the Court authorizes discovery into these matters, Plaintiffs will be unable to obtain or compel production of the relevant documents and information that will reveal the nature of Defendants' communications with absent class members and the capacity of those communications to mislead investors or interfere with the rights of Plaintiffs, or this Court's oversight of this class action under Rule 23.[6]

---

[5] *Baker v. Washington Mut. Fin. Grp., LLC*, 193 Fed. App'x 294, 298 (5th Cir. 2006) (unpublished) (affirming certification mandatory class action where individual claims outstrip company assets); *Stott*, 277 F.R.D. at 347 (certifying mandatory class and enjoining other claims and lawsuits); *Williams*, 237 F.R.D. 685 (same).

[6] No settlement communications have been directed to the named Plaintiffs in this action. Plaintiffs have attempted to obtain copies of the settlement communications and been unable to do so. Kathrein Decl. ¶6-7.  Plaintiffs have been told that those communications are subject to a confidentiality agreement that prevents them from being shared with others, including Plaintiffs.

The potential harm to absent class members and this action is significant. Given that Defendants are negotiating settlements, distributing limited assets and attempting to secure litigation releases at this very moment, time is of the essence in addressing these matters.[7] Accordingly, Plaintiffs are seeking relief under Rules 16 and 23(d) permitting them to serve limited discovery to obtain, on an expedited basis, the information that will permit the Court to determine whether Defendants' settlement communications are misleading or will improperly interfere with this proceeding, or the rights of Plaintiffs as absent class members, and ordering Defendants to refrain from entering into any settlements with any absent class members pending the Court's review of those matters.

A little transparency today could avoid a lot of litigation tomorrow. Plaintiffs therefore respectfully request that the Court enter an order under Rules 16 and 23(d): (1) modifying the case management Order to permit Plaintiffs to immediately serve the discovery requests, attached hereto as Attachment 1, seeking production of Defendants' settlement communications and identifying the putative class members who have been offered or excluded from those settlements; (2) requiring Defendants to produce all information responsive to those requests within 14 days; (3) providing an opportunity for Plaintiffs to be heard regarding the impact of those communications on this proceeding; and (4) enjoining Defendants from entering into any settlements with putative class members until after such hearing is completed.

## II.  LEGAL STANDARD

Rule 23(d) provides the Court with broad authority to safeguard the integrity of a class action, both before and after class certification. *O'Connor v. Uber Techs., Inc.,* No. 13-CV-3826-EMC, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014). ("'The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification

---

[7] Due to the urgency of the matter and the potential for interference with the rights of putative class members and the ability of this Court to manage this action as a class action, Plaintiffs have filed herewith a motion to shorten time for a response to this Motion.

process.'"); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties"); *Perkins v. Benore Logistics Sys., Inc.*, 2017 WL 445603, at *2 (E.D. Mich. Feb. 2, 2017) ("'Because the source of the Court's authority to enjoin abusive communications is Rule 23(d) rather than Rule 65 (governing preliminary injunctions and restraining orders), a party does not have to establish the four preliminary-injunction factors to obtain such an injunction.'") (citing *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1201 (11th Cir. 1985)).  In addition, the courts have long recognized, that where a "limited fund" exists, courts have the power to enjoin settlement and other actions, and bar claims, where "individual claims would deplete the fund to the detriment of other class members."[8]

Applying these principles, "[c]ourts in this district have limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were otherwise misleading or coercive." *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) (collecting cases and invalidating misleading settlement releases that defendants sent to putative class members).[9]  In sum, any communications that "plausibly could have a chilling effect on participation in the class action"

---

[8]  *Ortiz*, 527 U.S. at 838 ("[First, t]he concept driving this type of suit [Rule 23(b)(1)(B)] was insufficiency, which alone justified the limit on an early feast to avoid a later famine."); *Stott*, 277 F.R.D. at 347 ("'[Rule 23(b)(1)(B)] is typically used when, in the absence of a classwide remedy, claimants suing individually would be prejudiced by exhaustion of the limited fund.'") (citing Marcy Hogan Greer, A Practitioner's Guide To Class Actions 77 (American Bar Association Publication 2010)) (alteration in original).

