Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI,<br><br>                              Defendants. | Case No.  5:16-cv-06822-NC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PREVENT SETTLEMENTS WITH ABSENT CLASS MEMBERS PENDING DISCOVERY**<br><br>Hearing Date: April 7, 2017<br>Time: 1:00 PM<br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael Cousins |

1    COUNSEL CONTINUED:

2    Kathleen Goodhart (165659)
     COOLEY LLP
3    101 California Street, 5th Floor
     San Francisco, CA 94111
4    Telephone: +1 415 693 2012
     Facsimile: +1 415 693 2222
5    kgoodhart@cooley.com

6    Stephen C. Neal (170085)
     COOLEY LLP
7    3175 Hanover Street
     Palo Alto, CA 94304
8    Telephone: +1 650 843 5000
     Facsimile: +1 650 849 7400
9    nealsc@cooley.com

10   *Attorneys for Defendant Elizabeth Holmes*

11   Allison A. Davis (139203)
     DAVIS WRIGHT TREMAINE LLP
12   505 Montgomery Street, Suite 800
     San Francisco, CA 94111
13   Telephone: +1 415 276 6500
     Facsimile: +1 415 276 6599
14   allisondavis@dwt.com

15   Stephen M. Rummage (admitted *pro hac vice*)
     DAVIS WRIGHT TREMAINE LLP
16   1201 Third Avenue, Suite 2200
     Seattle, WA 98101-3045
17   Telephone: +1 206 757 8136
     Facsimile: +1 206 757 7136
18   steverummage@dwt.com

19   *Attorneys for Defendant Ramesh Balwani*

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………….i

TABLE OF AUTHORITIES………………………………………………...ii

OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES.................1

I.    INTRODUCTION ........................................................................1

II.   FACTUAL BACKGROUND ........................................................2

      A.    The Tender Offer .................................................................2

      B.    Plaintiffs' Cynical Attempt To Interfere With The Tender Offer...............5

III.  ARGUMENT ...............................................................................6

      A.    Plaintiffs Have Not Met Their Rule 23(d) Burden To Justify An Order Regulating Communications With Investors .................................6

            1.    Judicial Restraints On Interactions With Putative Class Members Require A "Clear Record" Of Abuse .................................7

            2.    Plaintiffs Have Not Established A Clear Record Of Abusive Conduct .................................9

      B.    Plaintiffs Are Not Entitled To An Order Prohibiting Defendants From Entering Into Settlements.................................11

      C.    Plaintiffs Have Not Shown Good Cause For Lifting The Discovery Stay 14

      D.    Plaintiffs' Fallback "Limited Fund" Argument Also Cannot Justify Relief.................................16

IV.   CONCLUSION.................................16

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Baker v. Washington Mut. Fin. Grp., LLC*, 193 Fed. App'x 294 (5th Cir. 2006)
(unpublished) ...................................................................................16

5

*Bernard v. Gulf Oil Co.*, 619 F.2d 459 (5th Cir. 1980).........................................8

6

*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014) ........................................9

7

*Castaneda v. Burger King Corp.*, No. C 08-4262 WHA (JL), 2009 WL 2382688
(N.D. Cal. July 31, 2009)..................................................................8

8

*Cnty. Of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL
2724512 (N.D. Cal. July 8, 2010).......................................................9

9

*Cram v. Elec. Data Sys. Corp.*, No. 07CV1842-LAB NLS, 2008 WL 178449
(S.D. Cal. Jan. 17, 2008)...................................................................8

10

11

*Dixon v. Cost Plus*, No. 12-CV-02721-LHK, 2012 WL 2499931 (N.D. Cal. June
27, 2012) ....................................................................................12, 13

12

*Gulf Oil Co. v. Bernard* ("*Gulf Oil*"), 452 U.S. 89 (1981)...............................7, 8

13

*In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492 (S.D. Cal. 2008) ...............8, 14

14

*Javine v. San Luis Ambulance Serv., Inc.*, No. 13-cv-07480-BRO,2014 WL
12496988 (C.D. Cal. Dec. 12, 2014) ...............................................7, 8

15

16

*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554 (S.D. Fla. 2008) ...................................9

17

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) ...............12

18

*Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385 (S.D.N.Y. 2011) .................12

19

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP,
2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ...............................................10

20

21

*Martin v. Dahlberg, Inc.*, 156 F.R.D. 207 (N.D. Cal. 1994)...............................13

22

*Mevorah v.Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL
4813532 (N.D. Cal. Nov. 17, 2005)...........................................................7

23

*Newmont Min. Corp. v. Pickens*, 831 F.2d 1448 (9th Cir. 1987)........................12

24

*O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583 (N.D.
Cal. Dec. 6, 2013) ......................................................................9, 15

25

26

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .................................................16

27

28

**TABLE OF AUTHORITIES**

**(continued)**

**Page(s)**

*Pac. Realty Trust v. APC Investments, Inc.*, 685 F.2d 1083 (9th Cir. 1982) .......12

*Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082 (C.D. Cal. 2002)........7

*Perkins v. Benore Logistics Sys., Inc.*, 2017 WL 445603 (E.D. Mich. Feb. 2, 2017) ...................................................................................................................12

*Reid v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893 (N.D. Ill. 2013) .........................7

