Michael Mugmon (251958)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 617 526 6000
Facsimile: +1 617 526 6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: +1 617 526 6000
Facsimile: +1 617 526 6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI,<br><br>Defendants. | Case No. 5:16-cv-06822-NC<br><br>**ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS**<br><br>Hon. Nathanael Cousins |

1   COUNSEL CONTINUED:

2   Kathleen Goodhart (165659)
    COOLEY LLP
3   101 California Street, 5th Floor
    San Francisco, CA 94111
4   Telephone: +1 415 693 2012
    Facsimile: +1 415 693 2222
5   kgoodhart@cooley.com

6   Stephen C. Neal (170085)
    COOLEY LLP
7   3175 Hanover Street
    Palo Alto, CA 94304
8   Telephone: +1 650 843 5000
    Facsimile: +1 650 849 7400
9   nealsc@cooley.com

10  *Attorneys for Defendant Elizabeth Holmes*

11
    Allison A. Davis (139203)
12  DAVIS WRIGHT TREMAINE LLP
    505 Montgomery Street, Suite 800
13  San Francisco, CA 94111
    Telephone: +1 415 276 6580
14  Facsimile: +1 415 276 4880
    allisondavis@dwt.com
15
    Stephen M. Rummage (admitted *pro hac vice*)
16  DAVIS WRIGHT TREMAINE LLP
    1201 Third Avenue, Suite 2200
17  Seattle, WA 98101-3045
    Telephone: +1 206 757 8136
18  Facsimile: +1 206 757 7136
    steverummage@dwt.com
19
    *Attorneys for Defendant Ramesh Balwani*
20

21

22

23

24

25

26

27

28

Defendants Theranos, Inc. ("Theranos"), Elizabeth Holmes ("Holmes") and Ramesh Balwani ("Balwani," and, together with Theranos and Holmes, "Defendants"), by and through their undersigned counsel, hereby answer and respond as follows to the Class Action Complaint for Violations of California's Securities, Unfair Competition, and Common Laws ("Complaint") filed by Plaintiffs Robert Colman and Hilary Taubman-Dye ("Plaintiffs") in the above-captioned action ("Action").

Defendants deny each and every allegation in the Complaint, including without limitation allegations appearing in headings, subheadings, and footnotes, except as expressly admitted herein, and specifically deny that Plaintiffs are entitled to the relief sought in their Demand for Relief.  Defendants reserve the right to amend and/or supplement this Answer.

<u>**ANSWER TO SPECIFIC ALLEGATIONS**</u>

## I.    INTRODUCTION

**COMPLAINT INTRODUCTION**

Robert Colman and Hilary Taubman-Dye, individually and on behalf of all others similarly situated (Plaintiffs), by and through their attorneys, allege upon knowledge as to themselves and their own conduct, and otherwise upon information and belief, including based on investigation of counsel, the facts stated in the public record, press releases, media reports and articles, court documents, regulatory filings, and online interviews and videos, as follows.

**ANSWER TO COMPLAINT INTRODUCTION**

No response is required to the allegations in the Complaint Introduction, which purports to describe the Complaint.  To the extent a response is required, Defendants answer that Defendants lack knowledge or information of the allegations in the Complaint Introduction sufficient to form a belief as to their truth.

## II.    SUMMARY OF ACTION

**COMPLAINT ¶ 1:**

Companies owe a duty to potential investors to be open and honest.  Even non-public companies are bound by this principle of frankness no matter how sophisticated their potential investors might be.  Specifically, those who solicit investments for a company should not make statements that are designed to reach potential investors that are materially false, misleading or incomplete.  Those who make statements to investors must believe them to be true and complete, have a reasonable basis for their belief, and exercise reasonable care and not know of any untruth or omission.

**ANSWER TO ¶ 1:**

No response is required to Paragraph 1, which consists of conclusions of law.

**COMPLAINT ¶ 2:**

Plaintiffs bring this action because Theranos, Inc. ("Theranos"), Chief Executive Officer Elizabeth Holmes ("Holmes"), and former President and Chief Operating Officer Ramesh "Sunny" Balwani ("Balwani") flaunted these simple rules.  To them, being honest and forthright was an obstacle to their goals.  Instead, beginning in July 2013, Theranos, Holmes and Balwani set in motion a widespread publicity campaign whose purpose was raising billions for Theranos and themselves and to induce investors to invest in Theranos.  They told the public, knowing and intending that their statements would reach potential investors, that they had perfected "a proprietary" and "revolutionary technology" over the past ten years that would change the world of laboratory testing.

**ANSWER TO ¶ 2:**

Defendants admit that in the summer of July 2013 Theranos began issuing public statements regarding Theranos.  Defendants deny the remaining allegations in Paragraph 2.

**COMPLAINT ¶ 3:**

Holmes claimed that Theranos' proprietary technology could take a pinprick's worth of blood, extracted from the tip of a finger instead of intravenously, and test for hundreds of diseases—a remarkable innovation that was going to save millions of lives and, in a phrase that Holmes often repeated, "Change the world."  Based on this story, Defendant also claimed that this technology had been vetted or was being vouched for by clinics, pharmaceutical companies, experts, regulators and an all-star board of directors.  And they announced that the technology was immediately being rolled-out by one of the nation's largest drug store chains, Walgreens.

**ANSWER TO ¶ 3:**

Defendants admit that Theranos developed proprietary technology for collecting, storing, and processing microsamples of blood and other sample types, that such proprietary technology was validated by certain pharmaceutical companies with which Theranos worked in clinical drug trials before 2013, that Theranos entered into a contractual agreement with Walgreen Co., and that in September 2013 Theranos announced a partnership with Walgreen Co., which had previously commissioned the Johns Hopkins University to perform due diligence on Theranos' proprietary technology.  Defendants deny the remaining allegations in Paragraph 3.

**COMPLAINT ¶ 4:**

Holmes honed her story to near perfection.  She gave hundreds of interviews in which she promoted her narrative about Theranos' revolutionary technology.  She bolstered that story by attracting to the Theranos Board of Directors luminaries like Henry Kissinger and George Schultz.  Holmes adorned the covers of *Fortune*, *Forbes* and other publications and promoted her message there and elsewhere.  She also amassed a net worth of around $9 billion.

**ANSWER TO ¶ 4:**

Defendants admit that Holmes gave interviews in which she discussed Theranos' technology, that Messrs. Kissinger and Shultz served as Directors of Theranos, and that Holmes

- 3 -

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    was featured on the covers of *Fortune* and *Forbes* magazines.  Defendants deny the remaining

2    allegations in Paragraph 4.

3    **COMPLAINT ¶ 5:**

4           The truth—there was no revolutionary technology.  On October 15, 2015, the Wall Street

5    Journal (WSJ) shocked the investing world with a story that Theranos was "struggling" with

6    turning this technology into a reality.  According to the WSJ, Theranos' employees were "leery

7    about the machine's accuracy" and the machine was being used for a tiny number of tests.  The

8    article also reported that some doctors didn't trust the test results they were receiving.  While

9    Theranos vigorously attacked and denied the WSJ article and follow-on media reports—calling

10   them "factually and scientifically erroneous and grounded in baseless assertions by

11   inexperienced and disgruntled former employees and industry incumbents"—those reports have

12   turned out to be largely true.  Reportedly, Theranos is under investigation by the United States

13   Department of Justice (U.S. DOJ) and the Securities and Exchange Commission (SEC).

14   **ANSWER TO ¶ 5:**

15          Defendants admit that Theranos has received subpoenas from the United States

16   Department of Justice and the U.S. Securities and Exchange Commission.  Defendants further

17   answer that to the extent the allegations in Paragraph 5 are based on the contents of written

18   documents, Defendants admit that, to the extent such allegations accurately reflect the contents

19   of the documents, such statements exist, and otherwise deny them.  Defendants deny that

20   Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these

21   issues.  Defendants deny the remaining allegations in Paragraph 5.

22   **COMPLAINT ¶ 6:**

23          Even worse, findings by regulators have forced Theranos to void tens of thousands of

24   customers' blood test results, raising the specter of patient harm.  In July 2016, the Center for

25   Medicare and Medicaid Services imposed significant sanctions on Theranos, including revoking

26   the Company's Clinical Laboratory Improvement Amendments (CLIA) certification, imposing a

27

28

monetary penalty of $10,000 per day for each day of non-compliance with the conditions necessary for CLIA certification, and banning Holmes and Balwani, and thereby Theranos itself, from owning or operating a laboratory for at least two years.

**ANSWER TO ¶ 6:**

Defendants admit that Theranos voided test results and that CMS issued a report to Theranos in January 2016. Defendants further answer that to the extent the allegations in Paragraph 6 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 6.

**COMPLAINT ¶ 7:**

And yet another hammer fell on the story when Theranos' commercial partner, Walgreens, sued Theranos in November 2016 for breach of contract. Walgreens alleges that Theranos made the following promises to Walgreens, which are virtually identical to the representations Theranos made to investors which Theranos breached:

    a.    Theranos had developed a "proprietary, patented technology" capable of running "comprehensive blood tests from a fingerstick, in real-time at the point of care, outside of traditional lab settings";

    b.    The blood tests would be run on a proprietary device they called "Theranos Systems";

    c.    The proprietary technology had been "comprehensively validated over the course of the last seven years by ten of the fifteen largest pharmaceutical companies";

    d.    The technology already had been used by numerous current and past clients, including these same pharmaceutical companies, midsized bio-pharma companies, prominent research institutions, and U.S. and foreign government health and military organizations; and

    e.    The Theranos Systems were validated under FDA guidelines and "classified as nonsignificant risk devices."[1]

---

[1]   *Walgreen Co. v. Theranos, Inc.*, No. 1:16-cv-01040-SLR (redacted version filed Nov. 15, 2016), filed in the United States District Court for the District of Delaware.

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

**ANSWER TO ¶ 7:**

Defendants admit that a complaint was filed by Walgreen Co. in the United States District Court for the District of Delaware. Defendants further answer that to the extent the allegations in Paragraph 7 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 7.

**COMPLAINT ¶ 8:**

While Walgreens avoids alleging these claims were false or fraudulent, it alleges that these promises were inconsistent with reality. For example, Walgreens claims that based on negotiations and representations, it was the expectation of the parties "that the blood would be collected using Theranos' finger-stick technology. . . . Theranos did not deliver on that expectation."

**ANSWER TO ¶ 8:**

Defendants admit that a complaint was filed by Walgreen Co. in the United States District Court for the District of Delaware. Defendants further answer that to the extent the allegations in Paragraph 8 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 8.

**COMPLAINT ¶ 9:**

The once-vaunted company is in disarray and the value of its securities are in a freefall.

**ANSWER TO ¶ 9:**

Defendants deny the allegations in Paragraph 9.

1

**COMPLAINT ¶ 10:**

2

3

Accordingly, Plaintiffs bring this complaint, on behalf a class consisting of all persons or

entities who, directly or indirectly purchased or committed to purchase Theranos securities from

4

July 29, 2013, through October 5, 2016.  Plaintiffs bring these claims and seek recovery under

5

the California Securities Statutes (Cal. Corp. Code §§ 25400(d), 25401, 25500, 25501 and

6

25504), California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*),

7

California statutory and common law governing fraud and deceit (Cal. Civ. Code §§ 1709,

8

1710), fraudulent concealment (Cal. Civ. Code § 1710), constructive fraud (Cal. Civ. Code §

9

1573), and Negligent Misrepresentation (Cal. Civ. Code § 1710).

10

**ANSWER TO ¶ 10:**

11

No response is required to the allegations in Paragraph 10, which purports to describe the

12

Complaint.

13

### III.      PARTIES

14

**COMPLAINT ¶ 11:**

15

Plaintiff Robert Colman (Mr. Colman) is an Idaho resident.  Mr. Colman purchased

16

Theranos securities in September 2013 through a member interest in Lucas Venture Group XI,

17

LLC (LVG XI), a California LLC whose principal place of business is Menlo Park, California.

18

The sole purpose of LVG XI was to purchase Series G Theranos shares.  LVG XI is managed by

19

LVG GP IV, LLC, a Delaware corporation whose managing member is Donald A. Lucas

20

(Lucas), a California resident.  Lucas directly solicited Mr. Colman's investment, at the

21

invitation of Theranos and Holmes.  Defendants' invitation was purportedly a favor to Lucas,

22

whose father, Donald L. Lucas, originally funded Theranos and "mentored" Holmes.  Donald A.

23

Lucas claims to serve as a strategic advisor to Theranos.  The offer to sell Theranos stock and

24

Mr. Colman's Theranos stock purchase took place in California.  Mr. Colman relied, at least in

25

part, on Theranos' representations herein, including that Theranos had developed a

26

Commercially ready groundbreaking blood test technology that was highly accurate, that

27

28

- 7 -

involved drawing only a few droplets of blood, and was being rolled out by Walgreens.  Mr. Colman was not aware of the material omissions alleged herein.

**ANSWER TO ¶ 11:**

Defendants admit that Lucas Venture Group XI, LLC is a California limited liability company whose managing member is Donald A. Lucas and that Lucas Venture Group XI, LLC acquired Theranos securities.  Defendants further admit that Donald L. Lucas previously invested in Theranos.  Defendants lack knowledge or information of the remaining allegations in Paragraph 11 sufficient to form a belief as to their truth.

**COMPLAINT ¶ 12:**

Plaintiff Hilary Taubman-Dye (Ms. Taubman-Dye) is a California resident.  She purchased Theranos securities in August 2015 at $19.00 per share as Series B units of a SharePost affiliated fund, Celadon Technology Fund VII, LLC, whose purpose was to acquire Theranos shares of other investors or current or former personnel who held Series C Preferred shares, and hold Theranos stock.  This transaction was managed and conducted by SharePost Financial Corporation (SharePost.com); a subsidiary of SharePost Inc. located in San Bruno, California, and was controlled by and occurred with the knowledge and consent of Defendants.  Ms. Taubman-Dye's August purchase did not finalize until December 7, 2015, as Defendants imposed three separate rights of refusal on the sale.  The first allowed Theranos to purchase Company stock on the same terms offered to SharePost; the second offered the same terms to Holmes; the third allowed Theranos to assign their right of first refusal to an undisclosed third party (an "Assignee"), pursuant to which such Assignee could purchase Theranos securities on the same terms previously offered to Theranos and Holmes.  On August 19, 2015, SharePost successfully entered into a binding purchase agreement with a seller of Theranos securities.  On August 21, 2015, the unidentified seller provided notice to Theranos of the proposed sale, triggering the relevant rights of refusal to Theranos Securities.  On October 19, 2015, after the WSJ's Theranos exposé, Ms. Taubman-Dye attempted to cancel the transaction (as did others);

1   but SharePost informed investors that Theranos waived its right of first refusal, thereby

2   triggering the rights of Holmes and, potentially, the Assignee.  Neither Holmes nor any third

3   party exercised their rights.  Ms. Taubman-Dye's purchase became final on or about December

4   1, 2015.  All aspects of this transaction took place in California as the offer to sell took place in

5   California, and all documents were sent from and delivered in California.  Ms. Taubman-Dye

6   relied, at least in part, on Theranos' representations herein, including that Theranos had

7   developed a commercially ready groundbreaking blood test technology that was highly accurate,

8   that involved drawing only a few droplets of blood, and was being successfully rolled out by

9   Walgreens.  Ms. Taubman-Dye was not aware of the material omissions alleged herein.

10  **ANSWER TO ¶ 12:**

11        Defendants admit that Celadon Technology Fund VII, LLC is affiliated with SharesPost

12  Financial Corporation, that Celadon Technology Fund VII, LLC acquired Theranos securities,

13  and that Celadon Technology Fund VII, LLC's acquisition of Theranos securities was subject to

14  rights of first refusal held by three separate parties.  Defendants further admit that no party

15  exercised its rights of first refusal.  Defendants lack knowledge or information of the remaining

16  allegations in Paragraph 12 sufficient to form a belief as to their truth.

17  **COMPLAINT ¶ 13:**

18        Defendant Theranos, Inc. is a corporation organized under the laws of the State of

19  Delaware, with its principal place of business in Palo Alto, California.

20  **ANSWER TO ¶ 13:**

21        Defendants admit the allegations in Paragraph 13.

22

23

24

25

26

27

28

Answer to Class Action Complaint For Violations of California's Securities, Unfair
Competition, and Common Laws
Case No. 5:16-cv-06822-NC

**COMPLAINT ¶ 14:**

Defendant Holmes is the founder, Chief Executive Officer, and Chairman of the Board of Directors of Theranos.  Holmes is also the controlling stockholder of Theranos, holding over 50% of the stock.[2]  Holmes resides in California.

**ANSWER TO ¶ 14:**

Defendants admit the allegations in Paragraph 14.  Defendants further answer that to the extent the allegations in Footnote 2 to Paragraph 14 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them.

**COMPLAINT ¶ 15:**

Defendant Balwani is the former President, Chief Operating Officer, and board member of Theranos.  Balwani left the Company in or about May 2016 and resides in California.

**ANSWER TO ¶ 15:**

Defendants admit the allegations in Paragraph 15.

**COMPLAINT ¶ 16:**

Plaintiffs allege and believe that others may have aided and abetted Defendants' actions and reserve the right to name additional defendants.

**ANSWER TO ¶ 16:**

No response is required to Paragraph 16, which consists of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 16.

---

[2]      Holmes has stated that she retains control of over 50% of the shares of Theranos. Roger Parloff, *This CEO is out for blood*, Fortune (June 12, 2014), available at http://fortune.com/2014/06/12/theranos-blood-holmes/ (last accessed Nov. 25, 2016).

## IV.    JURISDICTION AND VENUE

**COMPLAINT ¶ 17:**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) as this is a class action where at least one of the members of the class is a citizen of a State different from any defendant, and the controversy exceeds the sum or value of $5,000,000.

**ANSWER TO ¶ 17:**

No response is required to Paragraph 17, which consists of conclusions of law.

**COMPLAINT ¶ 18:**

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) & (b) because (1) one or more defendants reside in this district and all the defendants are residents of this State, and (2) a substantial part of the events or omissions giving rise to the claims occurred in this district.

**ANSWER TO ¶ 18:**

No response is required to Paragraph 18, which consists of conclusions of law.

## V.    FACTUAL BACKGROUND

**COMPLAINT HEADING V.A:**

Theranos Builds up Publicity to Raise New Money from Investors

**ANSWER TO COMPLAINT HEADING V.A:**

Defendants deny the allegations in Complaint Heading V.A.

**COMPLAINT ¶ 19:**

Founded by Defendant Holmes in 2003, Theranos is a private life-sciences company that claimed to "revolutionize" the laboratory testing industry with innovative methods for drawing and testing blood and interpreting patient data to improve outcomes and lower health care costs.

According to press reports in December 2004, Holmes had raised $6 million to fund Theranos.[3]
By the end of 2010, Holmes had raised more than $92 million in venture capital for Theranos.[4]

**ANSWER TO ¶ 19:**

Defendants admit that Theranos was founded by Holmes in 2003 and that Theranos is a private life sciences company in the health care sector. Defendants further answer that to the extent the allegations in Paragraph 19 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 19.

**COMPLAINT ¶ 20:**

In July 2013, Defendants, and others, began to implement a strategy to pull in new investors. Defendants had approached Walgreens in 2010 with "the promise of an innovative technology that would revolutionize blood testing." The next step was to launch the finger-stick technology to consumers, which Theranos stated it would be ready to do as early as later that year. In June 2012, Theranos and Walgreens entered into an agreement that provided a framework pursuant to which "Theranos Wellness Centers" could operate inside Walgreens stores, in which technicians would collect blood samples. Theranos represented to Walgreens that blood would be collected using Theranos' finger-stick technology and would then be sent to a Theranos CLIA-certified laboratory for testing. On March 20, 2013, Walgreens began a controlled soft launch of Theranos Wellness Centers at a single store in Phoenix, Arizona. By late summer 2013, Walgreens was ready to publicly announce the relationship.

---

[3]     Ken Auletta, *Blood, Simpler:One Woman's Drive to Revolutionize Medical Testing*, The New Yorker (Dec. 15, 2014), available at http://www.newyorker.com/magazine/2014/12/15/blood-simpler (last accessed Nov. 25, 2016).

[4]     Kimberly Weisul, *How Playing the Long Game Made Elizabeth Holmes a Billionaire*, Inc. (Oct. 2015), available at http://www.inc.com/magazine/201510/kimberly-weisul/the-longestgame. html (last accessed Nov. 25, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1

**ANSWER TO ¶ 20:**

2

3       Defendants admit that Theranos has developed proprietary methods and devices for

collecting, storing and testing microsamples of blood and other sample types, that Theranos has

4       entered into a contractual agreement with Walgreen Co., and that in March 2013 Walgreen Co.

