KEKER, VAN NEST & PETERS LLP
JEFFREY R. CHANIN - # 103649
jchanin@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
BAILEY HEAPS - # 295870
bheaps@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Non-Party Lucas Venture Group XI, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI,<br><br>Defendants. | Case No. 5:16-cv-06822-NC<br><br>**DECLARATION OF DONALD A. LUCAS IN SUPPORT OF NON-PARTY LUCAS VENTURE GROUP XI, LLC'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**<br><br>Date Filed:  May 3, 2017<br><br>Trial Date:  None set |

I, Donald A. Lucas, declare that:

1. I am the founder of Lucas Venture Group ("LVG"), a Silicon Valley venture capital firm and one of the three non-parties who are the subject of the Court's April 18, 2007 Order to Show Cause in the above-referenced action. Lucas Venture group opposes being joined as party in the Robert Colman, et al v. Theranos, Inc Class Action lawsuit, No 16-cv-06822-NC, because the Court can accord complete relief between the existing parties without joining LVG and because neither LVG, nor the limited liability corporation that it formed to purchase shares of Theranos—Lucas Venture Group XI, LLC ("LVG XI")—claims any interest in the lawsuit. Except where expressly stated, I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2. LVG is a venture capital firm focused on investments of $1,000,000-$20,000,000 in private companies. LVG's portfolio spans e-commerce, networking, software analytics, and transformative medical device companies. LVG invests for its own benefit, and for private individuals and institutions, typically through limited partnerships or limited liability corporations that own a portfolio of stock in one or more companies that seek to obtain financing at different stages of their growth.

3. In 2013, Defendant Theranos offered LVG an opportunity to participate in its Series C-1 financing round, which it had opened in 2010. Lucas Venture Group formed Lucas Venture Group XI, LLC ("LVG XI"), a California Limited Liability Corporation, to purchase 471,334 shares of Theranos Series C-1 in its own name and for its own account.

4. According to a March 20, 2017 Information Statement provided by Theranos to LVG in March 2017 in connection with an offer to exchange LVG XI's Series C-1 shares for a new Series C1-B of Theranos stock, the company's pre-exchange shareholding represents less than 1/10th of 1 percent of the outstanding shares of Theranos, Inc.

5. In the course of purchasing Theranos' C-1 securities, LVG XI entered into an Amended and Restated Series C-1 Preferred Stock Purchase Agreement. Per that agreement, LVG XI agreed to submit any suit arising out of or relating to the purchase to the exclusive jurisdiction of the Delaware Court of Chancery. The exclusive venue provision provides:

7.14 Jurisdiction; Venue. Each of the parties to this Agreement irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery (and if the Delaware Court of Chancery is unavailable, any state or federal court sitting in Wilmington, Delaware), as well as to the jurisdiction of all courts to which an appeal may be taken therefrom, in any suit, action, or proceeding arising out of or relating to this Agreement. Each of the parties to this Agreement waives any defense of lack of personal jurisdiction or inconvenient forum to any suit, action, or proceeding brought in accordance with this paragraph.

6. The Series C-1 shares purchased by LVG XI are solely owned by the company, and title to the shares is held in LVG XI's name. *See* Theranos C-1 Stock Certificate (attached hereto as Exhibit A). Under the terms of Theranos's Investor Rights Agreement, the shares held by LVG XI cannot be assigned to others, nor beneficially owned by others, without the express written consent of Theranos. Amended and Restated Investor Rights Agreement (December 2013) ¶ 2.7(a), ¶ 5.4.

7. There are fifty-two members of LVG XI, LLC, including Plaintiff Robert Colman. By the terms of the Operating Agreement signed by each Member as a condition to membership, the Members hold only a Membership Interest in the company; they neither own nor hold any Theranos shares through LVG XI, and they expressly disclaimed any interest in any LGV XI property. Operating Agreement ("1.7 - Title to Properties. Real and personal property owned or purchased by Company shall be held and owned, and conveyance made, in the name of the Company."); *id.* ("12.13 - No Interest in Company Property; Waiver of Action for Partition. No Member or Assignee has any interest in specific property of the Company. Without limiting the foregoing, each Member and Assignee irrevocably waives during the term of the Company any right that he, she or it may have to maintain any action for partition with respect to the property of the Company."). LVG XI has not sold or assigned any Theranos shares to its members.

