T 510.725.3000   F 510.725.3001



Reed R. Kathrein
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 HEARST AVENUE, SUITE 202
BERKELEY, CA  94710
www.hbsslaw.com
**Direct (510) 725-3030**
reed@hbsslaw.com

June 14, 2017

<u>**Via ECF**</u>
Hon. Nathanael M. Cousins
United States Magistrate Judge
U.S. District Court for the Northern District of California,
San Jose Division
San Jose Courthouse, Courtroom 7, 4th Floor
280 S. 1st Street
San Jose, CA 95113

    Re: *Colman et al. v. Theranos, Inc. et al.*, No. 5:16-cv-06822-NC (N.D. Cal.)
    <u>Joint Statement Regarding Discovery Dispute</u>

Hon. Magistrate Judge Cousins:

   Pursuant to this Court's Civil Standing Order, the parties present this joint statement regarding unresolved issues concerning the discovery on which the Court ordered the parties to meet and confer following the May 24, 2017 Hearing ("May 24 Hearing") on the parties' joint statement concerning the production of all filings and discovery in *Partner Investments, LP et al. v. Theranos, Inc. et al.*, No. 2016-12816-VCL (Del. Ct. Ch.) (Attach. A) (the "*Partners*" lawsuit).[1]  At the conclusion of the May 24 Hearing, this Court denied without prejudice Plaintiffs' request for "the discovery from the Partner Lawsuits" and entrusted the parties to meet and confer regarding this request.  Transcript of May 24 Hearing ("TR") at 30:6-31:24.  *See also* Dkt. No. 82 (denying "Plaintiffs' request to discover all filings and discovery in the Partners Lawsuits . . . for lack of good cause"; directing parties to assess relevance, proportionality, and privilege issues for "specific discovery requested out of" *Partners*).  The parties have met and conferred and corresponded by letter and email, but were unable to reach any agreement, except resolution of the HIPAA issue, which they are memorializing in a HIPAA confidential treatment order. (Attach. C-D).  Defendants also served objections on June 2, 2017.  (Attach. E).  The parties' positions are set forth below.

---

  [1] Defendants have advised that no discovery was produced in *Partner Investments, LP et al. v. Theranos, Inc. et al.*, No. 2017-0262-JTL (Del. Ct. Ch.) (Attach. B) or in *Walgreens, Co. v. Theranos, Inc. et al.*, 1:16-cv-01040-SLR (D. Del.).

June 14, 2017
Page 2

## I.    PLAINTIFFS' POSITION

Plaintiffs' allegations are effectively the same as those at issue in *Partners*. *Compare* Dkt. No. 1 ("Complaint"), ¶¶1-5 *with* Attach. A, ¶¶1-5 (both allege fraud regarding Theranos' claims of commercially viable ground-breaking blood-testing technology). Defendants even criticized Plaintiffs for "parroting" the *Partners* allegations. *See* Dkt. No. 29 at 10 n.5. The *Partners* plaintiffs have now settled █████████████████████████████████ (Attach. F) (an increasingly likely scenario); another $10 million is being paid out to an unidentified party (Attach. G); and based on Theranos' own projections (Attach. H) these settlements will render Theranos insolvent before year-end. By delaying prosecution of Plaintiffs' claims here, Plaintiffs and the rest of the putative Class will be irreparably harmed if Defendants proceed with their projected plans to drain all of Theranos' cash through settlements, payments to the Individual Defendants and other employees, and payments to their lawyers. In the *Partners* proceedings, plaintiffs established good cause for a TRO by showing, *inter alia,* that Defendants are rapidly burning through cash before filing for bankruptcy. (Attach. A, ¶99; Attach B, ¶¶49-51.). Such facts gathered in *Partners* could also support mandatory class certification or injunctive relief, but only before all the assets are dissipated.

