# Attachment D

**WILMERHALE**

June 2, 2017

**Timothy Perla**

+1 617 526 6696 (t)
+1 617 526 5000 (f)
timothy.perla@wilmerhale.com

**By Email**

Reed Kathrein, Esq.
Hagens Berman Sobol Shapiro LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710
reed@hbsslaw.com

Jason Forge, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
jforge@rgrdlaw.com

Re: Colman et al. v. Theranos, Inc. et al., Case No. 5:16-cv-06822-NC

Dear Reed and Jason:

I write on behalf of Theranos, Inc. ("Theranos" or the "Company") in response to your emails dated May 24, 25, 26, and 29, 2017 regarding your Request for Production No. 8 ("RFP No. 8") and proposing to limit the scope of RFP No. 8 (collectively, "Plaintiffs' Proposal").[1] In addition to responding in detail to Plaintiffs' Proposal, I address other matters bearing on discovery, the resolution of which will allow the parties to move efficiently through this process.

**I.   Proposal for the Production of Relevant Materials from the PFM Litigation**

As you know, at the recent discovery hearing, the Court addressed RFP No. 8 and held that Plaintiffs are not entitled to clone discovery, but instead are entitled only to discovery that is relevant and proportional: "Plaintiffs' request to discover all filings and discovery in the Partners Lawsuits [is] denied for lack of good cause. The parties must confer and assess relevance and proportionality . . . for specific discovery requested out of the Partners Lawsuits." ECF No. 82 at 1. In your email dated May 29, 2017, you proposed limiting RFP No. 8 to all pleadings, court filings (including all motions, briefs, court orders and related docket entries), discovery requests and responses, documents produced in and transcripts of depositions taken in *Partner Investments et al. v. Theranos et al.* C.A. No. 2016-12816-VCL ("Initial PFM Litigation"),

---

[1] RFP No. 8 requests: "All pleadings, court filings (including all motions, briefs, court orders and related docket entries), discovery requests and responses, documents produced in and transcripts of depositions taken in *Partner Investments et al. v. Theranos et al.* C.A. No. 2016-12816-VCL, *Partner Investments et al. v. Theranos et al.* C.A. No. 2017-0262-JTL, and *Walgreen Co. v. Theranos*, 1:16-cv-01040-SLR."

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109
Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    Washington

**WILMERHALE**

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 2

*Partner Investments et al. v. Theranos et al.* C.A. No. 2017-0262-JTL ("PFM TO Litigation," and together with the Initial PFM Litigation, "PFM Litigation"), and *Walgreen Co. v. Theranos*, 1:16-cv-01040-SLR ("Walgreens Litigation"), limited to a list of substantive subject matter categories. During our May 30, 2017 teleconference, you agreed to further limit this request to the PFM Litigation given that no documents have been produced in the Walgreens Litigation.

While Theranos appreciates Plaintiffs' proposal, and is prepared to work towards a mutually acceptable solution, Plaintiffs' list of topics is overbroad, includes irrelevant matter, and would require a burdensome review process disproportionate to the issues in the case. The Complaint asserts that Theranos engaged in a "widespread publicity" and "advertising" campaign, Compl. ¶¶ 2, 89, in which Theranos advertised to consumers that it was capable of quickly and effectively running blood tests on smaller blood samples than its competitors, *see e.g., id.* ¶¶ 23-24, 28, 30-40. The Complaint asserts that those *public* representations were intended to induce the purchase of "Theranos securities," induced the purchase of "Theranos securities," and affected the price at which investors purchased "Theranos securities." *See, e.g., id.* ¶¶ 88-123. The Complaint also offers specific reasons for why Theranos's public representations were allegedly misleading or inaccurate. *See id.* ¶ 89; *see also id.* ¶¶ 25, 27, 29. The Complaint, however, does not challenge any representations made in direct communications between Theranos and any putative class member—nor could it, because Plaintiffs had no direct communications with Theranos; they claim to have purchased "Theranos securities" based on publicity. The Complaint also contains no contract claims—because Plaintiffs did not have any agreements with Theranos, or purchase anything from Theranos. In short, Theranos does not agree to your proposal to the extent it makes requests beyond the scope of the allegations that are actually relevant to this action, *i.e.,* allegations about public statements made in an allegedly false publicity campaign that allegedly induced securities purchases.

