Michael A. Mugmon (251958)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: +1 650 858 6000
Facsimile: +1 650 858 6100
michael.mugmon@wilmerhale.com

Christopher Davies (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: +1 202 663 6000
Facsimile: +1 202 663 6363
christopher.davies@wilmerhale.com

Timothy Perla (admitted *pro hac vice*)
Robert K. Smith (admitted *pro hac vice*)
Megan E. Barriger (admitted *pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000
timothy.perla@wilmerhale.com
robert.smith@wilmerhale.com
megan.barriger@wilmerhale.com

*Attorneys for Defendant Theranos, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>THERANOS, INC., ELIZABETH HOLMES, and RAMESH BALWANI,<br><br>                    Defendants. | Case No.  5:16-cv-06822-NC<br><br>**DEFENDANTS' MOTION TO LIMIT THE PUTATIVE CLASS DEFINITION**<br><br>Hearing Date: August 23, 2017<br>Time: 1:00 PM<br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael Cousins |

1    COUNSEL CONTINUED:

2    Kathleen Goodhart (165659)
     COOLEY LLP
3    101 California Street, 5th Floor
     San Francisco, CA 94111
4    Telephone: +1 415 693 2012
     Facsimile: +1 415 693 2222
5    kgoodhart@cooley.com

6    Stephen C. Neal (170085)
     COOLEY LLP
7    3175 Hanover Street
     Palo Alto, CA 94304
8    Telephone: +1 650 843 5000
     Facsimile: +1 650 849 7400
9    nealsc@cooley.com

10   *Attorneys for Defendant Elizabeth Holmes*

11   Allison A. Davis (139203)
     DAVIS WRIGHT TREMAINE LLP
12   505 Montgomery Street, Suite 800
     San Francisco, CA 94111
13   Telephone: +1 415 276 6500
     Facsimile: +1 415 276 6599
14   allisondavis@dwt.com

15   Stephen M. Rummage (admitted *pro hac vice*)
     DAVIS WRIGHT TREMAINE LLP
16   1201 Third Avenue, Suite 2200
     Seattle, WA 98101-3045
17   Telephone: +1 206 757 8136
     Facsimile: +1 206 757 7136
18   steverummage@dwt.com

19   *Attorneys for Defendant Ramesh Balwani*

20

21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

NOTICE OF MOTION AND MOTION ......................................................................................1

STATEMENT OF RELIEF SOUGHT ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

I.       INTRODUCTION .............................................................................................................1

II.      BACKGROUND ...............................................................................................................3

       A.     Theranos and Its Shareholders.............................................................................3

       B.     The Tender Offer and Releases.............................................................................4

       C.     Other Shareholder Releases..................................................................................6

       D.     Plaintiffs' Putative Class Claims ..........................................................................6

       E.     Relevant Prior Proceedings ..................................................................................7

III.     ARGUMENT ....................................................................................................................9

       A.     Any Class Must Exclude Theranos Shareholders Who Signed Forum
              Selection Clauses Selecting An Alternate Forum...................................................11

       B.     Any Class Must Exclude Theranos Shareholders Who Signed Releases..............15

       C.     Plaintiffs' Claims Are Otherwise Atypical of, and In Conflict With, Those
              of Theranos Shareholders ...................................................................................18

       D.     Including Theranos Shareholders Would Defeat Rule 23(b)(3) Superiority .........20

       E.     Plaintiffs Cannot Obtain Certification Under Rule 23(b)(1)(B)............................24

IV.    CONCLUSION................................................................................................................25

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Federal Cases**                                                                                      **Page(s)**

3

*Amchem Prods., Inc. v. Windsor,*
4
   521 U.S. 591 (1997)...................................................................................20, 21

5

*Arizona v. Shamrock Foods Co.,*
   729 F.2d 1208 (9th Cir.1984) ..............................................................................14
6

*Avilez v. Pinkerton Gov't Servs., Inc.,*
7
   596 F. App'x 579 (9th Cir. 2015) ...........................................................10, 11, 20

8

*Beach v. Healthways, Inc.,*
   No. 3:08-0569, 2009 WL 3245393 (M.D. Tenn. Oct. 5, 2009)..............................20
9

10   *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship,*
   No. 02 C 0978, 2003 WL 21267103 (N.D. Ill. May 29, 2003) ........................21, 22

11

*Carr v. N.Y. Stock Exch., Inc.,*
12
   414 F. Supp. 1292 (N.D. Cal. 1976) ..............................................................21, 22, 23

13   *Circle Click Media LLC v. Regus Mgmt. Grp. LLC,*
   No. 12-CV-04000-EMC, 2016 WL 1048046 (N.D. Cal. Mar. 11, 2016)................12
14

15   *Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013)........................................................................................10

16

*Conde v. Open Door Mktg., LLC,*
17
   No. 15-CV-04080-KAW, 2017 WL 1508968 (N.D. Cal. Apr. 27, 2017) .............12

18   *Cty. of Santa Clara v. Astra USA, Inc.,*
   No. C 05-03740 WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ..................17
19

20   *Darisse v. Nest Labs, Inc.,*
   No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)............13

21

*Dugan v. Lloyds TSB Bank, PLC,*
22
   No. C 12-02549 WHA, 2013 WL 1703375 (N.D. Cal. Apr. 19, 2013)...................14

23   *Fed. Ins. Co. v. Caldera Med. Inc.,*
   No. 2:15-cv-00393-SVW, 2016 WL 5922313 (C.D. Cal. July 25, 2016) ........................24, 25
24

25   *Finn v. Sullivan,*
   No. 16-CV-05285-WHO, 2017 WL 130278 (N.D. Cal. Jan. 13, 2017)................14

26

*Gen. Telephone Co. of Sw. v. Falcon,*
27
   457 U.S. 147 (1982).............................................................................................10

28

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................................10, 20

*Int'l Ins. Co. v. Red & White Co.*,
   No. C-93-0659 MHP, 1994 WL 706362 (N.D. Cal. Dec. 12, 1994)......................................14

*Javine v. San Luis Ambulance Serv., Inc.*,
   No. 13-cv-07480-BRO, 2015 WL 12672090 (C.D. Cal. Jan. 13, 2015) ...................15, 16, 17

*M/S Bremen v. Zapata Off–Shore Co.*,
   407 U.S. 1 (1972)......................................................................................................................11

*Madrigal v. Tommy Bahama Grp., Inc.*,
   No. CV 09-08924 SJO CWX, 2011 WL 10511339 (C.D. Cal. June 27, 2011) ......................16

*Maher v. Int'l Bhd. of Elec. Workers/6th Dist.*,
   No. 90 C 6502, 1991 WL 268657 (N.D. Ill. Dec. 3, 1991) .....................................................13

*Marino v. Sports Auth.*,
   940 F. Supp. 792 (E.D. Pa. 1996) ...........................................................................................17

*Melong v. Micronesian Claims Comm'n*,
   643 F.2d 10 (D.C. Cir. 1980) ..................................................................................................15

*Munoz v. PHH Corp.*,
   No. 1:08-CV-0759-AWI-BAM, 2013 WL 2146925 (E.D. Cal. May 15, 2013) ...................12

*Nguyen v. BDO Seidman, LLP*,
   No. SACV-07-01352-JVS, 2009 WL 7742532 (C.D. Cal. July 6, 2009)...................21, 22, 23

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014) .......................................18

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)............................................................................................................24, 25

*In re Park Cent. Glob. Litig.*,
   No. 3:09-CV-765-M, 2014 WL 4261950 (N.D. Tex. Aug. 25, 2014)....................................25

*Primavera Familienstiftung v. Askin*,
   178 F.R.D. 405 (S.D.N.Y. 1998) .........................................................................................21, 22

*Rawat v. Navistar Int'l Corp.*,
   No. 08-CV-4305, 2011 WL 222131 (N.D. Ill. Jan. 20, 2011).................................................15

*Ridgeway v. Wal-Mart Stores, Inc.*,
   No. 08-CV-05221-SI, 2016 WL 4529430 (N.D. Cal. Aug. 30, 2016) ......................................9

*Ries v. Arizona Beverages USA LLC*,
   No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)............................................9

- iii -

*S. Snack Foods, Inc. v. J&J Snack Foods Corp.*,
    79 F.R.D. 678 (D.N.J. 1978).............................................................................13

*Santos v. TWC Admin. LLC*,
    No. CV 13-04799 MMM, 2014 WL 12558009 (C.D. Cal. Aug. 4, 2014) .............24

*Schwarz v. Sellers Mkts., Inc.*,
    812 F. Supp. 2d 932 (N.D. Ill. 2011) ..................................................................11

*Shayler v. Midtown Investigations, Ltd.*,
    No. 12 CIV. 4685 KBF, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ..................23

*Slavkov v. Fast Water Heater Partners I, LP*,
    No. 14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015)..................17

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ..........................................................................13

*Stafford v. Brink's, Inc.*,
    No. 14-cv-01352- MWF, 2015 WL 12699458 (C.D. Cal. Dec. 1, 2015)..........16, 17

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................10, 19

*Stewart v. Avon Prod., Inc.*,
    No. CIV. A. 98-4135, 1999 WL 1038338 (E.D. Pa. Nov. 15, 1999) ....................16

*Sun v. Kao*,
    170 F. Supp. 3d 1321 (W.D. Wash. 2016)............................................................11

*Tan v. Grubhub, Inc.*,
    No. 15-CV-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016).............9, 12

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    308 F.R.D. 630 (N.D. Cal. 2015) ........................................................................21