[9]  *See also O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (holding that the court's "discretion includes requiring the issuance of corrective notices and action to ameliorate confusing or misleading communications" and invalidating misleading arbitration provisions that defendant provided to putative class members); *Cty. of Santa Clara*, 2010 WL 2724512, at *6 (invalidating accord and satisfaction releases where the accompanying letter "omitted material information and misled the putative plaintiff class"); *Camp v. Alexander*, 300 F.R.D. 617, 620, 625 (N.D. Cal. 2014) (holding that misleading "opt-out declarations obtained by Defendants [from putative class members] are . . . invalid, and a corrective notice is required"); *Wright*, 2012 WL 2239797 at *5 (enjoining defendants from communicating with putative class members after defendants' communications disparaged plaintiffs' counsel and included "comments about how [p]laintiffs' lives will be subject to public scrutiny as a result of the litigation").

are improper and warrant the Court's intervention.  *See Wright*, 2012 WL 2239797, at *5; *see also Cty. of Santa Clara*, 2010 WL 2724512, at *3.

## III.   ARGUMENT

Defendants' conduct plausibly has a chilling effect on participation in this class action. According to *The Wall Street Journal* article, and confirmed by defense counsel's letter, Defendants making settlement offers to and attempting to obtain covenants not to sue from putative class members or their representatives.[10]

### A.   The Court Must Scrutinize Defendants' Settlement Communications for Fairness

When communicating with putative class members, a defendant "may not give 'false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3).'" *Cty. of Santa Clara*, 2010 WL 2724512, at *3.[11]  Given these potential abuses, "courts may limit communications that improperly encourage potential class members to not join the suit, especially if they fail to provide adequate information about the pending class action." *Slavkov*, 2015 WL 6674575, at *2.

Thus, Defendants' communications are improper unless they are providing the putative class members with an adequate, accurate description of this case and are not making offers that are designed to interfere with this proceeding or the rights of the Plaintiffs or other absent class members.  For example, in *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554 (S.D. Fla. 2008), the court found that communications by the defendant with putative class members "threatens the proper functioning of the litigation" and, therefore, adopted guidelines protecting putative class

---

[10] The putative class includes "[a]ll persons or entities who, directly or indirectly, purchased or committed to purchase (and subsequently closed a binding commitment to purchase) an interest in Theranos securities from July 29, 2013, through October 5, 2016." Complaint, ¶82.  Hence, investors who purchased Theranos securities in 2015 fall within the putative class.

[11] Additionally, once a class has been certified, a defendant may never communicate about the case with class members outside the presence of class counsel.  *See Jacobs v. CSAA Inter-Insurance*, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) ("After a court has certified a class, communication with class members regarding the subject of representation must be through counsel for the class.").

members relating to the merits, status, or effect of the class action, a class members' participation therein, or settlement or other resolution of claims and issues in the action.  *Id.* at 564; *see also O'Connor v. Uber Techs., Inc.*, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014) ("Courts have limited communications that encourage potential class members not to join the suit.  Courts have also found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action are misleading communications which the court may limit."); *Cty. of Santa Clara*, 2010 WL 2724512, at *4 (finding that defendants' letters requesting releases from putative class members were "inadequate to inform the putative class" where the letters "omit[ted] a summary of the plaintiffs' complaint" and "did not even provide an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information, or the current status of the case"); *Camp*, 300 F.R.D. at 620, 625 (holding that "the Employee Letter and the opt-out declaration provided by [d]efendants [to putative class members] are flawed and a curative notice is in order" because, in part, "[t]he Employee Letter omits key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint").[12]

While defense counsel contend in their letter that their settlement communications have been conducted with "highly sophisticated" shareholders represented by "highly sophisticated counsel" and included "detailed disclosures" concerning this litigation, they provide no evidence to back this up.  None of the investors or their counsel have been identified, nor have any of the purported disclosures about this lawsuit been shared with Plaintiffs or the Court.  If the disclosures are as fulsome as defense counsel suggests, why have Defendants refused to produce them for review by Plaintiffs or the Court?  In short, defense counsel's say-so is insufficient to

---

[12] Defendants' motivations in communicating with putative class members are irrelevant; the pertinent inquiry focuses on the potential effects of those communications.  *See O'Connor*, 2013 WL 6407583, at *5 ("Wilful misconduct on the defendant's part is not required so long as the effect is to interfere with class members' rights."); *Wright*, 2012 WL 2239797, at *5 ("Whether the communications constitute actionable retaliation, whether they are privileged, and/or whether they were merely opinions made in good faith is largely unimportant.  The critical question is whether there is a realistic danger that the communications will chill participation in the class action.").