*Roberts v. Heim*, 130 F.R.D. 416 (N.D. Cal. 1988) .................................................8

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) ....14

*Slavkov v. Fast Water Heater Partners I, LP*, No. 14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015)..............................................................9

*Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) ...............16

*Tolmasoff v. General Motors, LLC*, 2016 WL 3548219 (E.D. Mich. Jun. 30, 2016) ...................................................................................................................12

*Unocal Corp. v. Pickens*, 608 F. Supp. 1081 (C.D. Cal. 1985) ...........................12

*Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685 (M.D. Ala. 2006).....................16

*Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ...................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ...................................................................................................13

Fed. R. Civ. P. 16 .................................................................................................14

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P. 65 ......................................................................................... *passim*

## OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES

Defendants submit this Opposition to Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 23(d) to Prevent Settlements With Absent Class Members Pending Discovery and Court Review (the "Motion" or "Mot.").

## I.   INTRODUCTION

Plaintiffs through their Motion seek to interfere with a pending tender offer transaction whereby Theranos has offered investors in its Series C-1 and C-2 Preferred Stock (the offer recipients are referred to as the "Investors") the opportunity to tender existing stock in exchange for new shares with enhanced rights, in consideration for providing the Company and its personnel and directors with a release of claims in the Investors' capacity as stockholders.  The Investors are a highly sophisticated group:  approximately 40 funds, family offices, and wealthy individuals with average investments of approximately $17.5 million. The tender offer (which closes on April 14, 2017) is the culmination of negotiations between Theranos and lead investors that began in summer 2016, months before this case was filed. The Investors received repeated disclosures about this litigation, including a specific disclosure that participation in the tender offer would preclude participation in any recovery against Theranos.  Under these circumstances, any Investor who chooses to exchange its shares and sign the release has made a knowing, uncoerced, and entirely proper decision to forego participation in this litigation.

Nonetheless, Plaintiffs—two individuals who have never owned Theranos stock and whose case is the subject of a pending motion to dismiss and faces substantial hurdles to class certification should it survive—move the Court to: (i) impose on Defendants a "protocol" for communicating with Theranos's own investors; (ii) enjoin Defendants from entering into settlements (*i.e.*, enjoin Defendants from completing the tender offer); and (iii) require the parties to embark on unnecessary and premature expedited discovery.   The Court should deny the Motion.

Under the First Amendment, Rule 23(d), and controlling case law, Plaintiffs must establish a clear record of abusive conduct to support an order limiting Defendants' communications with putative class members. Plaintiffs, however, do not offer even a specific allegation—let alone a shred of clear evidence—of abusive conduct. Instead, Plaintiffs merely observe that Theranos has been communicating with shareholders about the tender offer, and then try to shift the burden to Theranos to justify its actions. Mot. 8. But that is not the standard—*Plaintiffs* have the burden of providing a clear showing, and they have not met it.

Moreover, to the extent Plaintiffs seek to preliminarily enjoin Defendants from entering into settlements, the Plaintiffs not only fail to make the required showing of abusive conduct under Rule 23(d), but also fail to meet the requirements of Rule 65.

Plaintiffs also have not shown good cause for the Court to rescind its order staying discovery pending a ruling on Defendants' Motion to Dismiss. The request is futile given that Plaintiffs have not established grounds to enjoin the closing of the tender offer. Further, Plaintiffs' request would inflict costs on Defendants at a time when it is far from clear that Plaintiffs even have individual claims against Defendants, let alone that they could ever represent a class of Theranos's actual investors.

Finally, Plaintiffs fare no better with their fallback ground for injunctive relief based on speculation that Theranos may be disseminating its limited cash to only some shareholders. Plaintiffs have their facts wrong, as the tender offer does not involve cash consideration.

Under these circumstances, the proper result is clear. The Court should deny the motion. If Plaintiffs' case survives a motion to dismiss, and releases given by any Investors someday become relevant (*e.g.*, at class certification proceedings), Plaintiffs can then conduct discovery. But there is no basis for injunctive relief, and no reason to expedite discovery.

## II.    FACTUAL BACKGROUND

### A.    The Tender Offer

Theranos is a private company founded in 2003 with the goal of making actionable health information available to everyone, enabling early detection and intervention in disease,

- 2 -

1   and empowering individuals with information.  *See* Declaration of David Taylor ("Taylor

2   Decl.") ¶ 3.[1]  Theranos has never offered securities to the public.  *Id.*  Instead, Theranos has

3   periodically raised money from select, highly sophisticated private investors that have

4   purchased preferred stock.  *Id.*  In particular, this Motion concerns approximately 40 funds,

5   family offices, and wealthy individuals who, between 2010 and 2014, invested up to $100

6   million each in Theranos, with an average investment of approximately $17.5 million

7   (previously defined as the "Investors").  *Id.* ¶ 4.

8        Theranos experienced highly publicized difficulties beginning in late 2015, when *The*

9   *Wall Street Journal* began publishing a series of negative articles.  Predictably, various

10   opportunistic lawsuits followed.  Plaintiffs, for example, sued seeking to represent a putative

11   class of shareholders—even though they themselves never purchased any Theranos stock.

12        Theranos's actual investors, however, have responded far more constructively.  In

13   summer 2016—months before Plaintiffs filed this case—Investors represented by Cravath,

14   Swaine, & Moore LLP approached Theranos with a proposal that the Company should

15   negotiate with the Investors for a share exchange and release of claims.  *Id.* ¶ 5.