5       opened a Theranos Wellness Center at a store in Phoenix, Arizona.  Defendants deny the

6       remaining allegations in Paragraph 20.

7

**COMPLAINT ¶ 21:**

8       In preparation for the solicitation and sale of Theranos shares to new investors,

9       Defendants began courting press attention with the announcement of a luminary Board of

10      Directors.  Theranos, Holmes, and Balwani opened Twitter accounts in July 2013 and began

11      granting interviews and sending out tweets and retweets regarding Theranos' technology.  On

12      July 29, 2013, Theranos posted its first press release on its website announcing that Wells Fargo

13      & Co. Chairman and CEO Richard Kovacevich and retired four-star Marine General James

14      "Mad Dog" Mattis were appointed to the Board of Directors.[5]  The Company also highlighted

15      that these luminaries joined other luminaries on the board, including former Secretary of State

16      Henry A. Kissinger, former Senator Samuel Nunn, William J. Perry, former Admiral Gary

17      Roughead, and former Secretary of State, Treasury and Labor George P. Shultz.

18

**ANSWER TO ¶ 21:**

19      Defendants admit that Holmes opened a Twitter account in July 2013.  Defendants

20      further answer that to the extent the allegations in Paragraph 21 are based on the contents of

21      written documents, Defendants admit that, to the extent such allegations accurately reflect the

22      contents of the documents, such statements exist, and otherwise deny them.  Defendants deny

23

24

25      [5]     Theranos press release, *Theranos Announces New Members of its Board of Directors* (July 29,
        2013), available at https://news.theranos.com/2013/07/29/theranos-announces-new-members-of-its-board-

26      of-directors (last accessed Nov. 25, 2016); Ron Leuty, *Theranos adds Kovacevich to all-star board*, San
        Francisco Business Times (Aug. 2, 2013), available at http://www.bizjournals.com/sanfrancisco/print-

27      edition/2013/08/02/theranos-adds-kovacevich-to-allstar.html (last accessed Nov. 25, 2016).

- 13 -

28

1   that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of

2   these issues.  Defendants deny the remaining allegations in Paragraph 21.

3   **COMPLAINT ¶ 22:**

4        In August 2013, Defendants courted WSJ writer Joseph Rago with an exclusive interview

5   that would bring Theranos' story out to the world.  Theranos claimed to the WSJ that it had

6   developed proprietary equipment capable of running comprehensive blood tests from as little as

7   a few drops of blood, which are approximately 1/100th to 1/1000th the size of a typical venous

8   blood draw (or "venipuncture").  Theranos also claimed to have developed a proprietary method

9   to draw drops of blood from a patient's finger using a finger stick and to collect and store that

10  blood (a "capillary sample") in a proprietary device called a "nanotainer."  The blood stored in

11  the nanotainer would then be tested using Theranos' proprietary laboratory equipment, or

12  "analyzers," which would provide accurate results to customers in a matter of hours.

13  **ANSWER TO ¶ 22:**

14       To the extent the allegations in Paragraph 22 are based on the contents of written

15  documents, Defendants admit that, to the extent such allegations accurately reflect the contents

16  of the documents, such statements exist, and otherwise deny them.  Defendants deny that

17  Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

18  issues.  Defendants deny the remaining allegations in Paragraph 22.

19  **COMPLAINT ¶ 23:**

20       Echoing the Company's statements made in his exclusive interview, Joseph Rago

21  published a WSJ article on September 8, 2013, in which Holmes claimed that Theranos could

22  "run any combination of tests, including sets of follow-on tests" at once, very quickly, all from a

23  single small blood sample.[6]  Theranos' website prominently featured a nanotainer balanced on

24

25  _____

    [6]      Joseph Rago, *Elizabeth Holmes: The Breakthrough of Instant Diagnosis*, The Wall Street Journal

26  (Sept. 8, 2013), available at

    http://www.wsj.com/articles/SB10001424127887324123004579055003869574012 (last accessed Nov.

27  23, 2016).

                                        - 14 -

28

1    the tip of a finger and the slogan:  "one tiny drop changes everything."  "Now, for the first time,"

2    the website claimed, Theranos' "laboratory can perform your tests quickly and accurately on

3    samples as small as a single drop."

4    **ANSWER TO ¶ 23:**

5        To the extent the allegations in Paragraph 23 are based on the contents of written

6    documents and websites, Defendants admit that, to the extent such allegations accurately reflect

7    the contents of the documents and websites, such statements exist, and otherwise deny them.

8    Defendants deny that Plaintiffs' characterization of the documents and websites is accurate, and

9    deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in

10   Paragraph 23.

11   **COMPLAINT ¶ 24:**

12       On September 9, 2013, Theranos and Walgreens announced in a press release, timed to

13   follow the WSJ article, plans to roll out Theranos "wellness centers" inside retail locations of

14   Walgreens—one of the most well-known and successful pharmacy chains in the United States.

15   Theranos and Walgreens claimed in a press release the same day that with its first Walgreens

16   pharmacy chain location launching in Silicon Valley, "consumers *can now* complete any

17   clinician-directed lab test with as little as a few drops of blood and results available in a matter of

18   hours."  It also stated, "For the first time, Theranos is introducing CLIA-certified laboratory

19   services with the ability to run its tests on micro-samples."  The press release states in relevant

20   part:

21           Theranos, Inc. and Walgreens (NYSE:  WAG) (NASDAQ:  WAG)
             today announced a long-term partnership to bring access to
22           Theranos' new lab testing service through Walgreens pharmacies
             nationwide. . . .
23

24           For the first time, Theranos is introducing CLIA-certified
             laboratory services with the ability to run its tests on micro-
25           samples.  Theranos' proprietary laboratory infrastructure
             minimizes human error through extensive automation to produce
26           high quality results.  Test results are available to physicians in a
             matter of hours, enabling fast diagnoses to help informed treatment
27           choices. . . .

28

"For the past 10 years, Theranos has worked relentlessly to reach a point at which we could help make actionable information accessible to physicians and patients at the time it matters most. Clinicians can now see their patients having received lab results from fresh samples in a matter of hours," said Elizabeth Holmes, Chairman, CEO and Founder of Theranos. . . .

By minimizing the volume of blood required from patient draws, Theranos helps clinicians provide a new standard of care across all specialties and treatment areas. . . .

"Theranos' service offers affordable certified lab testing with quicker response times, and furthers our mission to provide a differentiated patient experience," said Kermit Crawford, Walgreens president of pharmacy, health and wellness. . . .[7]

**ANSWER TO ¶ 24:**

Defendants admit that Theranos and Walgreen Co. jointly issued the September 9, 2013 press release referenced in Paragraph 24.  Defendants further answer that to the extent the allegations in Paragraph 24 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 24.

**COMPLAINT ¶ 25:**

This web page, WSJ article and press release were false and misleading in that (1) Theranos was not "now" (or ever) capable of performing its agreement with Walgreens; (2) Theranos did not have necessary regulatory approval to use its "tests using micro-samples" on its proprietary device --- the nanotainer; (3) Theranos' labs were not in compliance with CLIA standards; (4) Theranos proprietary technology had not "reached a point at which [it] could make

---

[7]       Theranos press release, *Theranos Selects Walgreens as a Long-Term Partner Through Which to Offer Its New Clinical Laboratory Service* (Sept. 9, 2013), available at https://news.theranos.com/2013/09/09/theranos-selects-walgreens-as-a-long-term-partner-through-which-to-offer-its-newclinical-laboratory-service (last accessed Nov. 25, 2016).

1    actionable information accessible to physicians and patients" using its proprietary technology;

2    (5) Theranos would have to dilute "micro-samples" and run them on traditional lab machines of

3    competitors in order to create the illusion that their proprietary technology was working; (6)

4    Theranos's processes were not faster, cheaper and more accurate than the conventional methods,

5    and (7) Theranos could not "help clinicians provide a new standard of care across all specialties

6    and areas of treatment" with its proprietary technology.

7    **ANSWER TO ¶ 25:**

8          Defendants deny the allegations in Paragraph 25.

9    **COMPLAINT HEADING V.B:**

10         Defendants Court New Investors

11    **ANSWER TO COMPLAINT HEADING V.B:**

12         Defendants deny the allegations in Complaint Heading V.B.

13    **COMPLAINT ¶ 26:**

14         Using the publicity generated from the September 8, 2013 Wall Street Journal article, and

15    the September 9, 2013 Walgreens/Theranos press release, Defendants solicited new investors.

16    Plaintiffs began considering an investment in Theranos through intermediaries and investment

17    funds, or directly.  Immediately after announcing plans to roll out Theranos "wellness centers,"

18    Defendants invited "a select group of people" to invest in follow-on extensions of a 2010

19    Preferred financing, claiming a valuation in 2010 of $6 billion and a current valuation of $10

20    billion[.]  For example, Lucas wrote its investors on September 9, 2013:

21              Through its long-standing relationship with Theranos, Inc. and its
              Founder, CEO and Chairman, Elizabeth Holmes, [] has been

22             invited to invest up to $15 million in a follow-on extension of the
              2010 Preferred financing made available to a select group of

23             people. . . .  Please see the attached two articles about Theranos:
              . . .

24

25             [Referencing the WSJ article and Theranos Press Release above]

26             This transaction must close by the end of September.

27

28

**ANSWER TO ¶ 26:**

Defendants deny the allegations in the first, second and third sentences in Paragraph 26. Defendants further answer that they lack knowledge or information sufficient to form a belief as to the truth of the fourth sentence in Paragraph 26.

**COMPLAINT ¶ 27:**

The letter also included statements provided by Defendants which were meant to be conveyed to potential investors.  These representations included that Theranos "has signed contracts and partnerships with very large retailers and drug stores as well as various pharmaceutical companies, HMO's, insurance agencies, hospitals, clinics and various government agencies" and "Pharmaceutical companies use Theranos' systems to streamline and tailor the customization of drug compounds subject to patent expiration for new market applications, thus enabling the creation of more sustainable drug compounds and a drastic reduction in drug development cost and time to market."  These statements were false or misleading as (1) the contracts with companies other than Walgreens were preliminary, immaterial or non-existent, such that the other companies and or agencies had not vetted Theranos technology, and (2) Theranos was incapable of performing any contracts using its proprietary technology.

**ANSWER TO ¶ 27:**

Defendants deny the allegations in Paragraph 27.

**COMPLAINT ¶ 28:**

On November 13, 2013, Theranos and Walgreens issued a press release entitled, "Theranos and Walgreens Expand Diagnostic Lab Testing to the Phoenix Metropolitan Area, New Theranos™ Wellness Centers at Walgreens stores provide consumers with less invasive, fast, affordable testing on samples as small as a few drops of blood."  The press release described "blood sample[s] as small as a few drops – 1/1,000 the size of a typical blood draw" and

- 18 -

1    similarly advertised that Theranos had "eliminat[ed] the need for large needles and numerous

2    vials of blood typically required for diagnostic lab testing."  The press release stated:

3            Theranos, Inc. and Walgreens (NYSE:  WAG) (NASDAQ:  WAG)
             today celebrate the opening of new Theranos Wellness Centers
4            located at Walgreens stores in the Phoenix metropolitan area.  This
             marks the beginning of Theranos and Walgreens planned national
5            rollout. . . .

6            The new Theranos Wellness Centers will provide Phoenix area
             consumers with access to less invasive and more affordable
7            clinician-directed lab testing from a blood sample as small as a few
             drops – 1/1,000 the size of a typical blood draw.  The micro-
8            samples collected by certified phlebotomists or trained Walgreens
             technicians are taken from either a tiny finger stick or traditional
9            methods, eliminating the need for large needles and numerous vials
             of blood typically required for diagnostic lab testing. . . .
10

11           Theranos test results can be made available to physicians in a
             matter of hours, enabling fast diagnoses to help make informed
12           treatment choices. . . .

13           "For the past 10 years, Theranos has worked relentlessly to help
             make actionable information accessible to individuals and their
14           physicians at the time it matters most. . . ." said Elizabeth Holmes,
             Founder and CEO of Theranos.  "By making it possible to run
15           laboratory tests from a tiny sample, children, elderly, and those
             with chronic conditions or a fear of needles **will now** be able to
16           partake in a new experience. . . ."

17           As the nation's largest retail pharmacy chain with more than 8,100
             neighborhood pharmacies – including 188 in the Phoenix area –
18           Walgreens has the infrastructure to enable Theranos to bring its
             services to consumers nationwide.[8]
19

20   **ANSWER TO ¶ 28:**

21           Defendants admit that Theranos and Walgreen Co. jointly issued the November 13, 2013

22   press release referenced in Paragraph 28.  Defendants further respond that to the extent the

23   allegations in Paragraph 28 are based on the contents of written documents, Defendants admit

24

25   [8]      Theranos press release, *Theranos and Walgreens Expand Diagnostic Lab Testing to the Phoenix
     Metropolitan Area; New Theranos™ Wellness Centers at Walgreens stores provide consumers with less
26   invasive, fast, affordable testing on samples as small as a few drops of blood* (Nov. 13, 2013), available at
     https://news.theranos.com/2013/11/13/theranos-and-walgreens-expand-diagnostic-lab-testing-to-the-
27   phoenix-metropolitan-area/ (last accessed Nov. 25, 2016).

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1   that, to the extent such allegations accurately reflect the contents of the documents, such

2   statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of

3   the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the

4   remaining allegations in Paragraph 28.

5   **COMPLAINT ¶ 29:**

6        This press release was false and misleading in (1) Theranos was not "now" (or ever)

7   capable of performing its agreement with Walgreens; (2) Theranos did not have necessary

8   regulatory approval to use its "tests using micro-samples" on its proprietary device --- the

9   nanotainer; (3) Theranos' labs were not in compliance with CLIA standards; (4) Theranos

10  proprietary technology had not "reached a point at which [it] could make actionable information

11  accessible to physicians and patients" using its proprietary technology; (5) Theranos would have

12  to dilute "micro-samples" and run them on traditional lab machines of competitors in order to

13  create the illusion that their proprietary technology was working; (6) Theranos' processes were

14  not faster, cheaper and more accurate than the conventional methods, and (7) thus, Walgreens'

15  size and infrastructure could not "enable Theranos to bring its services to consumers nationwide"

16  since the technology was not ready for commercial use.

17  **ANSWER TO ¶ 29:**

18       Defendants deny the allegations in Paragraph 29.

19  **COMPLAINT HEADING V.C:**

20       Defendants Continue to Barrage the Media with Their False Narrative to Attract Investors

21  **ANSWER TO COMPLAINT HEADING V.C:**

22       Defendants deny the allegations in Complaint Heading V.C.

23  **COMPLAINT ¶ 30:**

24       Holmes paid relentless attention to building Theranos' "narrative."  According to *Vanity*

25  *Fair*, Holmes reiterated in an interview that Theranos' proprietary technology could take a

26  pinprick's worth of blood, extracted from the tip of a finger, instead of intravenously, and test for

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    hundreds of diseases—a remarkable innovation that was going to save millions of lives and, in a

2    phrase she often repeated, "change the world."  Defendants publicly declared through

3    presentations and intermediaries the roll out of their proprietary technology, representing that

4    commercially available tests were performed by finger stick, stored in nanotainers, and tested on

5    the Company's proprietary analyzers.  Theranos and its executives also continued to represent

6    publicly that the Company had submitted its tests to the FDA for clearance.  In these and other

7    public statements, Defendants portrayed Theranos as revolutionizing the commercial laboratory

8    industry with the finger stick, nanotainer, and tests that were specifically designed to run, and

9    were being run, on customers' drops of blood using Theranos' proprietary analyzers.  Holmes

10   adorned the covers of *Fortune*, *Forbes*, and *Inc.*, among other publications.  She was profiled in

11   *The New Yorker* and featured on a segment of Charlie Rose.[9]

**ANSWER TO ¶ 30:**

13          Defendants admit that Holmes was interviewed by *Vanity Fair*, was profiled in *The New

14   Yorker*, and appeared on the covers of *Fortune, Forbes,* and *Inc.*  Defendants further answer that

15   to the extent the allegations in Paragraph 30 are based on the contents of written documents or

16   recorded statements, Defendants admit that, to the extent such allegations accurately reflect the

17   contents of the documents and recordings, such statements exist, and otherwise deny them.

18   Defendants deny that Plaintiffs' characterization of the documents and recordings is accurate,

19   and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in

20   Paragraph 30.

**COMPLAINT ¶ 31:**

22          As an essential part of this narrative to draw in investors, Defendants caused Theranos to

23   issue well over twenty press releases repeating the "false narrative" as to the state of Theranos'

24   technology, capabilities and roll-out, including:

---

26   [9]      Interview, *Elizabeth Holmes, C.E.O. and founder of the blood diagnostics company, Theranos*,
27   Charlie Rose (June 3, 2015), available at https://charlierose.com/videos/27979# (Charlie Rose: "You get
     the same results"; Elizabeth Holmes: "We do") (last accessed Nov. 23, 2016).

1          a.     *Theranos Appoints Riley P. Bechtel to its Board of Directors* ("Theranos'

2     clinical laboratory offers comprehensive laboratory tests from samples as small as a few drops of

3     blood at unprecedented low prices.").[10]

4          b.     *Theranos Appoints William H. Frist, M.D., to its Board of Directors*

5     (same).[11]

6          c.     *Theranos Appoints William H. Foege, M.D., M.P.H., to its Board of*

7     *Directors* (same).[12]

8          d.     *Theranos Files Comment In Support Of Food and Drug Administration*

9     *Oversight Of Laboratory-Developed Tests*, which included the following statement:

> [W]e provide individuals with testing that is designed to be faster,
> cheaper, and less painful at the highest levels of quality.  Our
> mission depends upon meeting the highest standards of test quality
> – standards set by the Food and Drug Administration (FDA). . . .
> Theranos is submitting and will continue to submit all our tests to
> the FDA.  We are not required to do so, but we have made this
> commitment because we believe that FDA oversight plays a
> critical role in ensuring that individuals and their physicians get the
> most accurate test results. . . . there are limits on the adequacy of
> the peer review system. . . .  That is why we will continue to
> submit our work to the FDA and why we believe the decision to do
> so is essential in providing accurate results for individuals and
> physicians.[13]

17         e.     *Theranos and Cleveland Clinic Announce Strategic Alliance to Improve*

18    *Patient Care through Innovation in Laboratory Testing* ("Theranos offers a full spectrum of

19    laboratory tests, from the most common panels to highly specialized tests, on blood samples as

---

[10]     Mar. 15, 2014, available at https://news.theranos.com/2014/03/15/theranos-appoints-riley-p-bechtel-to-its-board-of-directors (last accessed Nov. 23, 2016).

[11]     Apr. 16, 2014, available at https://news.theranos.com/2014/04/16/theranos-appoints-william-h-frist-m-d-to-its-board-of-directors (last accessed Nov. 23, 2016).

[12]     Aug. 5, 2014, available at https://news.theranos.com/2014/08/05/theranos-appoints-william-hfoege-m-d-m-p-h-to-its-board-of-directors (last accessed Nov. 23, 2016).

[13]     Mar. 6, 2015, available at https://news.theranos.com/2015/03/06/theranos-files-comment-in-support-of-food-and-drug-administration-oversight-of-laboratory-developed-tests (last accessed Nov. 23, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1  small as a few drops.  This eliminates the need for larger needles and numerous vials of blood

2  required for many diagnostic lab tests.").[14]

3            f.      *Theranos Founder and CEO Elizabeth Holmes Speaks at Arizona Bill*

4  *Signing* ("Theranos' clinical laboratory offers comprehensive laboratory tests from samples as

5  small as a few drops of blood at unprecedented low prices.").[15]

6            g.      *Theranos Hires Heather King as General Counsel* (same).[16]

7            h.      *Theranos to Begin Global Work in Mexico*, which included the following

8  statement:

9            "[T]he Theranos technology will help attain faster results more
          easily and at a lower cost, generating changes in the way people
10           take care of their health.'  Theranos' platform is a global model for
          health care, shifting the paradigm away from diagnosis and
11           treatment, to one focused on early detection and prevention.
          Theranos offers a full spectrum of laboratory tests, from the most
12           common panels to highly specialized tests, on blood samples as
          small as a few drops."[17]

13

14            i.      *Theranos to Launch Online Resource Connecting Patients to Doctors.*[18]

15            j.      *Theranos receives FDA clearance and review and validation of*

16  *revolutionary finger stick technology, test, and associated test system.*[19]

17

18  ─────────────────

19  [14]     Mar. 9, 2015, available at https://news.theranos.com/2015/03/09/theranos-and-cleveland-clinic-
announce-strategic-alliance-to-improve-patient-care-through-innovation-in-laboratory-testing.  (last
20  accessed Nov. 23, 2016).