8. Each of LVG XI's members agreed, when investing in LVG XI, that they were not relying upon any representations outside of the operating agreement. *Id.* ("12.21 No Representations. Each of the Members acknowledges and agrees (a) that no representation or promise not expressly contained in this Agreement has been made by any of the other Members or by any of such Member's agents, employees, representatives or attorneys; and (b) that this Agreement is not being entered into on the basis of, or in reliance upon, any promise or representation, express or implied, other than such as are set forth expressly in this Agreement.").

1162614.01

The LVG XI Operating Agreement contains no representations of any kind about Theranos, nor did I or anyone at LVG to my knowledge make any representations about Theranos.

9. In early 2017, LVG XI was offered an opportunity to exchange its Theranos Series C-1 shares for a new Series of C1-B preferred shares having an increased conversion rate into Class A common stock than the C-1 shares. LVG XI accepted the offer in March. According to Theranos, approximately 99 percent of the other investors to whom this offer was made have also accepted. *See Press Release*, https://news.theranos.com/2017/05/01/theranos-reaches-settlement-partner-fund-management/ (attached hereto as Exhibit B).

10. As part of that offer and acceptance, LVG XI executed an irrevocable and complete release of claims against Theranos on behalf LVG XI and its members. The relevant part of the release reads as follows:

> **2.1.** …each Holder on behalf of itself and its direct or indirect affiliates … beneficiaries, … assigns, members and partners (collectively, "***Releasors***"), solely in their capacity as a stockholder of the Company, hereby fully, finally, and forever waives, releases, relinquishes, and discharges the Company and (a) its current and former officers and employees, and each of its and their affiliates, … (b) its current and former directors, and each of their affiliates (c) other stockholders (and any of their affiliates) who execute this Agreement, and (d) their respective successors and assigns, (individually, a "***Releasee***" and collectively, "***Releasees***") from any and all claims, demands, losses, rights, obligations, debts, liabilities, and causes of action of any nature whatsoever, whether known or unknown, suspected or unsuspected, direct or derivative, and that have been or could in the future be asserted in any forum … whether arising under federal, state, common, or foreign law or in equity, which Releasors now have or have ever had or may hereafter have directly or indirectly against any Releasee arising out of, based on, or relating in any way to any transaction with the Company or to their capacity as a stockholder of the Company that has occurred up until and including the date hereof, including, without limitation, any claim, demand, cause of action, obligation, debt and liability arising out of or relating to (i) the ownership of the shares purchased in the Preferred Stock Financings or in connection with the holding, acquisition, or disposition of any securities of the Company, (ii) any purchase agreement and related disclosures associated with the Preferred Stock Financings or the holding, acquisition, or disposition of any securities of the Company, including any agreement based upon or incorporating the Company's representations, warranties and disclosures as setforth in such purchase agreement, as well as any representations, omissions, acts, or facts that have been made by the Company or any of the Releasees up until and including the date hereof, (iii) any alleged violation by the Releasees of any federal, state, local or foreign regulation, rule, or statute regulating securities, … and any alleged claim of fraud, fraudulent inducement, negligent misrepresentation, or breach of contract, that arises out of or is related to the Preferred Stock Financings or in connection with the holding, acquisition, or disposition of any securities of the Company …. and (vii) any other claim arising out of or related in any manner to the

Preferred Stock Financings or in connection with the holding, acquisition, or disposition of any securities of the Company (each a "**Holder's Released Claim**" and, collectively, the "**Holders' Released Claims**").

11.  The LVG XI Operating Agreement provides that any legal fees accrued by LVG XI in this action would be shared among its member investors ("5.7 Expenses. Subject to the terms and conditions below, each Non-Managing Member shall pay his, her or its pro rata share, as determined by the allocation rules in Article III, of Organizational Expenses and Company Expenses directly to the Company. The Company shall reimburse the Managing Member for Organizational Expenses and Company Expenses. The Company shall bill each Non-Managing Member (x) on or about the date hereof for the Organizational Expenses, (y) annually in advance for the Management Fee, and (z) annually in arrears for other Company Expenses incurred solely in the immediately prior fiscal year, unless the Managing Member determines in its sole and absolute discretion to bill each Non-Managing Member for Company Expenses when incurred."). The term ""Company Expenses" means all costs and expenses relating to the Company's activities and business including, but not limited to, (i) legal, accounting, auditing and other fees and expenses … (ii) extraordinary expenses of the Company (including, but not limited to, litigation and indemnification costs and expenses, judgments and settlements.")

Executed this 3rd day of May 2017 at Menlo Park, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Donald A. Lucas