Plaintiffs reached out to Defendants to determine the scope of discovery in *Partners*, and what Defendants considered irrelevant or overly burdensome here. (Attach. C). Defendants refused to reveal what was produced in *Partners*, what *Partners* materials are supposedly irrelevant here, or search terms used in *Partners*. *Id.* Regarding this last category of information, Defendants want to start the search-term process from scratch, while Plaintiffs are in the dark, despite conceding that this is an iterative process that took tremendous amounts of time, effort, and trial and error in *Partners*. (Attach. D). Plaintiffs proposed minimizing that burden by using the completed process in *Partners* to inform the parties' discussions, to enable Defendants to identify what, if any, search terms would not be relevant here, and to help fulfill Federal Rules of Civil Procedure 1's mandate of "speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Several of Defendants' representations at the May 24 Hearing warrant correcting because they bear directly on the present dispute. First, Defendants misstated that the temporary restraining order entered in *Partners* "was in no way a finding of any merit" and that there "were no merits . . .  for the Court to be deciding." TR at 19:21, 20:1-2. In truth, the *Partners* plaintiffs submitted a 50-page brief (Attach. I; *see* "Fact Discovery Has Revealed Rampant Fraud" at 9-18), extensive evidence – including excerpts from 13 depositions containing testimonial evidence of Defendants' fraud – in support of their motion for a TRO (Attach. J), and the Vice Chancellor "heard and considered Plaintiffs' Motion for a Temporary Restraining Order (the 'Motion') and brief in support thereof, and [] found that good cause existed to grant the Motion, [and did so]"(Attach. K).

And second, Defendants represented that "clone discovery" is "only potentially permissible when the fact of production in one case is of consequence in the next case." TR at 22:5-7. Defendants based this representation on an out-of-district case first sprung upon Plaintiffs and the Court at the May 24 Hearing. In truth, Magistrate Judge Westmore recently held that such discovery is appropriate where two cases have "significant factual and legal overlap." *Schneider v. Chipotle Mexican Grill, Inc.*, No.

June 14, 2017
Page 3

16-cv-02200-HSG (KAW), 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017). [2]

Since Plaintiffs have established the relevancy of the *Partners* discovery (due to the nearly identical factual allegations, and identical core theory of liability), Defendants now "ha[ve] the burden of showing that discovery should not be allowed, and also ha[ve] the burden of clarifying, explaining and supporting [their] objections with competent evidence." *See Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). During the May 24 Hearing, Defendants identified only two purportedly irrelevant subjects from *Partners*: (1) "representations about regulatory proceedings" (TR at 20:15); and (2) "documents relevant to the contract claims" (TR at 20:21). But the Complaint here specifically alleges that Defendants made misrepresentations about regulatory proceedings (Complaint, ¶¶25, 29, 89). Similarly, the "contract claims" in *Partners* consisted of two claims in the initial complaint for indemnification (dropped in the amended complaint) and breach of the covenant of good faith and fair dealing, which were based on, and incorporated, the exact same alleged misrepresentations regarding Defendants' supposedly revolutionary commercially ready technology. *Partners* initial complaint, Complaint, ¶¶139-146; *Partners* amended complaint, Complaint, ¶¶141-147.

To the extent that Defendants argue that other representations about the same technology during the same general time period are irrelevant (as they did in their rejection of Plaintiffs' list of topics for production from *Partners*), they are wrong because such representations are inextricably intertwined with all others the same Defendants made during the same period about the same subject. Moreover, even if not inextricably intertwined, such representations are not only relevant under the broad relevancy standard for discovery, but would be ***admissible*** at trial to prove falsity and Defendants' intent. *See, e.g.*, Fed. R. Evid. 404(b); *United States v. Shayota*, No. 15-CR-00264-LHK, 2016 WL 5791376, at *2 (N.D. Cal. Oct. 4, 2016) ("Rule 404(b) is a rule 'of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial.'" (quoting *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987)).