In light of the allegations in the Complaint, and after considering the subject matter categories you have identified, Theranos proposes to respond to RFP No. 8 by conducting ESI searches and review of the documents produced by Theranos in the PFM Litigation as set forth below. Similarly, Theranos proposes to respond to RFP No. 8 by reviewing all transcripts of depositions taken of current and former Theranos employees deposed in the PFM Litigation as also set forth below.

### A.    Public Representations

The Complaint challenges Theranos's *public* representations. *See* Compl. ¶¶ 2, 89. Those statements are alleged to have appeared: (1) on Theranos's website, *see id.* ¶¶ 23, 28, 31; (2) in news articles, feature profiles and interviews, *see id.* ¶¶ 31-32; and (3) in advertisements in stores operated by, and on the website of, Walgreen Co., *see id.* ¶¶ 33-40. Consistent with those

WILMERHALE

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 3

allegations, Theranos proposes to produce the following from the discovery produced in the PFM Litigation:

- Date Restriction: July 1, 2013 to October 5, 2016.

- ESI Search Terms:

| |
|---|
| (twitter or tweet*) w/25 (FDA or nanotainer* or drop* or sample* or needle* or FS or fingerstick* or finger-stick* or clear* or approv*) |
| (website* or webpage* or www.theranos.com*) w/25 (FDA or nanotainer* or drop* or sample* or needle* or fingerstick* or finger-stick* or clear* or approv*) |
| (speech* or script* or interview* or present* or conference*) w/25 (senate or tedmed or "usa today" or "wall street journal" or wsj or forbes or fortune or cnbc or cnn or cbs or youtube or twitter) |
| (Walgreen* or WAG) w/25 ("wellness center*" or display or ad or advertis* or drop* or sample* or needle* or FS or fingerstick* or finger-stick*) |

- Deponent Transcripts: Current and former Theranos employees.

- Responsive Criteria: Any document or portion of a deposition transcript concerning public representations regarding Theranos's technology or the status of its regulatory approval and/or compliance, and any document or portion of a deposition transcript concerning Theranos's advertisements in stores operated by, and on the website of, Walgreen Co.

### B. Theranos's Technology

The Complaint makes specific allegations regarding the purported falsity of Theranos's public representations that can generally be grouped into two categories: (1) Theranos's technology did not operate as represented, *see, e.g.,* Compl. ¶ 89; and (2) Theranos did not have the regulatory approval it represented having received, *see id.* Consistent with those allegations, Theranos proposes to produce the following from the discovery produced in the PFM Litigation that is relevant to the operation of Theranos's technology:

- Date Restriction: July 1, 2013 to October 5, 2016.

**WILMERHALE**

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 4

- ESI Search Terms:

| |
|---|
| (capillary or fingerstick or "finger stick" or finger-stick* or nanotainer or blood or Edison or analyzer*) w/10 (accur* or inaccur* or "not accurate" or dilute*) |
| (turnaround or (turn w/2 around) or day* or hour*) w/10 (result* or test*) |
| "Jurassic Park" |

- Deponent Transcripts: Current and former Theranos employees.

- Responsive Criteria: Any document or portion of a deposition transcript concerning internal or external vetting or validation of Theranos blood testing technology, test accuracy, and finger stick draws.

**C.   Government Interactions and FDA Submissions**

As set forth in Section I.B above, the Complaint makes specific allegations regarding the purported falsity of Theranos's public representations, including that Theranos did not have the regulatory approval or compliance it represented having received. *See* Compl. ¶ 89. Consistent with those allegations, Theranos proposes to produce the following from the discovery produced in the PFM Litigation that is relevant to Theranos's represented regulatory approval:

- Date Restriction: July 1, 2013 to October 5, 2016.