*In re Telectronics Pacing Sys., Inc.*,
    221 F.3d 870 (6th Cir. 2000) ...............................................................................25

*In re Titanium Dioxide Antitrust Litig.*,
    962 F. Supp. 2d 840 (D. Md. 2013) .....................................................................12

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,
    No. 12-cv-5080-CRB, 2013 WL 3802807 (N.D. Cal. July 17, 2013)...................17

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...............................................................................10

*Vinole v. Countrywide Home Loans, Inc.*,
 571 F.3d 935 (9th Cir. 2009) ...................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ...................................................9, 10

*Williams v. Foods*,
 No. CV 13-00146 CRB, 2013 WL 4067594 (N.D. Cal. Aug. 1, 2013) ...................9

*Williamson v. Geisler*,
 12-cv-8056-DSF, 2013 WL 12087188 (C.D. Cal. Sept. 19, 2013) ...................17

*Wu v. Pearson Educ., Inc.*,
 277 F.R.D. 255 (S.D.N.Y. 2011) ...................................................14

*Yordy v. Plimus, Inc.*,
 No. C12-0229 TEH, 2013 WL 5832225 (N.D. Cal. Oct. 29, 2013) ...................24

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ...................................................24

**State Cases**

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*,
 992 A.2d 1239 (Del. Ch. 2010) ...................................................11

*Ingres Corp. v. CA, Inc.*,
 8 A.3d 1143 (Del. 2010) ...................................................11

*Partner Invs., LP et al. v. Theranos, Inc. et al.*,
 No. 2016-12816-VCL (Del. Ch. Apr. 12, 2017) ...................................................13

**Rules**

Fed. R. Civ. P. 23 ................................................... *passim*

Cal. Rules of Prof'l Conduct r.3-310 ...................................................19

**Other Authority**

Jayne E. Zanglein & Susan J. Stabile, *ERISA Litigation* 479–80 (2d ed. 2005) ...................16

Newberg on Class Actions § 4:16 (5th ed. 2017) ...................................................24

Newberg on Class Actions § 4:70 (5th ed. 2017) ...................................................21

Newberg on Class Actions § 4:88 (5th ed. 2017) ...................................................22

- v -

**<u>NOTICE OF MOTION AND MOTION</u>**

PLEASE TAKE NOTICE that on August 23, 2017, at 1:00 PM, or as soon thereafter as the matter may be heard, in Courtroom 7, located at San Jose Courthouse, 280 South First Street, San Jose, CA 95113, in accordance with the May 24, 2017 Court's Order (ECF No. 82), Defendants will move pursuant to Fed. R. Civ. P. 23 to limit the putative class described in the Class Action Complaint.  This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities, oral arguments as permitted by the Court, and other matters that the Court deems appropriate.

**<u>STATEMENT OF RELIEF SOUGHT</u>**

Defendants seek an order (i) holding that, under Rule 23, Plaintiffs may not obtain certification of a class that includes purchasers of Theranos securities; (ii) limiting the definition of the putative class to exclude purchasers of Theranos securities; and (iii) striking the class definition to the extent it includes purchasers of Theranos securities.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.    INTRODUCTION**

Plaintiffs seek to represent a class that encompasses both (i) investors who purchased Theranos securities ("Theranos Shareholders"), and (ii) persons who—like Plaintiffs—purchased interests in investment funds that in turn purchased Theranos securities ("Fund Purchasers"). These two groups, however, have materially different characteristics that make it impossible to include them within a single class.  Unlike Plaintiffs and other Fund Purchasers, Theranos Shareholders: (i) are subject to contractual provisions affecting their claims, including forum selection clauses selecting other courts for any litigation; and (ii) have nearly all released their claims.  These and other differences preclude Plaintiffs from representing a class including Theranos Shareholders.  Therefore, in accordance with the Court's May 24, 2017 Order inviting this Motion, Defendants seek an order eliminating Theranos Shareholders from any class.  This request is consistent with Rule 23—which calls for consideration of certifiability early in the case—and will focus this case, allowing it to proceed more efficiently.

***Forum Selection Clauses And Other Contractual Provisions:*** Theranos Shareholders are subject to forum selection clauses requiring them to litigate their claims exclusively in other courts. But Plaintiffs did not sign forum selection clauses with Theranos—because they did not purchase securities from Theranos. Their claims therefore are not typical of the claims of Theranos Shareholders, as Rule 23(a)(3) requires. Further, Plaintiffs cannot satisfy the adequacy requirement of Rule 23(a)(4) because they have a fundamental conflict of interest with Theranos Shareholders: Plaintiffs must seek to invalidate the forum selection clauses to enlarge their putative class (and thus settlement leverage), even though all available evidence shows Theranos Shareholders do not want that result. Indeed, when this Court recently raised whether two Theranos Shareholders—Lucas Venture Group XI, LLC and Celadon Technology Fund VII, LLC—should be joined as parties, both invoked forum selection clauses in opposing joinder.

The documentation that Theranos Shareholders signed contains other provisions that exacerbate differences and conflicts between Theranos Shareholders and Fund Purchasers, such as Plaintiffs, including restrictions on transferring any interests in Theranos securities, jury-waivers, and attorneys' fee clauses.

***Releases:*** Nearly all Theranos Shareholders who meet Plaintiffs' class definition have signed releases. Plaintiffs, who did not sign releases, have claims that are atypical of this group. Plaintiffs also have a conflict of interest with Theranos Shareholders: to avoid the releases, Plaintiffs must seek to undo settlement agreements that Theranos Shareholders chose to execute for valuable consideration and with knowledge of the claims asserted in this case.

***Superiority:*** A class that includes Theranos Shareholders is not superior under Rule 23(b)(3) to allowing Theranos Shareholders to individually pursue their claims (if they have any that survive their releases and wish to do so). This case is the poster child for lack of superiority: Theranos Shareholders (i) are highly sophisticated with sophisticated counsel; (ii) hold large stakes that would more than incentivize and justify any individual litigation that they wish to bring; and (iii) are few in number. The fundamental justification for class actions—aggregating individual claims that otherwise class members would not have incentive to bring—has no application here. Indeed, although Plaintiffs have had Theranos Shareholders' contact

1   information for months, and have served them with subpoenas, nothing suggests any Theranos

2   Shareholder has any appetite to support this litigation.

3       *No Limited Fund Class*:  Plaintiffs cannot overcome these problems by moving to certify

4   a Rule 23(b)(1)(B) mandatory class on the premise that Theranos is a "limited fund."  The Court

5   need not reach this issue because Plaintiffs cannot satisfy the prerequisites of Rule 23(a).

6   Regardless, the limited fund concept is narrow, reaches only situations involving defined pots of

7   money, and does not reach companies with ongoing operations, even if financially troubled.

8   **II.     BACKGROUND**

9       **A.     Theranos and Its Shareholders**

10      Theranos, Inc. ("Theranos") is a private company dedicated to developing new and

11  innovative blood testing technologies.  *See* Compl. ¶ 19.  Over time, Theranos has raised funds

12  by selling stock to a select group of highly sophisticated venture capital firms, hedge funds,

13  family offices, and wealthy private individuals ("Theranos Shareholders").  June 30, 2017 Decl.

14  of Alexander Ryan White ¶ 3 ("White Decl.").  Theranos Shareholders conducted their own due

15  diligence before investing, usually through in-person meetings with Theranos executives to

16  discuss non-public information such as product strategy, financial projections, and ongoing

17  research.  *Id.* ¶ 5.  Theranos Shareholders who fall within the class definition invested up to $125

18  million each during the class period, with an average investment of approximately $21.8 million.

19  *Id.* ¶ 6.  Many have outside or in-house counsel at their disposal.  *Id.* ¶ 4.  Appendix A hereto

20  identifies the known Theranos Shareholders who fall within the class definition.

21      At purchase, Theranos Shareholders signed various documents, including a joinder to an

22  Investor Rights Agreement ("IRA") and a Stock Purchase Agreement ("SPA," and, together with

23  the IRA, "Purchase Agreements").  The IRA governs the relationship between Theranos and the

24  Shareholder, conferring rights and imposing obligations on both parties.  Every known Theranos

25  Shareholder who falls within the class definition signed a joinder to the IRA.  *Id.* ¶ 7.  Copies of

26  the signed joinders to the IRAs, Master Signature Pages including signatures to the IRAs, and the

27  relevant IRAs are attached to the White Declaration as Exhibits ("W. Ex.") 1-5.  The IRA

28  contains numerous relevant provisions:

- Forum Selection:  The IRA specifies that claims must be brought exclusively in Delaware, where Theranos is incorporated.  *See, e.g.*, W. Ex. 1, § 5.11 ("Jurisdiction; Venue. Each of the parties to this Agreement irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery (and if the Delaware Court of Chancery is unavailable, any state or federal court sitting in Wilmington, Delaware), as well as to the jurisdiction of all courts to which an appeal may be taken therefrom, in any suit, action, or proceeding arising out of or relating to this Agreement.").

- Attorneys' Fee Shifting:  The IRA shifts costs and attorneys' fees to the losing party in a dispute over the enforcement of the IRA.  *See, e.g.*, W. Ex. 1, § 5.16 ("If any party to this Agreement seeks to enforce its rights under, or in connection with this Agreement, or challenges the validity of this Agreement through legal proceedings, the non-prevailing party shall pay all reasonable costs and expenses (including attorneys' fees) incurred by the prevailing party.").

- Jury Waiver:  The IRA contains a jury trial waiver.  *See, e.g.*, W. Ex. 1, § 5.11 ("Each of the parties to this agreement other than the Company waives any and all right to trial by jury in any suit, action, or proceeding arising out of or relating to this Agreement.") (formatting omitted).