demonstrate that Defendants' communications with absent class members are proper and not misleading. Accordingly, discovery of those communications should be ordered.13

### B. The Court Must Scrutinize Defendants' Settlement Communications for Potential Interference with This Proceeding

In addition to the concerns over the fairness and adequacy of Defendants' disclosures regarding this lawsuit and their potential to discourage participation by absent class members, significant questions are raised by the fact that Defendants appear to be selectively making offers to settle to some class members and not others.

Of immediate concern is the question of whether Defendants are attempting to obtain releases from the partnerships that were used to market and sell Theranos securities to investors, in order to claim that those releases are binding on the ultimate purchasers of those securities – investors like Colman, Taubman-Dye and similarly-situated absent members of the putative class. Defense counsel's vague description of the participants in the negotiations ("holders of Theranos Series C-2 and C-1 Preferred Stock") and their acknowledgment that the releases being negotiated could be raised "during class certification proceedings due to any potential impact on the scope of a class" (Ex. C), together with the arguments Defendants have raised in their motion to dismiss asserting (incorrectly) that those partnerships insulate Theranos from liability, strongly suggests that this is, in fact, what Defendants are up to. Absent identification of the participants in those negotiations and disclosure of the underlying proposed or final settlement agreements, there is simply no way for the Court to tell whether or not Defendants are improperly attempting to interfere with this proceeding or the rights of the named Plaintiffs or absent class members. Moreover, to the extent Defendants raise the releases at a later stage of this case, they are likely

---

13 Defense counsel's letter also misses the point in asserting that Defendants have a first amendment right to communicate with absent class members prior to class certification. Plaintiffs are not seeking to prevent those communications at this point. They are simply asking Defendants to produce those communications so they can be reviewed by the Court. If necessary following that review, the Court can, under Rule 23(d), impose appropriate and narrowly-tailored conditions on further communications with absent class members that are consistent with and do not infringe on defendants' First Amendment rights. *See Gulf Oil Co.*, 452 U.S. at 100-01 (1981) ("an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.") However, that issue is not presently ripe or before the Court.

to spawn collateral disputes or litigation regarding the scope or enforceability of any releases obtained while this action was pending, which will distract attention from the core liability matters in this proceeding and delay any ultimate recovery by the class.

### C. The Court Must Scrutinize Defendants Likely "Limited Fund" Status for Potential Interference with the Rights of Non-Settling Class Members

Defendants' selective offers of settlement also raise serious concerns over the potential dissipation of limited assets available to satisfy any judgment that may be obtained in this case.

As *The Wall Street Journal* reported, Theranos currently had less than $150 million in cash on its balance sheet not including $40 million in debt to Walgreens, or claims of $96 million in the Partners Fund litigation. Kathrein Decl., Ex A at 2. The Company has had no material revenue since 2014, may be burning through $20 million in cash per month, and has not received regulatory approval for the supposed new business line it is pursuing.[14] In this action alone, the Company is facing liabilities exceeding $623 million. Complaint ¶42. Although the assets of the two individual Defendants are unknown, they do not appear to be sufficient to bridge the gap between Theranos' available cash and its reported liabilities. Thus, there is significant reason for concern that this is a limited fund case that warrants heightened Court scrutiny over the negotiation and terms of any settlement that is designed to favor the interests of some class members over others, and the potential need to enjoin those claims. *See, e.g.*, *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 692 (M.D. Ala. 2006) (recognizing appropriate use of class actions under Rule 23(b)(1)(B) for cases "involving a 'limited fund,' in which numerous individual claims against an insufficient fond would impair the ability of all members of the class to protect their interests."); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-39 (1999) ("The concept driving this type of suit was insufficiency, which alone justified the limit on an early feast to

---

[14] In an earlier article, *The Wall Street Journal* reported that Theranos had $200 million in cash left at the end of the year, that at times during the preceding year it had spent $20 million per month; the firm didn't generate any material revenue in 2015 and 2016; that Theranos had not yet set aside funds for any potential liability that could arise from its pending legal challenges; and that Theranos had yet to receive regulatory approval for a new business line it said it is pursuing. Kathrein Decl., Ex. D.

avoid a later famine."); *Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316, 326 (N.D. Tex. 2011) (recognizing that the concept of a "limited fund" settlement long predates Rule 23).