16        In response, between approximately August 2016 and March 2017, Theranos

17   negotiated with many of the Investors, both directly and through their spokespersons, who

18   were themselves sophisticated investors.  *Id.* ¶ 6.  The parties exchanged hundreds of

19   communications, met personally several times to negotiate the share exchange, and exchanged

20   multiple term sheets over a variety of proposals.  The parties always contemplated that, as part

21   of any agreement, the Investors would provide a release of claims in favor of Theranos and its

22   officers and directors in the Investors' capacity as stockholders.  *Id.*  In fact, the very first

23   iteration of a term sheet (exchanged in August 2016) provided for such a release.  *Id.*  The

24   filing of this lawsuit had no impact on the form of the release being contemplated, or the

25   consideration to be exchanged.  *Id.*

26

27   ———————————————

[1] David Taylor is the General Counsel of Theranos, and was personally involved in negotiating

28   with the Investors.

1    As negotiations progressed—and following Plaintiffs' filing of this action—Theranos

2 provided the Investors with updates about pending litigation against it and its principals,

3 including this action.  *Id.* ¶ 7.   Specifically, Theranos addressed this action and its status with

4 Investors during in-person meetings on December 8, 2016, December 12, 2016, and January

5 25, 2017.  *Id.*  This action was also addressed on a January 19, 2017 conference call with

6 investors, and during numerous informal calls during which the Company gave brief litigation

7 updates to Investors.  *Id.*

8    After months of negotiations, the parties agreed to a non-binding term sheet that was

9 distributed to the Investors for review.  The parties concluded it was appropriate for Theranos

10 to conduct a tender offer under federal securities laws to implement the deal with the

11 Investors, each of whom could choose whether to participate.  *Id.* ¶ 8.  Specifically, in

12 exchange for executing a release of claims, each Investor could exchange existing shares for

13 new shares with an effective price adjustment of their original purchase price and enhanced

14 rights, including expanded rights to information and voting rights, and, with respect to

15 exchanged Series C-2 shares, the right to elect a member of Theranos's board of directors.  *Id.*

16 Contrary to Plaintiffs' speculation (*see* Mot. 10-11), the offer does not include any cash

17 consideration.  *Id.* ¶ 9.

18    On March 20, 2017, Theranos commenced the tender offer.  *Id.* ¶ 10.  Theranos

19 provided offerees with a fourteen-page information statement (with over a hundred pages of

20 appendices), which included a detailed description of pending litigation that Theranos was

21 facing, including this action.  *Id.* ¶¶ 10-11.

22    The tender offer closes on April 14, 2017.  *Id.* ¶ 12.   Any Investor wishing to accept

23 must, by the deadline, take steps including surrendering existing share certificates and

24 providing a signed Exchange and Release Agreement.  *Id.*  The Exchange and Release

25 Agreement contains a release of claims, and becomes effective when the tender closes.  *Id.*

26

27

28

**B.     Plaintiffs' Cynical Attempt To Interfere With The Tender Offer**

Plaintiffs are not and have never been investors in Theranos, and are not entitled to take part in the tender offer.  Instead, they are two individuals who claim to have purchased interests in third-party funds that, in turn, invested in Theranos.  *See* Compl. ¶¶ 11-12. Nevertheless, seeking to capitalize on Theranos's negative press, they sued on November 28, 2016, alleging violations of California's securities laws, unfair competition law, and common law.  Plaintiffs hope to represent a class including "[a]ll persons or entities who, directly or indirectly, purchased or committed to purchase (and subsequently closed a binding commitment to purchase) an interest in Theranos securities from July 29, 2013, through October 5, 2016."  Compl. ¶ 82.

On January 17, 2017, Defendants moved to dismiss the Complaint, arguing, *inter alia*, that Plaintiffs cannot assert securities claims against Defendants because they do not actually hold any Theranos stock.   *See* Not. of Mot. & Mot. to Dismiss Class Action Compl., ECF No. 29.   On March 1, 2017, the Court held a hearing on Defendants' Motion to Dismiss, postponed the scheduled case management conference, and stayed any discovery pending a ruling on Defendants' Motion.  *See* Declaration of Michael A. Mugmon ("Mugmon Decl."), Ex. 1 (Hearing Tr. 25:22-23).

On March 28, 2017, Plaintiffs sent a letter to Theranos demanding that it refrain from entering any settlement agreements, and that it produce a substantial volume of information about the tender offer within two weeks.  *See* Kathrein Decl. Ex. B, ECF No. 49-3.  Although their letter (like this Motion) made no specific allegations of any wrongdoing, Plaintiffs falsely asserted that Defendants' "communications . . . infringe upon the Court's powers and responsibilities under Rule 23."  *Id.*  Theranos rejected those demands.  *See* Kathrein Decl., Ex. C, ECF No. 49-4.  This Motion followed.