21  [15]     Apr. 16, 2015, available at https://news.theranos.com/2015/04/06/theranos-founder-and-ceo-
elizabeth-holmes-speaks-at-arizona-bill-signing (last accessed Nov. 23, 2016).

22  [16]     May 7, 2015, available at https://news.theranos.com/2015/05/07/theranos-hires-heather-king-as-
general-counsel (last accessed Nov. 23, 2016).

23
[17]     June 23, 2015, available at https://news.theranos.com/2015/06/23/theranos-to-begin-global-work-
24  in-mexico (last accessed Nov. 23, 2016).

25  [18]     July 1, 2015, available at https://news.theranos.com/2015/07/01/theranos-to-launch-online-
resource-connecting-patients-to-doctors (last accessed Nov. 23, 2016).

26  [19]     July 2, 2015, available at https://news.theranos.com/2015/07/02/theranos-receives-fda-clearance-
and-review-and-validation-of-revolutionary-finger-stick-technology-test-and-associatedtest-system (last
27  accessed Nov. 23, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
28  COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1          k.      *Theranos Recognizes Milestone in New Era of Preventive Health*,

2  ("Theranos brings a much needed innovative technology to the healthcare industry. . . .  Patients

3  appreciate finger stick over venipuncture, the ease of access with locations throughout the

4  Valley, and flexibility of available times at their Wellness Centers.").[20]

5          l.      *Theranos and Capital BlueCross Team Up to Provide Innovative, Low*

6  *Cost, Accessible Lab Testing Services in Central Pennsylvania*, which included the following:

7              "Theranos, which received clearance of its lab technology from the
              FDA last week, . . . will make available its full menu of tests in
8              Central Pennsylvania. . . .  Theranos has already performed
              millions of tests since its launch and continues to provide full
9              service labs and testing throughout Arizona and Palo Alto,
              California.  Capital BlueCross reviewed the accuracy and quality
10             of Theranos' systems, technology, science, processes and overall
              performance over several years.[21]

11

12         m.      *First-of-its-Kind Partnership between Theranos and AmeriHealth Caritas*

13 *to Improve Health Care for the Underserved*, which contained the following statement (emphasis

14 added):

15             Theranos is **leading transparency in lab testing**, including
              voluntarily committing to FDA review of all of its LDTs and
16             publishing its prices, lab proficiency testing scores, customer
              satisfaction scores, guest visit times, and more.  **Theranos offers a**
17             **full spectrum of laboratory tests, from the most common**
              **panels to highly specialized tests, on smaller samples than**
18             **traditional labs.**[22]

19         n.      *Theranos Receives CLIA Waiver, Paving the Way for Greater*

20 *Accessibility of Health Information at the Time and Place it Matters*, which included the

21 following statement:

22

23 [20]     July 3, 2015, available at https://news.theranos.com/2015/07/03/theranos-recognizes-milestone-
   in-new-era-of-preventive-health (last accessed Nov. 23, 2016).

24 [21]     July 8, 2015, available at https://news.theranos.com/2015/07/08/theranos-and-capital-bluecross-
25 team-up-to-provide-innovative-low-cost-accessible-lab-testing-services-in-centralpennsylvania (last
   accessed Nov. 23, 2016).

26 [22]     July 15, 2015, available at https://news.theranos.com/2015/07/15/first-of-its-kind-partnership-
27 between-theranos-and-amerihealth-caritas-to-improve-health-care-for-the-underserved (last accessed
   Nov. 23, 2016).

- 24 -

28 ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

FDA has concluded that the Theranos test and technology is eligible for waiver under CLIA.  The waiver means FDA determined the Theranos test and technology is reliable and accurate and can be used in a broader set of locations outside of a traditional CLIA certified laboratory, including Theranos Wellness Centers.[23]

o.   *Theranos Hosts Vice President Biden for Summit on a New Era of Preventive Health Care*, which included the following:

Vice President Biden, along with industry leaders who participated in the summit, saw firsthand Theranos' laboratory as well as its proprietary systems on which it runs its groundbreaking finger stick blood tests.  In addition, the group toured the manufacturing facility where its proprietary systems are manufactured.  The FDA recently cleared Theranos' HSV-1 test as well as the finger stick blood test technology and underlying system on which the test is run, and approved a waiver that paves the way for putting Theranos' tests in the field at point of care, a major milestone for the company and the national preventive care landscape.

Selected Highlights from the Summit

Vice President Biden...”[T]his is the laboratory of the future””Talk about being inspired.  This is inspiration.  It is amazing to me, Elizabeth, what you've been able to do”“I know the FDA recently completed favorable reviews of your innovative device.  The fact that you're voluntarily submitting all of your tests to the FDA demonstrates your confidence in what you're doing.”[24]

p.   *Theranos' Holmes Marks 50th Anniversary of Medicare and Medicaid with Vision for Next 50 Years* (“The FDA recently cleared Theranos' finger stick blood test technology and underlying system on which those tests are run,…”).[25]

---

[23]     July 16, 2015, available at https://news.theranos.com/2015/07/16/theranos-receives-clia-waiver-paving-the-way-for-greater-accessibility-of-health-information-at-the-time-and-place-it-matters/(last accessed Nov. 23, 2016).

[24]     July 23, 2015, available at https://news.theranos.com/2015/07/23/theranos-hosts-vice-president-biden-for-summit-on-a-new-era-of-preventive-health-care (last accessed Nov. 23, 2016).

[25]     July 30, 2015, available at https://news.theranos.com/2015/07/30/theranos_holmes_marks_50th_anniversary_of-_medicare_and_medicaid_with_vision_for_next_50_years (last accessed Nov. 23, 2016).

**ANSWER TO ¶ 31:**

Defendants admit that Theranos issued the press releases referenced in Paragraph 31. Defendants further respond that to the extent the allegations in Paragraph 31 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 31.

**COMPLAINT ¶ 32:**

Defendants' narrative was also conducted by an "endless infomercial" of hundreds of articles and interviews in newspapers, press, online and conferences, including:[26]

    a.    *Walgreens Buys More Drugstores While Expanding Lab Services For Obamacare.*[27]

    b.    What Health Care Needs is a Real-Time Snapshot of You, which included the following:

> Getting your blood drawn by Theranos doesn't require needles, large vials, or tubing. . . .  Theranos is already making this vision a reality.  Their partnership with Walgreens will bring the new testing service to stores nationwide.[28]

    c.    *One Tiny Drop Changes Everything, Elizabeth Holmes, Founder & CEO, Theranos in conversation with Caitlin Roper*, an interview which included the following:

> Holmes:  "We built the first laboratory capable of processing any of our laboratory tests from a tiny droplet of blood or what we call a microsample, so that for the first time people can get any of the

---

[26]    For a fairly comprehensive list see Bruce Quinn MD, PhD, *Theranos: A Library of Articles and Links 2006-2016* (Dec. 24, 2014), Discoveries in Health Policy, available at http://www.discoveriesinhealthpolicy.com/2014/12/theranos-some-recent-journalism.html (last accessed Nov. 23, 2016).

[27]    Sept. 13, 2016, available at http://www.forbes.com/sites/brucejapsen/2013/09/10/walgreen-buys-more-drugstores-while-expanding-services-for-obamacare/#57d00ae32be0 (last accessed Nov. 23, 2016).

[28]    Nov. 6, 2013, available at https://www.wired.com/2013/11/wired-data-life-theranos (last accessed Nov. 23, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

laboratory tests that we do from a finger stick instead of from a phlebotomy. . . ."[29]

d.    *Get Your Blood Tested at the Store*, which included the following:

A Silicon Valley lab-testing company will open clinics inside two metro Phoenix Walgreens stores today, part of a planned nationwide expansion for the startup diagnostics company.

Theranos of Palo Alto, Calif., says its automated technology allows blood draws that are quicker and less expensive than labs used by hospitals or large doctors practices.  The company said a typical test requires a few drops of blood compared with the vials' worth often required by a traditional lab. . . .

Wade Miquelon, Walgreens chief financial officer, described Theranos' Holmes as a "disruptive force" whom he believes will change the lab-testing industry.

"She can do it much cheaper, more accurately and in a shorter period of time," said Miquelon, who would not disclose the financial terms of the in-store testing partnership.  "That's a very disruptive force to the space.  She has made the process better."[30]

e.    *Creative Disruption?  She's 29 and Set to Reboot Lab Medicine, Elizabeth Holmes plans to revolutionize testing by using tiny blood draws and offering near instantaneous results*, which included the following:

In an exclusive interview, Ms. Holmes talks to Medscape Editor-in-Chief Eric J. Topol, MD, about the current availability of the "finger prick, painless" test developed for "every test that is recognized by Medicare" which have been validated and verified " over the years, and will be available through "recently announced" partnership with Walgreens "across the country."  Also claiming "We can, on a given sample, automatically run to other assay methodologies that traditionally would require a separate draw, which means that if something is out of range, we can, on the same sample, run tests that a physician would like to have ordered to better figure out why it's out of range."[31]

---

[29]    Nov. 6, 2013, available at http://library.fora.tv/2013/11/06/one_tiny_drop_changes_everything (last accessed Nov. 23, 2016).

[30]    Nov. 13, 2013, available at http://archive.azcentral.com/business/news/articles/20131113get-your-blood-tested-store.html (last accessed Nov. 23, 2016).

[31]    Nov. 18, 2013, available at http://www.medscape.com/viewarticle/814233_2 (last accessed Nov. 23, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

f.      *This Woman Invented a Way to Run 30 Lab Tests on Only One Drop of Blood.*  In this interview.  Holmes stated:

> *And this can be very helpful for doctors and patients, because it means that someone could, for example, go to a Walgreens in the morning to get a routine test for something their doctor is tracking, and the physician can have the results that afternoon when they see the patient.  And we're able to do all the testing using just a single microsample, rather than having to draw a dedicated tube for each type of test.*

> So if I got a blood test and my doctor saw the results and wanted other tests done, I wouldn't have to have more blood drawn?

> *Exactly.  And on their lab form, the physician can write, "If a given result is out of range, run this follow-up test."  And it can all be done immediately, using that same sample.*

> Some conventional tests, like pH assays, can be done quickly. Others, like those that require culturing bacteria or viruses, can take days or even weeks.  Are there some tests that take Theranos longer?  **Can everything really be turned around in four hours?**

> *Yes, we had to develop assays or test methodologies that would make it possible to accelerate results.  So we do not do things like cultures.  In the case of a virus or bacteria, traditionally tested using a culture, we measure the DNA of the pathogen instead so we can report results much faster.*[32]

g.      *Forget Vials of Blood – New Tests Require Just One Drop, How a Stanford dropout is revolutionizing the blood-testing industry* ("With just a single, tiny drop of blood in Theranos' 'nanotainer' tube, which is smaller than a dime, almost 200 conditions can be tested for, including blood typing, cholesterol, HIV, syphilis, and respiratory virus….The big draw of course, is that there is none."):[33]

---

[32]      Feb. 18, 2014, available at https://www.wired.com/2014/02/elizabeth-holmes-theranos (last accessed Nov. 23, 2016).

[33]      Feb. 28, 2014, available at http://www.takepart.com/article/2014/02/28/meet-stanford-dropout-revolutionizing-blood-tests (last accessed Nov. 23, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC



h.    At a presentation before the Arizona Senate Health and Human Services Committee, Balwani stated and showed on a slide presentation that Theranos was "able to provide a *majority of the testing from only two or three drops of blood*," and although those drops of blood could be taken from a traditional venipuncture, "most likely patients will prefer a simple finger stick, and we are able to do that."  Balwani also touts the partnership with Walgreens and states "we have already launched this service in Arizona."[34]

i.    Theranos director David Boies stated in court that Theranos could "run a full battery of blood tests . . . by just taking small drops, a few drops of blood."  He continued, "[y]ou don't have to go to [the] doctor and have them take it out of your arm the way they do traditionally."[35]

j.    *This CEO is out for blood*, which included the following:

Theranos runs what's called a high-complexity laboratory, certified by the federal Centers for Medicare & Medicaid Services (CMS),

---

[34]    Mar. 12, 2014, available at http://azleg.granicus.com/MediaPlayer.php?clip_id=13816 (last accessed 11/25/16).

[35]    Oct. 16, 2016, WSJ, *Hot Startup Theranos Has Struggled With Its Blood-Test Technology Silicon Valley lab, led by Elizabeth Holmes, is valued at $9 billion but isn't using its technology for all the tests it offers,* http://www.wsj.com/articles/theranos-has-struggled-with-blood-tests-1444881901 (last accessed 11/25/16).

Answer to Class Action Complaint For Violations of California's Securities, Unfair Competition, and Common Laws
Case No. 5:16-cv-06822-NC

and it is licensed to operate in nearly every state.  It currently offers more than 200–and is ramping up to offer more than 1,000– of the most commonly ordered blood diagnostic tests, all without the need for a syringe….

"I just think this is so exciting," says Mark Laret, the CEO of UCSF Medical Center, about what he's seen so far.  "I mean, here it is.  This is the true transformation of health care, right here in front of us."[36]

k.    *Elizabeth Holmes, Who Wants To Shake Up The Blood Testing Industry, Is A Billionaire At 30*, which included the following (emphasis added):

Elizabeth Holmes who *developed a way to quickly diagnose a few drops of blood with minimal draw at* a fraction of the price of commercial labs, is a billionaire….Last September, Walgreen WAG +%, the largest retail pharmacy with more than 8,100 stores, announced plans to roll out Theranos Wellness Centers inside its pharmacies.  So far, there is one center at Walgreens in Palo Alto, and 20 in Arizona.  In addition, *UCSF Medical Center, Dignity Health, and Intermountain Healthcare have signed on with Theranos to deploy its services at their facilities.  The company has also generated revenue by working with drug companies in clinical trials by providing quick results for blood tests.*[37]

l.    *Theranos:  Small Sample, Big Opportunity* ("Countless banners displaying statements such as 'welcome to a revolution in lab testing' and 'one tiny drop changes everything' were spread throughout the store making it immediately clear that I had arrived at the right place.").[38]

---

[36]    June 12, 2014, available at http://www.takepart.com/article/2014/02/28/meet-stanford-dropout-revolutionizing-blood-tests. Laret later admitted he had "no information" about Theranos's technology, but had great respect for Ms. Holmes and the company's board. Oct. 29, 2015, New York Times, *The Narrative Frays for Theranos and Elizabeth Holmes*, available at http://www.nytimes.com/2015/10/30/business/the-narrative-frays-for-theranos-and-elizabeth-holmes.html?_r=0 (last accessed Nov. 25, 2016).

[37]    June 17, 2014, available at http://www.forbes.com/sites/zinamoukheiber/2014/06/17/elizabeth-holmes-who-wants-to-shake-up-the-blood-testing-industry-is-a-billionaire-at-30/#590f14a15675 (last accessed Nov. 25, 2016).

[38]    June 20, 2014, available at http://www.decibio.com/blog/2014/06/20/theranos-small-sample-big-opportunity (last accessed Nov. 26, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

m. *Theranos 'Nanotainer' revolutionizes blood testing*.  In this interview, Holmes states:

> "Over the last 10 years Theranos has worked to redevelop all of the tests run in a traditional laboratory to be able to take a tiny sample, a few droplets of blood, instead of the big tubes that are traditionally drawn from an arm."[39]

n. *Quinn:  Meet Elizabeth Holmes, Silicon Valley's latest phenom* ("Over the past year, Holmes has embraced a more public profile, recently snagging the cover of Fortune magazine in what bore all the hallmarks of a carefully orchestrated media push.").[40]

o. *Theranos bringing 500 new jobs to Scottsdale's SkySong* ("The company's proprietary technology allows blood tests to use a tiny drop of blood from a finger pinprick, offering a painless way for patients to get their blood tested, said Elizabeth Holmes blood tested, said Elizabeth Holmes.").[41]

p. *Meet Elizabeth Holmes, the Youngest Female Self-made Billionaire Changing the World with Medical Technology*.[42]

q. *How One Entrepreneur is Transforming Blood Testing*.[43]

r. *She's America's youngest female billionaire – and a dropout*, (Video interview of Holmes claiming they are doing all their tests on own platform and reinvented all the chemicals to run tests.  Also claims certified as a high complexity lab.).[44]

---

[39]     July 8, 2014, available at http://www.usatoday.com/videos/tech/2014/07/08/12270761 (last accessed Nov. 26, 2016).

[40]     July 14, 2014, available at http://www.mercurynews.com/2014/07/14/quinn-meet-elizabeth-holmes-silicon-valleys-latest-phenom/ (last accessed Nov. 26, 2016).

[41]     July 15, 2014, available at http://www.bizjournals.com/phoenix/blog/health-care-daily/2014/07/theranos-to-hire-500-expands-into-scottsdales.html?page=all (last accessed Nov. 26, 2016).

[42]     July 21, 2014, available at http://womensilab.com/2014/07/21/wilab-spotlight-elizabeth-holmes/(last accessed Nov. 26, 2016).

[43]     Oct. 1, 2014, available at http://www.slate.com/blogs/business_insider/2014/10/01/theranos_elizabeth_holmes_painless_blood_testing_invention_makes_her_third.html (last accessed Nov. 26, 2016).

[44]     Oct. 16, 2014, available at http://money.cnn.com/2014/10/16/technology/theranos-elizabeth-holmes/ (last accessed Nov. 26, 2016).

- 31 -

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1          s.    *Walgreen:  Tech-Savvy Investments Mean Major Upside for WAG Stock*

2   ("The single biggest catalyst for WAG stock in the future may be the company's decision to

3   partner with the privately held health-tech firm Theranos.").[45]

4          t.    *A Conversation with Elizabeth Holmes at MPW Next Gen*, a video which

5   included the following:

> Holmes discussed the fact that Theranos uses "tiny drops of blood
> from the finger as opposed to vials and vials of blood coming from
> the arm."  Plan is to be 5 miles from everyone's home in 5 years.
> Spent the last 11 years to make sure data is "actionable", "of the
> highest integrity available."  Holmes stated that "[w]hereas
> traditional labs . . . have not ever submitted any of their laboratory-
> developed tests to FDA, we think it's really important" and "so
> we're doing that."[46]

11         u.    *Blood, Simpler.  One Woman's Drive to Revolutionize Medical Testing*,

12  which included the following:

> Holmes says that Theranos has a positive cash flow; it is clearly
> expanding.  For many years, it has earned income from large
> pharmaceutical companies, including Pfizer and GlaxoSmithKline,
> which use its tests when they are conducting clinical trials on new
> drugs.  It also earns revenue from the "wellness centers" that it has
> set up in Walgreens stores, its hospital work, and the U.S. military,
> although Holmes would not discuss the company's arrangements
> with the latter.

> When I asked Holmes for evidence that her tests were
> independently audited, she said that there have been "tens" of
> audits and "external third-party comparisons" of Theranos' tests,
> including those done by the hospital groups that are adopting its
> finger-prick tests and the pharmaceutical companies that have
> contracted with Theranos for testing their products. . . .  Holmes
> also pointed me to a pilot study published by Hematology Reports,
> an online-only peer-reviewed journal; she is listed as a co-author.

---

[45]      Nov. 17, 2014, available at http://investorplace.com/2014/11/walgreen-wag-stock-healthcare-theranos/%20-%20.WDNyrLIrIkJ#.WDnuBU3FCUk (last accessed Nov. 26, 2016).

[46]      Dec. 8, 2014, available at https://www.youtube.com/watch?v=vsSt-tiFuCQ (last accessed Nov. 26, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    The report, released in April, concluded that Theranos tests
2    "correlated highly with values obtained" from standard lab tests.[47]

3       v.   *Elizabeth Holmes, Theranos:  Transforming Healthcare by Embracing*

4    *Failure* This interview discusses Theranos today, the qualifications of the Board, and attacks

5    other labs.  Claims have validated "every single one of "our tests" and have submitted them to

6    the FDA.  "You take a bunch of finger sticks, and you take a bunch of straws and see if they're

7    the same."  It's "not a challenge to the company so much as a commitment.").[48]

8       w.   *Breakthrough Branding:  Theranos, with Walgreens, Revolutionizes*

9    *Healthcare*.  This article repeats narrative from other articles and posts, along with company-

10   created videos of companies and patients touting Theranos).[49]

11      x.   *Disruptive Technology Main Focus at Clinton Health Matters Conference*,

12   which states:  "Access to health information is a basic human right," said Elizabeth Holmes, a

13   young Silicon Valley entrepreneur who founded Theranos, a blood analytics and diagnostics

14   company.  [President] Clinton, who applauded her work to provide low-cost testing to the

15   general public, said the company is valued at $9 billion.).[50]

16      y.   *New Programs and Strategic Partnerships Announced at Fourth Annual*

17   *Health Matters Activation Summi; Clinton Health Matters Initiative brings together hundreds of*

18

---

19   [47]    Dec. 15, 2014, available at http://www.newyorker.com/magazine/2014/12/15/blood-simpler (last
20   accessed Nov. 26, 2016). *See also Theranos didn't work with the huge drug company it supposedly made
     money from, huge drug company says*, available at
     http://www.theverge.com/2015/10/26/9618390/Theranos-glaxosmithkline-denies-partnership-pfizer-
21   blood-test (last accessed Nov. 26, 2016) ("I cannot find any evidence that we've done business with them
     in recent years," a spokesperson for GSK told The Financial Times. Pfizer, on the other hand, told The
22   Financial Times that the company's dealings with Theranos were limited. "We've done only very limited
     historical exploratory work with Theranos through a few pilot projects," the Pfizer representative said,
23   "and we do not have any current or active projects with them").