Defendants' failure to provide an acceptable justification for withholding specific documents is particularly glaring given that Plaintiffs provided of a list of discrete topics that undeniably overlap between this case and *Partners*. Attach. C. Likewise, Defendants' refusals to provide the search terms and protocols used in *Partners* and to identify any specific discovery or search terms they deem irrelevant, confirm that their true goal is to delay this litigation. The Court should not allow Defendants to delay, and exponentially increase the cost of, discovery to the Class' prejudice and in direct contravention of Rule 1. The vast majority – if not the entirety – of the discovery in *Partners* is categorically relevant here. Defendants have failed to prove the non-discoverability of any specific subjects, documents, or testimony from *Partners*. Plaintiffs respectfully request that the Court order Defendants to produce all discovery and filings from *Partners* without delay, except specific items completely unrelated to the topics listed in Attachment C (email) or the Complaint, and to provide a log and explanation for such withheld items.

---

[2] *In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *4 (N.D. Cal. July 19, 2010) is inapposite. There the court recognized that the Ninth Circuit "'strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation.'" *Id.* at *2 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)). But in *eBay* there was "little or no overlap of issues." *Id.* at *3. Also, in *eBay*, insolvency, prejudice, and the possible need for a mandatory class were not issues.

June 14, 2017
Page 4

## II.    DEFENDANTS' POSITION

After denying Plaintiffs' motion to compel the production of all materials from *Partners*, the Court stated that it was "going to give the opportunity to . . . take the parts that are relevant and proportional and to provide those." TR 30:6-21. In response, Defendants made a good faith, comprehensive proposal to search the *Partners* production and supply relevant materials. Plaintiffs, in contrast, doubled down on a demand for virtually complete production of materials from the *Partners* case, via a very burdensome and overly broad search. The Court should adopt Defendants' approach because: (1) Defendants' approach is consistent with the Court's prior orders; and, (2) contrary to Plaintiffs' assertions, the facts and claims of the two cases are not the same and the documents relevant to this lawsuit are smaller in scope than the universe of documents produced in *Partners*.

Plaintiffs' proposal (Attach. C), does not comply with the spirit or letter of the Court's order. It demands documents produced in *Partners* related to an expansive list of subjects untethered to the Complaint's allegations, and effectively asks for wholesale production. *See id.* at 1. For example, Plaintiffs' overly broad requests include a request for documents relating to "any actual or alleged acts of dishonesty related to Defendants' . . . representation concerning Theranos," which Plaintiffs will no doubt assert calls for all documents produced in *Partners* despite this case having a narrower scope than *Partners*. Plaintiffs position in this letter contains many other examples of overbreadth.[3] Worse, Plaintiffs' request is impractical and unnecessarily burdensome because it offers no means of isolating documents for review*, such as by using search terms. Instead, Plaintiffs demand that Defendants re-review *the entire Partners document production*—over 960,000 documents and many millions of pages. Plaintiffs essentially have just re-formatted, and doubled-down on, their demand for clone discovery.

Defendants' proposal (Attach. D), in contrast, is specific to the Complaint's allegations, credible, and tailored to the goal of producing that which is relevant and proportionate. The proposal: (i) suggests a lengthy list of search terms to focus the documents for review; (ii) proposes responsiveness criteria to be applied in assessing the filtered documents and deposition transcripts for production; and (iii) proposes additional agreements and stipulations to govern many logistics (*e.g.*, ESI protocol, clawback provisions, etc.). Indeed, even this proposal—far narrower than Plaintiffs' proposal—carries burdens: Defendants' own proposed search terms capture for review *nearly half* of the documents produced in *Partners*, putting to rest any question of whether Defendants have made a serious, substantive proposal.

Further, on the parties' sole meet and confer teleconference following Defendants' proposal, Defendants told Plaintiffs that they would be willing to consider additional search terms and responsiveness proposals. Yet, Plaintiffs refused to engage and filed this motion without ever responding to any aspect of Defendants' detailed proposal, such as by proposing additional search terms. Indeed, even in their position above, they never explain why Defendants' proposals were inadequate.

---

[3] Plaintiffs' request that Defendants turn over all discovery requests and search terms used in *Partners* not only went beyond the scope of the Court's order, but also was plainly improper. Plaintiffs are not entitled pick through what was sought and produced in *Partners* to determine for themselves what is relevant. *See In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *4 (N.D. Cal. July 19, 2010) (denying Hagens Berman's request, purportedly justified by efficiency considerations, to identify for themselves relevant documents produced in another case).