- ESI Search Terms:

| |
|---|
| (FDA or "fda.gov" or CMS or "cms.gov" or CLIA) w/25 (submi* or approv* or capillary or fingerstick or "finger stick" or finger-stick* or nanotainer or Edison or analyzer* or assay) |

- Deponent Transcripts: Current and former Theranos employees.

- Responsive Criteria: Any document or portion of a deposition transcript concerning communications or interactions with the FDA or CMS relating to Theranos's regulatory approval or compliance, including any document or communication concerning Theranos's submissions to the FDA or CMS.

WILMERHALE

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 5

### D. Capital Raising Strategy

At the core of the Complaint is the assertion that Defendants' public statements were intended to induce the purchase of Theranos securities. *See, e.g.,* Compl. ¶¶ 20-21, 26-27, 31. Consistent with that allegation, Theranos proposes to produce the following from the discovery produced in the PFM Litigation that is relevant to Theranos's capital raising strategy:

- Date Restriction: July 1, 2013 to October 5, 2016.

- ESI Search Terms:

> (capital or invest*) w/10 (strateg* or model* or plan*)

- Deponent Transcripts: Current and former Theranos employees.

- Responsiveness Criteria: Any document or portion of a deposition transcript discussing or setting forth strategy for raising capital and attracting investors.

## II. Other Discovery Agreements

Given that the parties are beginning large scale document productions, the Company below proposes several agreements to facilitate the process, and further Plaintiffs' stated goal of proceeding quickly.

### A. Cutoff Date for Demands for ESI Searches

Given the expense involved with conducting ESI search and review, as well as the lengthy turnaround time and the need to avoid duplicative review, the Company proposes that the parties agree to June 30, 2017 as the last date for service of Requests for Production that reasonably call for ESI search and or review. In other words, the parties would remain free after that date to request specific documents, but not to request the initiation of new searches or reviews, absent leave of court. Please let me know Plaintiffs' position.

### B. ESI Protocol

Defendants have reviewed the proposed ESI protocol circulated by Plaintiffs on May 24, 2017. Defendants' proposed stipulation and order, substantially conforming to Plaintiffs' May 24, 2017 proposal, is attached.

### C. Rule 502(d) Agreement

Prior to any production of documents responsive to RFP No. 8, Theranos requires the entry of a Rule 502(d) claw back stipulation and order. Defendants' proposed stipulation and order is attached.

### D. HIPAA Agreement

Theranos has many documents that are potentially subject to protection under HIPAA, and issues requiring cooperation are likely to arise throughout the case. Without attempting for all time to resolve HIPAA issues, Theranos proposes the attached HIPAA stipulation and proposed order to facilitate production. This will not alleviate the need for Theranos to manually review at least some documents—and potentially to redact patient information—all of which Theranos reserves the right to do when it believes in good faith that such measures are necessary.

### E. Privilege Logging

The Company proposes that the parties agree in advance to a privilege logging protocol, to avoid dispute later and to allow the parties to move in a cost efficient and expeditious matter through discovery. The parties in the PFM Litigation were able to proceed as quickly as they did in part because they agreed to a streamlined privilege logging process. For purposes of this lawsuit, Theranos proposes the following.

#### 1. Non-Logging

Theranos proposes that no party need log privileged documents that: (i) were created after the date that this lawsuit was filed; or (ii) are subject to attorney client privilege or work product protection due to the involvement (and inclusion on the document) of outside counsel. This is without prejudice to any party's right to request, and pursue in Court if necessary, an exception for categories of documents.

Further, Theranos proposes that there shall be no need in the first instance to log documents that are produced with redactions, but any party shall have the right in good faith to request for a redacted document the information that would appear on a log. This procedure eliminates needless privilege logging because, in our experience, very often the unredacted portions of a document communicate the information that would be logged.