- Restriction on Transfers:  The IRA prohibits any Theranos Shareholder from transferring any interest—legal or beneficial—in Theranos securities without first affording Theranos a right of first refusal, and meeting other requirements.  *See, e.g.*, W. Ex. 1, § 2.7(a) ("Each Holder agrees not to make any sale, assignment, transfer, pledge or other disposition of all or any portion of the Restricted [Theranos] Securities, or any beneficial interest therein, unless and until the transferee has agreed in writing for the benefit of the Company to take and hold such Restricted [Theranos] Securities subject to, and to be bound by, the terms and conditions set forth in this Agreement . . . .").

In addition, Theranos Shareholders signed an SPA, copies of which are attached to the White Declaration as Exhibits 6-8.  Those agreements often contain provisions materially identical to the IRA provisions regarding forum selection, attorneys' fees, and jury waiver.

**B.    The Tender Offer and Releases**

In the summer of 2016, certain Theranos Shareholders who had purchased Theranos Series C-1 and C-2 Preferred Stock approached Theranos with a proposal that the Company negotiate with them for a share exchange and release of claims.[1]  Between August 2016 and March 2017, Theranos negotiated with Series C-1 and C-2 Preferred Stockholders, both directly

---

[1] *See* W. Ex. 9 (August 11, 2016 Email from Cravath, Swaine, & Moore proposing that Theranos negotiate with Theranos C Shareholders for a share exchange and release of claims); Apr. 5, 2017 Decl. of David Taylor ("Taylor Decl.") ¶¶ 4, 5 (ECF No. 54).

1    and through their representatives, who were themselves sophisticated investors.  *See* Taylor

2    Decl. ¶ 6; White Decl. ¶ 9.

3          The parties exchanged hundreds of communications, met personally several times to

4    negotiate the share exchange, and exchanged multiple term sheets over a variety of proposals.

5    *See* Taylor Decl. ¶ 6; White Decl. ¶ 9.  For example, draft term sheets were exchanged in August

6    2016, October 2016, January 2017, February 2017, and March 2017.  White Decl. ¶ 9.  The

7    parties always contemplated that, as part of any agreement, the Series C-1 and C-2 Preferred

8    Stockholders would provide a release in favor of Theranos, its officers, and its directors.  Indeed,

9    the very first iteration of a term sheet, which was exchanged in August 2016 and proposed by a

10   Series C-1 and C-2 Preferred Stockholder—well before Plaintiffs' counsel even began soliciting

11   plaintiffs for this Action[2]—provided for such a release, and the filing of this lawsuit had no

12   impact on the form of the release being contemplated.  *See* Taylor Decl. ¶ 6; W. Ex. 10 (Aug. 11,

13   2016 Draft Term Sheet Proposed by Investor Represented by Cravath, Swaine & Moore, LLP).

14         After months of negotiations, the parties agreed to a non-binding term sheet that was

15   distributed to Series C-1 and C-2 Preferred Stockholders for review.  *See* Taylor Decl. ¶ 8.  The

16   parties concluded it was appropriate for Theranos to conduct a tender offer under federal

17   securities laws for an exchange on the terms set out in the term sheet with the Series C-1 and C-2

18   Preferred Stockholders.  *See id.*  Specifically, in return for executing a release of claims, each

19   Series C-1 and C-2 Preferred Stockholder could exchange existing shares for new shares with an

20   effective price adjustment of their original purchase price and enhanced rights, including

21   expanded rights to information and voting rights, an enhanced equity preference, and, with

22   respect to the exchanged Series C-2 shares, the right to elect a Theranos director.  *Id.*

23         In March 20, 2017, Theranos initiated the Share Offer and Exchange ("Tender Offer") to

24   the approximately forty Series C-1 and C-2 Preferred Stockholders.  *See* Taylor Decl. ¶¶ 4, 8; W.

25

---

26   [2] *See THERANOS INVESTOR ALERT: Hagens Berman Investigating Possible Securities Law Violations by Theranos, Inc. and its Officers*, NASDAQ GLOBAL NEWSWIRE (Oct. 10, 2016, 9:30

27   AM), https://globenewswire.com/news-release/2016/10/10/878254/0/en/THERANOS-INVESTOR-ALERT-Hagens-Berman-Investigating-Possible-Securities-Law-Violations-by-

28   Theranos-Inc-and-its-Officers.html.

1  Ex. 11 (Information Statement).  Twenty-eight of the thirty-five Theranos Shareholders that meet

2  Plaintiffs' class definition were Series C-1 and C-2 Preferred Stockholders eligible to participate

3  in the Tender Offer.  *See* White Decl. ¶ 10; App. A.  All but four of the Series C-1 and C-2

4  Preferred Stockholders that meet Plaintiffs' class definition accepted.  *See* White Decl. ¶ 11; W.

5  Ex. 15 (Exchange and Release Signature Pages).  As consideration for participating in the Tender

6  Offer, Theranos Shareholders provided a release in favor of Defendants.  White Decl. ¶ 11.[3]

7  **C.    Other Shareholder Releases**

8       In addition to the Tender Offer releases from twenty-four Theranos Shareholders, four

9  other Shareholders also released their claims.  In December 2016, ███████████████

10  executed a settlement agreement whereby he gave a full release and received contingent rights.

11  *See* W. Ex. 17 (December 2016 Settlement Agreement).  On April 29, 2017, Defendants settled

12  two lawsuits brought by Partner Investments, L.P., PFM Healthcare Master Fund, L.P., and PFM

13  Healthcare Principals Fund, L.P. (together, "PFM").  W. Ex. 16 (PFM Settlement Agreement).

14  **D.    Plaintiffs' Putative Class Claims**

15       On November 28, 2016, Plaintiffs filed their complaint falsely alleging they purchased

16  "Theranos securities."  *E.g.*, Compl. ¶¶ 11, 12.  In reality, Plaintiffs purchased interests in third-

17  party investment funds Lucas Venture Group XI, LLC ("LVG XI") and Celadon Technology

18  Fund VII, LLC ("Celadon"), which in turn were Theranos Shareholders.  *See* Defs.' Resp. to

19  Court's Order to Show Cause (ECF No. 72) (explaining that Plaintiffs do not own Theranos

20  securities); June 30, 2017 Decl. of Timothy Perla ("Perla Decl.") Exs. A ("P. Ex.") (LVG XI

21  Subscription Agreement), B (Celadon Subscription Agreement).

22

---

23  [3] *See* W. Ex. 11 at 45-46 (Exchange and Release Agreement appended to Information Statement)
    ("[E]ach Holder on behalf of itself and its . . . beneficiaries, . . . members and partners, solely in
24  their capacity as stockholder of the Company, hereby fully, finally, and forever waives, releases,
    relinquishes, and discharges the Company and (a) its current and former officers and
25  employees . . . , [and] (b) its current and former directors . . . from any and all claims, demands,
    losses, rights, obligations, debts, liabilities, and causes of action of any nature whatsoever . . .
26  arising out of, based on, or relating in any way to any transaction with the Company or to their
    capacity as stockholder of the Company . . . , including, without limitation, any claim, demand,
27  cause of action, obligation, debt and liability . . . in connection with the holding acquisition, or
    disposition of securities of the Company[.]").

28

1    Plaintiffs do not contend that they had *any* interactions with Theranos personnel,

2  conducted *any* due diligence, received *any* non-public information, signed *any* Theranos IRA, or

3  took *any* of the many other steps taken by actual Theranos Shareholders.  *See generally* Compl.

4  (containing no such allegations); P. Ex. E (Pl. Colman's Resp. to Def. Theranos's Request for

5  Admission Nos. 2-6) (stating no such interactions occurred); P. Ex. F (Pl. Taubman-Dye's Resp.

6  to Def. Theranos's Request for Admission Nos. 2-6) (same).   Instead, in their verified

7  interrogatory responses, Plaintiffs confirmed they invested based largely on *online news sources*

8  that Defendants did not author.  *See* P. Ex. H (Pl. Taubman-Dye's Resp. to Def. Theranos's

9  Interrog. No. 2) (identifying articles in *Fortune*, *Newsweek*, *The Wall Street Journal*, "and other

10  online news sources"); *cf.* P. Ex. G (Pl. Colman's Resp. to Def. Theranos's Interrog. No. 2)

11  (identifying an article in *The Wall Street Journal*).

12    Plaintiffs nonetheless seek to represent a class comprising all "[p]ersons or entities who,

13  directly or indirectly, purchased or committed to purchase . . . an interest in Theranos securities

14  from July 29, 2013, through October 5, 2016."  Compl. ¶ 82.  Because this definition

15  encompasses both Theranos Shareholders and Fund Purchasers, Defendants ask the Court to

16  narrow the proposed class by excluding Theranos Shareholders.

17    **E.    Relevant Prior Proceedings**

18    On March 31, 2017, Plaintiffs moved to enjoin the Tender Offer, arguing that it was

19  misleading and coercive (ECF No. 48).  After a three-hour hearing, the Court disagreed:

20        I'm denying the request for a preliminary injunction that would prevent

21    the tender offer or postpone the tender offer or prevent Theranos from
     communicating with the investors about the tender offer.

22        Having reviewed the record, and in particular the factual areas as directed

23    by the defense that I've focused on, are the timing of the tender offer, both
     the beginning of the negotiation, the timing of the tender offer, the proffer
     of the course of communications with the investors.