Here, by all public accounts, Defendants assets are insufficient to satisfy the claims against them in this action alone. Assuming other non-related claims are satisfied, the Plaintiff class would be entitled to the whole of the remaining funds. As plead, the class claims are based on a common theory of recovery and their claims will be treated equal. Thus, if Defendants actions are permitted to continue unchecked, it appears that only a portion of class members, namely those unknown entities with whom Defendants are currently negotiating, would have their claims satisfied before the fund is depleted.

## IV.   CONCLUSION

Only the Court can ensure that Defendants' conduct does not plausibly chill participation in this class action or otherwise interfere with putative class members' rights by purporting to release the claims at issue here or leave class members without an available remedy. Accordingly, Plaintiffs are requesting a narrowly-tailored order that prohibits Defendants from entering into any settlements with putative class members pending: (1) Defendants' production to Plaintiffs of settlement-related information and communications (as specified below and in Ex. 1; (2) an opportunity for Plaintiffs to be heard regarding the accuracy and completeness of those communications; and (3) the establishment of a protocol for any further communications.

This limited relief accounts for the clear – but developing – record of unilateral communication; preserves putative class members' rights to receive full, objective information about this action before opting out or waiving any claims; and does not limit Defendants' speech, but rather temporarily postpones any settlements while the Court ensures that putative class members are not being misled, coerced, inappropriately bound, or assets dissipated in favor of the first to the feast. *See Cty. of Santa Clara*, 2010 WL 2724512 at *3 ("The order must be based on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and thus further the policies embodied in Rule 23. Furthermore, any such order issued must be "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the

circumstances.") (quoting *Gulf Oil*, 452 U.S. at 100-02).  In sum, Defendants' clandestine campaign meets the standard for judicial intervention and warrants the narrowly-tailored relief sought by Plaintiffs.

For the forgoing reasons, Plaintiffs respectfully request that the Court issue an order pursuant to Rules 16 and 23(d):

1. Authorizing service of the discovery requests attached as Exhibit 1 and requiring Defendants to respond within 14 days by:

> (i) identifying all of the absent class members, as defined in ¶82 of the Complaint, who purchased the securities or participated in the funding rounds that are the subject of any of Defendants' offers of compromise;
>
> (ii) producing all offers of compromise that have been sent by Defendants or their counsel to any putative class member;
>
> (iii) producing all other communications between Defendants or their counsel and putative class members relating to their lawsuit or the facts, circumstances and transactions at issue in this litigation;
>
> (iv) producing all agreements to settle, releases, accords and satisfaction and/or waivers – however styled – with putative class members that purport to, or that Defendants assert would, release any claim or cause of action in or relating to this litigation; and
>
> (v) producing selective financial information concerning assets and information about the claims made against assets.

2. Providing Plaintiffs with an opportunity to be heard by the Court regarding these matters;

3. Establishing a protocol for any future communication with putative class members;

4. Prohibiting Defendants from entering into any settlements with putative class members until that discovery and that hearing is completed; and

5. Granting any other relief that the Court deems proper.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: March 31, 2017 | Respectfully submitted, |
| 3 | | **HAGENS BERMAN SOBOL SHAPIRO LLP** |

By: */s/ Reed R.Kathrein*
Reed R. Kathrein (139304)
Peter E. Borkon (212596)
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman
1918 Eighth Ave., Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead Counsel for the Class*

Paul J. Geller (*Pro Hac Vice*)
ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364
pgeller@rdrdlaw.com

Dennis J. Herman
ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile:  (415) 288-4534
dennish@rgrdlaw.com

| | |
|---|---|
| 1 | Jason A. Forge |
| 2 | ROBBINS GELLER RUDMAN<br>  & DOWD LLP |
| 3 | 655 West Broadway, Suite 1900<br>San Diego, CA 92101 |
| 4 | Telephone: (619) 231-1058<br>Facsimile:  (619) 231-7423 |
| 5 | jforge@rgrdlaw.com |
| 6 | *Additional Counsel for Plaintiffs* |