On April 3, 2017, solely for the purpose of putting this matter to rest, Theranos provided all Investors with a Supplemental Notice Concerning Certain Litigation (the "Supplemental Notice").  Taylor Dec. ¶ 13, Ex. A (copy of Supplemental Notice).  The

- 5 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION PURSUANT TO FED. R. CIV. P. 23(D) TO PREVENT SETTLEMENTS WITH ABSENT CLASS MEMBERS PENDING DISCOVERY AND COURT REVIEW  Case No.  5:16-cv-06822-NC

Supplemental Notice explained that Plaintiffs' counsel had raised concerns about the impact of the release on this action, specified the class that Plaintiffs seek to represent, noted that participants in the tender offer may be class members,[2] identified Plaintiffs' counsel and provided counsel's contact information, and underscored the fact that, by participating in the tender offer, a shareholder would release the claims asserted in this action. *Id.*

## III. ARGUMENT

Plaintiffs' Motion seeks Court orders: (i) "[e]stablishing a protocol for any future communication with putative class members"; (ii) "[p]rohibiting Defendants from entering into any settlements with putative class members" pending discovery and a hearing; and (iii) lifting the stay of discovery and requiring Defendants to respond to discovery on an expedited basis. *See* Mot. 12. The Court should reject all of these requests:

- The first request fails because Plaintiffs have not met the requirements of Rule 23(d), which authorizes judicial interference with communications between a defendant and putative class members only upon a clear record of abusive conduct.

- The second request fails both because Plaintiffs have not met the requirements of Rule 23(d), and because Plaintiffs have not met the stringent requirements of Rule 65.

- The third request fails because Plaintiffs have not established good cause to lift the discovery stay.

Accordingly, the Court should deny Plaintiffs' Motion.

### A. Plaintiffs Have Not Met Their Rule 23(d) Burden To Justify An Order Regulating Communications With Investors

Plaintiffs seek to regulate Defendants' ability to communicate with the Investors through the implementation of a judicially imposed "protocol" for communications. Mot. 12. However, Plaintiffs come nowhere close to establishing a clear record of abuse by Defendants.

---

[2] Some tender offer recipients are former Theranos directors, and thus would not fall within Plaintiffs' class definition.

1
2

### 1.    Judicial Restraints On Interactions With Putative Class Members Require A "Clear Record" Of Abuse

3    Prior to class certification, Plaintiffs do not represent absent putative class members,

4    and Plaintiffs' counsel has no attorney-client relationship with them.  As a result, "Rule 23

5    pre-certification communication is permissible because no attorney-client relationship yet

6    exists." *See Parks v. Eastwood Ins. Servs., Inc*., 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002).

7    Thus, under the First Amendment, the federal rules, and settled case law, a defendant is free to

8    communicate and enter into settlements with putative class members, and those settlements do

9    not require court approval.  *See Reid v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893, 930 (N.D. Ill.

10   2013) ("[P]erhaps to the displeasure of Plaintiffs' counsel, [defendant] is entitled to settle

11   cases with putative class members prior to class certification."); *see also Javine v. San Luis*

12   *Ambulance Serv., Inc.,* CV 13-07480-BRO (SSx), 2014 WL 12496988, at *3 (C.D. Cal. Dec.

13   12, 2014) ("[T]he majority view remains in a Rule 23 class action that pre-certification

14   communication from the defense to prospective plaintiffs is generally permitted." (internal

15   quotation marks and alterations omitted)); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C

16   05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Pre-certification

17   communications to potential class members by both parties are generally permitted, and also

18   considered to constitute constitutionally protected speech."); Fed. R. Civ. P. 23(e) ("The

19   claims, issues, or defenses of a *certified class* may be settled . . . or compromised only with the

20   court's approval." (emphasis added)).

21   The Court may restrict pre-certification communications between a defendant and

22   putative class members only upon a "clear record and specific findings" demonstrating that

23   defendants' conduct is abusive or threatens the fairness of the litigation.  *See Gulf Oil Co. v.*

24   *Bernard ("Gulf Oil")*, 452 U.S. 89, 100 (1981) ("[A]n order limiting communications between

25   parties and potential class members should be based on a clear record and specific findings

26   that reflect a weighing of the need for a limitation and the potential interference with the rights

27   of the parties.") (cited at Mot. 6).  That standard requires a specific record showing coercion

28

1    or, at the very least, misleading communications.  "While some '[c]ourts have limited pre-

2    certification communications with potential class members after misleading, coercive, or

3    improper communications were made,' courts 'may not exercise the power without a specific

4    record showing by the moving party of the particular abuses by which it is threatened.'"  *See*

5    *Javine*, 2014 WL 12496988, at *3 (citations omitted); *see also Castaneda v. Burger King*

6    *Corp.*, No. C 08-4262 WHA (JL), 2009 WL 2382688, at *5 (N.D. Cal. July 31, 2009)

7    ("Defense counsel is entitled to have precertification *ex parte* contacts with putative plaintiffs,

8    absent specific findings of deception, coercion or abuse.").  Further, even where plaintiffs

9    meet their burden for justifying judicial interference, it must "result in a carefully drawn order

10   that limits speech as little as possible, . . . giving explicit consideration to the narrowest

11   possible relief which would protect the respective parties."  *Gulf Oil*, 452 U.S. at 102 (citation

12   omitted).[3]

13       Judicial interference unsupported by a clear record of abuse violates the First

14   Amendment as an unconstitutional prior restraint.  *See Bernard v. Gulf Oil Co.*, 619 F.2d 459,

15   477 (5th Cir. 1980) ("We therefore hold that the district court's order restricting

16   communication by parties and their counsel with . . . potential class members [without any

17   record of abuse] is an unconstitutional prior restraint."), *aff'd*, 452 U.S. 89 (1981); *Roberts v.*

18   *Heim*, 130 F.R.D. 416, 423 (N.D. Cal. 1988) ("Plaintiffs have not made a substantial showing

19   of a need for what amounts to a prior restraint on constitutionally protected

20   communication. . . . Should any wrongdoing occur . . . , plaintiffs may bring it to the Court's

21   attention, and we will devise a remedy at that time.").