24   [48]    Jan. 28, 2015, available at https://www.youtube.com/watch?v=hLTAFbKbC8w (last accessed
     Nov. 26, 2016

25   [49]    Feb. 3, 2015, available at http://brandchannel.com/2015/02/03/breakthrough-branding-theranos-
26   with-walgreens-revolutionizes-healthcare/ (last accessed Nov. 26, 2016).

     [50]    Feb. 5, 2015, available at http://californiahealthline.org/news/disruptive-technology-main-focus-
27   at-clinton-foundations-health-matters-conference/ (last accessed Nov. 26, 2016).

- 33 -

28

*leaders from across sectors to announce strategic partnerships to impact the health and wellness of Americans* (Holmes billed as top participant after Clinton).[51]

z.   *Meet the Most Impressive Woman on Forbes' Female Billionaire List* ("Holmes' company seeks to help democratize healthcare.  Her modus operandi is through revolutionizing blood testing.  Theranos blood tests are not only technologically superior to traditional blood tests — they are painless and can detect multiple ailments using about one one-hundredth to one one-thousandth the amount of blood normally required, according to Fortune — but they are, most notably, far more affordable…").[52]

aa.   *Comment to Docket No. FDA-2011-D-0360, Draft Guidance for Industry, Food and Drug Administration Staff, and Clinical Laboratories:  Framework for Regulatory Oversight of Laboratory Developed Tests (LDTs)* (Boosts that Theranos is voluntarily submitting their proprietary tests to the FDA, has had positive interactions with FDA and Theranos commitment to the "ensure all of our tests meet the highest standards of quality…").[53]

bb.   *Health care in America:  Shock treatment, A wasteful and inefficient industry is in the throes of great disruption.*[54]

cc.   Cleveland *Clinic taps Theranos, bets on cheaper diagnostics* (Article as a result of joint Theranos Cleveland Clinic press release stating Cleveland Clinic "partnered with Theranos to use the startup's diagnostic technology that can take a drop of blood from the finger and screen for a spectrum of conditions and diseases at half the price of Medicare.").[55]

---

[51]   Jan. 26, 2015, available at https://www.clintonfoundation.org/press-releases/new-programs-and-strategic-partnerships-announced-fourth-annual-health-matters (last accessed Nov. 26, 2016).

[52]   Mar. 12, 2015, available at https://mic.com/articles/111622/meet-the-most-impressive-woman-on-forbes-female-billionaire-list#.cDBtIwKJu (last accessed Nov. 26, 2016).

[53]   Mar. 1, 2015, available at https://ww.theranos.com/content/pdf/theranos_comment_ldt_guidance.pdf (last accessed Nov. 26, 2016).

[54]   Mar. 7, 2015, available at http://www.economist.com/news/business/21645741-wasteful-and-inefficient-industry-throes-great-disruption-shock-treatment (last accessed Nov. 26, 2016).

[55]   Mar. 9, 2015, available at http://www.healthcarefinancenews.com/news/cleveland-clinic-taps-theranos-bets-cheaper-diagnostics (last accessed Nov. 26, 2016).

- 34 -

1          dd.    BruceDocumentBlog, *Fox Interviews Theranos and Cleveland Clinic*

2    (Video and Transcript of FoxBusiness interview of Holmes and Cleveland Clinics Toby

3    Cosgrove MD discussing why they are teaming up.  TC:  "Theranos has developed some new

4    technology with and the opportunity to reduce the cost and trauma of lab tests.  A real game

5    changer...and people won't be afraid of a finger prick…Think about a new born baby, if you can

6    do a two drop heel prick, a huge advantage.  Tremendous potential."  EH:  "We can do

7    combinations of tests from tiny samples.  We redeveloped the whole [what hospital labs used to

8    do] infrastructure.  It's a privilege to partner with Cleveland Clinic").[56]

9          ee.    Crain's Cleveland Business, *Cleveland Clinic enters 'long-term strategic*

10    *alliance' with Theranos Inc.* (Reiterating press release and stating, "Clinic plans to use Theranos'

11    tests on its own patient populations.  Theranos — a company now valued at about $9 billion —

12    is known for its blood tests that require only a few drops of blood, eliminating the need for larger

13    needles and numerous vials of blood required for many diagnostic lab tests.").[57]

14          ff.    *Theranos seeks FDA approval for early-detection Ebola test—George*

15    *Schultz*, which included the following:

16          George Shultz, a former U.S. secretary of state and current
    Theranos board member, let slip Friday that the company is
17          seeking approval from the Food and Drug Administration for a test
    that can spot Ebola early.

18          Shultz revealed the information while moderating a discussion at
19          Stanford University.  Theranos founder and CEO Elizabeth
    Holmes then said, "We're working with the agency.  *We have a*
20          *very good relationship with the agency.*"[58]

21

22

23         [56]    Mar. 9, 2015, available at http://brucedocumentblog.blogspot.com/2015/03/march-9-2015-fox-
24    interviews-theranos.html (last accessed Nov. 26, 2016).

25         [57]    Mar. 9, 2015, available at
    http://www.crainscleveland.com/article/20150309/FREE/150309848/cleveland-clinic-enters-long-term-
26    strategic-alliance-with-theranos (last accessed Nov. 26, 2016).

27         [58]    Mar. 13, 2015, available at http://www.bizjournals.com/sanjose/news/2015/03/13/theranos-seeks-
    fda-approval-for-early-detection.html?page=all (last accessed Nov. 26, 2016).

28    ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
    COMPETITION, AND COMMON LAWS
    Case No. 5:16-cv-06822-NC

gg.     *Theranos:  Elizabeth Holmes TEDMED 2014*, a video which included the following:

> Holmes said that Theranos had "made it possible to run comprehensive laboratory tests from a tiny sample or a few drops of blood that could be taken from a finger" and had "made it possible to eliminate the tubes and blood that traditionally have to be drawn from an arm and replaced with the nanotainer."[59]

hh.     *Patients can soon get lab tests without doctors' orders*.  (Holmes attending Arizona bill signings and stating, "[E]xpanded testing options puts more people in charge of their health care--- *to order tests and make health decisions* before chronic disease starts, not after.).[60]

ii.     *The 100 Most Influential People*, an article written by former U.S. Secretary of State and Theranos board Member, Henry A. Kissinger stating (emphasis added):

> Elizabeth Holmes' is a story that could happen only in America... Elizabeth accepted only one option:  making a difference. Striking, somewhat ethereal, iron-willed, she is on the verge of achieving her vision—through *a new method of blood testing that significantly reduces costs, tests for a whole range of infections and is mobile and can therefore be easily transported to underdeveloped regions*... She manages *an expanding global business* by the refusal to be daunted by any obstacle....Elizabeth is in the process of turning an undergraduate's vision into *a global reality.*[61]

jj.     *The world's youngest self-made female billionaire*, which states:

> Elizabeth Holmes was named to this years' TIME 100 list of the world's most influential people Thursday.  She's being compared to visionaries like Bill Gates and Steve Jobs.  Just as Gates wanted a computer on every desk, Holmes wants a blood test in every drug-store...
>
> Her company, Theranos, has created what they call a painless, needle-free way to draw blood and test it -- for a fraction of Medicare costs.... "We've created these little tiny tubes, which we call the 'nanotainers,' which are designed to replace the big,

---

[59]     Mar. 13, 2015, available at https://www.youtube.com/watch?v=kZTfgXYjj-A (last accessed Nov. 26, 2016).

[60]     Apr. 7, 2015, available at http://www.azcentral.com/story/money/business/consumer/2015/04/07/patients-can-soon-get-lab-tests-without-doctors-orders/25413251/ (last accessed Nov. 26, 2016).

[61]     Apr. 16, 2015, available at http://time.com/3822734/elizabeth-holmes-2015-time-100/ (last accessed Nov. 26, 2016).

- 36 -

traditional tubes that come from your arm, and instead allow for all the testing to be done from a tiny drop from a finger," Holmes

Some critics argue the Theranos method doesn't extract enough blood to do all the tests it claims.

"Every time you create something new, there should be questions, and to me that's a sign that you've actually done something that is transformative," Holmes said.

"Making it *possible to do tests on tiny samples*; any cancer patient, any child, any elderly person whose veins collapse will tell you not having to have their blood drawn that way *is a big deal*," Holmes said.[62]

kk.   *Holmes CBS Morning News Interview.*[63]

ll.   *Theranos sticks it to critics, plans expansion of lab services (Video)*

(Theranos changes message stating, that it can now draw blood in larger quantities for "specialty" blood tests).[64]

mm.   *Theranos jump-starts consumer lab testing* ("My last routine blood tests, drawn at my physician's office . . . cost me $433 out of pocket, even after application of my "gold"-level insurance. . . .   Had I not been insured, the lab's price for those tests would have been $2,411, according to the explanation of benefits sent me.  The same tests, according to Theranos' price menu, would have cost me $75.").[65]

nn.   *Elizabeth Holmes Interview (Video)*:  Video interview of Holmes by Charlie Rose, including transcript.  In the interview, Holmes sticks to her narrative of small

---

[62]     Apr. 16, 2015, available at http://www.cbsnews.com/news/elizabeth-holmes-youngest-self-made-female-billionaire-revolutionize-health-care/ (last accessed Nov. 26, 2016).

[63]     Apr. 20, 2015, available at http://brucedocumentblog.blogspot.com/2015/04/april-17-2015-holmes-cbs-morning-news.html (last accessed Nov. 26, 2016).

[64]     May 5, 2015, available at http://www.bizjournals.com/sanfrancisco/blog/biotech/2015/05/theranos-elizabeth-holmes-quest-labcorp-lh-dgx.html?page=all (last accessed Nov. 26, 2016).

[65]     May 7, 2015, available at http://fortune.com/2015/05/07/theranos-jump-starts-consumer-lab-testing/ (last accessed Nov. 26, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1  sample from a prick, but slides in, as she did a month earlier, that they may be doing some tests

2  traditionally:

3          Charlie Rose:  The process is easier because you just prick your
        finger.  You don't have to have the kind of blood test that scares

4          some people --

5          Elizabeth Holmes:  Myself included, yes.

6          Charlie Rose:  -- in drawing a vial of blood.

7          Elizabeth Holmes:  Yes.  *And we focused on smaller samples,
        period.*  So for urine, for other types of major -- for bloods we can

8          do drops from a finger.  *We can also take blood from the arm and
        just take less blood than would traditionally be required in a venal*

9          *puncture...*

10  Holmes sticks to her narrative about accuracy of the proprietary tests:

11          Charlie Rose:  Part of this is about process.  It is also about
        science, I assume.  You get the same results that you get through

12          Theranos if, in fact, you went to a doctor and had him take a vial of
        blood from your veins.

13

14          Elizabeth Holmes:  We do.

15          Charlie Rose:  You get the same results.

16          Elizabeth Holmes:  We do.

17          Charlie Rose:  Or they would give you the same results as you get
        from a prick of the finger.

18

19          Elizabeth Holmes:  Yes....

20  Holmes then evades answering any question about the technology, other than the narrative than

21  that the chemistry, hardware and processes are all "redeveloped";

22          Charlie Rose:  What's the science, what is the scientific change
        that allows you to do this?  What did you discover, find, create that

23          enabled to you get the same results in an easy way?

24          Elizabeth Holmes:  There are many elements to it.  One is you
        know, test by test, *redeveloping the chemistry that is used in the*

25          *traditional laboratory framework to be able to work on smaller
        samples.  Another is, having to redevelop the hardware that those*

26          *tests are run on.  The software, and for automating laboratory
        processes is another.*  The collection technology in terms of the

27          tiny tubes is another

28

- 38 -

oo.     *With Carlos Slim, Billionaire Elizabeth Holmes Brings Innovative Blood Testing Method To Mexico*, which included:

> With [Carlos]Slim Helú at her side, Holmes, founder and CEO of Theranos, said in Mexico City that with the technology her company has developed, it is possible to carry out, with a single drop of blood drawn with a pin prick and next to no pain, a very broad number of lab tests at very low cost, making it an accessible method for the entire population.

> Theranos can quickly test a drop of blood at a fraction of the price of commercial labs, and can run up to 70 different tests.

pp.     *Theranos' new deal with billionaire Carlos Slim may take it to another level.*[66]

qq.     *Disruptive diagnostics firm Theranos gets boost from FDA.*[67]

rr.     *Biden visits Theranos lab as part of healthcare innovation summit*, which states in part:

> Talk about being inspired," [Vice President] Biden said, according to statements provided by Theranos.  "This is inspiration.  It is amazing to me, Elizabeth, what you've been able to do.  What's most impressive to me is you're not only making these lab tests more accessible ... empowering people whether they live in the barrio or a mansion, putting them in a position to help take control of their own health."[68]

ss.     *World's Youngest Billionaire - Another Steve Jobs?*, which includes the following:

> "This is a revolutionary company that threatens to change healthcare the same way that Amazon changed retail or Intel and

---

[66]     June 23, 2015, available at http://www.bizjournals.com/sanfrancisco/blog/biotech/2015/06/theranos-carlos-slim-foundation-mexico-casalud.html (last accessed Nov. 26, 2016).

[67]     July 2, 2015, available at http://fortune.com/2015/07/02/theranos-fda-approval/ (last accessed Nov. 26, 2016).

[68]     July 24, 2015, available at http://www.usatoday.com/story/tech/2015/07/24/biden-visits-theranos-lab-part-healthcare-innovation-summit/30634739/ (last accessed Nov. 26, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

Microsoft changed computing, or Apple changed the cellphone," the "Mad Money" host said.[69]

tt.  *Elizabeth Holmes On Using Business To Change The World.*[70]

uu.  *Self-Made Billionaire Elizabeth Holmes on Re-Inventing Blood Tests: "It's Like Cocaine."*[71]

vv.  *How Theranos is Disrupting the Health Care Industry* ("A cholesterol test is $2.99, was it could cost hundreds in other locations. . . .  The response from the lab industry, they have so aggressively seeded false information about us into the press, into journalists, into physicians in the market we are in.").[72]

ww.  *CME Group Announces Elizabeth Holmes as the 2015 Melamed-Arditti Innovation Award Recipient*, which states:

> "It is an honor and a privilege to receive this award, and be named among the many other talented and innovative leaders who have come before me," said Elizabeth Holmes, founder and CEO of Theranos.  "Innovation and technology should be used to address the world's greatest challenges.  At Theranos, our mission is to make actionable health information accessible to everyone at the time it matters. *This award recognizes our success in using technological innovations in laboratory testing to make tests more accessible – both logistically and financially – and less painful*, which will help facilitate early detection and prevention of disease.[73]

---

[69]  Sept. 23, 2015, available at http://www.cnbc.com/2015/09/23/worlds-youngest-female-billionaire-next-steve-jobs.html (last accessed Nov. 26, 2016).

[70]  Oct. 5, 2015, available at http://www.forbes.com/sites/sarahhedgecock/2015/10/05/elizabeth-holmes-on-using-business-to-change-the-world/#76449a82202f (last accessed Nov. 26, 2016).

[71]  Oct. 6, 2015, available at http://www.vanityfair.com/news/2015/10/elizabeth-holmes-theranos-ceo (last accessed Nov. 26, 2016).

[72]  Oct. 6, 2015, available at http://www.bloomberg.com/news/videos/2015-10-06/how-theranos-is-disrupting-the-health-care-industry (last accessed Nov. 26, 2016).

[73]  Oct. 12, 2015, available at http://www.marketwatch.com/story/cme-group-announces-elizabeth-holmes-as-the-2015-melamed-arditti-innovation-award-recipient-2015-10-12 (last accessed Nov. 26, 2016).

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    **ANSWER TO ¶ 32:**

2           To the extent the allegations in Paragraph 32 are based on the contents of written

3    documents or recordings, Defendants admit that, to the extent such allegations accurately reflect

4    the contents of the documents or recordings, such statements exist, and otherwise deny them.

5    Defendants deny that Plaintiffs' characterization of the documents and recordings is accurate,

6    and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in

7    Paragraph 32.

8    **COMPLAINT HEADING V.D:**

9           Promises on Theranos' Website and in Walgreens' Stores, and an Advertisement Were

10   Also Used to Court Investors and Promote the "Narrative"

11   **ANSWER TO COMPLAINT HEADING V.D:**

12          Defendants deny the allegations in Complaint Heading V.D.

13   **COMPLAINT ¶ 33:**

14          In addition to the above representations and promises, Theranos filled the Walgreens

15   stores with promises, and published advertisements that promoted the "Narrative."  At the

16   Walgreens Wellness Centers, Theranos promised:



17

18

19

20

21

22

23

24

25

26

27

28

1

**ANSWER TO ¶ 33:**

2

3         Defendants admit that Theranos advertisements appeared in Walgreen Co. stores

4    containing Theranos Wellness Centers.  Defendants further answer that to the extent the

5    allegations in Paragraph 33 are based on the contents of written documents or advertisements,

6    Defendants admit that, to the extent such allegations accurately reflect the contents of the

7    documents and advertisements, such statements exist, and otherwise deny them.  Defendants

8    deny that Plaintiffs' characterization of the documents and advertisements is accurate, and deny

     Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 33.

9    **COMPLAINT ¶ 34:**

10       The key feature Theranos used to market its tests and differentiate itself was that it

11   brought a new technology and approach to the staid, established blood test industry, with its

12   tagline being, "one tiny drop changes everything."  This theme was prominent in its

13   advertisements:  Theranos boasted it could analyze samples as small as 1/1,000 the size of the

14   typical blood draw and perform tests on any sample type, including blood, urine, and other

15   samples.  "It's fast, easy, and the highest level of quality," Theranos informed prospective

16   customers.  Theranos stressed it used smaller samples and less invasive techniques, pushing this

17   difference in advertisements and on company web pages:

18

19       **goodbye, big bad needle.**

20       Instead of a huge needle, Theranos-trained technicians can use a tiny finger stick[2] or   
         collect a micro-sample from a venous draw.[2] It's practically painless and a lot less
         scary. Now the entire lab testing process is comfortable, accommodating, and less
21       intimidating—for people big and small.

22

23

24

25

26

27

28

Smaller sample. Massive impact.

Oncology

Smaller samples are better for cancer patients. Making it easier for them to get tested when needed.

Pediatrics

Smaller samples are better for children. Minimizing the fear and pain associated with traditional labs.

Geriatrics

Smaller samples are better for older patients. Who can have difficulty with collapsed veins.

**ANSWER TO ¶ 34:**

Defendants admit that Theranos developed innovative proprietary technology for performing tests on microsamples of blood and other sample types.  Defendants further answer that to the extent the allegations in Paragraph 34 are based on the contents of written documents or advertisements, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents and advertisements, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents and advertisements is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 34.

**COMPLAINT ¶ 35:**

Despite using tests requiring only a little blood, Theranos promised consumers it could still deliver the best in accuracy and quality.



**ANSWER TO ¶ 35:**

To the extent the allegations in Paragraph 35 are based on the contents of written documents or advertisements, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents and advertisements, such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents and advertisements is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 35.

**COMPLAINT ¶ 36:**

It endorsed that getting accurate results in a timely manner is essential, declaring "what you decide about your health should be informed and timely enough to protect or improve it.



1

**ANSWER TO ¶ 36:**

2

To the extent the allegations in Paragraph 36 are based on the contents of written

3

documents or advertisements, Defendants admit that, to the extent such allegations accurately

4

reflect the contents of the documents and advertisements, such statements exist, and otherwise

5

deny them.  Defendants deny that Plaintiffs' characterization of the documents and

6

advertisements is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the

7

remaining allegations in Paragraph 36.

8

**COMPLAINT ¶ 37:**

9

Theranos summed up its approach this way, "Our technology and our process are all

10

configured to put you and your preventive outcomes first."