June 14, 2017
Page 5

Thus, the proper resolution is clear.  Plaintiffs' proposal is unworkable because it does not employ any mechanism to focus the review universe, and uses overly broad responsiveness criteria.  Indeed, Plaintiffs' position is ironic—they claim to want discovery very promptly, and speculate that the Company is running out of money; yet, by demanding a re-review of the entire *Partners* production, and even a log containing each irrelevant document (which would run thousands of pages), they seek a process that would take many months and be very costly.  Defendants' proposal, on the other hand, is tailored and workable.  The Court should order the parties to proceed with Defendants' plan.  If, as the parties make progress, additional search terms are needed, Defendants will confer on them in good faith.

The remainder of Plaintiffs' position in this letter amounts to incorrect sniping[4] and an attempt to re-argue the May 24 hearing by asserting that all *Partners* discovery is relevant.  While Defendants will not reargue that motion, it is obvious that Plaintiffs continue to overlook that their case challenges *public* advertising statements, not statements made in private to *Partners* about specific matters never raised in any advertisements.  The similarities that Plaintiffs point out are superficial and incorrect:

- While Plaintiffs insist that the Company's *current* finances are relevant, *Partners* discovery focused on the Company's finances *in 2014*, for which thousands of documents were produced.

- Plaintiffs' assertion that both cases raise regulatory matters is an overgeneralization.  *Partners* alleged that Theranos made specific representations about the status of regulatory proceedings.  That is not the same as the generalized assertion here that technology was commercially ready.

- Plaintiffs do not assert that the fact of production to *Partners* has independent relevance, which would be required to render clone discovery relevant.  And the case Plaintiffs cite does not help them.  In *Schneider*, the court only entitled the plaintiffs to discovery in the related case that was *relevant* to the claims they had asserted; they were not entitled to discovery related to advertising statements they did not challenge.  *See* 2017 WL 1101799 at *4.

- Plaintiffs' assertion that any representation by the Company to anyone could be relevant "character evidence" proves too much—it would mean that discovery in any action by any defendant in a tort case is fair game, because perhaps it could show propensity.

In short, Plaintiffs do not meet the standard for clone discovery, nor establish that the *Partners* discovery is relevant and proportional to the needs of this case.

The Court should deny Plaintiffs' motion, and instead allow the parties to proceed in accordance with Defendants' proposal.  This will avoid unnecessary burdens, and allow the parties promptly to begin productions that are focused on the materials most likely to be relevant.  This approach also does not harm Plaintiffs – the parties can continue to confer as discovery progresses.

---

[4] Plaintiffs' assertions about the TRO proceedings in Delaware are wrong.  As defense counsel accurately reported during the May 24 hearing, Vice Chancellor Laster entered a TRO—expressly calling it a "status quo" TRO—without ever receiving an opposition brief from Defendants.

June 14, 2017
Page 6


HAGENS BERMAN SOBOL
SHAPIRO LLP

By: */s/ Reed R.Kathrein*
Reed R. Kathrein (139304)
Peter E. Borkon (212596)
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1918 Eighth Ave., Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead
Counsel for the Class*

Sincerely,

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: */s/ Michael A. Mugmon*
Michael A. Mugmon (251958)
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *Pro Hac Vice*)
Robert K.Smith (admitted *Pro Hac* Vice)
Megan E. Barriger (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

COOLEY LLP

By: */s/ Kathleen Goodhart*
Kathleen Goodhart (165659)
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2012

June 14, 2017
Page 7

Facsimile:  (415) 693-2222
kgoodhart@cooley.com

Stephen C. Neal (170085)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
nealsc@cooley.com

*Attorneys for Defendant Elizabeth Holmes*

DAVIS WRIGHT TREMAINE LLP

By: */s/ Allison A. Davis*
Allison A. Davis (139203)
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile:  (415) 276-6599
allisondavis@dwt.com

Stephen M. Rummage (admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8136
Facsimile:  (206) 757-7136
steverummage@dwt.com

*Attorneys for Defendants Ramesh Balwani*

RRK:ll