#### 2. Form of Privilege Log

In responding to Plaintiffs' First Set of Requests for Production of Documents to Defendants, Defendants objected to the form of privilege log Plaintiffs requested as unduly

WILMERHALE

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 7

burdensome, and well beyond what is required by Federal Rule of Civil Procedure 26(b)(5). Mindful of the parties' obligation to provide sufficient information regarding withheld documents to enable the assessment of the claim of privilege asserted, Defendants propose the parties prepare a privilege log with the following fields:

| Bates Range |
| --- |
| Date |
| Custodian |
| From |
| Recipient (to/cc) |
| Brief Description |
| Privilege Asserted |

Where an entire email chain is withheld, only the date, custodian, from and recipient fields for the most recent email in the chain shall be logged.

### F. Deposition Scheduling

As we have already discussed by phone, all deposition notices may include dates and locations, but it is understood that the parties will work to identify mutually convenient dates and locations for all depositions. Alternatively, deposition notices may be served with the date and location left blank and subject to agreement, and such notices shall not be deemed defective as a result. No party shall be required to seek court intervention concerning deposition dates and locations until the parties have exhausted all cooperative efforts.

Further, agreeing to deposition dates and locations does not waive any rights, including rights to object to or seek relief from any deposition or portion thereof.

### G. Third Party Subpoenas

All parties shall receive a copy of any third-party subpoena on the same day that the serving party first attempts to serve or otherwise notify the subpoenaed party.

WILMERHALE

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 8

A party receiving a document production in response to a third-party subpoena shall produce a copy to all other parties the sooner of: (i) within two business days; or (ii) immediately if a deposition of that third party (or other deposition to which the documents are reasonably relevant) is scheduled to occur within one week.

### III. Theranos's Production in Response to Plaintiffs' First Set of Document Requests

In your email dated May 26, 2017, you posed questions concerning Theranos's production in response to Plaintiffs' First Set of Document Requests. Theranos responds as follows:

#### A. Attachments

In short, Theranos did not omit attachments. Theranos produced all iterations of email chains collected from relevant custodians that hit upon the search terms used to identify responsive documents. Any document with attachments that hit upon the search terms was produced with its attachments. The documents you identified as missing attachments fall into two categories.

The first category includes documents for which other iterations of the email chain have attachments, and those attachments were produced.

- TH-COL0000000916: There are no attachments to this email, and it is not part of a chain that has attachments. The response to this email, along with the attachments to that response, were produced at TH-COL0000000419-420, TH-COL0000000421, TH-COL0000000609, and TH-COL0000000610.

- TH-COL0000002228: The earlier email chain, and its attachments, were produced at TH-COL0000000936, TH-COL0000000937, and TH-COL0000000942.

- TH-COL0000002444-2446: The earlier email chain, and its attachment, were produced at TH-COL0000001904 and TH-COL0000001906. The attachment was produced in native format (excel spreadsheet), as indicated by the slip sheet stating: "File Produced in Native Format."

The second category includes documents for which some iterations of the email chain were produced and others were not because the search terms used to identify responsive documents hit on metadata in some, but not all, of the emails in the chain.

WILMERHALE

Reed Kathrein, Esq.
Jason Forge, Esq.
June 2, 2017
Page 9

### B. Cut-off Document

Theranos will re-produce TH-COL0000002389, which was cut off during processing because it is a wide email that did not wrap appropriately when loaded into our review platform.

### C. Confidentiality Designations

Blank and non-substantive attachments are coded for confidentiality at the family-level for consistency. TH-COL0000002391 is a blank attachment to TH-COL0000002389, which is marked confidential.

### D. Privilege Log

Once the parties agree on a privilege log format, Theranos will provide a privilege log covering the production in response to Plaintiffs' First Set of Requests for Production.

Very truly yours,

*/s/ Timothy Perla*

Timothy Perla

cc: Counsel of Record