24
          Secondly, the sophistication of the investors.  And here I take note of the

25    recipients that I've received.  The actual disclosures themselves, here the,
     and this was in the public part of the filings, there was reference made to

26    the *Colman* case in the initial information statement, and there was a
     supplement which is also on the record at 54-1 which is a supplemental

27    notice concerning certain litigation, and that certain litigation was this
     case.

28

Significantly, I find that those disclosures **were not coercive or confusing or misleading in any way, they were in fact accurate**. And in other cases, such as the *Oldsmobile v. General Motors* court case, one of the remedies of the court was to order disclosure to the investors, information and an opportunity to object or participate in the court proceedings.

. . . .

So in a different hypothetical where there had not been a particularized notice to the investors, that would be a greater, that would be more of a need to give them information.  But here, I find that that has been done and that the information provided was, in whole, accurate.

I also consider the consideration received by the investors, and really the merits of what the information statement and the decision to participate in the tender offer is.

. . . .

But what I'm commenting on is the overall fairness of the information statement in the release and the information provided in it, as to whether more needs to be given to protect absent class members.

Apr. 7, 2017 Hr'g Tr. 63:2-65:5 (ECF No. 59) (emphasis added).

On May 24, 2017, the Court authorized Defendants to file this Motion.  *See* May 24, 2017 Order re Joint Statement re Disc. Dispute (ECF No. 82); May 24, 2017 Hr'g Tr. 33:22-23 (ECF No. 86).  Since then, Defendants have produced all discovery that Plaintiffs could need to respond to this Motion.  Defendants have made six additional productions since May 24, 2017, beginning on June 16, 2017, and concluding on June 30, 2017, and totaling another 1,281 documents (and over 11,000 pages).  *See* Perla Decl. ¶ 2.  The production includes all Theranos's communications about the Tender Offer with participating investors, including communications between Theranos's agent, Wilson Sonsini Goodrich & Rosati, and investors.  *Id.*  Theranos also produced any Tender Offer-related communications between investors and Directors Fabrizio Bonanni, Bill Foege, and Daniel Warmenhoven, *id.*, as well as copies of Theranos's IRAs in effect during the class period, the joinders to the Theranos's IRAs executed by Theranos Shareholders, the SPAs between Theranos and Theranos Shareholders, and the releases executed by Theranos Shareholders, *id*.  Theranos also made available a representative for a Rule 30(b)(6) deposition on topics identified by Plaintiffs as germane to this Motion.  *Id.* ¶ 3.

In addition, on June 2, 2017, Plaintiffs served twenty-one third party subpoenas on eleven Theranos Shareholders.  *See* P. Ex. C.  As of the filing of this Motion, Defendants are aware of

- 8 -

1   Plaintiffs only receiving back responses to two subpoenas served on one Theranos Shareholder,

2   which objected to responding to the subpoenas in their entirety.  *See* P. Ex. D.

3   **III.    ARGUMENT**

4          Rule 23 instructs the parties and the Court to address class certification "at an early

5   practicable time after a person sues or is sued as a class representative."  Fed. R. Civ. P.

6   23(c)(1)(A).  Consistent with that instruction, and as this Court recognized in inviting this

7   Motion, a court may consider Rule 23 issues before a plaintiff's motion to certify.  *See Vinole v.*

8   *Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) (permitting motions to deny

9   class certification); *see also Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 WL 4721439, at

10  *2 (N.D. Cal. July 19, 2016) (denying class certification on, *inter alia*, typicality grounds on

11  defendant's motion); *Williams v. Foods*, No. CV 13-00146 CRB, 2013 WL 4067594, at *1 (N.D.

12  Cal. Aug. 1, 2013) (denying class certification on defendant's motion).  Even where a defendant

13  raises the issue, the burden remains with the plaintiff as the proponents of certification.  *See, e.g.*,

14  *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-CV-05221-SI, 2016 WL 4529430, at *12 (N.D. Cal.

15  Aug. 30, 2016) (holding, on defendant's motion to decertify a class, "[w]hile the defendant has

16  the burden of proof on the merits of its affirmative defenses, plaintiffs have the burden of proof

17  in regard to satisfying Rule 23"); *Ries v. Ariz. Beverages USA LLC*, No. 10-01139 RS, 2013 WL

18  1287416, at *3 (N.D. Cal. Mar. 28, 2013) ("On a motion for decertification, the burden remains

19  on the plaintiffs to demonstrate 'that the requirements of Rules 23(a) and (b) are met.'" (quoting

20  *Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011)).

21         To certify a class, Plaintiffs must establish Rule 23(a)'s four "prerequisites": (1) the class

22  is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the

23  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

24  of the class; and (4) the representative parties will fairly and adequately protect the interests of

25  the class.  Fed. R. Civ. P. 23(a).  "Rule 23(a) ensures that the named plaintiffs are appropriate

26  representatives of the class whose claims they wish to litigate," and it "effectively limit[s] the

27  class claims to those fairly encompassed by the named plaintiff's claims."  *Wal-Mart Stores, Inc.*

28  *v. Dukes*, 564 U.S. 338, 349 (2011) (quotation marks omitted).

- 9 -

1    To show that their claims or defenses are typical of the claims and defenses of the class

2    under Rule 23(a)(3), Plaintiffs must show, among other things, that their claims are subject to the

3    same defenses borne by other members of the class. *See Avilez v. Pinkerton Gov't Servs., Inc.,*

4    596 F. App'x 579, 579 (9th Cir. 2015) (memorandum decision). "The certification of a class is

5    questionable where it is predictable that a major focus of the litigation will be on an arguable

6    defense unique to the named plaintiff *or to a subclass.*" *Hanon v. Dataproducts Corp.*, 976 F.2d

7    497, 508 (9th Cir. 1992) (emphasis added) (quoting *Rolex Emps. Ret. Trust v. Mentor Graphics*

8    *Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991)). Showing adequacy under Rule 23(a)(4) requires

9    demonstrating that the named plaintiffs and their counsel do not "have any conflicts of interest

10   with other class members." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).

11   Further, a class that meets Rule 23(a) requirements "must meet at least one of three

12   additional requirements outlined in Rule 23(b) to be eligible for certification." *United Steel,*

13   *Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO,*

14   *CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Here, Plaintiffs suggest they will

15   seek certification under Rule 23(b)(3), which requires that common questions predominate and

16   that a class action would be superior to other means of adjudicating the dispute, and Rule

17   23(b)(1)(B), which allows certification when adjudicating individual claims could be dispositive

18   of the interests of the other members of the putative class.

19   Satisfying these requirements requires that the party seeking class certification

20   affirmatively demonstrate compliance with each prerequisite. *Dukes*, 564 U.S. at 350 (stating

21   that Rule 23 is not "a mere pleading standard"). Courts may certify a class only "after a rigorous

22   analysis" demonstrates "that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51.

23   The Supreme Court has "[r]epeatedly . . . emphasized that it may be necessary . . . to probe

24   behind the pleadings when ruling on certification." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426,

25   1432 (2013); *see also Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982) (noting

26   that class determination "generally involves considerations that are enmeshed in the factual and

27   legal issues comprising the plaintiff's cause of action" (quotation marks omitted)). Thus, the

28

1    "rigorous analysis" required "[f]requently . . . will entail some overlap with the merits of the

2    plaintiff's underlying claim."  *Dukes*, 564 U.S. at 351.

3           **A.**     **Any Class Must Exclude Theranos Shareholders Who Signed Forum**

4                    **Selection Clauses Selecting An Alternate Forum**

5          Each Theranos Shareholder within the putative class definition executed an agreement

6    with Theranos containing a forum selection clause, requiring any litigation to occur in another

7    venue.  Plaintiffs, who are not Theranos Shareholders, did not execute such an agreement.  As a

8    result, Plaintiffs cannot satisfy the typicality and adequacy requirements.  In any event, the Court

9    must affirmatively exclude from any class Shareholders who executed forum selection clauses.

10         Parties have the right to make contracts providing an exclusive forum for their disputes.

11   *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10 (1972); *Ingres Corp. v. CA, Inc.*, 8

12   A.3d 1143, 1146 (Del. 2010) (holding under Delaware law (the law governing the Purchase

13   Agreements) that "[f]orum selection clauses are presumptively valid and should be specifically

14   enforced").  Courts enforce and apply such agreements, even when fraudulent inducement claims

15   are asserted.  *See Ashall Homes Ltd. v. ROK Entm't Grp. Inc.,* 992 A.2d 1239, 1245 (Del. Ch.

16   2010) (holding fraud claims arising out of plaintiffs "initial decision to invest" were "related to"

17   and therefore governed by forum selection clause in stock purchase agreement); *see also Sun v.*

18   *Kao*, 170 F. Supp. 3d 1321 (W.D. Wash. 2016) (upholding forum selection clause in stock

19   purchase agreement in case based on inducement to acquire securities); *Schwarz v. Sellers Mkts.,*

20   *Inc.*, 812 F. Supp. 2d 932 (N.D. Ill. 2011) (similar; forum selection clause in investors' rights

21   agreement).  It follows that a class plaintiff cannot define a class to include members who agreed

22   to litigate their claims against the defendants elsewhere.