22

23   _____

   [3] Raising the mere possibility of coercion or deception—something Plaintiffs have not even

24   done here—is insufficient.  *See Gulf Oil*, 452 U.S. at 104 ("[T]he mere possibility of abuses
     does not justify routine adoption of a communications ban . . . ."); *In re M.L. Stern Overtime*

25   *Litig.*, 250 F.R.D. 492, 496 (S.D. Cal. 2008) ("It is not enough that a potentially coercive
     situation exists.  The court cannot issue an order without evidence that a potential for serious

26   abuse exists." (alternation and citation omitted)); *Cram v. Elec. Data Sys. Corp.*, No.
     07CV1842-LAB (NLS), 2008 WL 178449, at *3 (S.D. Cal. Jan. 17, 2008) ("A mere

27   possibility of confusion is insufficient to justify the district court's exercise of supervisory
     authority over parties' communications with potential class members.").

28

- 8 -

### 2.     Plaintiffs Have Not Established A Clear Record Of Abusive Conduct

Plaintiffs make *no showing whatsoever* that Defendants' conduct has been abusive. Their Motion does not contain a single specific allegation of wrongdoing—let alone evidence. Instead, Plaintiffs attempt an impermissible burden-shift, criticizing *Defendants* for not coming forward with evidence.  *See* Mot. 8 (arguing that *Defendants* "provide no evidence"). But Plaintiffs have it backwards:  the burden is on *Plaintiffs* to justify a restraint by making a clear showing of abuse, and they have done nothing to meet it.  This, without more, requires the Court to deny their Motion.[4]

In fact, the record shows that Plaintiffs cannot meet their burden of demonstrating abusive conduct.  As a threshold matter, the Investors are a highly sophisticated group.  The average investment is *$17.5 million dollars*, and some invested $100 million.  Plaintiffs offer nothing to support that this group could be coerced into unknowingly giving away its rights, would not understand the consequences of granting a release, or would not have access to

---

[4] Plaintiffs' own case citations prove the point:  each involved coercion or misinformation, in circumstances involving manifestly unequal bargaining power between defendants and unsophisticated or uninformed putative class members.  *E.g., Slavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324-JST, 2015 WL 6674575, at *3-4 (N.D. Cal. Nov. 2, 2015) (finding communication coercive in part due to the inherent disparity of bargaining power in the employer-employee relationship) (cited at Mot. 6-7); *Camp v. Alexander*, 300 F.R.D. 617, 624-26 (N.D. Cal. 2014) (finding communication coercive in part due to the inherent disparity of bargaining power in the employer-employee relationship); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) (finding arbitration provision improper where defendant's drivers "for whom English is not their native language" were sent a licensing agreement that included an arbitration provision which "shrouded" the fact that agreement waived participation in the putative class) (cited at Mot. 6, 8); *Wright v. Adventures Rolling Cross Country, Inc*., No. C-12-0982 EMC, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (finding communication coercive in part due to defendant's assertion that participation in class action would affect the reputation of employees and former employees); *Cnty. of Santa Clara v. Astra USA, Inc*., No. C 05-03740 WHA, 2010 WL 2724512, at *4-5 (N.D. Cal. July 8, 2010) (finding communications between defendant and its consumers misleading where they did not explain the claims in the case, misrepresented the status of the case, misrepresented how the settlement payments were calculated, and gave the false impression the settlement payments were approved and endorsed by government agencies); *Jones v. Jeld-Wen, Inc*., 250 F.R.D. 554, 563 (S.D. Fla. 2008) (finding communication coercive given the potentially dependent relationship between defendant and its consumers, and the defendant's warning regarding the defective nature of its product while implying repairs could not be performed during the pendency of the class action).

- 9 -

1    professional advisors.  *Cf. Maine State Ret. Sys. v. Countrywide Fin. Corp.,* No. 2:10-CV-

2    00302 MRP, 2013 WL 6577020, at *10 (C.D. Cal. Dec. 5, 2013) (holding named plaintiffs

3    adequately represented putative class because the "putative class members, a majority of

4    which [were] highly sophisticated investors, had ample opportunity to learn of this litigation,

5    evaluate whether Named Plaintiffs adequately protected their rights, and pursue their own

6    claims if desired.").  Indeed, there could not be a starker contrast between the Investors and the

7    groups of putative class members at issue in the cases Plaintiffs cite.  *See* note 4, *supra*

8    (collecting Plaintiffs' cited cases, which concern putative classes of lower-level employees and

9    consumers).

10           Moreover, unlike the cases Plaintiffs cite, Theranos did not hatch the tender offer to

11   thwart this litigation.  As set forth above, Theranos and the Investors were already negotiating

12   a deal, specifically including a full release of all claims, *months* before Plaintiffs filed this

13   lawsuit.  The negotiations were initiated by the Investors, not Theranos.  In short, the Investors

14   would be giving the exact same releases regardless of whether Plaintiffs had ever sued.