11

**ANSWER TO ¶ 37:**

12

Defendants deny the allegations in Paragraph 37.

13

**COMPLAINT ¶ 38:**

14

Theranos claimed vigilance in providing the highest quality tests.  "We continuously

15

conduct proficiency testing and participate in multiple proficiency testing programs," and all

16

"tests are developed and validated under and to the CLSI, FDA, Centers for Disease Control and

17

World Health Organization guidelines," touting that it had "processed hundreds of thousands of

18

tests in validating our work for 10 of the 15 largest pharmaceutical companies."

19

**ANSWER TO ¶ 38:**

20

To the extent the allegations in Paragraph 38 are based on the contents of written

21

documents, Defendants admit that, to the extent such allegations accurately reflect the contents

22

of the documents, such statements exist, and otherwise deny them.  Defendants deny that

23

Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

24

issues.  Defendants deny the remaining allegations in Paragraph 38.

25

26

27

28

**COMPLAINT ¶ 39:**

Theranos claimed to have performed "more than six million tests in the nearly two years since we began serving individuals and physicians through our clinical labs," and worked with over 9,000 physicians.

**ANSWER TO ¶ 39:**

To the extent the allegations in Paragraph 39 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 39.

**COMPLAINT ¶ 40:**

Theranos also advertised its tests on Walgreen's website promising a test that would support "better, more informed treatment":



- the lab test, reinvented.

At Theranos, we're working to bring about a day when lab testing is accessible and affordable for everyone. So people can engage with their health and their physicians like never before, and no one has to say goodbye too soon.

Learn more at theranos.com ›



**ANSWER TO ¶ 40:**

Defendants admit that Theranos advertised its blood tests on Walgreen Co.'s website. Defendants further answer that to the extent the allegations in Paragraph 40 are based on the contents of written documents or advertisements, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents and advertisements, such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents and advertisements is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 40.

1  **COMPLAINT HEADING V.E:**

2      Plaintiffs and Class Invest Hundreds of Millions of Dollars in Theranos[74]

3  **ANSWER TO COMPLAINT HEADING V.E:**

4      Defendants deny the allegations in Complaint Heading V.E.  Defendants further answer

5  that to the extent the allegations in Footnote 74 to Complaint Heading V.E are based on the

6  contents of written documents, Defendants admit that, to the extent such allegations accurately

7  reflect the contents of the documents, such statements exist, and otherwise deny them.

8  Defendants deny that Plaintiffs' characterization of the documents and advertisements is

9  accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining

10  allegations in Footnote 74 to Complaint Heading V.E.

11  **COMPLAINT ¶ 41:**

12      Prior to September 2013, Defendants raised approximately $93 million dollars from four

13  rounds of investors, including one Series C round in 2010.  These early investors reportedly

14  include Draper Fisher Jurvetson (including Tim Draper and Jennifer Fonstad, July 2010), ATA

15  Ventures (including T Peter Thomas July 2010), The Lawrence J. Ellison Trust, Continental

16  Ventures or Continental Properties, Donald L. Lucas, Tako Ventures, Richard Kovacevich,

17  former Wells Fargo CEO, Thomas C. Hawes (Sandbox Industries where he manages several

18  BCBS venture funds) Bob Shapiro (SandBox Industries), Colton Dillion, Ryan Orr (Cofounder,

19  CEO Chronicled), John Levinson, Al Eisaian (2012 Series B) and The Hall Financial Group

20  (Craig Hall).

21

22

23

24  [74]      Generally, venture capital funding goes through three stages. Series A funding begins after a
25  business has shown some track record. The investors involved in the Series A round come from more
    traditional venture capital firms. Series B rounds are all about taking businesses to the next level, past the
26  development stage. In Series C rounds, investors inject capital into the meat of successful businesses. In
    Series C, groups such as hedge funds, investment banks, private equity firms and big secondary market
27  groups accompany the before-mentioned investors. Shoshann Delvanthal, *Series A, B, C Funding: What It
    All Means and How It Works*, Investopedia (Oct. 20, 2015).

28

**ANSWER TO ¶ 41:**

Defendants admit that prior to September 2013 Theranos had raised millions of dollars in capital from investors. Defendants further respond that they lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 41 that the identified "early investors" are reported to have invested in Theranos. Defendants deny the remaining allegations in Paragraph 41.

**COMPLAINT ¶ 42:**

After September 9, 2013, Defendants offered, sold or caused to be sold Theranos securities, or interests in Theranos securities, to Plaintiffs (and the Class) and raised at least $632.73 million for Theranos from Plaintiffs. Public information on Theranos securities sales is as follows:

| Date | Amount | Investors | Type | Stage | Valuation | Est. Fully Diluted Shares | Price Per Share | Deal Terms |
|------|--------|-----------|------|-------|-----------|---------------------------|-----------------|------------|
| 10/12/2015 | M | | Equity | Later Stage | - | - | $20.00 | Series C Participating Preferred |
| 03/06/2015 | $432.73M | Unknown | Equity | Later Stage | $10,451,203,979 | 614,776,704 | $17.00 | Series C Participating Preferred |
| 02/07/2014 | $200.00M | Unknown | Equity | Later Stage | $9,942,098,259 | 584,829,309 | $17.00 | Series C Participating Preferred |
| 07/01/2010 | $45.00M | ATA Ventures | Equity | Expansion | $932,731,288 | 310,910,429 | $3.00 | Series C Participating Preferred |
| 10/26/2006 | $32.36M | Draper Fisher, Jurvetson, ATA Ventures, Undisclosed Firm | Equity | Expansion | $165,400,541 | 293,263,370 | $0.56 | Series C Participating Preferred |
| 02/16/2006 | $9.10M | Draper Fisher, Jurvetson, ATA Ventures | Equity | Early Stage | $41,370,847 | 224,076,776 | $0.18 | Series B Conventional Convertible |
| 12/17/2004 | $5.82M | Draper Fisher, Jurvetson, Undisclosed Firm, | Equity | Early Stage | $23,514,579 | 156,763,864 | $0.15 | Series A Conventional Convertible |

**ANSWER TO ¶ 42:**

Defendants admit that after September 2013 Defendants sold Theranos securities to investors, raising millions in additional capital. Defendants further respond that they lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph

1   42 that the identified information on Theranos securities sales is publicly available.  Defendants

2   deny the remaining allegations in Paragraph 42.

3   **COMPLAINT HEADING V.F:**

4           Defendants' Private Solicitations are Consistently Misleading and Demonstrate Intent to

5   Mislead.

6   **ANSWER TO COMPLAINT HEADING V.F:**

7           Defendants deny the allegations in Complaint Heading V.F.

8   **COMPLAINT ¶ 43:**

9           Defendants also met privately with intermediaries, such as investment funds, to convince

10  them to solicit investors in Theranos.  For example, on December 15, 2013, three private

11  investment fund representatives who filed suit in *Partner Investments, LP et al. v. Theranos, Inc.*

12  *et al.* (the "PIM investors") had pre- and post-investment meetings with Defendants Holmes and

13  Balwani at Theranos where they tried to perform due diligence.[75]

14  **ANSWER TO ¶ 43:**

15          Defendants admit that three private investment funds filed suit against Defendants in the

16  Court of Chancery in the State of Delaware and that Balwani and Holmes met with

17  representatives of those investment funds.  Defendants further answer that to the extent the

18  allegations in Paragraph 43 and Footnote 75 thereto are based on the contents of written

19  documents, Defendants admit that, to the extent such allegations accurately reflect the contents

20  of the documents, such statements exist, and otherwise deny them.  Defendants deny that

21  Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

22  issues.  Defendants deny the remaining allegations in Paragraph 43 and Footnote 75 thereto.

23

24  [75]      *Partner Investments, LP et al. v. Theranos, Inc.* et al., No. 12816-VCL in the Court Of Chancery
of the State of Delaware (Oct. 10, 2016). The PIM investors claim to have invested in Series C-2

25  Preferred Shares at a purchase price of $17 per share on February 4, 2014, through investment funds.
PIM, HCMF and HCP claim to have purchased a total of 5,655,294 shares for a total investment of

26  $96,139,998. Specifically, PIM invested $55,479,993 for 3,263,529 shares; HCMF invested $38,336,632
for 2,255,096 shares; and HCP invested $2,323,373 for 136,669 shares and distributed interests in those

27  shares to the PIM investors.

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1   **COMPLAINT ¶ 44:**

2       Holmes and Balwani touted to the PIM investors their existing contracts with the

3   Walgreens pharmacy chain and the Safeway grocery chain, both of which were claimed to be

4   contractually committed to opening a minimum number of Theranos locations.  The Company

5   also touted their contracts with several of the country's largest healthcare provider systems.

6   Allegedly, Holmes and Balwani presented Theranos' business strategy and rollout schedule as

7   concrete, in process, and profitable, thus supporting selling its shares to the PIM investors at $17

8   per share.

9   **ANSWER TO ¶ 44:**

10      Defendants admit discussing Theranos' strategic business model, financial models

11  Theranos prepared for internal use based in part on information supplied by business partners,

12  and Theranos' relationship with Walgreen Co., Safeway, Inc. and others in the health care

13  industry with representatives of the PIM investors.  Defendants further admit that the PIM

14  investors paid $17 per share for Theranos stock.  Defendants deny the remaining allegations in

15  Paragraph 44.

16  **COMPLAINT ¶ 45:**

17      In a January 10, 2014 meeting with the PIM investors, Defendants presented a two-phase

18  rollout schedule that would ensure Theranos' national presence over the course of the following

19  two years.  In phase one, Theranos would distribute its proprietary nanotainers to testing

20  locations (including retail pharmacies, hospitals, and physicians' offices) but would maintain its

21  proprietary analyzers in offsite laboratories.  Once a patient gave blood via a finger stick, a

22  nanotainer containing the blood would be sent to a Theranos laboratory, the sample would be run

23  on Theranos' proprietary analyzers, and Theranos "guaranteed" results within four hours.  By the

24  end of 2014, any test requested by a customer—not just the "99.9%" said by Defendants to be

25  already available as of the January 2014 meeting—would be performed using a finger stick.  In

26  phase two, beginning in 2015, Theranos would install its analyzers in the testing locations

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

themselves (as opposed to testing the samples at its centralized laboratories), and patients would receive their results within 30 minutes (as opposed to four hours).

**ANSWER TO ¶ 45:**

Defendants admit that Holmes and Balwani met with representatives of the PIM investors in January 2014 during which Holmes and Balwani discussed business plans with representatives of the PIM investors.  Defendants deny the remaining allegations in Paragraph 45.

**COMPLAINT ¶ 46:**

Also on January 10, 2014, Holmes and Balwani walked the PIM investors through a PowerPoint presentation comparing test data generated on Theranos' proprietary analyzers to test data generated on traditional laboratory machines.  Holmes and Balwani represented that the Theranos data was generated on its proprietary analyzers using small samples drawn with its proprietary methods.  Holmes and Balwani stated that the majority of the tests featured in the presentation had correlation coefficients of 0.95 or higher—which, they represented, meant that they were substantially equivalent to traditional laboratory tests.  Holmes and Balwani stated that, as of that January 2014 meeting, the correlation data had been submitted to the FDA for clearance and Theranos was still working on the small number of tests that had correlation coefficients lower than 0.95.  Balwani and Holmes also stated that Theranos had filed for FDA clearance or approval of all its tests in November 2013.

**ANSWER TO ¶ 46:**

Defendants admit that they provided representatives of the PIM investors information pertaining to testing Theranos had done on its proprietary technology.  Defendants deny the remaining allegations in Paragraph 46.

1  **COMPLAINT ¶ 47:**

2      In fact only one test, a relatively easy one involving the herpes virus, was ever submitted

3  to the FDA.[76]

4  **ANSWER TO ¶ 47:**

5      Defendants admit that Theranos submitted a 510(k) Premarket Notification for its Herpes

6  Simplex Virus-1 IgG Assay to the FDA on November 11, 2014 and obtained FDA clearance to

7  market HSV-1 on July 2, 2015.  Defendants further answer that to the extent the allegations in

8  Paragraph 47 and Footnote 76 thereto are based on the contents of written documents,

9  Defendants admit that, to the extent such allegations accurately reflect the contents of the

10 documents, such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs'

11 characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.

12 Defendants deny the remaining allegations in Paragraph 47 and Footnote 76 thereto.

13 **COMPLAINT ¶ 48:**

14     On January 21 and 24, 2014, Balwani stated to the PIM investors that Theranos had

15 waited to actively publicize its launch until it could compete effectively with rival commercial

16 laboratory testing companies and that it now performed "99%" to "99.9%" of all laboratory

17 requests using its proprietary technologies.  Balwani represented that the Company had

18 developed around 300 blood tests, and only 1% to 2% of those tests could not be performed

19 using Theranos' capillary samples and had to be performed with micro-samples taken from a

20 venous blood draw instead.  Balwani further represented that the use of venous micro-samples

21 for only 1% to 2% of its customers' tests was a short-term solution that would be in place for

22

23

24 [76]    Holmes had chosen to submit for FDA's approval a single test for viral screening. A viral probe,
as opposed to a more ordinary blood test for something like red blood cell counts, doesn't need to be
25 precise, just sensitive. It doesn't need to quantitate a level, just detect the binary presence of a viral
contaminant. Theranos surely knew the distinction. Apr. 28, 2016, *Theranos Woes Offer Lesson In How*
26 *Labs Should Be Regulated*, available at http://www.forbes.com/sites/scottgottlieb/2016/04/28/theranos-
woes-offer-lesson-in-how-labs-should-be-regulated/#df9625075f53 (last accessed 11/22/16)

27

28 ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

only six months, at which point Theranos would be able to perform all of its tests with finger sticks and nanotainers.

**ANSWER TO ¶ 48:**

Defendant Holmes lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies the allegations. Defendants Theranos and Balwani admit that Balwani had follow-up discussions with representatives of the PIM investors in late January 2014. Defendants Theranos and Balwani deny the remaining allegations in Paragraph 48.

**COMPLAINT ¶ 49:**

In fact, Theranos ran only about 12 tests using its finger stick technology, and its device, the "capillary tube nanotainer", was an unapproved medical device. Moreover, Theranos admitted, when it voided all of its test results run on its proprietary technology, that less than 1% of all the tests it had performed using its proprietary device.

**ANSWER TO ¶ 49:**

Defendants admit that Theranos voided test results. Defendants deny the remaining allegations in Paragraph 49.

**COMPLAINT HEADING V.G:**

Defendants Attack Their Critics

**ANSWER TO COMPLAINT HEADING V.G:**

Defendants deny the allegations in Complaint Heading V.G.

**COMPLAINT ¶ 50:**

On October 16, 2015, the WSJ and other media outlets began to publish disturbing allegations about the nature of Theranos' technology and operations, and that questions arose about the veracity of Defendants' statements. An October 15, 2015 WSJ exposé contended that Theranos was using its technology on very few tests:

a.      One former senior employee says Theranos was routinely using the device, named Edison after the prolific inventor, for only 15 tests in December 2014.

- 54 -

b.    One Theranos employee accused the company of failing to report test results that raised questions about the precision of the Edison system.

c.    Asked about the claim on the company's website, their outside lawyer and soon to be director, David Boies replied that using the device for the "full range" of blood tests is a goal Theranos will eventually achieve.

d.    During the Journal's reporting, Theranos deleted a sentence on its website that said: "Many of our tests require only a few drops of blood." It also dropped a reference to collecting "usually only three tiny micro-vials" per sample, "instead of the usual six or more large ones." Heather King, the company's general counsel, says the changes were made for "marketing accuracy."

e.    As of the end of 2014, Theranos did less than 10% of its tests on Edison (Theranos proprietary technology) machines, including tests for prostate cancer and pregnancy, one former senior employee says.

**ANSWER TO ¶ 50:**

To the extent the allegations in Paragraph 50 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 50.

**COMPLAINT ¶ 51:**

Theranos immediately responded that day, taking issue with the WSJ article in a press release entitled: *Statement from Theranos*:

> Today's Wall Street Journal story about Theranos is factually and **scientifically erroneous and grounded in baseless assertions by inexperienced and disgruntled former employees and industry incumbents**. Theranos presented the facts to this reporter to prove the accuracy and reliability of its tests and to directly refute these false allegations, including more than 1,000 pages of statements and documents. Disappointingly, the Journal chose to publish this article without even mentioning the facts Theranos shared **that disproved the many falsehoods in the article**.[77]

---

[77]    Oct. 15, 2015, available at https://news.theranos.com/2015/10/15/statement-from-theranos/ (last accessed Nov. 26, 2016).

1

**ANSWER TO ¶ 51:**

2

Defendants admit that on October 15, 2015 Theranos issued a public statement

3

responding to the October 15, 2015 article published in *The Wall Street Journal*.  Defendants

4

further answer that to the extent the allegations in Paragraph 51 are based on the contents of

5

written documents, Defendants admit that, to the extent such allegations accurately reflect the

6

contents of the documents, such statements exist, and otherwise deny them.  Defendants deny

7

that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of

8

these issues.  Defendants deny the remaining allegations in Paragraph 51.

9

**COMPLAINT ¶ 52:**

10

As more media began to question the Theranos narrative, Defendants and their advisers,

11

including outside counsel David Boies, caused Theranos to issue a barrage of retorts, denials,

12

misinformation and misdirection in press releases, many of which were provided directly to its

13

investors, as follows:[78]

14

       a.     On October 16, 2015, Theranos issued another press release:

15

"We are disappointed to see that The Wall Street Journal still can't

16

get its facts straight. . . .  Here are the facts:  There are just 3 steps
to Theranos' groundbreaking finger-stick technology.  1.  Take a

17

few drops of blood.  2.  Put the blood in the Nanotainer™ tube.  3.
Analyze the blood.  That's it.  3 simple steps.  1, 2, 3.  We sought

18

out and asked FDA to review those steps for everything we do –
like no lab before us."[79]

19

20

21

22

[78]    Theranos claims to and in fact has altered or "updated" past posts on its website, and it appears

23

that some claims may have been altered or removed. See, for example Oct. 22, 2015 TechCrunch,
*Theranos Takes Yet Another Swipe At WSJ Allegations In A Lengthy Statement*, available at

24

https://techcrunch.com/2015/10/22/theranos-takes-yet-another-swipe-at-wsj-allegations-in-a-lengthy-
statement/ (last accessed 11/23/16) (" we explained to the reporter that the changes to the website were

25

simply done to emphasize that, regardless of whether Theranos takes a venous sample or a finger-stick
draw, our blood draws are smaller and less painful, improving the overall patient experience. Theranos

26

updates our website regularly."

27

[79]    Oct. 16, 2015, available at https://news.theranos.com/2015/10/15/statement-from-theranos/(last
accessed Nov. 26, 2016).

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1        b.     On October 22, 2015, Theranos issued another press release, *Theranos*

2 *Facts*, available at https://news.theranos.com/2015/10/22/theranos-factsstatic/ (last accessed

3 Nov. 17, 2016).  Theranos also published a second response on its website, but that response has

4 been removed and replaced by this press release.  The original press release was at

5 https://news.theranos.com/2015/10/22/theranos-facts.  The contents are still available via a third

6 party site http://genius.com/Theranos-theranos-facts-oct-22-2015-press-release-annotated (last

7 accessed Nov. 23, 2016).  In this post, Theranos launches into a lengthy attack on the WSJ re-

8 port, claims at the end of 2014 some 80 tests were performed using its finger-stick technology.

9 But Theranos also admits that only one is performed currently, and implausibly implies it was

10 not using "Edison" because it was just an "earlier version of just one of our proprietary

11 technologies."

12        c.     Oct. 28, 2015 Press Release, *Statement from Theranos*, available at

13 https://news.theranos.com/2015/10/28/statement-from-theranos-3/_(last accessed Nov. 17,

14 2016).

15        d.     Nov. 5, 2015 Press Release, *Statement from Theranos*, available at

16 https://news.theranos.com/2015/11/05/statement-from-theranos-4/ (last accessed Nov. 17, 2016).

17        e.     Nov. 10, 2015 Press Release, *Statement from Theranos*, available at

18 https://news.theranos.com/2015/11/10/statement-from-theranos-5/ (last accessed Nov. 17, 2016).

19        f.     Dec. 22, 2015 Press Release, *Wall Street Journal:  Letter to the Editor*,

20 available at https://news.theranos.com/2015/12/22/wall-street-journal-letter-to-the-editor/ (last

21 accessed Nov. 17, 2016).

22        g.     Jan. 27, 2016 Press Release, *Statement from Theranos*, available at

23 https://news.theranos.com/2016/01/27/statement-from-theranos-6/ (last accessed Nov. 17, 2016).