23         As a threshold dispositive matter, the forum selection clauses executed by Theranos

24   Shareholders render the claims of Plaintiffs—who did not execute the forum selection clause—

25   atypical.  Where, as here, a named plaintiff is not subject to contractual provisions restricting

26   litigation to which other putative class members are bound, the named plaintiff's claims are

27   atypical.  *See Avilez,* 596 F. App'x at 579 ("[The plaintiff's] arbitration agreement does not

28   contain a class action waiver and counsel did not dispute that those who signed such waivers [are

subject to] potential defenses that [the plaintiff] would be unable to argue on their behalf.  To the extent the class[] . . . include[s] individuals who signed class action waivers, . . . her claim lacks typicality."); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2016 WL 1048046, at *9 (N.D. Cal. Mar. 11, 2016) ("[N]either Plaintiff is typical of the class action waiver subclasses because neither signed an agreement that included a class action waiver."); *In re Titanium Dioxide Antitrust Litig.,* 962 F. Supp. 2d 840, 862 (D. Md. 2013) (named plaintiff atypical of and cannot represent class members with forum selection clauses).[4]

Regus is illustrative.  There, the court considered whether the named plaintiffs could represent subclasses comprising putative class members who were subject to a contract containing a class action waiver.  The court held that the plaintiffs "lack[ed] typicality to represent" persons who signed class action waivers because "neither [plaintiff] signed an agreement that included a class action waiver." *Regus*, 2016 WL 1048046, at *9.  Here, as in *Regus*, neither named Plaintiff is subject to the forum selection clause that binds *every* Theranos Shareholder within the class definition.  Thus, Plaintiffs' claims are atypical.

For the same reason, Plaintiffs also are not adequate class representatives of Theranos Shareholders.  Plaintiffs' interest is to broaden the class as much as possible by arguing that the forum selection clauses are invalid or not determinative of class composition.[5]  But that would

---

[4] *See also Conde v. Open Door Mktg., LLC*, No. 15-CV-04080-KAW, 2017 WL 1508968, at *7 (N.D. Cal. Apr. 27, 2017) ("Plaintiffs are not personally affected by the arbitration agreements at issue because they have not signed agreements that contain similar terms . . . . Thus, the defenses the named Plaintiffs are subject to are not typical of the class as proposed."); *Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 WL 4721439, at *4 (N.D. Cal. July 19, 2016) (claims of plaintiff who opted out of arbitration and class waiver agreement not typical of class subject to arbitration agreements and class waivers).

[5] The Court should not reach any arguments that the Plaintiffs may advance about whether the forum selection clauses are enforceable, or arguments which otherwise challenge the substance or application of the clauses.  Plaintiffs who are not subject to such clauses are not the proper litigants to advance such arguments.  *See Munoz v. PHH Corp.*, No. 1:08-CV-0759-AWI-BAM, 2013 WL 2146925, at *20 (E.D. Cal. May 15, 2013) ("The Court need not determine the merits of [the atypical defense] because Plaintiffs' claims are not typical of the [c]lass."); *cf. Grubhub, Inc.*, 2016 WL 4721439, at *3 (explaining that plaintiff who had opted out of arbitration agreement and class waiver was inadequate and atypical representative because he "would be unable to credibly make several procedural unconscionability arguments on behalf of unnamed class members").

1    conflict with the interests of Theranos Shareholders who *do not want their clauses invalidated*.

2    *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280-81 (11th Cir. 2000) (holding plaintiffs

3    inadequate who challenged contracts benefitting some class members); *Spagnola v. Chubb*

4    *Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) (holding plaintiffs inadequate in part because "some

5    members of the class . . .  may wish for [a contract term] to be interpreted in a particular way,

6    while other class members . . . may wish for that same term to be interpreted in a . . . different

7    way, depending on what best served their interests"); *S. Snack Foods, Inc. v. J&J Snack Foods*

8    *Corp.*, 79 F.R.D. 678, 688-81 (D.N.J. 1978) (holding plaintiff inadequate given his challenge to

9    contractual exclusive dealing requirement and territorial and customer restrictions that benefited

10   other class members); *cf. Maher v. Int'l Bhd. of Elec. Workers/6th Dist.*, No. 90 C 6502, 1991

11   WL 268657, at *3 (N.D. Ill. Dec. 3, 1991) ("Because the court is not asked to invalidate the

12   amendments to the Agreement, the interests of named plaintiffs does not conflict with the

13   interests of others in the proposed class.").

14           This is no hypothetical conflict.  The Court recently raised the question of whether LVG

15   XI and Celadon (two Theranos Shareholders that meet Plaintiffs' class definition) should be

16   joined in this case.  In response, both LVG XI and Celadon *invoked forum selection clauses* to

17   assert that they should not be required to litigate in this Court.  *See* Decl. of Reed R. Kathrein in

18   Supp. of Pls.' Resp. to Order to Show Cause ¶ 3(e) (ECF No. 66) (explaining that LVG XI told

19   Plaintiffs' counsel that "were it joined as an involuntary plaintiff, LVG XI's claim would be

20   subject to exclusive jurisdiction in Delaware"); Decl. of Jason A. Forge in Supp. of Pls.' Resp. to

21   Order to Show Cause ¶ 2(b) (ECF No. 65) (explaining that Celadon told Plaintiffs' counsel that

22   its claims in this Action "are subject to a Delaware choice-of-venue provision").  And when three

23   other Theranos Shareholders (the PFM investors) sued Theranos, they too invoked the clause to

24   require litigation in Delaware.  *See* Second Am. Verified Compl. ¶ 17, *Partner Invs., L.P. et al.*

25   *v. Theranos, Inc. et al.*, No. 2016-12816-VCL (Del. Ch. Apr. 12, 2017) ("PFM Litigation")

26   (citing forum selection clause as basis for jurisdiction and venue).

27           Further, even without making findings about adequacy or typicality, courts in this District

28   and elsewhere honor forum selection clauses requiring litigation in other venues by excluding

DEFENDANTS' MOTION TO LIMIT THE PUTATIVE CLASS DEFINITION
Case No.  5:16-cv-06822-NC

1    persons subject to such clauses from the class.  *See, e.g.*, *Darisse v. Nest Labs, Inc.*, No. 5:14-

2    CV-01363-BLF, 2016 WL 4385849, at *5 (N.D. Cal. Aug. 15, 2016) (holding that "a swathe of

3    putative class members" subject to arbitration clauses were "excluded from this class action");

4    *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265-66 (S.D.N.Y. 2011) (excluding from certified

5    class all members subject to forum selection clause identifying alternate venue), *class decertified*

6    No. 09 CIV. 6557 KBF, 2012 WL 6681701, at *7-8 (S.D.N.Y. Dec. 21, 2012) (explaining that

7    "the class definition attempt[ed] to take into consideration certain obvious issues—such as . . .

8    incompatible venue, choice of law, and arbitration requirements," but ultimately decertifying

9    class).  For example, in *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02549 WHA, 2013 WL

10   1703375, at *5 (N.D. Cal. Apr. 19, 2013), Judge Alsup addressed a class certification dispute by

11   rewriting a class definition to exclude all putative class members who were subject to forum

12   selection clauses requiring litigation in other venues.  The same result follows here.

13         Plaintiffs cannot credibly contest this result; indeed, they are estopped from doing so.

14   When this Court entered an Order to Show Cause finding that LVG XI, Celadon, and SharesPost

15   were necessary parties (*see* ECF No. 63), Plaintiffs opposed by highlighting that LVG XI and

16   Celadon were subject to forum selection clauses: "A final barrier to joinder is the fact that the

17   Funds are subject to choice-of-venue provisions that would require their claims to be brought in

18   Delaware."  Pls.' Resp. to Ct.'s Order to Show Cause  5 (ECF No. 64).  Plaintiffs cannot now

19   reverse course.  *See Int'l Ins. Co. v. Red & White Co.*, No. C-93-0659 MHP, 1994 WL 706362,

20   at *2 n.3 (N.D. Cal. Dec. 12, 1994) ("A party may not take inconsistent positions in the same

21   litigation.") (citing *Morris v. California*, 966 F.2d 448, 452 (9th Cir. 1991)); *see also Arizona v.*

22   *Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984) ("The emphasis is not on a hard and

23   fast rule, but rather on prevention of intentional self-contradiction . . . as a means of obtaining

24   unfair advantage." (quotation marks omitted)); *Finn v. Sullivan*, No. 16-CV-05285-WHO, 2017

25   WL 130278, at *6 (N.D. Cal. Jan. 13, 2017) ("Courts invoke[ ] judicial estoppel . . . to protect

26   against a litigant playing fast and loose with the courts." (quotation marks omitted)).[6]

27   _____

28   [6] Theranos Shareholders are also subject to jury trial waivers, but Plaintiffs have demanded a
jury trial.  *See* Compl. at 54 ("Jury Demand: Plaintiffs demand a jury trial on all issues.").  Thus,

1

**B.      Any Class Must Exclude Theranos Shareholders Who Signed Releases**

2

This Court has already correctly held that the Tender Offer that yielded releases from

3

Theranos Shareholders was not coercive, and allowed the Tender Offer to close.  This, without

4

more, disposes of Plaintiffs' ability to include the majority of Theranos Shareholders in a class—

5

they have already released Defendants, which excludes them from any class.[7]

6

However, there is an even simpler answer under Rule 23:  the Court never has to

7

adjudicate the substance of the releases because, where a named plaintiff did not execute a

8

release but other putative class members did, the named plaintiff's claims are not typical of the

9

class—for obvious reasons.  *See Javine v. San Luis Ambulance Serv., Inc.*, No. 13-cv-07480-

10

BRO (SSx), 2015 WL 12672090, at *11 (C.D. Cal. Jan. 13, 2015) ("Plaintiff's claims are not

11

typical of the claims of the putative classes because she has not signed a liability release

12

agreement. . . . Because Plaintiff's claims do not involve litigating that crucial issue for the

13

majority of her putative class, her claims are not sufficiently typical."); *see also Melong v.*

14

*Micronesian Claims Comm'n*, 643 F.2d 10, 15 (D.C. Cir. 1980) ("When the purported class

15

representative has not executed a release and need not establish that the release is defective in his

16

individual case, serious questions are raised concerning the typicality of the class

17

representative's claims and the adequacy of his representation of other class members.").