15           Further, nothing is misleading about Theranos's communications with the Investors

16   about this litigation and the impact of the release on it.  Over the course of negotiations, the

17   Investors received repeated disclosures concerning this litigation.  The Information Statement

18   (which formally makes the tender offer) describes this lawsuit (including that Plaintiffs seek to

19   represent a class of Theranos investors), and repeatedly warns that the release "protects the

20   Company and its officers, directors and stockholders from any potential legal claims by

21   holders of Series C-1 Preferred and Series C-2 Preferred as stockholders."  Taylor Dec. ¶ 10.

22   And the Supplemental Notice quotes the class definition, tells recipients that by accepting the

23   tender they are forfeiting the right to participate in this case, and provides the name and

24   contact information of Plaintiffs' counsel.  *Id.* ¶ 13, Ex. A.  Thus, there can be no doubt that

25   any Investor who accepts the tender does so with full knowledge of the consequences for this

26   case.

27

28

1    In short, Plaintiffs have not met their burden under Rule 23(d) to justify judicial

2    intervention to restrain communications.[5]

3    **B.    Plaintiffs Are Not Entitled To An Order Prohibiting Defendants From**

4    **Entering Into Settlements**

5    Plaintiffs next seek an order "[p]rohibiting Defendants from entering into any

6    settlements with putative class members until . . . discovery and [a] hearing is completed."

7    Mot. 12.  Plaintiffs cite Rule 23(d) as a basis for their request.  However, as detailed above,

8    Plaintiffs have not met the standard, because they have not shown a clear record of abusive

9    conduct.  This, without more, defeats their claim for relief.

10   In addition, the Court should deny this relief for a second, independent reason:

11   Plaintiffs are seeking a form of preliminary injunctive relief, and must meet the requirements

12   of Rule 65 to obtain it.  However, Plaintiffs make no attempt to satisfy Rule 65 requirements

13   and cannot.

14   By seeking to prohibit "settlements," Plaintiffs seek injunctive relief subject to Rule

15   65.  The tender offer does not involve any free-standing settlement agreements.  Instead, there

16   is an "Exchange and Release Agreement" (the "Exchange Agreement") containing terms

17   including a release.  Investors who choose to participate in the tender offer and reap the

18   attendant benefits must execute and submit the Exchange Agreement prior to the closing of the

19   tender offer.  Presently, the tender offer is open, and willing Investors are submitting executed

20   Exchange Agreements.  The Exchange Agreement by its terms becomes effective on closing

21   of the tender.  Taylor Dec. ¶ 12.  Thus, by requesting an order to "prohibit" Defendants from

22   entering into "settlements," Plaintiffs are seeking an order preliminarily enjoining the

23   scheduled closing of the tender offer, which would render the releases effective.

24   

25   [5] Plaintiffs try to make their request sound benign by framing their arguments around a
     purported request that the Court "scrutinize" Defendants' conduct.  Mot. 7-10.  But the relief

26   sought in their motion is not mere "scrutiny"; rather, it is a judicial restraint on
     communications and on completing a transaction.  Mot. 12 (listing relief sought).  In any

27   event, whether framed as "scrutiny" or intervention, the controlling standard requires a clear
     record of abuse.

28   

- 11 -

1        Ninth Circuit law is clear that Rule 65 applies to such a request for relief.  *See*

2   *Newmont Min. Corp. v. Pickens*, 831 F.2d 1448 (9th Cir. 1987) (recognizing implicitly that

3   motion to enjoin tender offer subject to preliminary injunction standard); *Pac. Realty Trust v.*

4   *APC Investments, Inc.*, 685 F.2d 1083, 1086 & n.5 (9th Cir. 1982) (recognizing implicitly that

5   order enjoining tender offer subject to injunction standard); *Dixon v. Cost Plus*, No. 12-CV-

6   02721-LHK, 2012 WL 2499931, at *12 (N.D. Cal. June 27, 2012) (subjecting motion to

7   enjoin tender offer to Rule 65 standard); *Unocal Corp. v. Pickens*, 608 F. Supp. 1081 (C.D.

8   Cal. 1985) (denying preliminary injunction seeking to enjoin tender offer due to failure to

9   show irreparable harm); *see also Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402

10   (S.D.N.Y. 2011) ("There is a significant public interest in giving parties to potential [tender

11   offers] confidence that courts *will not enjoin such [tender offers] where the requisite showings*

12   *that support preliminary injunctive relief are absent*." (emphasis added)).[6]

13        While Rule 23(d) authorizes a court (without regard for Rule 65 requirements) to

14   enjoin litigants from engaging in *abusive communications*, that is because an order enjoining

15   abusive communications is "a directive[] to counsel in their capacity as officers of the court,

16   pursuant to the court's inherent power to manage its cases."  *Kleiner v. First Nat. Bank of*

17   *Atlanta*, 751 F.2d 1193, 1201 (11th Cir. 1985); *see also Perkins v. Benore Logistics Sys., Inc.*,

18   2017 WL 445603 (E.D. Mich. Feb. 2, 2017) (cited by Plaintiffs, Mot at 6) (citing *Kleiner* and

19   applying Rule 23(d) only to abusive communications); *Tolmasoff v. General Motors, LLC*,

20   2016 WL 3548219, *10 (E.D. Mich. Jun. 30, 2016) (same).  This logic does not extend to a

21   request to bar persons (some of whom are not even before the Court) from making an

22   agreement or completing a tender offer.  Notably, Plaintiffs do not cite a single case (and

23   Defendants have not located one) in which a court invoked Rule 23(d) to order such injunctive

24   relief.  Thus, Rule 65 applies to Plaintiffs' request.