24        h.     Mar. 7, 2016 Press Release, *Statement Regarding Newark, California Lab*

25 *Survey*, available at https://news.theranos.com/2016/03/07/statement-regarding-newark-

26 california-lab-survey/ (last accessed Nov. 17, 2016).

27

28

- 57 -

i. Mar. 28, 2016 Press Release, *Theranos Letter to The Journal of Clinical Investigation*, available at https://news.theranos.com/2016/03/28/theranos-letter-to-the-journal-of-clinical-investigation/ (last accessed Nov. 17, 2016).

j. Mar. 31, 2016 Press Release, *Theranos Statement on CMS 2567 Report*, available at https://news.theranos.com/2016/03/31/theranos-statement-on-cms-2567-report/ (last accessed Nov. 17, 2016).

k. Apr. 7, 2016 Press Release, *Theranos Announces Leading Medical and Laboratory Experts Join Scientific and Medical Advisory Board*, available at https://news.theranos.com/2016/04/07/theranos-announces-leading-medical-and-laboratory-experts-join-scientific-and-medical-advisory-board/ (last accessed Nov. 17, 2016).

l. May 11, 2016 Press Release, *Theranos Announces Expansion of Board of Directors and New Organizational Structure*, available at https://news.theranos.com/2016/04/07/theranos-announces-leading-medical-and-laboratory-experts-join-scientific-and-medical-advisory-board/ (last accessed Nov. 17, 2016).

m. June 12, 2016 Press Release, *Statement from Theranos*, available at https://news.theranos.com/2016/06/12/statement-from-theranos-7/ (last accessed Nov. 17, 2016).

n. July 8, 2016 Press Release, *Theranos Statement and Q&A on CMS Findings*, available at https://news.theranos.com/2016/07/19/theranos-statement-on-cms-findings/ (last accessed Nov. 17, 2016).

o. July 21, 2016 Press Release, *Theranos Names New Executives for Regulatory and Quality, and A Chief Compliance Officer*, available at https://news.theranos.com/2016/07/21/theranos-names-new-executives-regulatory-quality-chief-compliance-officer/ (last accessed Nov. 17, 2016).

p. Aug. 25, 2016 Press Release, *Theranos to Appeal CMS Sanctions*, available at https://news.theranos.com/2016/08/25/theranos-to-appeal-cms-sanctions/ (last accessed Nov. 17, 2016).

- 58 -

1    **ANSWER TO ¶ 52:**

2           Defendants admit that Theranos issued the press releases referenced in Paragraph 52 and

3    Footnote 79 thereto.  Defendants further respond that to the extent the allegations in Paragraph

4    52 and Footnotes 78 and 79 thereto are based on the contents of written documents, Defendants

5    admit that, to the extent such allegations accurately reflect the contents of the documents, such

6    statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of

7    the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the

8    remaining allegations in Paragraph 52 and Footnotes 78 and 79 thereto.

9    **COMPLAINT HEADING V.H:**

10          Defendants' Theranos Story Unravels

11   **ANSWER TO COMPLAINT HEADING V.H:**

12          Defendants deny the allegations in Complaint Heading V.H.

13   **COMPLAINT ¶ 53:**

14          After the October 16, 2015 Wall Street Journal's exposé and attendant fallout beginning

15   in or about October 2015, nearly every month brings new information about the truth regarding

16   Theranos' technology and business model including:

17   **ANSWER TO ¶ 53:**

18          Defendants deny the allegations in Paragraph 53.

19   **COMPLAINT HEADING V.H.1:**

20          Defendants Misrepresented the Extent to Which Theranos Tested Blood Samples Using

21   Its Own Proprietary Analyzers

22   **ANSWER TO COMPLAINT HEADING V.H.1:**

23          Defendants deny the allegations in Complaint Heading V.H.1.

24   **COMPLAINT ¶ 54:**

25          Prior to the WSJ exposé, Theranos prominently featured in its website a nanotainer

26   balanced on the tip of a finger and the slogan:  "one tiny drop changes everything."  But after the

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    exposé, in a glaring reversal and whitewashing of its prior public statements, the website read:

2    "Smaller Samples.  Smaller Needles.  A better Experience."

3    **ANSWER TO ¶ 54:**

4           To the extent the allegations in Paragraph 54 are based on the contents of written

5    documents or websites, Defendants admit that, to the extent such allegations accurately reflect

6    the contents of the documents and websites, such statements exist, and otherwise deny them.

7    Defendants deny that Plaintiffs' characterization of the documents and websites is accurate, and

8    deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph

9    54.

10   **COMPLAINT ¶ 55:**

11          As the media would later report and the Defendants later shockingly admit, Theranos was

12   relying on traditional machines made by other companies to run blood tests, rather than using its

13   own proprietary analyzers.  For example, Theranos board member, David Boies, admitted to the

14   WSJ that at the time of a December 2013 audit of Theranos' laboratory in Newark, California, by

15   CMS, 90% of the samples were run in the laboratory's "Jurassic Park" room, which contained

16   only the traditional laboratory machines the Company promised that it was making obsolete.  On

17   October 21, 2015, Holmes admitted to the PIM investors that in instances when Theranos drew a

18   venous micro-sample from customers, it performed the blood tests using traditional machines

19   made by other companies, *not Theranos' proprietary analyzers*.

20   **ANSWER TO ¶ 55:**

21          Defendants lack knowledge or information sufficient to form a belief as to the truth of the

22   allegation in the second sentence of Paragraph 55.  Defendants further answer that to the extent

23   the allegations in Paragraph 55 are based on the contents of written documents, Defendants

24   admit that, to the extent such allegations accurately reflect the contents of the documents such

25   statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of

26

27

28
                                                - 60 -

1   the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the

2   remaining allegations in Paragraph 55.

3   **COMPLAINT ¶ 56:**

4       Notwithstanding this admission, Holmes claimed in a March 20, 2016 letter to

5   stockholders, that "[s]amples collected via venipuncture were run using Theranos' [sic]

6   proprietary technologies for certain ordering patterns."

7   **ANSWER TO ¶ 56:**

8       Defendants admit that Holmes sent a March 20, 2016 letter to stockholders.  Defendants

9   further answer that to the extent the allegations in Paragraph 56 are based on the contents of

10  written documents, Defendants admit that, to the extent such allegations accurately reflect the

11  contents of the documents, such statements exist, and otherwise deny them.  Defendants deny

12  that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of

13  these issues.  Defendants deny the remaining allegations in Paragraph 56.

14  **COMPLAINT ¶ 57:**

15      In a meeting with the PIM investors on April 27, 2016, Holmes admitted that, as of

16  January 2014, Theranos was still using traditional machines made by other companies to test

17  blood samples, but claimed that it was only so that Theranos could handle customer volume

18  quickly while "phasing in" its proprietary analyzers.

19  **ANSWER TO ¶ 57:**

20      Defendant Balwani lacks knowledge or information sufficient to form a belief as to the

21  truth of the allegations in Paragraph 57 and therefore denies the allegations.  Defendants Holmes

22  and Theranos deny the allegations in Paragraph 57.

23  **COMPLAINT ¶ 58:**

24      These articles and admissions took Walgreens by surprise.  Walgreens promptly sought

25  answers from Theranos.  Theranos explained that it had decided to transition from finger-stick

26  blood draws to the traditional venous draws while its blood-collection device was being

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    reviewed for FDA approval.  This was the first time Walgreens learned of this information.

2    Theranos did not cooperate with Walgreens's requests for information.  Theranos only responded

3    to some of Walgreens's requests, missed multiple deadlines and delayed for several weeks for

4    others, and failed to provide any information in response to others.  Finally, when Theranos

5    allowed Walgreens to speak with the director of Theranos' Newark lab, Dr. Sunil Dhawan, on

6    November 14, 2015, Walgreens learned that Dr. Dhawan was a full-time dermatologist, had no

7    experience prior to Theranos with any field outside of dermatopathology, and spent only one day

8    a week at the Newark lab.

9    **ANSWER TO ¶ 58:**

10          Defendants lack knowledge or information sufficient to form a belief as to the truth of the

11   allegation in first sentence of Paragraph 58.  Defendants admit that Dr. Sunil Dhawan held the

12   title of Laboratory Director at Theranos in November 2015.  Defendants deny the remaining

13   allegations in Paragraph 58.

14   **COMPLAINT ¶ 59:**

15          Holmes also admitted to the PIM investors on January 26, 2016, that Theranos had 236

16   tests on its Walgreens pharmacy chain menu but performed, as of that meeting, *only 87 of these*

17   *tests—i.e., 37%— using capillary samples*.  Director David Boies now described the transition to

18   performing every test with nanotainers and Theranos devices would be "a journey."  And

19   Theranos' then-General Counsel admitted to Fortune in October 2015 that *most of the tests listed*

20   *on Theranos' commercial test menu are done by venipuncture*.

21   **ANSWER TO ¶ 59:**

22          To the extent the allegations in Paragraph 59 are based on the contents of written

23   documents, Defendants admit that, to the extent such allegations accurately reflect the contents

24   of the documents, such statements exist, and otherwise deny them.  Defendants deny that

25   Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

26   issues.  Defendant Balwani lacks knowledge or information sufficient to form a belief as to the

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1  truth of the remaining allegations in Paragraph 59 and therefore denies those allegations.

2  Defendants Holmes and Theranos deny the remaining allegations in Paragraph 59.

3  **COMPLAINT HEADING V.H.2:**

4      Defendants Misrepresented the Reason Theranos Stopped Using Its Finger-Stick and

5  Nanotainer Collection Method for All but One Test

6  **ANSWER TO COMPLAINT HEADING V.H.2:**

7      Defendants deny the allegations in Complaint Heading V.H.2.

8  **COMPLAINT ¶ 60:**

9      Unbeknownst to the public, the FDA had warned Theranos on September 16, 2015, that

10  the nanotainer was an "uncleared medical device" that Theranos was unlawfully "shipping . . . in

11  interstate commerce."  Theranos continued to mislead its partners, investors, and the public when

12  it posted on Twitter on October 22, 2015:  "Finger-sticks work[.]"

13  **ANSWER TO ¶ 60:**

14      To the extent the allegations in Paragraph 60 are based on the contents of written

15  documents or websites, Defendants admit that, to the extent such allegations accurately reflect

16  the contents of the documents and websites, such statements exist, and otherwise deny them.

17  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny

18  Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 60.

19  **COMPLAINT ¶ 61:**

20      After the WSJ exposé, the Company admitted in an October 28, 2015 press release that,

21  when the FDA informed Theranos of its position regarding the nanotainer, Theranos stopped

22  using nanotainers "immediately."  On October 21, 2015, Holmes disclosed to the PIM investors

23  that Theranos was no longer using its finger-stick and nanotainer collection method for tests that

24  had not been cleared by the FDA (i.e., for all but the HSV-1 test).  But Defendants concealed this

25

26

27

28

- 63 -

1  material information from the public until the FDA posted it on its website and it was first

2  reported by Bloomberg on October 27, 2015.[80]

3  **ANSWER TO ¶ 61:**

4      Defendants admit that Theranos issued a press release on October 28, 2015.  Defendants

5  further respond that to the extent the allegations in Paragraph 61 are based on the contents of

6  written documents, Defendants admit that, to the extent such allegations accurately reflect the

7  contents of the documents, such statements exist, and otherwise deny them. Defendants deny that

8  Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

9  issues.  Defendants deny the remaining allegations in Paragraph 61.

10  **COMPLAINT ¶ 62:**

11      Nevertheless, in a November 2, 2015 interview at Fortune's Global Forum, Holmes

12  claimed she "was the person who chose, voluntarily, to stop using our nanotainer tubes" and that

13  it was the "decision to transition our systems to the FDA framework, which led us right now, as

14  of this moment, for the last few weeks only, to run just one test" using the finger-stick and

15  nanotainer collection method.  Thus, she said, "temporarily, as we transition, which has now

16  been just a few weeks, we would not be using that [nanotainer] tube to collect our samples."

17  **ANSWER TO ¶ 62:**

18      To the extent the allegations in Paragraph 62 are based on the contents of written

19  documents or recordings, Defendants admit that, to the extent such allegations accurately reflect

20  the contents of the documents and recordings, such statements exist, and otherwise deny them.

21  Defendants deny that Plaintiffs' characterization of the documents and recordings is accurate,

22  and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in

23  Paragraph 62.

24

25

26  [80]    Available at https://www.bloomberg.com/news/articles/2015-10-27/theranos-devicevalidation-is-

27  flawed-fda-inspection-finds (last accessed Nov. 17, 2016).

28  ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1

**COMPLAINT ¶ 63:**

2

     In truth, Theranos had stopped using its finger-stick and nanotainer collection method for

3

all but one of its tests at least as early as September 2015, in response to the communication it

4

received from the FDA.  Nor was this shift away from finger sticks and nanotainers "temporary."

5

**ANSWER TO ¶ 63:**

6

     Defendants deny the allegations in Paragraph 63.

7

**COMPLAINT HEADING V.H.3:**

8

     Theranos Labs Get Shut Down As Non-Compliant with Federal Regulations and Federal

9

Agencies Begin to Investigate Theranos

10

**ANSWER TO COMPLAINT HEADING V.H.3:**

11

     Defendants admit that Theranos has received subpoenas from the United States

12

Department of Justice and the U.S. Securities and Exchange Commission, that the Centers for

13

Medicare and Medicaid Services and the Food and Drug Administration have published reports

14

based on inspections of Theranos, and that Theranos no longer operates a clinical lab.

15

Defendants deny the remaining allegations in Complaint Heading V.H.3.

16

**COMPLAINT ¶ 64:**

17

     After inspecting Theranos' laboratory in Newark, California, in November 2015, CMS

18

notified Theranos of various deficiencies in a survey report dated November 29, 2015.  Based on

19

this survey, CMS informed Theranos in a letter dated January 25, 2016, that the laboratory was

20

"not in compliance" with five conditions necessary for CLIA certification and that "the deficient

21

practices of the laboratory pose immediate jeopardy to patient health and safety."  CMS

22

subsequently rejected Theranos' attempt to remedy these deficiencies, informing it in a letter

23

dated March 18, 2016, that its submission did "not demonstrate that the laboratory has come into

24

Condition-level compliance and abated immediate jeopardy."

25

26

27

28

- 65 -

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1    **ANSWER TO ¶ 64:**

2        To the extent the allegations in Paragraph 64 are based on the contents of written

3    documents, Defendants admit that, to the extent such allegations accurately reflect the contents

4    of the documents, such statements exist, and otherwise deny them.  Defendants deny that

5    Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

6    issues.  Defendants deny the remaining allegations in Paragraph 64.

7    **COMPLAINT ¶ 65:**

8        On April 18, 2016 the WSJ reported, based on anonymous sources, that the U.S. DOJ has

9    launched a criminal investigation into whether Theranos "misled investors about the state of its

10   technology and operations[.]"  Theranos and its executives also have acknowledged that there is

11   an ongoing SEC investigation, and the April 18, 2016 WSJ article reported, based on anonymous

12   sources, that the SEC is similarly "examining whether Theranos made deceptive statements to

13   investors when it solicited funding[.]"

14   **ANSWER TO ¶ 65:**

15       Defendants admit that Theranos has received subpoenas from the United States

16   Department of Justice and the U.S. Securities and Exchange Commission.  Defendants further

17   answer that to the extent the allegations in Paragraph 65 are based on the contents of written

18   documents, Defendants admit that, to the extent such allegations accurately reflect the contents

19   of the documents, such statements exist, and otherwise deny them.  Defendants deny that

20   Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these

21   issues.  Defendants deny the remaining allegations in Paragraph 65.

22   **COMPLAINT ¶ 66:**

23       On May 2, 2016, Theranos announced the "retirement" of Defendant Balwani, a 50-year-

24   old executive and member of the Board of Directors of Theranos who has been with the

25   Company since its inception and has been one of its primary spokespersons and conveyors of

26   false and misleading information about the Company.

27

28
                                    - 66 -

1

**ANSWER TO ¶ 66:**

2

Defendants admit that on May 11, 2016 the Company issued a press release announcing

3

the retirement of Balwani.  Defendants deny the remaining allegations in Paragraph 66.

4

**COMPLAINT ¶ 67:**

5

On May 18, 2016, the WSJ revealed that Theranos threw out all Edison test results, and

6

some from traditional tests, from 2014 and 2015, thereby voiding tens of thousands of test results

7

it provided to patients because they were invalid.[81]  Theranos admitted in a May 19, 2016 letter

8

to stockholders that "[t]he basis for voiding test results in [its] Newark lab was the Newark

9

laboratory's failure to implement and adhere to sufficient quality assessment procedures[.]"

10

Significantly, the vast majority of those tests were not even performed using Theranos'

11

proprietary technology.  Amazingly, Defendants admit:

12

13

14

15

16

17

18

19

> What the Journal refers to *as "the Edison," is not and has never been the "linchpin" or basis for our strategy, valuation or business*.  That assertion reflects a fundamental misunderstanding and misrepresentation of our business and our proprietary technologies, and appears specifically calculated to inflate the importance of the Journal's reporting.  *Rather, what Theranos spent over a decade working on prior to becoming consumer-facing is the portfolio of technologies that enable small volume diagnostic testing to be performed across multiple assay methodologies, and that can be operationalized onto different platforms, including the platform that the Journal refers to as "an Edison machine."*

20

**ANSWER TO ¶ 67:**

21

Defendants Holmes and Theranos admit that Theranos sent a letter to stockholders on

22

May 19, 2016.  Defendants further answer that to the extent the allegations in Paragraph 67 are

23

based on the contents of written documents, Defendants admit that, to the extent such allegations

24

accurately reflect the contents of the documents, such statements exist, and otherwise deny them.

25

26

27

[81]     May 18, 2016, Wall Street Journal, *Theranos Voids Two Years of Edison Blood-Test Result*, available at http://www.wsj.com/articles/theranos-voids-two-years-of-edison-blood-test-results-1463616976 (last accessed Nov. 22, 2016).

28

1  Defendants deny that Plaintiffs' characterization of these documents is accurate, and deny

2  Plaintiffs' framing of these issues.  Defendant Balwani lacks knowledge or information sufficient

3  to form a belief as to the truth of the remaining allegations in Paragraph 67 and therefore denies

4  those allegations.  Defendants Holmes and Theranos deny the remaining allegations in Paragraph

5  67.

6  **COMPLAINT ¶ 68:**

7       On June 12, 2016, the Walgreens pharmacy chain ended its strained relationship with

8  Theranos and announced it would close all Theranos wellness centers immediately.

9  **ANSWER TO ¶ 68:**

10       Defendants admit that on June 12, 2016, Walgreen Co. announced its intent to terminate

11  its relationship with Theranos and close forty Theranos Wellness Centers at its stores in Arizona.

12  Defendants deny the remaining allegations in Paragraph 68.

13  **COMPLAINT ¶ 69:**

14       Sounding the death knell for Theranos' laboratory operations, CMS issued a notice on

15  July 7, 2016, stating that it would impose significant sanctions against the Company, Holmes,

16  and Balwani.[82]  Among other penalties, CMS is revoking the CLIA certificate for Theranos'

17  Newark laboratory and imposing the following sanctions:

18       •     Revocation of the laboratory's CLIA certificate;

19       •     Limitation of the laboratory's CLIA certificate for the specialty of hematology;

20       •     A Civil Money Penalty;

21       •     A Directed Portion of a Plan of Correction;

22       •     Suspension of the laboratory's approval to receive Medicare and Medicaid

23             payments for any services performed for the specialty of hematology; and

24

25

---

26  [82]      July 27, 2016 CMS letter to Theranos, available at

27  http://online.wsj.com/public/resources/documents/r_Theranos_Inc_CMS_07-07-2016_Letter.pdf (last
    accessed Nov. 17, 2016).

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1
•    Cancellation of the Newark laboratory's approval to receive Medicare and

2
Medicaid payments for all laboratory services.

3
These sanctions ban Holmes and Balwani, and thereby Theranos itself, from owning or operating

4
a laboratory for at least two years.

5
**ANSWER TO ¶ 69:**

6
      To the extent the allegations in Paragraph 69 are based on the contents of written

7
documents, Defendants admit that to the extent such allegations accurately reflect the contents of

8
the documents such statements exist, and otherwise deny them. Defendants deny that Plaintiffs'

9
characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.

10
Defendants deny the remaining allegations in Paragraph 69.

11
**COMPLAINT ¶ 70:**

12
      CMS's July 7, 2016 letter to Theranos further underscores the falsity of the

13
representations made by the Company, Holmes, and Balwani to Plaintiffs.  For example, the

14
letter states that documentation supplied by Theranos to CMS indicated that Theranos'

15
Proprietary System "was not used for patient testing after June 25, 2015."  In other words,

16
Defendants ceased using their proprietary analyzers for blood tests even as it issued press

17
releases stating otherwise.