18

Moreover, because they did not sign the releases, Plaintiffs lack standing to challenge

19

them on behalf of Theranos Shareholders who did.  *See Javine*, 2015 WL 12672090, at *9

20

("Plaintiff is not party to any of the release agreements here and therefore lacks standing to

21

challenge them.").  "A plaintiff who lacks standing to bring a claim in his own right cannot

22

qualify as a class representative for a class of persons able to raise that claim." *Rawat v.*

23

*Navistar Int'l Corp.*, No. 08-CV-4305, 2011 WL 222131, at *5 (N.D. Ill. Jan. 20, 2011).  Thus,

24

25

were this case to proceed, there would be a need for a jury-waived proceeding for which there is
no adequate and typical named plaintiff.

26

27

[7] As detailed above, the releasing Theranos Shareholders include: (i) all participants in the
Tender Offer; (ii) ██████; and (iii) PFM.  As shown in Appendix A, this would exclude all but
seven Theranos Shareholders from the putative class.  (And the other arguments herein would

28

apply to all Theranos Shareholders.)

- 15 -

1   in *Javine*, a plaintiff sought to represent a class of employees that included individuals who had

2   signed settlement and release agreements.  2015 WL 12672090, at *8.  Plaintiff argued that

3   consideration of the releases was inappropriate at the class certification stage.  *Id.*  Rejecting that

4   argument, the court held that it was appropriate to consider the releases at this stage and that "to

5   the extent that Plaintiff must disprove the validity of these release agreements to satisfy the

6   requirements for class certification, she lack[ed] standing to do so."  *Id.*  Concluding that

7   plaintiff's claims were atypical, the Court explained, "to prevail on their claims, the majority of

8   the putative class members who [*had*] signed a release agreement would have to prove either that

9   the agreement [was] invalid or that it [did] not cover the claims at issue here, both of which

10  [were] issues that Plaintiff lack[ed] standing to raise."  *Id.* at *11.  The same result follows here.

11         Plaintiffs also have a conflict of interest with releasing Theranos Shareholders rendering

12  them inadequate.  If they had standing to do so (which they do not), Plaintiffs would have no

13  choice but to seek to invalidate the settlement agreements with Theranos Shareholders.  But

14  Theranos Shareholders received valuable consideration in exchange for their releases, including

15  new shares with enhanced rights, such as expanded rights to information, the right to elect a

16  member of Theranos's board of directors, and an enhanced equity preference.  They therefore

17  have the *opposite* interest from Plaintiffs—upholding the validity of the agreements to retain the

18  benefits they negotiated to receive.  *See Stafford v. Brink's, Inc.,* No. 14-cv-01352- MWF

19  (PLAx), 2015 WL 12699458, at *14 (C.D. Cal. Dec. 1, 2015); *Javine*, 2015 WL 12672090, at

20  *12; *Madrigal v. Tommy Bahama Grp., Inc.*, No. CV 09-08924 SJO CWX, 2011 WL 10511339,

21  at *14 (C.D. Cal. June 27, 2011); *Stewart v. Avon Prod., Inc.*, No. CIV. A. 98-4135, 1999 WL

22  1038338, at *5 (E.D. Pa. Nov. 15, 1999); *see also* Jayne E. Zanglein & Susan J. Stabile, *ERISA*

23  *Litigation* 479–80 (2d ed. 2005) ("[C]ourts have regularly found . . . adequacy lacking where the

24  defense of a release of claims was not shared by the named plaintiffs and the purported class. . . .

25  [I]f none of the named plaintiffs signed releases, they are inadequate representatives because

26  none of them would have any need to litigate or interest in litigating the release issue.").

27         *Stafford* is on point.  There, the court considered whether a named plaintiff who had not

28  executed a release was an adequate representative of a class 15% of which had executed a

- 16 -

1  release.  2015 WL 12699458, at *14.  Because the named plaintiff intended to attack the validity

2  of the releases—a necessary predicate to those putative class members' participation in the

3  action—the court held the interests of the named plaintiff conflicted with the interests of the

4  putative class members who had executed a release.  *Id.*  Putative class members who had

5  executed releases had seemingly "assessed various tradeoffs, for example, between the sureness

6  of a smaller upfront payment with the uncertainty of a greater upside at the end of litigation," and

7  the named plaintiffs' "motivation to enlarge the class for leverage would jeopardize [the

8  releasing] individuals' preference to settle their claims rather than participate in the class action."

9  *Id.*; *see also Javine*, 2015 WL 12672090, at *12 (reasoning that non-releasing named plaintiffs'

10  interests in invalidating releases executed by members of the putative class members conflicted

11  with the interests of the releasing parties in retaining the consideration for the release).

12       Further, even where they certify classes, judges in this District and elsewhere honor

13  putative class members' releases by excluding from the class anyone who executed a release.

14  *See Williamson v. Geisler*, 12-cv-8056-DSF (JCx), 2013 WL 12087188, at *1, 3 (C.D. Cal. Sept.

15  19, 2013) (denying class certification; evidence of signed releases sufficient to exclude signors

16  from class for purposes of numerosity analysis), *aff'd* 644 F. App'x 777 (9th Cir. 2016) (noting

17  "nothing in the record contradicted [defendants'] evidence that a majority of prospective class

18  members had signed individual releases of their claims"); *Twegbe v. Pharmaca Integrative*

19  *Pharmacy, Inc.*, No. 12-cv-5080-CRB, 2013 WL 3802807, at *1, 3 (N.D. Cal. July 17, 2013)

20  (excluding from class parties signing releases); *Marino v. Sports Auth.*, 940 F. Supp. 792, 797

21  (E.D. Pa. 1996) (same).  The Court should hold the same here: releasing Theranos Shareholders

22  are excluded from the putative class.

23       Finally, even if this Court were to overlook the atypicality and inadequacy of Plaintiffs to

24  represent Theranos Shareholders who executed releases, the Court's ruling that the releases were

25  not coerced would carry the day.  The releases could be coercive only if they were secured

26  through coercive communications.  *See, e.g.*, *Slavkov v. Fast Water Heater Partners I, LP*, No.

27  14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) (invalidating releases where

28  communications were coercively misleading); *Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-

1   03740 WHA, 2010 WL 2724512, at *4-5 (N.D. Cal. July 8, 2010) (invalidating releases where

2   communications between defendant and its consumers were misleading). But this Court has

3   held, after a three-hour hearing, that Theranos's disclosures in connection with the Tender Offer

4   "were not coercive or confusing or misleading in any way." Apr. 7, 2017 Hr'g Tr. 63:19-21.[8]

5   This ruling was plainly correct. Theranos negotiated with its investors—highly sophisticated

6   parties, many represented by counsel—for eight months. *See* Section II. B *supra*. The parties

7   exchanged hundreds of communications, and multiple term sheets. *Id.* The release provision

8   was contemplated well before Plaintiffs filed this case. *Id.* Plaintiffs have no good faith basis to

9   attack the releases on grounds of coercion.

### C.    Plaintiffs' Claims Are Otherwise Atypical of, and In Conflict With, Those of Theranos Shareholders

12        Plaintiffs' claims are atypical of, and in conflict with, those of Theranos Shareholders in

13   additional respects.

14        ***First,*** Plaintiffs are inadequate representatives of Theranos Shareholders because the two

15   groups have a conflict with respect to whether Fund Purchasers such as Plaintiffs purchased any

16   interest in Theranos securities. As explained above, the IRA prohibits Theranos Shareholders

17   from transferring *any interest* in Theranos securities to third parties, including Plaintiffs. Thus,

18   LVG XI or Celadon could not have transferred an interest in Theranos securities to Plaintiffs.

19   Indeed, LVG XI has already denied doing so. *See* Decl. of Donald A. Lucas in Supp. of Non-

20   Party LVG XI's Resp. to Ct.'s Order to Show Cause ¶ 7 (ECF. No. 71-1) ("[T]he Members [of

---

[8] Vice Chancellor Laster's entry of a temporary restraining order in the PFM Litigation does not warrant a different conclusion. The PFM plaintiffs sought to enjoin the Tender Offer by asserting that the Tender Offer was substantively coercive to them specifically because they had filed existing litigation—not because Defendants' communications were coercive. *Cf. O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *5 (N.D. Cal. May 2, 2014) ("[I]n affirming its power to regulate communications herein, [the court] is not ruling on the conscionability of the arbitration provision or its general enforceability as a matter of substantive law. It is merely treating the Licensing Agreement promulgated to current and future class members as a communication subject to regulation under *Gulf Oil*," and "evaluating whether that communication is . . . misleading or coercive."). In any event, Vice Chancellor Laster only entered a status quo temporary restraining order until a preliminary injunction hearing (which never occurred), and without any substantive response by Defendants.

1   LVG XI] hold only a Membership Interest in [LVG XI]; they neither own nor hold any Theranos

2   shares through LVG XI, and they expressly disclaimed any interest in any LVG XI property.").

3   Yet, Plaintiffs assert that they did purchase Theranos securities from LVG XI and Celadon.  *E.g.*,

4   Compl. ¶¶ 11,12; P. Ex. G (Pl. Colman's Resp. to Def. Theranos's Interrog. No. 7) (claiming he

5   "purchased an indirect and beneficial interest in securities issued by Theranos"); P. Ex. H (Pl.