25

26

27   ─────────────────────

[6] There are good reasons why Plaintiffs must meet Rule 65 standards to enjoin a transaction.
For instance, Rule 65(c) requires Plaintiffs to post bond for damages that Defendants could
incur due to an inappropriate injunction of the closing.

28

1    Plaintiffs do not even attempt to meet the Rule 65 standard for an injunction.  Plaintiffs

2    fail to address the merits of their underlying claims, irreparable harm, or the balance of

3    harms—not surprisingly, because each factor clearly weighs against the imposition of an

4    injunction.

5    For instance, Plaintiffs are unlikely to prevail on their class claims, not only for the

6    reasons set out in the Motion to Dismiss, but also because they will not be able to show that

7    their claims are typical of those actual shareholders who dealt directly with Theranos and

8    bought their stock only after individualized negotiations.  This problem also would defeat

9    predominance.  *See Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 217 (N.D. Cal. 1994)

10   (individual questions of reliance precluded certification of common law fraud and negligent

11   misrepresentation claims).

12   Nor can Plaintiffs show irreparable harm.  If the tender offer closes and Defendants

13   receive releases from putative class members, Plaintiffs' rights (if any) will not be

14   compromised.  If releases become relevant to this case (*e.g.*, as a potential barrier to class

15   certification), Plaintiffs have the right to seek discovery and argue the releases are invalid.

16   Indeed, that is the usual way releases are litigated, *i.e.*, after they have been executed.  *See* Fed.

17   R. Civ. P. 8(c) (specifying "release" as an affirmative defense to be adjudicated once raised in

18   an answer).

19   Similarly, the balance of harms and the public interest also counsel against enjoining

20   the tender offer.  The interest of a company and its shareholders in pursuing a mutually

21   beneficial transaction far outweigh any single plaintiff's interest in preventing it.  "In tender

22   offer cases, there is a strong public policy in favor of preserving shareholders' freedom to

23   choose between selling stock at a tender offer price and retaining their securities.  As such,

24   requests for injunctions against tender offers are frequently denied because the hardships to the

25   moving party do not often outweigh this strong policy of shareholder freedom."  *See Dixon*,

26   2012 WL 2499931, at *12 (citation omitted).  These considerations have special weight here,

27   where Plaintiffs are not even Theranos shareholders, and have no interest in the tender offer

28

1    other than to try to defeat it to preserve their own leverage.  Moreover, the deal is designed to

2    benefit the shareholders (and putative class members), and has overwhelming support from the

3    Investors, actual Theranos shareholders.

4        Thus, because Plaintiffs have not met Rule 23(d) requirements, and because they also

5    cannot meet Rule 65 requirements, the Court should deny Plaintiffs' Motion to the extent they

6    seek to "prohibit" Defendants from entering into settlements.

7        **C.    Plaintiffs Have Not Shown Good Cause For Lifting The Discovery Stay**

8        Plaintiffs also have not met their burden of establishing why the Court should order

9    expedited discovery, and thereby rescind its order staying discovery until and unless Plaintiffs

10   survive a motion to dismiss.  *See* Mugmon Decl., Ex. 1 (Hearing Tr. 25:22-23) (ordering that

11   discovery be deferred until a ruling on a motion to dismiss, noting that it is "premature to

12   launch discovery before we know there's plausible claims").

13       To merit relief from a stay and schedule, plaintiffs must establish good cause, and that

14   the benefit outweighs the prejudice.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be

15   modified only for good cause."); *Semitool, Inc. v. Tokyo Electron Am., Inc*., 208 F.R.D. 273,

16   276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery

17   [pursuant to Fed. R. Civ. P. 26(d)(1)], in consideration of the administration of justice,

18   outweighs the prejudice to the responding party.").  Plaintiffs have not meet that standard.

19       *First*, where, as here, Plaintiffs seek expedited discovery based on allegations of

20   abusive conduct under Rule 23(d), their failure to meet Rule 23(d) requirements (discussed

21   above) also means that they lack good cause for expedited discovery premised on those same

22   allegations.  *See In re M.L. Stern Overtime Litig*., 250 F.R.D. 492, 500 (S.D. Cal. 2008)

23   (denying motion to compel discovery of pre-certification communications in the absence of a

24   "'clear record' of 'particular abuses'").

25       *Second*, expedited discovery is futile because the tender offer will close (and thus the

26   releases become effective) before the parties would complete expedited discovery.  As detailed

27   above, the tender offer is set to close on April 14, and Plaintiffs have not established any basis

28

- 14 -

1   to preliminarily enjoin it.  Even under Plaintiffs' own proposed schedule, the parties could not

2   complete expedited discovery until at earliest April 21.[7]  At that point, Plaintiffs would simply

3   be adjudicating the propriety of existing releases—something that the parties could do in the

4   normal course if releases ever become relevant.