18
**ANSWER TO ¶ 70:**

19
      To the extent the allegations in Paragraph 70 are based on the contents of written

20
documents, Defendants admit that, to the extent such allegations accurately reflect the contents

21
of the documents, such statements exist, and otherwise deny them. Defendants deny that

22
Plaintiffs' characterization of these documents is accurate, and deny Plaintiffs' framing of these

23
issues.  Defendants deny the remaining allegations in Paragraph 70.

24
**COMPLAINT ¶ 71:**

25
      The CMS letter appears to indicate that only twelve blood tests were performed by

26
Theranos at its Newark, California laboratory using the Company's proprietary technology.

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

Testing began on November 6, 2013, and the amount of blood tests dwindled to two until June 15, 2015, when no further tests were performed:

| Test | Initial Use | End Use | QC Data Submitted |
|---|---|---|---|
| Vitamin D | 11/6/2013 | 3/10/2015 | 3/10/14-3/29/15 |
| TSH | 11/7/2013 | 2/4/2015 | 3/25/14-2/4/15 |
| FT4 | 11/11/2013 | 2/4/2015 | 3/21/14-2/4/15 |
| TPSA | 11/11/2013 | 6/25/2015 | 3/21/14-6/16/15 |
| TT3 | 2/12/2014 | 2/4/2015 | 3/15/14-2/3/15 |
| TT4 | 2/12/2014 | 2/4/2015 | 3/15/14-2/4/15 |
| TST | 3/19/2014 | 3/10/2015 | 4/2/14-3/10/15 |
| HCG | 5/9/2014 | 1/19/2015 | 5/5/14-1/15/15 |
| SHBG | 7/28/2014 | 6/25/2015 | 7/30/14-6/9/15 |
| Vitamin B12 | 8/12/2014 | 3/6/2015 | 8/15/14-3/1/15 |
| Estradiol | 9/25/2014 | 12/18/2014 | 9/26/14-12/17/14 |
| Prolactin | 9/25/2014 | 12/18/2014 | 9/30/14-12/18/14 |

**ANSWER TO ¶ 71:**

To the extent the allegations in Paragraph 71 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them. Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues. Defendants deny the remaining allegations in Paragraph 71.

**COMPLAINT ¶ 72:**

In a July 8, 2016 press release in response to CMS's findings, Theranos admitted that it had already effectively shut down its Newark laboratory. It stated in that press release that its "Arizona lab currently processes all the samples that Theranos tests"—though for many patients, "including for [its] California patients," it is using "a third party reference lab to process samples[.]" The Company subsequently reiterated in its August 25, 2016 press release that it "is not conducting patient testing at its Newark facility."

1

**ANSWER TO ¶ 72:**

2

Defendants Holmes and Theranos admit that on July 19, 2016 Theranos issued a press

3

release.  To the extent the allegations in Paragraph 72 are based on the contents of written

4

documents, Defendants admit that, to the extent such allegations accurately reflect the contents

5

of the documents, such statements exist, and otherwise deny them.  Defendants deny that

6

Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

7

issues.  Defendant Balwani lacks knowledge or information sufficient to form a belief as to the

8

truth of the remaining allegations in Paragraph 72 and therefore denies those allegations.

9

Defendants Holmes and Theranos deny the remaining allegations in Paragraph 72.

10

**COMPLAINT ¶ 65:**

11

On July 26, 2016, members of the House Committee on Energy and Commerce sent

12

letters to CMS and the FDA requesting information about Theranos and its response to the

13

agencies' actions, noting the Company's "disregard for patient safety and its failure to

14

immediately address concerns by federal regulators[.]"

15

**ANSWER TO ¶ 65:**

16

To the extent the allegations in Paragraph 65 are based on the contents of written

17

documents, Defendants admit that, to the extent such allegations accurately reflect the contents

18

of the documents, such statements exist, and otherwise deny them.  Defendants deny that

19

Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

20

issues.  Defendant Balwani lacks knowledge or information sufficient to form a belief as to the

21

truth of the remaining allegations in Paragraph 65 and therefore denies those allegations.

22

Defendants Holmes and Theranos deny the remaining allegations in Paragraph 65.

23

**COMPLAINT ¶ 73:**

24

On August 1, 2016, at the annual AACC meeting, Holmes presented a supposedly new

25

version of the Theranos proprietary analyzer, called the "minilab," but in her AACC

26

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1  presentation, Holmes admitted that only a handful of tests could be run on a single cartridge, and

2  that multiple nanotainers of blood may be required to fulfill certain patient requests.

3  **ANSWER TO ¶ 73:**

4          To the extent the allegations in Paragraph 73 are based on the contents of written

5  documents, Defendants admit that to the extent such allegations accurately reflect the contents of

6  the documents such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs'

7  characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.

8  Defendant Balwani lacks knowledge or information sufficient to form a belief as to the truth of

9  the remaining allegations in Paragraph 73 and therefore denies those allegations.  Defendants

10  Holmes and Theranos deny the remaining allegations in Paragraph 73.

11  **COMPLAINT ¶ 74:**

12          Yet another setback came in August 2016, when the FDA issued a notice stating that

13  Theranos had collected data supporting the accuracy of its Zika test—which Holmes had touted

14  at the AACC presentation—without implementing a protocol approved by an institutional review

15  board to ensure patients are treated safely and ethically during medical studies.  In an August 27,

16  2016 letter to stockholders, the Company admitted that it had withdrawn both its Zika

17  submission and its Ebola submission to the FDA.

18  **ANSWER TO ¶ 74:**

19          To the extent the allegations in Paragraph 74 are based on the contents of written

20  documents, Defendants admit that to the extent such allegations accurately reflect the contents of

21  the documents such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs'

22  characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.

23  Defendant Balwani lacks knowledge or information sufficient to form a belief as to the truth of

24  the remaining allegations in Paragraph 74 and therefore denies those allegations.  Defendants

25  Holmes and Theranos deny the remaining allegations in Paragraph 74.

26

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1

**COMPLAINT ¶ 75:**

2

On October 5, 2016, Theranos announced it was closing all of its clinical laboratories and

3

patient testing centers and laying off approximately 340—more than 40%— of its employees.

4

Holmes wrote that the Company would "return [its] undivided attention to [its] miniLab

5

platform" and that its "ultimate goal is to commercialize miniaturized, automated laboratories

6

capable of small- volume sample testing[.]"

7

**ANSWER TO ¶ 75:**

8

Defendants Holmes and Theranos admit that Theranos announced it was closing its

9

clinical laboratories and patient testing centers.  Defendants further answer that to the extent the

10

allegations in Paragraph 75 are based on the contents of written documents, Defendants admit

11

that, to the extent such allegations accurately reflect the contents of the documents, such

12

statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of

13

the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendant Balwani lacks

14

knowledge or information sufficient to form a belief as to the truth of allegations in Paragraph 75

15

and therefore denies those allegations.  Defendants Holmes and Theranos deny the remaining

16

allegations in Paragraph 75.

17

**COMPLAINT ¶ 76:**

18

On October 10, 2016, the PIM investors filed suit, claiming fraud.  The next day,

19

Theranos responded in a press release entitled, *Company Statement Regarding Investor Lawsuit*,

20

available at https://news.theranos.com/2016/10/11/company-statement-regarding-investor-

21

lawsuit/ (last accessed Nov. 17, 2016):

22

The suit is without merit, the assertions are baseless, and the
plaintiff is engaging in revisionist history.

23

24

Most of the company statements the plaintiff has cited in its suit

25

were made *after the time the plaintiff invested*, and could not

26

possibly have been the original basis for investment.  This
wholesale reliance on post-investment statements, therefore,
negates the claim that the plaintiff was misled.

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

**ANSWER TO ¶ 76:**

Defendants admit that on October 10, 2016 the PIM investors brought suit against Defendants in the Court of Chancery for the State of Delaware.  Defendants further answer that to the extent the allegations in Paragraph 76 are based on the contents of written documents, Defendants admit that, to the extent such allegations accurately reflect the contents of the documents, such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 76.

**COMPLAINT ¶ 77:**

On November 15, 2016, Walgreens filed suit claiming breach of contract.  Theranos stated in a press release two days later, entitled, *Theranos Statement on Walgreens Suit*, available at https://news.theranos.com/2016/11/08/theranos-statement-walgreens-suit/ (last accessed Nov. 17, 2016), that:

> Walgreens consistently failed to meet its commitments to Theranos.  Through its mishandling of our partnership and now this lawsuit, Walgreens has caused Theranos and its investors significant harm.  We will respond vigorously to Walgreens' unfounded allegations, and will seek to hold Walgreens responsible for the damage it has caused to Theranos and its investors.

> Several years ago, Theranos adapted its business plan to become a clinical lab, and gave up significant opportunities in order to formalize an exclusive relationship with Walgreens.  As a small company, we relied on Walgreens' promise to help us build a substantial commercial footprint.  By failing to follow through on that promise and others, Walgreens breached our contract and inflicted damage on Theranos and its investors.  Theranos has been considering affirmative litigation against Walgreens for some time.  In light of today's news, we will proceed aggressively to recoup the damage caused by Walgreens."

1

**ANSWER TO ¶ 77:**

2

Defendants admit that on November 15, 2016 Walgreen Co. brought suit against

3

Theranos in the United States District Court for the District of Delaware.  Defendants further

4

answer that to the extent the allegations in Paragraph 77 are based on the contents of written

5

documents, Defendants admit that, to the extent such allegations accurately reflect the contents

6

of the documents, such statements exist, and otherwise deny them.  Defendants deny that

7

Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these

8

issues.  Defendants deny the remaining allegations in Paragraph 77.

9

**COMPLAINT ¶ 78:**

10

The next day, November 18, 2016, the WSJ reported that counsel and director, David

11

Boies, severed his ties with Theranos over disagreements with Holmes.

12

**ANSWER TO ¶ 78:**

13

Defendants Holmes and Theranos admit that David Boies is no longer counsel to, or a

14

director of, Theranos.  Defendants further answer that to the extent the allegations in Paragraph

15

78 are based on the contents of written documents, Defendants admit that to the extent such

16

allegations accurately reflect the contents of the documents such statements exist, and otherwise

17

deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and

18

deny Plaintiffs' framing of these issues.  Defendant Balwani lacks knowledge or information

19

sufficient to form a belief as to the truth of the allegations in Paragraph 78 and therefore denies

20

those allegations.  Defendants Holmes and Theranos deny the remaining allegations in Paragraph

21

78.

22

**COMPLAINT HEADING V.I:**

23

Plaintiffs Have Been Damaged As Theranos' Value Has Plummeted by Over Ninety

24

Percent

25

**ANSWER TO COMPLAINT HEADING V.I:**

26

Defendants deny the allegations in Complaint Heading V.I.

27

28

**COMPLAINT ¶ 79:**

As a result of Defendants' conduct, Plaintiffs have lost millions of dollars.  While Theranos shares are not traded on any stock market, private investors purchased stakes in 2014 at a price that implied a $9 billion valuation for the company, according to Forbes.  The implied value in 2015 was likely even higher, with shares trading as high as $19.00 per share.

**ANSWER TO ¶ 79:**

Defendants admit that Theranos securities are not traded on any stock market.  Defendants deny the remaining allegations in Paragraph 79.

**COMPLAINT ¶ 80:**

On June 21, 2016, Forbes lowered its estimated value of Theranos.  With the disclosures above, including information that Theranos' annual revenues are less than $100 million, and discussions with venture capitalists, analysts and industry experts, Forbes concluded that a more realistic current value was $800 million, as opposed to $9 billion—a drop of more than 90%.

**ANSWER TO ¶ 80:**

To the extent the allegations in Paragraph 80 are based on the contents of written documents, Defendants admit that to the extent such allegations accurately reflect the contents of the documents such statements exist, and otherwise deny them.  Defendants deny that Plaintiffs' characterization of the documents is accurate, and deny Plaintiffs' framing of these issues.  Defendants deny the remaining allegations in Paragraph 80.

**COMPLAINT ¶ 81:**

Today, Plaintiffs do not know if even that valuation is accurate.  Plaintiffs believe that much of the $724 million raised by investors may have been used up, and Theranos has been sued by Walgreens, other investors, and consumers for damages alleged to be in the hundreds of millions of dollars.

1

**ANSWER TO ¶ 81:**

2

      Defendants lack sufficient knowledge or information of the allegations in the first

3

sentence and first clause of the second sentence in Paragraph 81 regarding Plaintiffs' beliefs

4

sufficient to form a belief as to their truth.  Defendants admit that Theranos has been sued by

5

Walgreen Co., the PIM investors, and consumers.

6

VI.      CLASS ALLEGATIONS

7

**COMPLAINT ¶ 82:**

8

      Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 and seek

9

certification of the following class:

10

             All persons or entities who, directly or indirectly, purchased or
             committed to purchase (and subsequently closed a binding

11

             commitment to purchase) an interest in Theranos securities from
             July 29, 2013, through October 5, 2016.

12

13

Excluded from the proposed Class are Defendants, their officers and directors, and members of

14

their immediate families or their legal representatives, heirs, successors or assigns, and any entity

15

in which Defendants have or had a controlling interest.

16

**ANSWER TO ¶ 82:**

17

      No response is required to the allegations in Paragraph 82, which purports to describe the

18

Complaint.  To the extent a response is required, Defendants deny the allegations in Paragraph

19

82.

20

**COMPLAINT ¶ 83:**

21

      The members of the proposed Class are so numerous that joinder of all members is

22

impracticable.  Plaintiffs believe that there are several hundred members in the proposed Class.

23

Members of the proposed Class may be identified from records maintained by Defendants.

24

**ANSWER TO ¶ 83:**

25

      No response is required to Paragraph 83, which consist of conclusions of law.  To the

26

extent a response is required, Defendants deny the allegations in Paragraph 83.

27

28

**COMPLAINT ¶ 84:**

Plaintiffs' claims are typical of the claims of the members of the proposed Class as all members of the proposed Class are similarly affected by Defendants' wrongful conduct as alleged herein.

**ANSWER TO ¶ 84:**

No response is required to Paragraph 84, which consist of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 84.

**COMPLAINT ¶ 85:**

Plaintiffs will fairly and adequately protect the interests of the members of the proposed Class and have retained counsel competent and experienced in complex class litigation.

**ANSWER TO ¶ 85:**

No response is required to Paragraph 85, which consist of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 85.

**COMPLAINT ¶ 86:**

Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class. Among the questions of law and fact common to the proposed Class are:

    a.    Whether Defendants' public statements omitted and/or misrepresented material facts;

    b.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    c.    Whether Defendants knew or recklessly or negligently disregarded that their statements were false and misleading;

    d.    Whether Defendants' conduct violated the UCL;

    e.    Whether Defendants' conduct violated California's securities laws;

    f.    Whether Defendants' conduct violated California common laws;

    g.    Whether Defendants' conduct harmed Plaintiffs and members of the Class;

1

2

h.     The extent of damage sustained by Plaintiffs and the appropriate measure of
       damages; and

i.     Whether Plaintiffs and members of the Class are entitled to damages, restitution,
       rescission, equitable relief, and/or injunctive relief.

3

4

5

**ANSWER TO ¶ 86:**

6

7

No response is required to Paragraph 86, which consist of conclusions of law.  To the

extent a response is required, Defendants deny the allegations in Paragraph 86.

8

**COMPLAINT ¶ 87:**

9

10

11

A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joining all members is impracticable, and this action will

be manageable as a class action.

12

**ANSWER TO ¶ 87:**

13

14

No response is required to Paragraph 87, which consist of conclusions of law.  To the

extent a response is required, Defendants deny the allegations in Paragraph 87.

15

**VII.   CAUSES OF ACTION**

16

**COUNT I**

17

18

**SECURITIES FRAUD IN VIOLATION OF
CAL. CORP. CODE §§ 25400(D) & 25500
(AGAINST ALL DEFENDANTS)**

19

**COMPLAINT ¶ 88:**

20

Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

21

**ANSWER TO ¶ 88:**

22

23

Defendants repeat and reallege each and every answer set forth above as if fully set forth

herein.

24

**COMPLAINT ¶ 89:**

25

26

Defendants, for the purpose of inducing Plaintiffs' purchase of securities, made or

materially participated in the act of making false and misleading statements of material fact and

27

28

- 79 -

omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  These misrepresented and omitted material facts include but are not limited to an extensive advertising campaign that employed press releases, interviews with the media, and extensive social media, including web pages, in which they made statements that were materially false, misleading, or contained material omissions, including:  (1) Theranos was not "now" (or ever) capable of performing its agreement with Walgreens; (2) Theranos did not have necessary regulatory approval to use its "tests using micro-samples" on its proprietary device --- the nanotainer; (3) Theranos' labs were not in compliance with CLIA standards; (4) Theranos proprietary technology had not "reached a point at which [it] could make actionable information accessible to physicians and patients" using its proprietary technology; (5) Theranos would have to dilute "micro-samples" and run them on traditional lab machines of competitors in order to create the illusion that their proprietary technology was working; (6) Theranos' processes were not faster, cheaper and more accurate than the conventional methods, (7) that Theranos' proprietary technology was not ready for commercial use; (8) that Theranos' interactions with the FDA, were neither good nor voluntary; (9) that Theranos' proprietary technology would not be used as the primary technology for the Walgreens partnership; (10) that Theranos lied to Walgreens in order to induce them to enter into a partnership; (11) that Theranos was lying to consumers and providing them with inaccurate blood tests; (12) that Theranos used equipment made by other manufacturers, as opposed to its proprietary analyzers, to test customers' blood samples; and (13) that only twelve blood tests were ever run on Theranos' equipment and that all tests had ceased at various points between December 2014 and June 2015.

**ANSWER TO ¶ 89:**

Defendants deny the allegations in Paragraph 89.

- 80 -

1

**COMPLAINT ¶ 90:**

2

3       Defendants knew or had reasonable grounds to believe that these statements and

4 omissions were false and misleading.  Due to Theranos' extreme secrecy, additional information

5 regarding Defendants' knowledge of falsity is peculiarly within Defendants' knowledge and

   control.

6

**ANSWER TO ¶ 90:**

7       Defendants deny the allegations in Paragraph 90.

8

**COMPLAINT ¶ 91:**

9       As a direct and proximate result of the fraudulent conduct of Defendants, Plaintiffs have

10 been damaged.

11

**ANSWER TO ¶ 91:**

12      No response is required to Paragraph 91, which consist of conclusions of law.  To the

13 extent a response is required, Defendants deny the allegations in Paragraph 91.

14

**COUNT II**

15

**SECURITIES FRAUD IN VIOLATION OF
CAL. CORP. CODE §§ 25401, 25501 & 25504
(AGAINST ALL DEFENDANTS)**

16

17

**COMPLAINT ¶ 92:**

18      Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

19

**ANSWER TO ¶ 92:**

20      No response is required to Paragraph 92 as Count II was dismissed pursuant to the

21 Court's April 18, 2017 Order Granting In Part and Denying In Part Defendants' Motion to

22 Dismiss; Order to Show Cause re: Joinder of Lucas Venture Group, Celadon Technology Fund,

23 and Sharepost, ECF No. 63.

24

**COMPLAINT ¶ 93:**

25      Defendants offered to sell, and did sell, securities to Plaintiffs by means of written and

26 oral communications that included untrue statements of material fact and omitted to state

27

28

- 81 -

material facts necessary to make the statements made, in light of the circumstances under which the circumstances were made, not misleading.  These misrepresented and omitted material facts include but are not limited to those described in ¶ 89.

**ANSWER TO ¶ 93:**

No response is required to Paragraph 93 as Count II was dismissed pursuant to the Court's April 18, 2017 Order Granting In Part and Denying In Part Defendants' Motion to Dismiss; Order to Show Cause re: Joinder of Lucas Venture Group, Celadon Technology Fund, and Sharepost, ECF No. 63.

**COMPLAINT ¶ 94:**

Defendants directly or indirectly controlled Theranos, or are principal executive officers or directors of Theranos, or perform similar functions, or are Theranos employees who materially aided the statements or omissions alleged above.

**ANSWER TO ¶ 94:**

No response is required to Paragraph 94 as Count II was dismissed pursuant to the Court's April 18, 2017 Order Granting In Part and Denying In Part Defendants' Motion to Dismiss; Order to Show Cause re: Joinder of Lucas Venture Group, Celadon Technology Fund, and Sharepost, ECF No. 63.