6   Taubman-Dye's Resp. to Def. Theranos's Interrog. No. 7) (same).  Thus, actual conflict already

7   exists, and could only worsen:  if Colman were to prove such a transfer occurred, he would walk

8   LVG XI (a putative class member that Plaintiffs seek to represent) into a breach of contract for

9   violating the IRA transfer restriction.  This conflict will exist anytime a Fund Purchaser claims to

10   have received an interest in Theranos Securities from a Theranos Shareholder.  The same set of

11   attorneys and lead plaintiffs cannot represent two groups with such conflicting views.  Rather,

12   Rule 23(a)(4) requires a showing that named plaintiffs and their counsel do not "have any

13   conflicts of interest with other class members."  *Staton*, 327 F.3d at 957; *see also* Cal. Rules of

14   Prof'l Conduct R. 3-310 (requiring California lawyers avoid representation adverse to client

15   interests).

16      *Second*, Plaintiffs are inadequate and atypical representatives of Theranos Shareholders

17   because only the latter are parties to Purchase Agreements that allow attorneys' fees to the

18   prevailing party in disputes to enforce the Purchase Agreements.  Thus, for instance, if Plaintiffs

19   persist in seeking to sue in this Court on behalf of Theranos Shareholders, and Theranos is forced

20   to enforce its contractual forum selection clause, the Purchase Agreements will entitle Theranos

21   to a cost shifting award.  Stated another way, Plaintiffs' interest in enlarging the class conflicts

22   with the interests of Theranos Shareholders, who may not want to be in jeopardy of a fee award

23   for breach of contractual provisions (or, at a minimum, should have the individual ability to

24   control that decision).

25      *Finally*, Plaintiffs' claims are not typical of the claims of Theranos Shareholders because

26   Plaintiffs' purchase experiences are far from representative of—or similar to—those of Theranos

27   Shareholders.  For starters, Plaintiffs purchased a different security than Theranos Shareholders.

28   Further, as detailed above, Theranos Shareholders often engaged in extensive due diligence when

1   investing, including receiving detailed non-public company information, financial projections,

2   and other proprietary information, all of which factored into their investment decisions. *See*

3   Section II.A *supra*.  Plaintiffs, on the other hand, have signed verified responses to requests for

4   admission admitting they:  (i) did not meet with any Theranos personnel prior to making their

5   investments; and (ii) read and reviewed only public news articles largely not even authored by

6   Theranos. *See* Section II.D *supra*.  Thus, the claims of Theranos Shareholders (if any) are very

7   different from Plaintiffs' claims.  Even if Plaintiffs were to prove, for example, that a news

8   article in *Fortune* (one of Plaintiff Taubman-Dye's principal sources of information) contained

9   misleading information, that would not come close to proving the claim of an actual shareholder

10  who engaged in extensive and detailed due diligence, and saw information not available to Ms.

11  Taubman-Dye. *Cf. Beach v. Healthways, Inc.*, No. 3:08-0569, 2009 WL 3245393, at *5 (M.D.

12  Tenn. Oct. 5, 2009) (holding claim atypical and plaintiff inadequate where plaintiff conducted

13  individualized due diligence prior to stock acquisition while class relied on public information).

14  Further, Plaintiffs' claims are subject to a strong defense that it is not reasonable to rely on news

15  articles to make a large private investment; Theranos Shareholders who received due diligence

16  did not rely on such information.  In short, Plaintiffs' claims are not even close to typical of the

17  claims of actual Theranos Shareholders, and Plaintiffs are not adequate representatives of

18  Theranos Shareholders. *See Avilez,* 596 F. App'x at 579; *Hanon*, 976 F.2d at 508.

19          **D.      Including Theranos Shareholders Would Defeat Rule 23(b)(3) Superiority**

20          The Court should also hold that certifying a class that includes Theranos Shareholders

21  would not be superior to individual adjudications (if any). *See* Fed. R. Civ. P. 23(b)(3)

22  (requiring showing that class is "superior to other available methods for fairly and efficiently

23  adjudicating the controversy.").  Relevant factors include: "(A) the class members' interests in

24  individually controlling the prosecution or defense of separate actions; (B) the extent and nature

25  of any litigation concerning the controversy already begun by or against class members; (C) the

26  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

27  and (D) the likely difficulties in managing a class action." *Id.*

28

1    These factors are designed to effectuate the "[t]he policy at the very core of the class

2    action mechanism . . . to overcome the problem that small recoveries do not provide the

3    incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*

4    *Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109

5    F.3d 338, 344 (1997)).  Thus, a "showing that class members do not have an incentive to

6    prosecute their own claims or lack the wherewithal to protect their individual interest" is

7    important to a finding of superiority.  *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308

8    F.R.D. 630, 640 (N.D. Cal. 2015) (denying motion for class certification in part for lack of

9    superiority).  Where putative class members are sophisticated parties capable of representing

10   their own interests, a class action is not superior to individual litigation.  *See Birnberg v. Milk St.*

11   *Residential Assocs. Ltd. P'ship*, No. 02 C 0978, 2003 WL 21267103, at *7 (N.D. Ill. May 29,

12   2003) (finding class action not superior where putative class was comprised of "sophisticated

13   investors"); *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 411 (S.D.N.Y. 1998) (denying

14   class certification because "[t]he financial resources of the potential class members [and] their

15   ability to institute individual lawsuits" meant "the principle of protection for weaker plaintiffs

16   which underlies Rule 23 cannot be invoked"); *Carr v. N.Y. Stock Exch., Inc.*, 414 F. Supp. 1292,

17   1305 (N.D. Cal. 1976) (holding class of "sophisticated investors" not superior to individual

18   claims).  That is particularly so where, as here, some putative class members have already filed

19   suit or otherwise sought to resolve their claims.  *Cf.* Newberg on Class Actions § 4:70 (5th ed.)

20   ("[O]ther pending litigation is evidence that individuals have an interest in controlling their own

21   litigation." (referencing comments of Advisory Committee on Fed. R. Civ. P. 23(b)(3)(B))).

22   Similarly, where putative class members each have substantial claims at stake,

23   prosecuting the claims of those class members as part of a class is not superior to individual

24   litigation.  *See, e.g.*, *Nguyen v. BDO Seidman, LLP*, No. SACV-07-01352-JVS, 2009 WL

25   7742532, at *8 (C.D. Cal. July 6, 2009) (holding that the fact that the named plaintiff "and the

26   putative class he seeks to represent are well-paid employees who are seeking years worth of

27   overtime back-pay, penalties, and attorney fees . . . *weighs heavily against class certification*"

28   (emphasis added)).  That is because each member of the class "ha[s] a substantial stake in

1    making individual decisions" regarding their participation in the action, including "on whether

2    and when to settle."  *Amchem*, 521 U.S. at 616; *see also Birnberg*, 2003 WL 21267103, at *7

3    (finding that "[t]he existence of . . . large individual claims . . . undercuts the alleged superiority

4    of the class action"); *Askin*, 178 F.R.D. at 411 (denying class certification "given the amount of

5    each claim"); *Carr*, 414 F. Supp. at 1305 (denying class certification because the size of claims

6    meant each class member had "a large stake in controlling the course and outcome of the

7    litigation").  Thus, "in large claim situations, courts generally find individual lawsuits superior to

8    a class action."  Newberg on Class Actions § 4:88 (5th ed.).

9            Under this body of law, this case is the poster child for lack of superiority.  There can be

10   no doubt that each Theranos Shareholder is capable of individually prosecuting its claim and has

11   a substantial interest in making its own decision regarding how to do so.  As detailed above, the

12   vast majority of Theranos Shareholders are sophisticated investors such as hedge funds, family

13   offices, and wealthy private individuals.  They have invested millions of dollars each.  *See*

14   *Nguyen*, 2009 WL 7742532, at *8 (holding putative class including "well-paid employees who

15   are seeking years worth of overtime back-pay, penalties, and attorney fees . . . *weighs heavily*

16   *against class certification*" (emphasis added)); *Birnberg*, 2003 WL 21267103, at *7 (refusing to

17   deem class action superior where putative class members each invested $170,000).  And many

18   have their own counsel—including in-house counsel and some of the nation's most sophisticated

19   law firms.  *See* App. A.

20           Theranos Shareholders have also demonstrated their ability to represent their own

21   interests and assert (or settle) their own claims[9]: (i) PFM sued Defendants and settled, after

22   months of aggressive litigation; (ii) LVG XI, through counsel and on its own initiative, appeared

23   in this Action to protect its interests (and to request *not* to participate); and (iii) almost all

24   Theranos Shareholders have negotiated a release of claims.  And Theranos Shareholders who

25   have been contacted about participating in this action have demonstrated no interest in doing so.

26

27   [9] *See Carr*, 414 F. Supp. at 1305 (class action not superior where putative class members had
     filed separate suits to protect their interests); *see also Askin*, 178 F.R.D. at 411 (class action not
28   superior given class members' "ability to institute individual lawsuits").

1   *See* Decl. of Reed R. Kathrein in Supp. of Pls.' Resp. to Order to Show Cause ¶ 3(a) (ECF No.

2   66) ("LVG does not seek to join this action."); Decl. of Jason A. Forge in Supp. of Pls.' Resp. to

3   Order to Show Cause ¶ 2(c) (ECF No. 65) ("Neither SharesPost nor Celadon wish to join the

4   above-captioned action.").[10]  Indeed, despite having contact information for Series C-1 and C-2

5   Preferred Stockholders since April 7, 2017, Plaintiffs have been forced to subpoena Theranos

6   Shareholders to overcome their refusal to willingly participate in this Action.  *See* Section II.E

7   *supra*.  As of the time of filing, Theranos Shareholders who responded to the subpoena showed

8   no support for this case.