5       *Third*, good cause is also lacking because discovery concerning the tender offer is

6   premature, and disallowing it will not prejudice the Plaintiffs.  This case is at a nascent stage.

7   It is unclear whether any claims will survive a motion to dismiss, whether Plaintiffs have

8   standing, or what (if any) class certification motion may be viable in the future.  Even if this

9   case proceeds, it is unclear whether any releases will be relevant to the claims asserted by

10  Plaintiffs.  *If* this case survives the pleading stage, and *if* releases become relevant, and *if*

11  Defendants raise them as a defense, then Plaintiffs can, in the normal course, take discovery

12  concerning the releases, and the parties can litigate any impact on these proceedings.  *See, e.g.,*

13  *O'Connor v. Uber Techs., Inc*., No. C-13-3826 EMC, 2013 WL 6407583, at *2 (N.D. Cal.

14  Dec. 6, 2013) (refusing as premature a request to invalidate arbitration clause that functioned

15  as a release; "This is not to say that the issue may not properly be addressed later in the

16  proceedings.... [E]nforceability of the arbitration provision may arise at the class certification

17  stage.") (cited at Mot. 6).[8]

18      *Finally*, expedited discovery would be costly, and it would prejudice Theranos to incur

19  that cost now, particularly under circumstances where, if this case instead proceeds on the

20  existing schedule (*i.e.,* motion to dismiss proceedings prior to discovery), that cost may never

21  accrue (*e.g.*, the motion to dismiss could eliminate or impact the scope of this case).  Theranos

22  and the Investors negotiated for many months, and discovery pertaining to those

23  —————————————

24  [7] Plaintiffs seek an order that Defendants must respond to discovery requests within 14 days.
    If the Court were to enter that order at the hearing, responses would be due on April 21.

25  Moreover, as detailed below, 14 days is not enough time, because Plaintiffs' requests would
    require Theranos to engage in E-discovery, including use of a discovery vendor.

26  [8] Plaintiffs get it backwards by asserting that litigating the effect of the offered releases now

27  will avoid future "collateral disputes or litigation regarding the scope or enforceability of any
    releases." Mot. 10.  Plaintiffs are proposing to accelerate discovery and briefing (with

28  attendant cost) on issues that may never ripen.

- 15 -

communications would be a significant undertaking, involving hundreds of documents.  *See* Taylor Dec. ¶¶ 8, 14.[9]  To comply with Plaintiffs' demands, Theranos would need to engage a discovery vendor on an expedited basis (potentially at premium rates given the time crunch), and engage in E-discovery.  *Id.*

In short, given *no evidence* of wrongdoing, *no reason* why the parties cannot litigate release issues in the normal course if they ever become relevant, and a certainty of *present* substantial costs of expedited discovery, the Court should not lift its stay of discovery.

### D.    Plaintiffs' Fallback "Limited Fund" Argument Also Cannot Justify Relief

Unable to establish any basis for relief under Rule 23(d) or Rule 65, Plaintiffs offer a fallback argument that the Court should preclude Theranos from completing its tender offer based on speculation that Theranos is depleting funds needed to satisfy a judgment.  *See* Mot. 10-11.  However, Theranos is *not* paying any cash as part of the tender offer.  Taylor Decl. ¶ 9.  Thus, Plaintiffs' argument, which is premised on supposed "dissipation of limited assets," Mot. 10, is groundless.

In any event, Plaintiffs appear to have invented out of whole cloth the notion that the Court may preclude "selective offers of settlement" where a putative class action is pending and a putative class plaintiff expresses concerns about dissipation of assets.  The four cases on which Plaintiffs rely, *see* Mot. 4 n.5, 10-11, state only the general proposition that Rule 23(b)(1)(B) provides for certification of limited fund class actions.[10]  Plaintiffs' cited cases do not state or suggest that a putative class plaintiff, pre-certification, may preempt a defendant from settling with some shareholders, whether with or without cash consideration.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

---

[9] The vast majority of the communications likely do not mention this matter.  But Plaintiffs' discovery requests are not restricted to such communications.

[10] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *Baker v. Washington Mut. Fin. Grp., LLC*, 193 Fed. App'x 294 (5th Cir. 2006) (unpublished); *Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011); *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685 (M.D. Ala. 2006).

Dated:  April 5, 2017

By: /s/ Michael A. Mugmon
Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmehale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmehale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

/s/ Kathleen Goodhart
Kathleen Goodhart (165659)

COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2012
Facsimile: +1 415 693 2222
kgoodhart@cooley.com

Stephen C. Neal (170085)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400
nealsc@cooley.com

*Attorneys for Defendant Elizabeth Holmes*

-17-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/  Allison A. Davis
Allison A. Davis (139203)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: +1 415 276 6500
Facsimile: +1 415 276 6599
allisondavis@dwt.com

Stephen M. Rummage (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: +1 206 757 8136
Facsimile: +1 206 757 7136
steverummage@dwt.com

*Attorneys for Defendant Ramesh Balwani*

- 18 -

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing Opposition.  In compliance with Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: April 5, 2017                         WILMER CUTLER PICKERING HALE
                                                              AND DORR LLP

                                                      By:  /s/  Michael A. Mugmon
                                                              Michael A. Mugmon