**COMPLAINT ¶ 95:**

Defendants knew or had reasonable grounds to believe that these statements and omissions were false and misleading and Plaintiffs, who exercised reasonable care, had no knowledge of the falsity of Defendants' statements.

**ANSWER TO ¶ 95:**

No response is required to Paragraph 95 as Count II was dismissed pursuant to the Court's April 18, 2017 Order Granting In Part and Denying In Part Defendants' Motion to Dismiss; Order to Show Cause re: Joinder of Lucas Venture Group, Celadon Technology Fund, and Sharepost, ECF No. 63.

1  **COMPLAINT ¶ 96:**

2     As a direct and proximate result of the fraudulent conduct of Defendants, Plaintiffs have

3  been damaged.

4  **ANSWER TO ¶ 96:**

5     No response is required to Paragraph 96 as Count II was dismissed pursuant to the

6  Court's April 18, 2017 Order Granting In Part and Denying In Part Defendants' Motion to

7  Dismiss; Order to Show Cause re: Joinder of Lucas Venture Group, Celadon Technology Fund,

8  and Sharepost, ECF No. 63.

9                                  **COUNT III**

10           **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
             **(CAL. BUS. & PROF. CODE § 17200 ET SEQ.)**
11                      **(AGAINST ALL DEFENDANTS)**

12  **COMPLAINT ¶ 97:**

13     Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

14  **ANSWER TO ¶ 97:**

15     Defendants repeat and reallege the allegations contained above as if fully set forth herein.

16  **COMPLAINT ¶ 98:**

17     Defendants engaged in unlawful business practices in violation of the Unfair Competition

18  Law by violating the Corporate Securities Law of 1968, Cal. Corp. Code §§ 25400(d), 25401,

19  25500, and 25501.  Defendants also engaged in unlawful business practices in violation of the

20  Unfair Competition Law by committing fraud and deceit, fraudulent concealment, constructive

21  fraud, and negligent misrepresentation.

22  **ANSWER TO ¶ 98:**

23     No response is required to Paragraph 98, which consists of conclusions of law.  To the

24  extent a response is required, Defendants deny the allegations in Paragraph 98.

25

26

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1

**COMPLAINT ¶ 99:**

2

Defendants engaged in fraudulent business practices in violation of the Unfair

3

Competition Law by making statements to Plaintiffs that were materially false, and by failing to

4

disclose information that made other statements materially misleading, including with respect to

5

the topics described in ¶ 89.

6

**ANSWER TO ¶ 99:**

7

No response is required to Paragraph 99, which consists of conclusions of law.  To the

8

extent a response is required, Defendants deny the allegations in Paragraph 99.

9

**COMPLAINT ¶ 100:**

10

Defendants engaged in unfair business practices in violation of the Unfair Competition

11

Law because their business practices were immoral, unethical, oppressive, unscrupulous, and

12

caused injury to consumers, and the gravity of their conduct outweighs any alleged benefits

13

attributable to such conduct.  Defendants' business practices violate public policy because they

14

directly implicate the public interest by impacting matters of great importance to the public.

15

Blue sky laws like California's Corporate Securities Law of 1968 were enacted to protect the

16

public from fraud and deception in transactions involving securities, like the investment at issue

17

here.  Moreover, Defendants' unfair business practices have caused harm to consumers as

18

Theranos voided, as invalid, tens of thousands of test results it provided to patients.

19

**ANSWER TO ¶ 100:**

20

No response is required to Paragraph 100, which consist of conclusions of law.  To the

21

extent a response is required, Defendants deny the allegations in Paragraph 100.

22

**COMPLAINT ¶ 101:**

23

Plaintiffs have suffered injury in fact and have lost money as a result of Defendants'

24

unlawful, fraudulent, and unfair conduct.

25

26

27

28

- 84 -

**ANSWER TO ¶ 101:**

No response is required to Paragraph 101, which consists of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 101.

**COMPLAINT ¶ 102:**

Plaintiffs are entitled to restitution in the amount of their Theranos investment, because that investment was obtained through unlawful, fraudulent, and unfair business practices.

**ANSWER TO ¶ 102:**

No response is required to Paragraph 102, which consists of conclusions of law.  To the extent a response is required, Defendants deny the allegations in Paragraph 102.

**COUNT IV**

**FRAUD AND DECEIT**
**(CAL. CIV. CODE §§ 1709 & 1710 AND COMMON LAW)**
**(AGAINST ALL DEFENDANTS)**

**COMPLAINT ¶ 103:**

Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

**ANSWER TO ¶ 103:**

Defendants repeat and reallege the allegations contained above as if fully set forth herein.

**COMPLAINT ¶ 104:**

Defendants, for the purpose of inducing Plaintiffs' purchase of securities, made false and misleading statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  These material misrepresentations and omissions include the topics described in ¶ 89.

**ANSWER TO ¶ 104:**

Defendants deny the allegations in Paragraph 104.

1   **COMPLAINT ¶ 105:**

2        Defendants knew their representations were untrue or made such representations with

3   reckless indifference to the truth or in a manner not warranted by the information known to

4   Defendants.

5   **ANSWER TO ¶ 105:**

6        Defendants deny the allegations in Paragraph 105.

7   **COMPLAINT ¶ 106:**

8        Defendants purposefully made these misrepresentations to induce reliance by Plaintiffs in

9   order to convince Plaintiffs to purchase Theranos securities directly or indirectly.

10  **ANSWER TO ¶ 106:**

11       Defendants deny the allegations in Paragraph 106.

12  **COMPLAINT ¶ 107:**

13       Plaintiffs were unaware of and reasonably and justifiably relied upon Defendants'

14  material misrepresentations in purchasing and remaining invested in Theranos securities as well

15  as foregoing other potential investment opportunities.

16  **ANSWER TO ¶ 107:**

17       No response is required to Paragraph 107, which consists of conclusions of law.  To the

18  extent a response is required, Defendants state that they lack knowledge or information of the

19  allegations in Paragraph 107 sufficient to form a belief as to their truth.

20  **COMPLAINT ¶ 108:**

21       Plaintiffs' harm was a direct result of their reliance on Defendants' material

22  misrepresentations.

23  **ANSWER TO ¶ 108:**

24       No response is required to Paragraph 108, which consists of conclusions of law.  To the

25  extent a response is required, Defendants deny the allegations in Paragraph 108.

26

27

28

1

2

3

## COUNT V

## FRAUDULENT CONCEALMENT
### (CAL. CIV. CODE § 1710 AND COMMON LAW)
### (AGAINST ALL DEFENDANTS)

4  **COMPLAINT ¶ 109:**

5      Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

6  **ANSWER TO ¶ 109:**

7      Defendants repeat and reallege the allegations contained above as if fully set forth herein.

8  **COMPLAINT ¶ 110:**

9      Defendants deliberately concealed material information, including with respect to the

10  topics described in ¶ 89.  Defendants made partial representations and concealed material facts

11  and thus had a duty to fully disclose facts in order to prevent the statements they actually made

12  from being misleading.  In addition, Holmes and Balwani, as directors and officers of Theranos,

13  owed a duty to Plaintiffs, as Theranos investors and stockholders, and had a duty to refrain from

14  any act that breached the trust reposed in them.

15  **ANSWER TO ¶ 110:**

16      No response is required to Paragraph 110, which consists of conclusions of law.  To the

17  extent a response is required, Defendants deny the allegations in Paragraph 110.

18  **COMPLAINT ¶ 111:**

19      Defendants had exclusive knowledge of the concealed material facts and Plaintiffs did

20  not know and could not reasonably be expected to know of these facts.

21  **ANSWER TO ¶ 111:**

22      Defendants deny the allegations in Paragraph 111.

23  **COMPLAINT ¶ 112:**

24      Defendants knew or had reason to know that the information they concealed was

25  material, but they continued to purposefully and actively conceal material information to induce

26

27

28

1   Plaintiffs' reliance.  Due to the Company's extreme secrecy, additional information regarding

2   Defendants' knowledge is peculiarly within Defendants' knowledge and control.

3   **ANSWER TO ¶ 112:**

4       Defendants deny the allegations in Paragraph 112.

5   **COMPLAINT ¶ 113:**

6       Plaintiffs reasonably and justifiably relied upon Defendants' material misstatements and

7   omissions and purchased and remained invested in Theranos securities and forewent other

8   potential investment opportunities due to Defendants' actions.  Defendants' concealment was a

9   substantial factor in causing Plaintiffs harm.

10  **ANSWER TO ¶ 113:**

11      No response is required to Paragraph 113, which consists of conclusions of law.  To the

12  extent a response is required, Defendants state that they lack knowledge or information of the

13  allegations in Paragraph 113 sufficient to form a belief as to their truth.

14  **COUNT VI**

15  **CONSTRUCTIVE FRAUD**
**(CAL. CIV. CODE § 1573 AND COMMON LAW)**
16  **(AGAINST ALL DEFENDANTS)**

17  **COMPLAINT ¶ 114:**

18      Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

19  **ANSWER TO ¶ 114:**

20      No response is required to Paragraph 114 as Count VI was voluntarily dismissed by

21  Plaintiffs in their February 7, 2017 Opposition to Defendants' Motion to Dismiss Plaintiffs'

22  Class Action Complaint, ECF No. 31.  To the extent a response is required, Defendants repeat

23  and reallege the allegations contained above as if fully set forth herein.

24  **COMPLAINT ¶ 115:**

25      Defendants made statements to Plaintiffs that were materially false, and failed to disclose

26  information that made other statements materially misleading, including with respect to the

27

28  - 88 -

1  topics described in ¶ 89.  Defendants had a duty to disclose such information in order to prevent

2  the statements they actually made from being misleading.  In addition, Holmes and Balwani, as

3  directors and officers of Theranos, owed a duty to Plaintiffs, as Theranos investors and

4  stockholders, and had a duty to refrain from any act that breached the trust reposed in them.

5  **ANSWER TO ¶ 115:**

6      No response is required to Paragraph 115 as Count VI was voluntarily dismissed by

7  Plaintiffs in their February 7, 2017 Opposition to Defendants' Motion to Dismiss Plaintiffs'

8  Class Action Complaint, ECF No. 31.  Defendants further answer that no response is required to

9  Paragraph 115, which consists of conclusions of law.  To the extent a response is required,

10  Defendants deny the allegations in Paragraph 115.

11  **COMPLAINT ¶ 116:**

12      Defendants misled Plaintiffs to their prejudice by inducing Plaintiffs to purchase

13  Theranos securities, providing Defendants financial gain to their advantage.

14  **ANSWER TO ¶ 116:**

15      No response is required to Paragraph 116 as Count VI was voluntarily dismissed by

16  Plaintiffs in their February 7, 2017 Opposition to Defendants' Motion to Dismiss Plaintiffs'

17  Class Action Complaint, ECF No. 31.  To the extent a response is required, Defendants deny the

18  allegations in Paragraph 116.

19  **COMPLAINT ¶ 117:**

20      Plaintiffs were reasonably and justifiably misled by relying on Defendants' material

21  misrepresentations and omissions.

22  **ANSWER TO ¶ 117:**

23      No response is required to Paragraph 117 as Count VI was voluntarily dismissed by

24  Plaintiffs in their February 7, 2017 Opposition to Defendants' Motion to Dismiss Plaintiffs'

25  Class Action Complaint, ECF No. 31.  Defendants further answer that no response is required to

26  Paragraph 117, which consists of conclusions of law.  To the extent a response is required,

27

28

1  Defendants state that they lack knowledge or information of the allegations in Paragraph 117

2  sufficient to form a belief as to their truth.

3  **COMPLAINT ¶ 118:**

4  As a direct and proximate result of Defendants' misleading statements, Plaintiffs were

5  damaged.

6  **ANSWER TO ¶ 118:**

7  No response is required to Paragraph 118 as Count VI was voluntarily dismissed by

8  Plaintiffs in their February 7, 2017 Opposition to Defendants' Motion to Dismiss Plaintiffs'

9  Class Action Complaint, ECF No. 31.  Defendants further answer that no response is required to

10 Paragraph 118, which consists of conclusions of law.  To the extent a response is required,

11 Defendants deny the allegations in Paragraph 118.

12 

**COUNT VII**

**NEGLIGENT MISREPRESENTATION**
**(CAL. CIV. CODE § 1710 AND COMMON LAW)**
**(AGAINST ALL DEFENDANTS)**

15 **COMPLAINT ¶ 119:**

16 Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

17 **ANSWER TO ¶ 119:**

18 Defendants repeat and reallege the allegations contained above as if fully set forth herein.

19 **COMPLAINT ¶ 120:**

20 By virtue of their involvement in selling Theranos securities directly or indirectly to

21 Plaintiffs and accepting Plaintiffs' investments, Defendants had a particular duty to provide

22 accurate information about Theranos' business, based on Plaintiffs' pecuniary interest in that

23 information.

24 **ANSWER TO ¶ 120:**

25 No response is required to Paragraph 120, which consists of conclusions of law.  To the

26 extent a response is required, Defendants deny the allegations in Paragraph 120.

27

28

1  **COMPLAINT ¶ 121:**

2      Defendants supplied to Plaintiffs false material information and made material omissions,

3  including the information described in ¶ 89.

4  **ANSWER TO ¶ 121:**

5      Defendants deny the allegations in Paragraph 121.

6  **COMPLAINT ¶ 122:**

7      Defendants had no reasonable ground for believing their representations were true when

8  made yet intended that Plaintiffs rely on their representations in order to solicit funding for

9  Theranos.

10 **ANSWER TO ¶ 122:**

11     No response is required to Paragraph 122, which consists of conclusions of law.  To the

12 extent a response is required, Defendants deny the allegations in Paragraph 122.

13 **COMPLAINT ¶ 123:**

14     Plaintiffs reasonably and justifiably relied on the false information communicated by

15 Defendants and sustained pecuniary loss as a direct and proximate result of such reliance.

16 **ANSWER TO ¶ 123:**

17     No response is required to Paragraph 123, which consists of conclusions of law.  To the

18 extent a response is required, Defendants state that they lack knowledge or information of the

19 allegations in Paragraph 123 sufficient to form a belief as to their truth.

20 <u>**AFFIRMATIVE DEFENSES**</u>

21     Defendants assert the following defenses and reserve the right to assert other defenses or

22 claims when and if they become appropriate and/or available in this Action.  The statement of

23 any defense herein does not assume the burden of proof for any issue, fact, or element of a claim

24 to which the applicable law places the burden of proof on Plaintiffs.

25 **1.      First Affirmative Defense**

26     Plaintiffs fail to allege or plead fraud with particularity.

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

1

2.     **Second Affirmative Defense**

2      Plaintiffs fail to state a claim upon which relief can be granted.

3      3.     **Third Affirmative Defense**

4      If any alleged misrepresentation or omission occurred, which Defendants deny, it was not

5      material as a matter of law.

6      4.     **Fourth Affirmative Defense**

7      If any alleged misrepresentation or omission occurred, which Defendants deny, it was not

8      intended to induce Plaintiffs to purchase any interest, whether direct or indirect, in Theranos.

9      5.     **Fifth Affirmative Defense**

10     If any alleged misrepresentation or omission occurred, which Defendants deny, it did not

11     have any impact on the value of Theranos securities, or the securities Plaintiffs acquired.

12     6.     **Sixth Affirmative Defense**

13     To the extent Plaintiffs allege that they have suffered any damages, such damages are too

14     speculative to be awarded.

15     7.     **Seventh Affirmative Defense**

16     Plaintiffs' claims fail because they seek double-recovery.

17     8.     **Eighth Affirmative Defense**

18     Plaintiffs' claims under the California Securities Laws fail because they did not purchase

19     securities issued by Theranos.

20     9.     **Ninth Affirmative Defense**

21     Plaintiffs' claims under the California Securities Laws fail because they did not purchase

22     and do not hold a beneficial interest in Theranos securities.

23     10.    **Tenth Affirmative Defense**

24     Plaintiffs' claims are barred by the defenses of laches, waiver, ratification, unclean hands,

25     acquiescence, and/or estoppel.

26

27

28

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC

**11.      Eleventh Affirmative Defense**

Plaintiffs UCL claim is barred to the extent Plaintiffs have available legal claims for the same alleged misconduct.

**12.      Twelfth Affirmative Defense**

Plaintiffs' claims are barred by releases.

**13.      Thirteenth Affirmative Defense**

Plaintiffs have failed to join indispensable parties.

**14.      Fourteenth Affirmative Defense**

Plaintiffs lack standing to pursue their claims.

**15.      Fifteenth Affirmative Defense**

Plaintiffs' claims fail in light of the exclusive venue provisions in the securities purchase agreements between Lucas Venture Group XI, LLC and Celadon Technology Fund VII, LLC.

**16.      Sixteenth Affirmative Defense**

Plaintiffs' claims fail because California law does not apply.

## ADDITIONAL DEFENSES

Defendants adopt and incorporate by reference any and all other defenses asserted, or to be asserted, by any other defendant joined in this Action to the extent that Defendants may share in such defenses.  Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent at any time and hereby reserve all rights to amend and/or supplement any and all defenses set forth herein.

1

## PRAYER FOR RELIEF

2       WHEREFORE, Defendants respectfully request that the Court enter an Order:

3       A.      Denying Plaintiffs' Demand for Relief;

4       B.      Entering judgment against Plaintiffs and in favor of Defendants;

5       C.      Dismissing the Complaint with prejudice;

6       D.      Awarding Defendants their reasonable costs and expenses, including reasonable

7    attorney's fees, incurred in connection with this Action; and

8       E.      Granting Defendants such other and further relief as this Court may deem just and

9    proper.

10

11   Dated:  May 2, 2017                   By: /s/  Michael A. Mugmon
                                              Michael A. Mugmon (251958)
12                                            WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
13                                            950 Page Mill Road
                                              Palo Alto, CA 94304
14                                            Telephone: +1 650 858 6000
                                              Facsimile: +1 650 858 6100
15                                            michael.mugmon@wilmehale.com

16                                            Christopher Davies (admitted *pro hac vice*)
                                              WILMER CUTLER PICKERING
17                                                HALE AND DORR LLP
                                              1875 Pennsylvania Ave., NW
18                                            Washington, DC 20006
                                              Telephone: +1 202 663 6000
19                                            Facsimile: +1 202 663 6363
                                              christopher.davies@wilmehale.com
20
                                              Timothy Perla (admitted *pro hac vice*)
21                                            Robert K. Smith (admitted *pro hac vice*)
                                              Megan E. Barriger (admitted *pro hac vice*)
22                                            WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
23                                            60 State Street
                                              Boston, MA 02109
24                                            Telephone: +1 617 526 6000
                                              Facsimile: +1 617 526 5000
25                                            timothy.perla@wilmerhale.com
                                              robert.smith@wilmerhale.com
26                                            megan.barriger@wilmerhale.com

27                                            *Attorneys for Defendant Theranos, Inc.*

- 94 -

28

1

2                                         /s/  Kathleen Goodhart
                                          Kathleen Goodhart (165659)
3                                         COOLEY LLP
                                          101 California Street, 5th Floor
4                                         San Francisco, CA 94111
                                          Telephone: +1 415 693 2012
5                                         Facsimile: +1 415 693 2222
                                          kgoodhart@cooley.com
6
                                          Stephen C. Neal (170085)
7                                         COOLEY LLP
                                          3175 Hanover Street
8                                         Palo Alto, CA 94304
                                          Telephone: +1 650 843 5000
9                                         Facsimile: +1 650 849 7400
                                          nealsc@cooley.com
10
                                          *Attorneys for Defendant Elizabeth Holmes*
11

12                                        /s/  Allison A. Davis
                                          Allison A. Davis (139203)
13                                        DAVIS WRIGHT TREMAINE LLP
                                          505 Montgomery Street, Suite 800
14                                        San Francisco, CA 94111
                                          Telephone: +1 415 276 6580
15                                        Facsimile: +1 415 276 4880
                                          allisondavis@dwt.com
16
                                          Stephen M. Rummage (admitted *pro hac vice*)
17                                        DAVIS WRIGHT TREMAINE LLP
                                          1201 Third Avenue, Suite 2200
18                                        Seattle, WA 98101-3045
                                          Telephone: +1 206 757 8136
19                                        Facsimile: +1 206 757 7136
                                          steverummage@dwt.com
20
                                          *Attorneys for Defendant Ramesh Balwani*
21

22

23

24

25

26

27
                                          - 95 -
28
ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR
                COMPETITION, AND COMMON LAWS
                  Case No. 5:16-cv-06822-NC

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing Opposition.  In compliance with Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: May 2, 2017

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/  Michael A. Mugmon

Michael A. Mugmon

ANSWER TO CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S SECURITIES, UNFAIR COMPETITION, AND COMMON LAWS
Case No. 5:16-cv-06822-NC