9   　　　Finally, class litigation including Theranos Shareholders would encounter management

10  difficulties:  it would devolve into a set of individual mini-trials with differing evidence for each

11  Theranos Shareholder.  Each Theranos Shareholder purchased through a unique set of

12  interactions with Theranos, often involving extensive due diligence, provision of confidential

13  information, and in-person meetings.  The purchases spanned several years.  Inevitably, each

14  Theranos Shareholder will have different facts about what it received, reviewed, relied on, and

15  understood (including whether it saw or relied on public advertisements at all).  Plaintiffs cannot

16  deny this—they have begun a campaign to blanket shareholders with subpoenas.  The inevitable

17  result is that this case would devolve into proof on a shareholder by shareholder basis.  That, in

18  turn, undermines the efficiency of class treatment and demonstrates why a putative class of

19  Theranos Shareholders is not superior.  *See Nguyen*, 2009 WL 7742532, at *8 (concluding that

20  "class action would be unmanageable given the predominance of the individual issues necessary

21  to establish [the defendant]'s liability for each of the putative class members").[11]

22

23  ---

    [10] *See Carr*, 414 F. Supp. at 1305 (refusing to deem class including sophisticated investors

24  superior given that "when informed of the present class suit, [they] would not allow themselves

    to be added as plaintiffs"); *see also Shayler v. Midtown Investigations, Ltd.*, No. 12 CIV. 4685

25  KBF, 2013 WL 772818, at *9 (S.D.N.Y. Feb. 27, 2013) (holding class action would not be

    superior in part because "most of [the putative class members] ha[d] already been notified of

26  their opportunity to join this action as . . . plaintiffs and have not").

27  [11] The Rule 23(b)(3) factor concerning concentration of litigation in this forum also weighs

    against superiority.  *See* Fed. R. Civ. P. 23(b)(3)(C).  As described above, the putative class

28  members at issue all executed forum selection clauses requiring litigation in other forums.

### E.     Plaintiffs Cannot Obtain Certification Under Rule 23(b)(1)(B)

Unable to certify a Rule 23(b)(3) class, Plaintiffs have suggested they may pursue a class with mandatory membership (*i.e.*, allowing no opt-outs or exclusions) under Rule 23(b)(1)(B). According to Plaintiffs, "Theranos is nearing insolvency" with "no real future business prospects for its current shareholders," and a "limited fund" class with mandatory membership is necessary to protect putative class members from premature depletion of the Company's assets. *See* P. Ex. I (June 1, 2017 Ltr. from Kathrein to Perla re Rule 30(b)(6) topics). Plaintiffs cannot satisfy the requirements for a Rule 23(b)(1)(B) class.[12]

As a threshold matter, this Court need not reach the question whether Rule 23(b)(1)(B) requirements are satisfied because Plaintiffs cannot satisfy the requirements of Rule 23(a). Except for the superiority argument (*see* Section III.D *supra*), Defendants' arguments above speak to the threshold requirements of Rule 23(a). Those arguments dispose of class treatment both under Rule 23(b)(3) (as pleaded in the Complaint) and Rule 23(b)(1) (as Plaintiffs have suggested they may pursue). *See Santos v. TWC Admin. LLC*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at *22 n.106 (C.D. Cal. Aug. 4, 2014) (collecting Ninth Circuit cases holding that courts need not address whether Rule 23(b) is satisfied if a plaintiff has not met Rule 23(a)'s requirements); *Yordy v. Plimus, Inc.*, No. C12-0229 TEH, 2013 WL 5832225, at *4 (N.D. Cal. Oct. 29, 2013) (citing same proposition).

Regardless, Plaintiffs cannot meet the Rule 23(b)(1)(B) requirements for a "limited fund" class. The Supreme Court has explained that a limited fund class is appropriate only in special circumstances not present here: where there is a fund with a definite, ascertainable limit, the entirety of which is devoted to satisfying the claims of the putative class. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-42 (1999); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1196-97 (9th Cir. 2001). Thus, "[c]lassic illustrations of limited fund class actions include claims to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale, [and]

---

[12] The Complaint does not even plead a Rule 23(b)(1)(B) class, but rather purports to plead the requirements necessary to certify a Rule 23(b)(3) class. *See* Compl. ¶¶ 86-87.

1   proceeds of a ship sale in a maritime accident suit, and others"—that is, claims to an amount that

2   is sum certain.  Newberg on Class Actions § 4:16 (5th ed.).

3          A corporation with ongoing operations is *not* a limited fund, even if it happens to face

4   financial difficulties or uncertainty.  *See Fed. Ins. Co. v. Caldera Med. Inc.*, No. 2:15-cv-00393-

5   SVW (PJWx), 2016 WL 5922313, at *3 (C.D. Cal. July 25, 2016) (explaining that, where

6   defendant "remain[s] a solvent, operational business" with no definite liquidated value, Rule

7   23(b)(1)(B) does not apply).  "Simply demonstrating that there is a possibility, even a likelihood,

8   that bankruptcy might at some point occur cannot be the basis for finding that there is a 'limited

9   fund' in an ongoing corporate concern."  *In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 880

10  (6th Cir. 2000).  Nor is it sufficient that a defendant's current assets will not satisfy the claims of

11  all putative class members.  *See Ortiz*, 527 U.S. at 843-44 (observing it would not be enough

12  under Rule 23(b)(1)(B) for class plaintiffs to establish that the amount in controversy exceeds the

13  company's assets); *In re Park Cent. Glob. Litig.*, No. 3:09-CV-765-M, 2014 WL 4261950, at *7

14  (N.D. Tex. Aug. 25, 2014) (rejecting argument that limited fund existed merely because all the

15  defendant's assets may be needed to satisfy a judgment).

16         Theranos is an operating company, not a limited fund.  As Plaintiffs' Complaint

17  recognized, Theranos remains an ongoing concern, working on developing and commercializing

18  its innovative miniLab technology.  *See* Compl. ¶¶ 73, 75; White Decl. ¶¶ 15-16; *cf. Caldera*,

19  2016 WL 5922313, at *3 (refusing to certify a Rule 23(b)(1)(B) class where the defendant

20  remained an ongoing concern).  Nor does Theranos have a definite liquidated value; rather, it

21  continues to raise and use its capital to develop its technology.  *See* White Decl. ¶ 17; *cf.*

22  *Caldera*, 2016 WL 5922313, at *3 (refusing to certify a Rule 23(b)(1)(B) class where the

23  defendant had no definite liquidated value).  Indeed, Theranos is currently raising additional

24  capital to fund its operations well into the future.  *See* White Decl. ¶ 17.  Simply put, limited

25  fund treatment is inappropriate because Theranos is a business with the prospect of future

26  operations and revenue; it is not a defined pot of money available to claimants in this matter.

27  **IV.     CONCLUSION**

28         For the foregoing reasons, the Court should allow this Motion.

- 25 -

Dated:  June 30, 2017                   By: /s/  Michael A. Mugmon
                                        Michael A. Mugmon (251958)
                                        WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                        950 Page Mill Road
                                        Palo Alto, CA 94304
                                        Telephone: +1 650 858 6000
                                        Facsimile: +1 650 858 6100
                                        michael.mugmon@wilmehale.com

                                        Christopher Davies (admitted *pro hac vice*)
                                        WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                        1875 Pennsylvania Ave., NW
                                        Washington, DC 20006
                                        Telephone: +1 202 663 6000
                                        Facsimile: +1 202 663 6363
                                        christopher.davies@wilmehale.com

                                        Timothy Perla (admitted *pro hac vice*)
                                        Robert K. Smith (admitted *pro hac vice*)
                                        Megan E. Barriger (admitted *pro hac vice*)
                                        WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                        60 State Street
                                        Boston, MA 02109
                                        Telephone: +1 617 526 6000
                                        Facsimile: +1 617 526 5000
                                        timothy.perla@wilmerhale.com
                                        robert.smith@wilmerhale.com
                                        megan.barriger@wilmerhale.com

                                        *Attorneys for Defendant Theranos, Inc.*

                                        /s/  Kathleen Goodhart
                                        Kathleen Goodhart (165659)

                                        COOLEY LLP
                                        101 California Street, 5th Floor
                                        San Francisco, CA 94111
                                        Telephone: +1 415 693 2012
                                        Facsimile: +1 415 693 2222
                                        kgoodhart@cooley.com

                                        Stephen C. Neal (170085)
                                        COOLEY LLP
                                        3175 Hanover Street
                                        Palo Alto, CA 94304
                                        Telephone: +1 650 843 5000
                                        Facsimile: +1 650 849 7400
                                        nealsc@cooley.com

                                        *Attorneys for Defendant Elizabeth Holmes*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/  Allison A. Davis
Allison A. Davis (139203)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: +1 415 276 6500
Facsimile: +1 415 276 6599
allisondavis@dwt.com

Stephen M. Rummage (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: +1 206 757 8136
Facsimile: +1 206 757 7136
steverummage@dwt.com

*Attorneys for Defendant Ramesh Balwani*

DEFENDANTS' MOTION TO LIMIT THE PUTATIVE CLASS DEFINITION
Case No.  5:16-cv-06822-NC

## <u>SIGNATURE ATTESTATION</u>

I am the ECF User whose identification and password are being used to file the foregoing Motion.  In compliance with Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.


Dated: June 30, 2017                         WILMER CUTLER PICKERING HALE
                                                            AND DORR LLP

                                                     By:  /s/  Michael A. Mugmon
                                                            Michael A. Mugmon