**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

Reed R. Kathrein (139304)
Peter E. Borkon (212596)
Danielle Charles (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com
daniellec@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead*
*Counsel for the Class*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THERANOS, INC., et al., <br><br> Defendants. | No. 5:16-cv-06822-NC <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERTIFY A MANDATORY LIMITED FUND CLASS** <br> Date:          [To be set by the Court] <br> Time:          [To be set by the Court] <br> Courtroom:  7, 4th Floor <br> Judge:         Honorable Nathanael Cousins <br><br> DATE ACTION FILED: Nov. 28, 2016 |

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a time and place to be determined by the Court, before the Honorable Judge Nathanael Cousins of the United States District Court for the Northern District of California, San Jose Division, located at Courtroom 7, 4th Floor, 280 South 1st Street, San Jose, California 95113, Plaintiffs will, and hereby do, move for a temporary or preliminary injunction, pursuant to Rule 65 and/or Rule 23 of the Federal Rules of Civil Procedure, barring, suspending or and freezing any settlements with investors, *pending further input by the affected parties* and the Court's determination of creating a mandatory limited fund class and resolution of fairness of the settlement to the class, namely:

> All investors who purchased a direct or indirect interest in Theranos securities, with claims based on Defendants' common representations or omissions relating to its purported proprietary finger-stick technology for running a broad array of blood tests. Included in the Class are the Partner Plaintiffs and their investors and Walgreens. Excluded from the Class are any direct investors who have released claims against Defendants pursuant to the Tender Offer.[1]

Alternatively;

> All persons or entities who purchased an indirect interest in Theranos securities, with claims based on Defendants' common representations or omissions relating to the relating to Theranos's Board of Directors and/or its technology for testing blood using just a few drops of finger-drawn blood.[2]

Plaintiffs also move the Court to: (1) appoint Plaintiffs Robert Colman and Hilary Taubman-Dye as interim class representatives; and (2) appoint the firms of Hagens Berman Sobol Shapiro LLP and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as interim counsel for the class.

The motion is based on this Notice of Motion and Motion for Injunctive Relief and Mandatory Class Certification, the accompanying Memorandum of Points and Authorities, Declarations and Exhibits, and the pleadings and papers on file in this action, oral argument and such other matters as the Court may consider in hearing this motion.

---

[1] Thus, this class excludes most of those whom Defendants seek to exclude pursuant to Defendants' Motion to Limit the Putative Class. *See* Dkt. No. 102.

[2] Thus, this class excludes all of those whom Defendants seek to exclude pursuant to Defendants' Motion to Limit the Putative Class. See Dkt. No. 102

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- i -

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................ 2

III.   A MANDATORY CLASS SHOULD BE CERTIFIED AS THERANOS IS INSOLVENT
       AND IS PREFERENTIALLY SETTLING WITH INVESTORS ........................... 4

       A.   Legal Standards for Class Certification ................................................ 4

       B.   The Proposed Mandatory Class Definition ........................................... 5

       C.   The Proposed Class and Subclass Meet All Requirements of Rule 23(a) ........ 5

            1.   The Proposed Class Is Sufficiently Numerous. ............................... 5

            2.   This Litigation Concerns Common Questions of Law and Fact. ......... 6

            3.   Plaintiffs' Claims Are Typical of Class Members' Claims. ............... 6

            4.   The Proposed Class Representatives Will Fairly and Adequately Protect
                 Class Interests ........................................................................... 8

       D.   This Case Satisfies Rule 23(b)(1)(B)'s Requirements for a Mandatory Class ........ 8

IV.    AN INJUNCTION IS NECESSARY TO PROTECT THE CLASS ....................... 11

       A.   Upon Certifying a Provisional Mandatory Class the Court Can and Should Issue a
            Preliminary Injunction Pending Further Hearing ................................. 11

            1.   The Court Possesses the Power to Enjoin Absent Class Members and Non-
                 Parties from Conduct That Threatens the Limited Fund or This Litigation .... 11

            2.   Using Its Authority Under the All Writs Act, the Court Should Enjoin
                 Theranos and Class Members From Depleting Theranos Investor Created
                 Assets ....................................................................................... 12

       B.   Irrespective of Whether Class Certification Is Granted, the Court Should Use its
            Authority Under Rule 65 to Issue an Temporary Injunction Freezing Theranos's
            Assets ...................................................................................... 13

            1.   The Court Possesses the Power Under Rule 65 to Issue an Injunction
                 Preserving Theranos's Assets While This Litigation Is Pending ............ 14

            2.   Plaintiffs Have Established All Elements for an Injunction Preventing
                 Dissipation of Theranos's Assets ............................................... 16

                 a.   Plaintiffs Are Likely to Succeed on the Merits ..................... 17

                      (1)   Federal Findings ................................................... 17

                      (2)   State Findings ....................................................... 18

                      (3)   Theranos's Own Admissions .................................... 18

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                        - ii -

(4)     Theranos's Own Board Members............................................19

        (a)     A Potemkin Board ...................................................19

        (b)     A Defrauded Board...................................................20

(5)     Theranos's Own Employees....................................................21

(6)     Theranos's Lies to and Settles with its Own Partner...............24

b.      Plaintiffs Are Likely to Suffer Irreparable Harm Absent Preliminary Relief ........................................................................................24

c.      The Balance of Equities Weighs in Favor of a Preliminary Injunction 25

d.      Public Interest ..................................................................................25

V.      CONCLUSION ...........................................................................................25

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- iii -

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.,*
2017 WL 1806583 (N.D. Cal. May 5, 2017).................................................................8

*Arch Ins. Co. v. Sierra Equip. Rental, Inc.,*
2012 WL 5897327 (E.D. Cal. Nov. 13, 2012) .............................................................14

*Baker v. Wash. Mut. Fin. Grp., LLC,*
193 F. App'x 294 (5th Cir. 2006).................................................................................9

*Colman v. Theranos, Inc.,*
2017 WL 1383717 (N.D. Cal. Apr. 18, 2017).............................................................17

*Consumer Opinion LLC v. Frankfort News Corp.,*
2016 WL 6804607 (N.D. Cal. Nov. 17, 2016).............................................................25

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011)....................................................................................5, 7

*FTC v. Silueta Distribs., Inc.,*
1995 WL 215313, (N.D. Cal. Feb. 24, 1995)..............................................................16

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).....................................................................................8

*Holmes v. Trustmark Nat'l Bank,*
1996 WL 904513 (S.D. Miss. Jan. 11, 1996)..............................................................12

*In re Celera Corp. Sec. Litig.,*
2014 WL 722408 (N.D. Cal. Feb. 25, 2014).................................................................5

*In re Focus Media Inc.,*
387 F.3d 1077 (9th Cir. 2004)..............................................................................14, 15

*In re Joint E. & S. Dist. Asbestos Litig.,*
134 F.R.D. 32 (E.D.N.Y. 1990)..................................................................................12

*In re Lidoderm Antitrust Litig.,*
2017 WL 679367 (N.D. Cal. Feb. 21, 2017).................................................................5

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.,*
311 F.R.D. 532 (N.D. Cal. 2015).................................................................................8

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
176 F.R.D. 158 (E.D. Pa. 1997).................................................................................12

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- iv -

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
   2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) .............................................................11

*In re Real Estate Assocs. Ltd. P'ship Litig.*,
   223 F. Supp. 2d 1109 (C.D. Cal. 2002) ...................................................................16

*Johnson v. Courturier*,
   572 F.3d 1067 (9th Cir. 2009) ...........................................................................14, 24

*Kremen v. Cohen*,
   2011 WL 6113198 (N.D. Cal. Dec. 7, 2011) ......................................................15, 17

*La Jolla Cove Inv'rs, Inc. v. GoConnect Ltd.*,
   2012 WL 1580995 (S.D. Cal. May 4, 2012) ..............................................................14

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................................................6

*Merch. Transaction Sys., Inc. v. Necela, Inc.*,
   2010 WL 382886 (D. Ariz. Jan. 29, 2010) ...............................................................15

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ...................................................................................................16

*Microsoft Corp. v. Premier Selling Techs.*,
   2015 WL 1408915 (W.D. Wash. Mar. 26, 2015).......................................................24

*Miletak v. Allstate Ins. Co.*,
   2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ............................................................7, 8

*Mycka v. Celotex Corp.*,
   1988 WL 80042 (D.D.C. July 18, 1988) ...................................................................12

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .....................................................................................................9

*Perez v. Fatima/Zahra, Inc.*,
   2014 WL 3866882 (N.D. Cal. Aug. 5, 2014) ......................................................14, 15

*Red Head, Inc. v. Fresno Rock Taco, LLC*,
   2008 WL 5448234 (N.D. Cal. Dec. 31, 2008) ..........................................................15

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
   2016 WL 4080294 (N.D. Cal. July 29, 2016) ...........................................................12

*Roches v. Calif. Physicians' Serv.*,
   2017 WL 2591874 (N.D. Cal. June 15, 2017).....................................................4, 6, 7

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ....................................................................................7

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- v -

*Stott v. Capital Fin. Services, Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011)................................................................9, 11, 12

*Travelers Cas. and Sur. Co. of Am. v. Williams Bro., Inc.*,
    2013 WL 5537191 (D. Nev. Oct. 4, 2013)....................................................15, 16, 25

*Walter v. Hughes Commc'ns, Inc.*,
    2011 U.S. Dist. LEXIS 72290 (N.D. Cal. July 6, 2011) ............................................7

*Ward v. United Airlines, Inc.*,
    2016 WL 1161504 (N.D. Cal. Mar. 23, 2016) ......................................................4, 6

*Williams v. Nat'l Sec. Ins. Co.*,
    237 F.R.D. 685 (M.D. Ala. 2006) ........................................................................9, 12

*Wimbledon Fund, Spc Class TT v. Graybox, L.L.C.*,
    2015 WL 5822580 (C.D. Cal. Sept. 29, 2015), *aff'd*, 648 F. App'x 701 (9th Cir.
    2016)........................................................................................................................15, 16

**STATE CASES**

*Kwikset Corp. v. Super. Ct.*,
    51 Cal.4th 310 (2011)...................................................................................................15

*Prata v. Super. Ct.*,
    91 Cal. App. 4th 1128 (2001)......................................................................................16

**FEDERAL RULES**

Federal Rule of Civil Procedure 23 ..........................................................................*passim*

Federal Rule of Civil Procedure 65 ...........................................................1, 2, 13, 14

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                              - vi -

1

**STATEMENT OF ISSUES TO BE DECIDED**

2        1.        Whether the Court should enter a temporary or preliminary injunction, pursuant to

3   Rule 65 and/or Rule 23 of the Federal Rules of Civil Procedure, barring, suspending or and freezing

4   any settlements with investors, in particular the Partner Plaintiffs, Walgreens and █████████████,

5   pending further input by the affected parties, under the Court's inherent authority under the All Writs

6   Act or Fed. R. Civ. P. 65, pending further input by the affected parties and the Court's determination

7   of creating a mandatory limited fund class and resolution of fairness of the settlement to the class;

8        2.        Whether the Court should preliminarily certify a mandatory class under Fed. R. Civ.

9   P. 23(b)(1)(B) because Theranos is insolvent and the investors' recovery is confined to a limited

10   fund, and (1) appoint Plaintiffs Robert Colman and Hilary Taubman-Dye as interim class

11   representatives; and (2) appoint the firms of Hagens Berman Sobol Shapiro LLP and Robbins

12   Geller Rudman & Dowd LLP ("Robbins Geller") as interim counsel for the class.

13   **I.        INTRODUCTION**

14        Two facts are beyond legitimate dispute: (a) Theranos made fraudulent misrepresentations to

15   its investors; and (b) Theranos has limited funds that are continually depleting.  Indeed, the Company

16   exists solely by spending investor funds procured by fraud.  █████████████████████████

17   ████████████████████████████

18        Despite its limited funds, Theranos is engaged in an ongoing campaign of making preferential

19   payments to a select group of investors.  In *Partner Investments, L.P. v. Theranos, Inc.*, 12816-VCL

20   (Del. Ch.) ("Partner Litigation"), the ████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████████████████████.  █████████████████████████████

24   as a result of the Partner Litigation settlement.

25        Furthermore, Theranos has now also agreed to pay Walgreens ████████ in settlement ████

26   ████████████████████████████████████████████████████████

27

28

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                      - 1 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3          Thus, Theranos is using its limited funds – all of which were raised from defrauded investors –

4 to preferentially settle claims that are closest to an embarrassing judgment, to compensate preferred

5 insiders, and to pay attorneys' fees for administering this inequitable campaign.  Although Defendants

6 duped all investors with the same fraudulent conduct, Defendants are leaving the majority of its

7 defrauded investors with no recourse.

8          Consequently, absent an injunction – under the Court's authority Rule 65 of the Federal Rules

9 of Civil Procedure and/or under the All Writs Act and Rule 23(b)(1)(B) – the majority of defrauded

10 investors will have no source of recovery.  An injunction is required to prevent the preferential transfer

11 of assets to certain investors and to preserve the limited funds available to Theranos.  Once those funds

12 are preserved and a mandatory class is certified, common questions of law and fact can be litigated to

13 conclusion, and the limited funds can be equitably distributed to investors through a claims process.

14 **II.    STATEMENT OF FACTS**[3]

15          On October 13, 2017, Partner Investments, L.P., PFM Healthcare Master Fund, L.P. and PFM

16 Healthcare Principals Fund, L.P. (collectively, "Partner Plaintiffs") filed the Partner Litigation against

17 Defendants seeking to recoup their $96.1 investment in Theranos and alleging that Defendants:

18          [L]ied that, amongst other things, the Company had developed a proprietary
          technology that worked; that the Company's proprietary technology was ready for
19          commercial use to perfume nearly all laboratory tests on a few drops of blood drawn
          from a patient's finger. . . [and] concealed the ugly truth about the commercial
20          viability of their technology and methods . . . and ability to meet their rollout
          commitments.[4]

21          On November 15, 2016, Walgreen Co. ("Walgreens") filed a complaint ("Walgreens

22 Litigation") against Theranos seeking to recoup its investment of $100 million in "innovation fees"

23 and $40 million in a convertible note and claiming that Theranos "purported to have developed

24

25

26 ─────────────────────
[3] Unless otherwise noted, all citations to "Exhibit" or "Ex." refer to the exhibits attached to the

27 Declaration of Reed R. Kathrein ("Kathrein Decl."), which is being filed contemporaneously with this Motion.

28 [4] *See* Exhibit A (Partner Litigation Second Amended Verified Complaint) at ¶ 2.

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1    disruptive technology that would make blood testing less invasive, faster, and far more accessible,

2    effective, and actionable" and that it was ready to roll it out commercially.[5]

3         This action was filed on November 8, 2016, on behalf of investors seeking to recoup their

4    investments, based on the same overarching misrepresentations at issue in the Partner Litigation and

5    Walgreens Litigation: Defendants' false representation that "proprietary technology could take a

6    pinprick's worth of blood, extracted from the tip of a finger instead of intravenously, and test for

7    hundreds of diseases" and that "the technology was immediately being rolled-out by one of the

8    nation's largest drug store chains, Walgreens."[6]  Accordingly, each case is based on a common course

9    of conduct – namely, in order to induce funding from investors, Defendants made the same core

10   misrepresentations about the state and capabilities of their technology and their readiness to roll out

11   that technology commercially.

12        Beginning in December 2016, Theranos began to settle with investors over these common

13   claims. ████████████████████████████████████████████████████

14   ████████████████████████████████████████████   When Theranos

15   settled with the Partner Plaintiffs on April 29, 2017, ████████████████████████

16   ████████████████████

17        On April 29, 2017, after Theranos threatened bankruptcy[8] and Partners filed an amended

18   complaint alleging that Theranos was running out of money to pay its claims, Theranos settled with

19   the Partner Plaintiffs, ████████████████████████████████.[9]  Pursuant to

20   the terms of the settlement agreement, █████████████████████████████████

21

22

23

24   [5] *See* Exhibit B (Walgreens Litigation Complaint) at ¶ 3.

25   [6] Class Action Complaint for Violations of California's Securities, Unfair Competition, and Common
     Laws (the "Complaint") [Dkt. No. 1] at ¶¶ 3, 7.

26   [7] *See* Exhibit C (Deposition of Alexander White ("White Dep.")) at 39-41; *see also* ██████████
     Settlement Agreement [Dkt. No. 101-17].

27   [8] *See* Exhibit C (White Dep.) at 83:7-84:2.

28   [9] *See* Exhibit D (Partner Litigation Settlement Agreement, Ex. 20 to White Dep.).

1  ███████████████████████████████████████████████████████

2  ███████████████████████████████████.[10]

3       Also on June 22, 2017, Theranos testified that it had an agreement in principle with Walgreens

4  to settle ███████████████████████████████  ████  ███████████

5  ███████████████████████████████████████████████████████

6  ████████████.[12]

7       Based on discussions with counsel for non-diversified funds which are believed to have

8  members who continue to have personal claims, and documents produced by Theranos, Plaintiffs

9  believe there are over 100 individuals who have sustained losses currently estimated to be in excess of

10  $100 million.[13]   Without injunctive relief against the Partners and Walgreens settlements, these

11  investors will have no recourse against these Defendants.

12  **III.**   **A MANDATORY CLASS SHOULD BE CERTIFIED AS THERANOS IS INSOLVENT AND IS PREFERENTIALLY SETTLING WITH INVESTORS**

13

14  **A.**   **Legal Standards for Class Certification**[14]

     Class certification is appropriate when a plaintiff can show that "all of the prerequisites of

15

16  Rule 23(a) and at least one of the requirements of Rule 23(b) has been met."[15]   Rule 23(a) provides

17  that a district court may certify a class where "(1) the class is so numerous that joinder of all members

18  is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

19  of the representative parties are typical of the claims or defenses of the class; and (4) the representative

20  parties will fairly and adequately protect the interests of the class."[16]   Under Rule 23(b), a plaintiff

21  [10] *See id.* at TH-COL4350 – 4353.

22  [11] Exhibit C (White Dep.) at 45-46.

[12] *See* Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to White Dep.) at TH-COL4220

23  ████████████████████████████████████████████████

24  [13] Kathrein Decl. at ¶ 4.

25  [14] For citations to case law, internal citations, internal quotations and footnotes are omitted and emphasis is added unless noted otherwise.

26  [15] *Ward v. United Airlines, Inc.*, C 15-02309 WHA, 2016 WL 1161504, at *2 (N.D. Cal. Mar. 23, 2016) (citing *Abdullah v. United States Sec. Assocs., Inc.*, 731 F.3d 952, 956-57 (9th Cir. 2013)).

27  [16] *Roches v. Calif. Physicians' Serv.*, 16-CV-02848-LHK, 2017 WL 2591874, at *6 (N.D. Cal. June 15, 2017).

28

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC          - 4 -

must establish that there is (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.[17]

        The district court is required to examine the merits of the underlying claim, "only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." [18]   These analytical principles govern both Rule 23(a) and 23(b).[19]   A trial court has "broad discretion in making the decision to grant or deny a motion for class certification."[20]

**B.      The Proposed Mandatory Class Definition**

        Pursuant to these principles, Plaintiffs seek certification of one or both of the alternative classes defined above in the notice and proposed order, both of which satisfy each element under Rule 23(a) and (b)(1)(B).

**C.      The Proposed Class and Subclass Meet All Requirements of Rule 23(a)**

        **1.      The Proposed Class Is Sufficiently Numerous.**

        Generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the numerosity requirement is satisfied."[21]   During the Class Period, approximately 31 entities purchased shares *directly* from Theranos.[22]   Most of those entities, in turn, have multiple individual members, partners, or subscribers, each of whom purchased a direct or indirect interest in Theranos securities.[23]   Over 40 individuals – including Class Representative Taubman-Dye – purchased and

---

[17] *In re Lidoderm Antitrust Litig.*, 14-md-02521-WHO, 2017 WL 679367, at *8 (N.D. Cal. Feb. 21, 2017).

[18] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011).

[19] *Id.*

[20] *In re Celera Corp. Sec. Litig.*, 5:10-CV-02604-EJD, 2014 WL 722408, at *2 (N.D. Cal. Feb. 25, 2014) (citing *Bateman v. Am. Multi-Cinema*, Inc., 623 F.3d 708, 712 (9th Cir. 2010)).

[21] *Celera*, 2014 WL 722408, at *2 (quoting Fed. R. Civ. P. 23(a)(1) and citing *Miletak v. Allstate Ins. Co.*, C 06-03778 JW, 2010 WL 809579, at *10 (N.D. Cal. Mar. 5, 2010)).

[22] *See* Exhibit F (Theranos Shareholder List, Ex. 9 to White Dep.) at TH-COL0000004215.

[23] *See, e.g.*, Kathrein Decl. at ¶ 4.

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                     - 5 -

continue to hold membership units in Celadon Technology Fund VII, LLC ("Celadon").[24]
Additionally, Lucas Venture Group XI, LLC ("LVG XI") has over 50 members.[25]

### 2. This Litigation Concerns Common Questions of Law and Fact.

One or more members of a class may sue "as representative parties on behalf of all members only if . . . there are questions of law or fact common to the class."[26] This requirement has "been construed permissively," such that "for purposes of Rule 23(a)(2), even a single common question will do."[27] Here, the mandatory Class Members are all based on claims that Defendants made the same false statements which they knew would be received by the Class Members that:

- Theranos had developed a commercially proprietary technology that could take a pinprick's worth of blood, extracted from the tip of a finger instead of intravenously, and test for hundreds of diseases.

- This technology was commercially ready and capable of being rolled out by Walgreens.

Thus, as aptly summarized by the Court, this case involves a common contention that Defendants misleadingly represented that Theranos had "developed proprietary technology that would allow commercial pharmacies to run a multitude of highly accurate blood tests from a few drops of a patient's blood." *See* Order [Dkt. 63] at 1. At a minimum, there is a single overarching, common question – which applies equally to all Class Members – as to whether Theranos had developed and did possess any such functioning proprietary technology.

### 3. Plaintiffs' Claims Are Typical of Class Members' Claims.

Under Rule 23(a)(3) a representative party "must have claims or defenses that are typical of the claims or defenses of the class. Typicality is satisfied when each class member's claim arises from the

---

[24] *See* Exhibit G (Declaration of Matthew Larrabee) (attesting that "[o]ver 40 individuals purchased and continue to hold membership units in Celadon" and "Celadon has never held any securities other than the Theranos securities").

[25] *See* Kathrein Decl. at ¶4.

[26] *Roches*, 2017 WL 2591874, at *7.

[27] *Id.* (quoting *Ellis*, 657 F.3d at 986, and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact."); *Ward*, 2016 WL 1161504, at *2 ("[Plaintiff]'s claims present numerous common questions capable of common answers, so Rule 23(a)(2), which requires only a single significant question of law or fact common to the class, is satisfied." (citing *Abdullah*, 731 F.3d at 956).

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 6 -

same course of events, and each class member makes similar legal arguments to prove the defendants'

liability."[28]   Furthermore, "[t]his requirement is 'permissive and requires only that the representative's

claims are reasonably co-extensive with those of the absent class members; they need not be

substantially identical.'"[29]   Accordingly, "the focus should be on the defendants' conduct and

plaintiff's legal theory, not the injury caused to the plaintiff." *Miletak*, 2010 WL 809579, at *11.

Under these standards, Plaintiffs' claims are typical of the Class claims.   Each Class

Member's claims arise from a single course of events: (1) Defendants made nearly identical

misleading statements or omissions for the purpose of inducing the direct or indirect purchase of

Theranos securities; and (2) each Class Member purchased an interest in Theranos securities; and

(3) each Class Member suffered financial harm when the Theranos securities lost value.

There are no distinctions in the underlying course of conduct giving rise to the claims.   Each

Class Member has made or will make similar legal arguments to prove Defendants' liability.   The

Partner Plaintiffs, Colman, and Taubman-Dye, all assert causes of action for: (1) securities fraud under

§§25400(d) and 25500; fraudulent concealment; and negligent misrepresentation.   Asserting breach of

the implied covenant of good faith and fair dealing, Walgreens raised nearly identical allegations that

"Theranos, in its presentation to Walgreens repeatedly highlighted the viability of its finger-stick

technology" and that "Theranos's representations of having achieved the highest levels of accuracy

and quality were unfounded."[30]   In sum, typicality is satisfied, as Plaintiff's claims are reasonably co-

extensive with—if not identical to—the claims of the remaining Class Members.

---

[28] *Roches*, 2017 WL 2591874, at *13; *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *see also Ellis*, 657 F.3d at 984 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

[29] *Roches*, 2017 WL 2591874, at *13 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *Walter v. Hughes Commc'ns, Inc.*, 09-2136 SC, 2011 U.S. Dist. LEXIS 72290, at *23 (N.D. Cal. July 6, 2011) ("It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief).

[30] *See* Exhibit B (Walgreens Litigation Complaint) at ¶¶ 84, 174-185.

### 4.     The Proposed Class Representatives Will Fairly and Adequately Protect Class Interests

Rule 23(a)'s adequacy requirement "considers (1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."[31]   Only conflicts that are "fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement."[32]

The conduct and declarations of Plaintiffs Colman and Taubman-Dye confirm that each will vigorously prosecute this action on behalf of the Class.  Each has actively overseen and participated in the litigation. [33]  Neither has any conflicts of interest with the Class; they were allegedly injured in the same manner and seek the same relief as that sought by the Class.[34]  This is sufficient.[35]

Class counsel is also adequate.  Although "there are no fixed standards by which vigor can be assayed, considerations include competency of counsel."[36]   Here, Plaintiffs' counsel are qualified lawyers experienced in the successful prosecution of consumer and securities class actions. [37]

### D.     This Case Satisfies Rule 23(b)(1)(B)'s Requirements for a Mandatory Class

Rule 23(b)(1)(B) gives the court power to certify a broad mandatory class and bar settlements where "individual claims would deplete the fund to the detriment of other class members."[38]  Where

---

[31] *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, 15-CV-6314-YGR, 2017 WL 1806583, at *9 (N.D. Cal. May 5, 2017) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

[32] *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 540 (N.D. Cal. 2015) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015)).

[33] Moreover, each Plaintiff is prepared to testify at deposition, attend and testify at Court hearings, and participate in settlement negotiations, as necessitated by the litigation.  *See* Declaration of Hilary Taubman-Dye ("Taubman-Dye Decl.") at ¶¶ 4-8; Declaration of Robert Colman ("Colman Decl.") at ¶¶ 4-8.

[34] *See* Taubman-Dye Decl. at ¶¶ 4-10; Colman Decl. at ¶¶ 4-10.

[35] *See, e.g.*, *Miletak*, 2010 WL 809579, at *12 ("In this case, Plaintiff's interests coincide with the interests of other members of the proposed class because they were allegedly injured in the same manner and seek the same relief.  Thus, Plaintiff does not have any apparent conflict of interest with the proposed class.").

[36] *Hanlon*, 150 F.3d at 1021.

[37] *See* Exhibit H (Firm Resume for Hagens Berman Sobol Shapiro LLP); Exhibit I (Firm Resume for Robbins Geller Rudman & Dowd LLP).

010650-11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 8 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1  the aggregation of the claims is greater than the amount made available in a tangible fund a court has

2  the power "to enforce a settlement that provided for a pro rata distribution of the fund to all claimants,

3  to ensure each claimant was treated fairly and equitably under the circumstances."[39]  This kind of class

4  action "necessarily provides for mandatory participation by class members because allowing class

5  members to opt out of the class and pursue individual claims would deplete the fund to the detriment

6  of other class members."[40]

7         Three elements are "necessary requirements to establishing a limited fund for a mandatory no

8  opt-out class: (1) the totals of the aggregated liquidated claims and the fund available for satisfying

9  them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all claims; (2)

10  the whole of the inadequate fund is to be devoted to the overwhelming claims; and (3) the claimants

11  identified by a common theory of recovery are treated equitably among themselves."[41]  Ultimately,

12  "the purpose of the 'limited fund' device is to ensure that the class's recovery is the 'best possible

13  arrangement' or the 'best that can be provided for class members.'"[42]

14         Theranos's own testimony and financial documents confirm the following:

15  • ██████████████████████████████████████████

16  

17  • ██████████████████████████████████████████

18  

---

19  [38]  *Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316, 327, 347 (N.D. Tex. 2011) (certifying

20  mandatory class and enjoining other claims and lawsuits); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815,
   838 (1999) ("The first and most distinctive characteristic [of a limited fund class action] is that the

21  totals of the aggregated liquidated claims and the fund available for satisfying them . . . demonstrate
   the inadequacy of the fund to pay all . . . claims."); *Baker v. Wash. Mut. Fin. Grp., LLC*, 193 F. App'x

22  294, 298 (5th Cir. 2006) (unpublished) (affirming certification of mandatory class action where
   individual claims outstrip company assets); *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685 (M.D. Ala.

23  2006) (same).

   [39]  *Stott*, 277 F.R.D. at 326 (citing *Ortiz*, 527 U.S. at 834-36).

24  [40]  *Id.* at 326-27.

25  [41]  *Id.* at 327 (citing *Ortiz*, 527 U.S. at 838-39).

26  [42]  *Id.* (quoting *Ortiz*, 527 U.S. at 852, 860).

   [43]  *See* Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to White Dep.).

27  [44]  *See* Exhibit C (White Dep.) at 31-33, 48-49; *see also* Exhibit J (Theranos Balance Sheet April 2017,
   Ex. 6. to White Dep.).

28

---



- The non-releasing Class members invested – and has damages in the amount of – $120 million dollars,[50] and per their complaints, the Partners investor claims are $96 million and the Walgreens investor claims are $140 million.

These indisputable facts confirm that the limited funds available to Theranos are inadequate to pay all claims by the Proposed Class ██████████████████████████████████████ ██████████████████████ the Company would be unable to satisfy all claims held by the defrauded investors in the Proposed Class.

As to the second and third elements, Plaintiffs seek to preserve the entirety of Theranos's limited funds (the cash and the insurance policies) in order to provide an equitable distribution that satisfies the proposed Class's claims.  Indeed, Plaintiffs seek immediate injunctive relief that freeze's

---

[45] *See* Exhibit C (White Dep.) at 50-51; *see also* Exhibit J (Theranos Balance Sheet April 2017, Ex. 6. to White Dep.).

[46] *See* Exhibit C (White Dep.) at 54-55; *see also* Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to White Dep.) at TH-COL4220; Exhibit K (Theranos Cash Balance Roll Forward, Ex. 8 to White Dep.).

[47] *See* Exhibit C (White Dep.) at 35-38, 54-55; Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to White Dep.) at TH-COL4220.

[48] *See* Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to White Dep.) at TH-COL4220.

[49] *See* Exhibit C (White Dep.) at 42-44, 46, 54-55, 70-72.

[50] Kathrein Dec. at ¶¶ 4-5.

[51] *See* Exhibit C (White Dep.) at 61-62.

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- 10 -

1    Theranos's depleting funds, prevents Class Members from releasing claims or settling with Defendants

2    outside of this litigation, and prevents Class Members from receiving a disproportional and premature

3    payout from Theranos to the detriment of other Class Members.  *See* §III, *infra*.

4    **IV.      AN INJUNCTION IS NECESSARY TO PROTECT THE CLASS**

5            **A.      Upon Certifying a Provisional Mandatory Class the Court Can and Should
                      Issue a Preliminary Injunction Pending Further Hearing**

6

7            **1.      The Court Possesses the Power to Enjoin Absent Class Members and Non-
                        Parties from Conduct That Threatens the Limited Fund or This Litigation**

8            Because of the nature of a Rule 23(b)(1)(B) limited fund class action settlement, and the

9    necessity of preserving the limited fund for equitable distribution to all members of the class, the Court

10   has the authority to issue injunctions preventing collateral litigation that may threaten the limited funds

11   that are available to the class.[52]

12           The Court's authority to enter such injunctions stems from the All Writs Act, which provides

13   that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary

14   or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

15   law."  *See* 28 U.S.C. §1651(a).  Particularly in the context of a limited fund situation, the All Writs Act

16   empowers the Court to enjoin competing litigation to preserve its jurisdiction and for the specific

17   purpose of preserving the limited assets that would be available to class members.

18           Moreover, the injunction power of the All Writs Act is broad enough for a court to enjoin and

19   bind non-parties (*i.e.*, persons who are not members of the certified mandatory class)[53] when needed to

20   preserve the Court's ability to reach or enforce its decision in a case over which it has proper

21

22

23

24

25   [52] *Stott*, 277 F.R.D. at 336.   ("[L]imited fund settlements often involve enjoining other legal
     proceedings.").

26   [53] *Stott*, 277 F.R.D. at 338. *See In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,

27   05-MD-1720 (JG), 2014 WL 4966072, at *31, 35 (E.D.N.Y. Oct. 3, 2014) ("[t]his Court also has the
     authority to enjoin a third party pursuant to the All Writs Act" and enjoining a non-party/non-class

28   member "from engaging in any further activity in relation to the settlement in" the class action).

jurisdiction."[54]   This authority even extends, under appropriate circumstances, to all persons in a position to frustrate the implementation of a court order or the proper administration of justice.[55]

Federal courts have regularly enjoined collateral litigation activities – by class members or non-parties – that threaten the limited fund available to a Rule 23(b)(1)(B) class in order to assure that a fund exists from which to provide a remedy.[56]   In addition, conditional class certification has been used to prevent impairing or impeding the interests of other claimants and the depletion of the assets available to resolve all pending and future cases.[57]

For instance, in *Mycka v. Celotex Corp.*, CIV. A. 87-2633, 1988 WL 80042, at *4 (D.D.C. July 18, 1988), the court explicitly employed the All Writs Act to enjoin competing litigation in the context of a mandatory class, stating:

> "The act of certifying a under Fed.R.Civ.P. 23 effectively stays all personal injury actions presently pending against [defendant] throughout the United States and its territories, as well as the filing of any future claims . . . .  [T]o avoid the possibility of any confusion as to the import of this Order, the Court exercises its jurisdiction under the All Writs Act, 28 U.S.C. 1651, and expressly prohibits any person from prosecuting any presently pending individual actions or from commencing any new actions against [defendant] seeking recovery for personal injuries."

### 2. Using Its Authority Under the All Writs Act, the Court Should Enjoin Theranos and Class Members From Depleting Theranos Investor Created Assets

Defendants are subject to collateral litigation that poses a threat to the limited fund available to the Rule 23(b)(1)(B) Class.  Partner Plaintiffs have entered into a settlement with Theranos,



Similarly, Theranos has settled, in principle, with Walgreens

---

[54] *Stott,* 277 F.R.D. at 338 n.13 (quoting *United States v. Int'l Bhd. of Teamsters*, 266 F.3d 45, 50 (2d Cir. 2001)).

[55] *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 12-cv-00944-JST, 2016 WL 4080294, at *4 (N.D. Cal. July 29, 2016).

[56] *See, e.g., Stott*, 277 F.R.D. at 347; *Williams*, 237 F.R.D. at 699; *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 188 (E.D. Pa. 1997); *Holmes v. Trustmark Nat'l Bank*, CIV.A. 195 CV 323 GR, 1996 WL 904513, at *3-4 (S.D. Miss. Jan. 11, 1996).

[57] *See, e.g.*, *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 36 (E.D.N.Y. 1990).

[58] *See* Exhibit D (Partner Litigation Settlement Agreement).

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                   - 12 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1   ███████████████████████████ While █████████████ has not yet filed suit they

2   are in active negotiations with Theranos.[61]

3          Importantly, the claims of the Partner Plaintiffs, Walgreens, █████████████

4   ████████ are the same claims asserted in this litigation.  Their settlements provide preferential from

5   the funds that defrauded Class Members invested in Theranos.  ████████████████████

6   ████████████████████████████████████████████████████████████████████

7   Consequently, ████████████████████████████████, and the majority of Class

8   Members will have no recovery.[63]

9          Theranos also aims to use the remainder of the █████████ D&O insurance policy to

10  compensate its attorneys only.  Theranos has already used approximately █████████ of that policy to

11  pay for defense costs.[64]  Consequently, these settlements – and Theranos's preferential treatment of a

12  minority of investors – threaten the Court's jurisdiction to maintain a mandatory class under Rule

13  23(b)(1)(B), which is necessary to resolve the claims of all Class Members and to equitably distribute

14  the limited funds in satisfaction of those claims.

15  **B.    <u>Irrespective of Whether Class Certification Is Granted, the Court Should Use its</u>**
        **<u>Authority Under Rule 65 to Issue an Temporary Injunction Freezing Theranos's</u>**

16      **<u>Assets</u>**

17          Plaintiffs seek a temporary injunction freezing Theranos's assets and temporarily enjoining

18  Defendants from remitting funds as part of any settlements absent approval by this Court.  The

19  requested injunction would also restrict Theranos from directly or indirectly utilizing funds available

20

21  ─────────────────────
    [59] Exhibit C (White Dep.) at 45-46.

22  [60] *See id.* at 39-40; Exhibit L (████████ Settlement Agreement, Ex. 19 to White Dep.).

23  [61] *See* Exhibit C (White Dep.) at 44 (███████████████████████████████

24  [62] ████████████████████████████████████████████████ *See* Exhibit L

25  ████████ Settlement Agreement, Ex. 19 to White Dep.).███████████████████████

26

27  [63] *See* Exhibit C (White Dep.) at 52-54; Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to
    White Dep.).

28  [64] Exhibit C (White Dep.) at 35-38.

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

through the D&O insurance policy, which Theranos is attempting to use to pay ⬛⬛⬛⬛ in legal fees associated with the Partners Litigation. The Court has the power to issue such an injunction – irrespective of class certification – because Theranos is dissipating the assets claimed in this litigation and, absent injunctive relief, monetary damages will be unrecoverable.

      **1.**     **The Court Possesses the Power Under Rule 65 to Issue an Injunction Preserving Theranos's Assets While This Litigation Is Pending**

Where it is "likely that the claimed assets will be dissipated, or monetary damages will be unrecoverable, the Court has authority to enjoin asset transfer or freeze assets to maintain the status quo before judgment is entered."[65] Accordingly, "a defendant might be enjoined from transferring or secreting its assets during the litigation, or its profits may be segregated and it may be enjoined from making any non-court approved expenditures."[66]

Although "preliminary injunctions may not issue to preserve assets to which a party did not yet have a legal claim," "when equitable claims are at issue, as opposed to solely legal damages claims, the rule barring issuance of a preliminary injunction freezing assets is inapplicable."[67] Hence, when a complaint invokes principles of equity, the court maintains the power to issue a preliminary injunction freezing assets.[68] At least one court in the Ninth Circuit has held that an injunction may issue,

---

[65] *Perez v. Fatima/Zahra, Inc.*, C 14-2337 CW, 2014 WL 3866882, at \*6 (N.D. Cal. Aug. 5, 2014) (citing *Johnson v. Courturier*, 572 F.3d 1067, 1083-85 (9th Cir. 2009); *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1478 (9th Cir. 1994)); *see also La Jolla Cove Inv'rs, Inc. v. GoConnect Ltd.*, 11CV1907 JLS (JMA), 2012 WL 1580995, at \*2-3 (S.D. Cal. May 4, 2012) ("The Ninth and several other circuits have held that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment. In these types of cases . . . the injunction issued is designed to freeze the status quo and protect the damages remedy."); *Johnson*, 572 F.3d at 1085 ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.").

[66] *La Jolla*, 2012 WL 1580995, at \*3, 5 (acknowledging court's power to enter injunction but denying injunction where "the Court [was] not convinced that [plaintiff] ha[d] crossed the threshold from demonstrating a mere possibility to demonstrating the likelihood that [defendant] will soon be insolvent such that money damages would be inadequate").

[67] *In re Focus Media Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004).

[68] *See, e.g.*, *Arch Ins. Co. v. Sierra Equip. Rental, Inc.*, CIV S-12-0617 KJM KJN, 2012 WL 5897327, at \*4 (E.D. Cal. Nov. 13, 2012) ("The court finds that it has authority here to grant a preliminary injunction freezing defendants' assets based on [plaintiff's] claims. [Plaintiff's] original complaint and proposed FAC include a cause of action for promissory estoppel and a request for specific

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- 14 -

regardless of whether equitable relief is sought in the complaint, where there is an impending insolvency of the defendant.[69]  Courts within the Ninth Circuit have repeatedly issued preliminary injunctions (and/or TROs) freezing a defendant's assets where  (a) the Complaint seeks equitable relief; and (b) either there is an impending insolvency of Theranos or Theranos has engaged in a pattern of secreting or dissipating assets to avoid judgment.[70]  Plaintiffs satisfy both elements.

First, the Complaint seeks equitable relief.  Specifically, the Complaint's UCL claim is equitable.  The UCL prohibits and provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."[71]  The Legislature intended this "sweeping language" to include "***anything that can properly be called a business practice and that at the same time is forbidden by law***" and provided "courts with broad equitable powers to remedy violations."[72]  The purpose of the statute is "to deter future violations of the unfair trade practice

---

performance, both based in equity."); *Travelers Cas. and Sur. Co. of Am. v. Williams Bro., Inc.*, 2:12-cv-0058-LDG-NJK, 2013 WL 5537191, at *3 (D. Nev. Oct. 4, 2013) (granting preliminary injunction freezing defendant's assets where plaintiff "seeks in its complaint equitable relief in the form of specific performance").

[69] *See Merch. Transaction Sys., Inc. v. Necela, Inc.*, CV 02-1954-PHX-MHM, 2010 WL 382886, at *3 (D. Ariz. Jan. 29, 2010) ("In cases where equitable relief is not sought, a court may issue a pre-trial injunction when a plaintiff can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

[70] *See Red Head, Inc. v. Fresno Rock Taco, LLC*, C-08-5703 EMC, 2008 WL 5448234, at *1-2 (N.D. Cal. Dec. 31, 2008) (granting preliminary injunction that, *inter alia*, restricted defendant from "[t]ransferring[,] conveying, assigning, pledging, selling, encumbering, changing ownership, vesting of title to, or otherwise disposing of any assets held in the name of [defendant] other than in the ordinary course of business"); *Kremen v. Cohen*, 5:11-cv-05411-LHK, 2011 WL 6113198, at *6 (N.D. Cal. Dec. 7, 2011) (issuing TRO freezing defendants' assets where "there [was] an appreciable risk that Defendants . . . will dispose of the subject Wells Fargo Account and other currently unknown funds prior to resolution of Plaintiff's action"); *Wimbledon Fund, Spc Class TT v. Graybox, L.L.C.*, 2:15-cv-06633-CAS(AJWx), 2015 WL 5822580, at *7 (C.D. Cal. Sept. 29, 2015) (granting preliminary injunction freezing defendant's assets where the "evidence supports an inference that there is a substantial danger that [defendant], upon receipt of the settlement proceeds, will transfer or otherwise dissipate those funds, before this action is concluded"), *aff'd*, 648 F. App'x 701 (9th Cir. 2016); *Focus*, 387 F.3d at 1085 (affirming bankruptcy court's issuance of preliminary injunction freezing assets); *Travelers*, 2013 WL 5537191, at *3; *Perez*, 2014 WL 3866882, at *6.

[71] California Bus. and Professions Code § 17200.

[72] *See Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 320 (2011).

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 15 -

statute and to foreclose retention by the violator of its ill-gotten gains."[73]   Plaintiffs have also explicitly pleaded that they seek various forms of equitable or injunctive relief, including restitution, rescission, and disgorgement.[74]

Second, Plaintiffs have established the impending insolvency of Theranos.  Theranos cannot continue to operate beyond ███████   Theranos's internal cash forecast reveals ███████ ██████████████████████████████ █ ████████████████████████████ ████████████████████████████████████████[76]

## 2.   Plaintiffs Have Established All Elements for an Injunction Preventing Dissipation of Theranos's Assets

A plaintiff seeking a preliminary injunction "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest."[77]   Serious questions going to the merits and a hardship tip the balance sharply toward the plaintiff.[78]   Indeed, "[t]he Ninth Circuit considers all of the elements except for irreparable injury using a sliding scale approach, where 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"[79]   Each factor weighs in favor of the requested injunction.[80]

---

[73] *See Prata v. Super. Ct.*, 91 Cal. App. 4th 1128, 1136-37 (2001) (citing *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 449 (1979)).

[74] *See* Complaint ¶¶ 86, 102, *Demand for Relief.  See also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (stating that "restitution" is "a remedy traditionally viewed as equitable"); *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1109, 1139 (C.D. Cal. 2002) ("Rescission is controlled by equitable principles.")*; FTC v. Silueta Distribs., Inc.*, C 93-4141 SBA, 1995 WL 215313, at *8 (N.D. Cal. Feb. 24, 1995) ("Disgorgement is an equitable remedy used to avoid unjust enrichment.  The fact that disgorgement involves a claim for money does not detract from its equitable nature.").

[75] *See* Exhibit E (Theranos 2017 YTD Cash Summary, Ex. 10 to White Dep.) at TH-COL4220.

[76] *See* Exhibit C (White Dep.) at 83-84.

[77] *Wimbledon*, 2015 WL 5822580, at *5 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

[78] *Id.* (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)).

[79] *Travelers*, 2013 WL 5537191, at *1 (quoting *Cottrell*, 632 at 1131).

[80] An additional consideration is whether the Court should set a bond.  "Notwithstanding the seemingly mandatory language, 'the district court may dispense with the filing of a bond when it

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                          - 16 -

### a.     Plaintiffs Are Likely to Succeed on the Merits

To succeed on a claim under §§25400 and 25500, Plaintiffs need establish that: (1) Defendants sold or offered for sale securities; (2) Defendants made any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact; (3) Defendants intended to induce the purchase of securities through those misleading statements or omissions; and (4) Plaintiffs were affected by those acts of market manipulation.[81]

Here, it is undisputed that Defendants sold or offered for sale securities and that Plaintiffs suffered damages after purchasing an interest in those securities.[82]  Plaintiffs, therefore, are likely to succeed on the merits as to the first and fourth elements.  As to the second and third elements, the evidence of Defendants intentional fraud is overwhelming.  The fraudulent nature of Defendants' representations about Theranos's illustrious board (¶21) and its revolutionary technology that supposedly enabled consumers to "complete any clinician-directed lab test with as little as a few drops of blood and results available in a matter of hours" (¶24) has been confirmed by federal authorities, state authorities, Theranos's own board members, Theranos's own employees, Theranos's own investors, Theranos's own partners, and Theranos itself:

### (1)     Federal Findings

On July 7, 2016, the Department of Health & Human Services ("HHS") effectively shut down Theranos with a series of sanctions that included (1) a revocation of Theranos's laboratory certification; and (2) Theranos's laboratory's exclusion from receiving Medicare or Medicaid payments, which is "[c]onsidered the death knell for careers and companies alike."[83]  HHS's findings and Theranos's admissions underlying these sanctions confirm the falsity of Defendants'

---

concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Kremen*, 2011 WL 6113198, at *8 (quoting *Johnson*, 572 F.3d at 1086) (setting bond of $2,000 for injunction freezing account worth $109,000).

[81] *See Colman v. Theranos, Inc.*, 16-cv-06822-NC, 2017 WL 1383717, at *2 (N.D. Cal. Apr. 18, 2017) (setting forth various elements that plaintiffs must establish to proceed under §§25400, 25500).

[82] Taubman-Dye Dec. at ¶3; Colman Dec. ¶3.

[83] *See* Exhibit M (July 7, 2016 Letter from Department of Health & Human Services); Exhibit N (June 14, 2012 Article by Skadden, Arps, Slate, Meagher & Flom LLP).

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 17 -

1   representations concerning their supposedly revolutionary accurate blood-testing technology. For

2   example, Theranos admitted that it had "*voided all patient test results*" from its proprietary blood-

3   testing machine.[84]  Other inexplicable failures forced Theranos to void months of additional blood

4   tests, even if performed on other equipment.[85]  HHS determined that Theranos's lab had no evidence

5   of having used *any* quality control ("QC") procedure.  *Id.* at 16-17.  And the QC procedures Theranos

6   did submit often reflected results *outside* acceptable ranges, yet there was no indication that Theranos

7   had even recognized these unacceptable results, let alone took any corrective action.  *Id.* at 20.

8                    **(2)      State Findings**

9          In July 2015, Defendants hoodwinked the state of Arizona into passing legislation to allow

10   patients to order blood tests without involving a doctor.[86]  By October 5, 2016, Theranos had closed all

11   of its testing centers, including all 40 in Arizona, and all of its clinical labs.  *See* October 5, 2016

12   Holmes Open Letter.  Six months later, the Arizona Attorney General sued Theranos for violations of

13   the Arizona Consumer Fraud Act because, *inter alia*, "Theranos's statements that it could run every

14   type of blood test, or even most types of blood tests, with its proprietary technology were false," and

15   "Theranos's claim that it conducted accurate testing on its proprietary technology was false because of

16   its failure to implement a quality control program that ensured that patients received accurate test

17   results."[87]  Theranos's response was to enter into a Consent Decree requiring it to (1) issue *full*

18   *refunds* to all 175,940 of its Arizona consumers, and (2) pay $200,000 in civil fraud penalties.[88]

19                    **(3)      Theranos's Own Admissions**

20          By voiding *all* of the blood tests run on its proprietary system, Theranos admits that its

21   proprietary system was unreliable.[89]  Worse, because the total number of tests that Theranos voided

22   amounted to only 10.6% of the tests Theranos ran,[90]  Theranos admits it used third-party machines for

---

[84] *See* Exhibit M (July 7, 2016 Letter from Department of Health & Human Services) at 8.

[85] *See id.* at 6, 9.

[86] *See* Exhibit O (July 2, 2015 USA Today Article).

[87] *See* Exhibit P (Arizona Attorney General Complaint) at ¶¶ 35, 39.

[88] *See* Exhibit Q (Arizona Attorney General Consent Decree) at ¶¶ 2, 4, 7.

[89] *See* Exhibit M (July 7, 2016 Letter from Department of Health & Human Services) at 8.

[90] *See* Exhibit Q (Arizona Attorney General Consent Decree) at ¶¶ 2, 4, 7

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                        - 18 -

at least 89.4% of the tests that it ran.  Likewise, Theranos's own Laboratory Director has confirmed that as of December 2013, the end of the most critical six-month period in Defendants' scheme, 90% of the blood tests Theranos was conducting were venous draws – precisely the kind of traditional blood test it had supposedly replaced.[91]  These admissions alone confirm that Theranos did **not** have a proprietary system that could accurately complete any clinician-directed lab test with just a few drops of blood.

### (4)   Theranos's Own Board Members

### (a)   A Potemkin Board

Theranos management team primarily consisted of Holmes' brother, a political science major, and a half-dozen of his fraternity brothers, who were also political science majors.[92]  What Holmes needed was a façade of competence, so she created one.  Theranos's primary selling points to investors was its impressive Board of Directors.[93]  In a December 2014 interview with *The New Yorker*, Holmes admitted that her cultivation of George Shultz was critical to Theranos's "success":

> Shultz agreed to join the board, and he meets with Holmes weekly.  He introduced her to several other current board members: Bill Frist, a trained cardiac surgeon and former Senate Republican Majority Leader; Henry Kissinger, the former Secretary of State; Sam Nunn, a former Democratic senator and chairman of the Armed Services Committee; William J. Perry, the former Defense Secretary; and Richard Kovacevich, a former C.E.O. and chairman of Wells Fargo.[94]

While an impressive Board of Directors, it was not a real.  In truth, the Board was never allowed by Holmes to vote:

> Q. How would you contrast the role that you played as a director on those boards to your role on the Theranos board that you described as an advisory board?
>
> A [Shultz]. Well, on a fiduciary board, you're responsible for things that go on, and so you take votes and you work at it that way.  In the case of Theranos, nobody took any votes on anything.  We just gave advice, and Elizabeth would decide what she

---

[91] *See* Exhibit R (Deposition of Mark Pandori) at 24:13-23; 73:25-74:9.

[92] Exhibit S (Deposition of Christian Holmes) at 14:2-12; Exhibit T (Deposition of Max Fosque) at 12:1-5; 13:16-14:13, 25.

[93] Exhibit U (July 29, 2013 Theranos Press Release).

[94] Exhibit V (December 15, 2014 *New Yorker* Article).

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                    - 19 -

wanted to do . . . .  We never took any votes at Theranos.  It was pointless. Elizabeth was going to decide whatever she decided. [95]

Even after *The Wall Street Journal* ("*WSJ*") started exposing Theranos's fraud, Secretary Shultz, Defense Secretary Perry, and Senator Nunn recommended that Theranos respond to the *WSJ*'s allegations by immediately commissioning an independent investigation.[96]  Holmes, keenly aware that an independent investigation would reveal Theranos's fraud, refused.[97]

### (b)  A Defrauded Board

Holmes also defrauded some if not all of its Board.  Despite using third-party devices to run 90% of its tests, Holmes convinced Secretary Shultz that Theranos ran all of its blood tests on its own proprietary devices.[98]  Shultz testified he would have wanted to know about Theranos's use of commercially available third-party devices to run its tests, and naturally he would have wanted to know *why* Theranos was using third-party devices instead of its own.[99]  Likewise, Holmes led Admiral Roughead to believe it used its own proprietary devices to accurately run 2,000 different blood tests using drops from finger tips.[100]  He did not learn of Theranos's use of third-party devices and venous blood draws until reading about it in the press.[101]  Admiral Roughead, like Shultz, Defense Secretary Moore, and Senator Nunn, believed that an independent third-party validation of Theranos's technology would be the most appropriate response to the *WSJ*'s allegations, and that view was "[a]bsolutely" conveyed to Holmes, who assured the Board that such validations were in the works, but they have never materialized to this day.[102]

Holmes' manipulation of Secretary Shultz even extended to deceiving him into serving as bait for an ambush of his own grandson, Tyler Shultz ("T. Shultz").  Holmes suspected that T. Shultz was

---

[95] Exhibit W (Deposition of George Shultz) at 52:21-53:5, 54:14-16.

[96] *Id*. at 59:18-60:2.

[97] *Id*. at 60:3-4.

[98]  *Id.* at 22:1-7, 25:2-9, 40:14-24, 43:19-23.

[99]  *Id.* at 27:23-28:4; 41:2-6, 44:13-24.

[100]  Exhibit X (Deposition of Admiral Roughead) at 41:14-42:2, 61:13-63:2, 64:13-21.

[101]  *Id.* at 40:6-13; 65:4-8; 140:22-141:24.

[102]  *Id.* at 129:11-131:8, 134:7-16.

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                    - 20 -

the whistleblower who had helped the *WSJ* expose her and Theranos's fraud, so she convinced Shultz "that she wanted to help Tyler out, and if he would sign something or other, then that would be the end of it."[103]  Instead, Holmes sent two lawyers to ambush him.  As Secretary Shultz testified,

> They were – one was a woman. She was perfectly nice.  The man was some sort of an animal. Wild animal.  And he assaulted my grandson. It's one of the dumbest things I've ever observed.  But that ended.  When it did, my wife was about to pick a hand iron out of the fireplace and clobber him.[104] *** It was dumb and totally stupid and one of the worst little things I've ever seen anybody try to do. *** I presume that they had this thing they wanted Tyler to sign, and he was trying to intimidate him enough to get him to sign it.  That's the only possible explanation.  There is no kind of explanation for the kind of performance he put on.[105]

Honest and law-abiding business people simple do not resort to these kinds of tactics.

### (5)     Theranos's Own Employees

Despite Holmes and Theranos' efforts to intimidate, T. Shultz still provided fully corroborated, testimony about the massive deficiencies in Theranos' technology and methodologies.  First, there was nothing revolutionary about Theranos's proprietary device, but rather it was just a slight non-reliable modification of what already existed.[106]  In fact, the unreliability of Theranos's proprietary device was such common knowledge within Theranos, it was a running joke that Theranos's managers had no idea whether they were free of STDs because they had been tested only by Theranos's devices.[107]  Theranos's device had a success rate of 80% for detecting STDs versus 97% for the existing testing methodology.[108]

Second, Theranos's proprietary device could only run seven fully validated blood tests, not the hundreds, or "full panel," Theranos and Holmes represented – representations that Holmes maintained even after T. Shultz specifically told her that he knew these statements were untrue.[109]

---

[103]  Exhibit W (Deposition of George Shultz) at 56:2-8

[104]  *Id.* at 55:13-20.

[105]  *Id.* 57:2-3, 58:13-18

[106]  Exhibit Y (Deposition of Tyler Shultz) at 15:16-24.

[107]  *Id.* at 57:19-58:21.

[108]  *Id.* at 131:3-21.

[109]  *Id.* at 24:1-25:9; 32:2-33:13.

010650-11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- 21 -

Third, Theranos abandoned even the most basic principles of reliable testing methodologies to manipulate whatever outcomes they wanted.  Rather than retain failed test results, so "successes" could be assessed, Theranos would "repeat and delete" until reaching its desired outcome.[110]  Likewise, Theranos would use sliding "equivocal zones" to eliminate false-negative results and exaggerate the accuracy of its tests' outcomes.[111]  For its syphilis test results, Theranos used an equivocal zone to transform its 80% success rate into what appeared to be a 95% success rate.[112]

Fourth, many of Theranos's employees were concerned about accurate results for their blood tests.[113]  Yet, despite the known unreliability of Theranos's results Theranos's employees occasionally had to tell patients to go to emergency rooms due to their blood-test results.[114]  These tactics persisted because of the pervasive culture of fear and intimidation at Theranos, where the overarching rule was "Don't speak up or you get fired."[115]

Erika Cheung, who has a bachelor's degree in molecular and cell biology from Cal, was a lab associate at Theranos.[116]  Cheung started working at Theranos in October of 2013 (13:21) – again, a critical time in the class period – and by April 2014 she left because:

> There were a lot of issues while I was working with quality controls, with the accuracy of patient samples, with some of the protocols and the standards in which we [were] processing patient samples.  And I had a conversation with the COO [Balwani] that made it clear to me that sort of the values of the company and my own personal values didn't align so I decided to leave.[117]

Holmes and Theranos represented on Theranos's website that the coefficient of variation ("CV"), which measures variation or consistency between test results, for Theranos's vitamin D tests was less than 10%.[118]  In reality, however, the CV for Theranos's vitamin D tests "definitely was not

---

[110]  *Id.* at 138:3-139:17.

[111]  *Id*. at 148:14-150:13.

[112]  *Id.* at 131:3-21.

[113]  *Id.* 87:19-24.

[114]  *Id.* 86:18-87:6.

[115]  *Id.* at 72:4-73:7.

[116]  Exhibit Z (Deposition of Erika Cheung) at 13:5-19.

[117]  *Id.* at 15:24-16:7.

[118]  Exhibit Y (Deposition of Tyler Shultz) at 165:1-9.

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                    - 22 -

1   less than ten percent."[119]  Even Theranos's laboratory director acknowledged that Theranos's

2   supposedly revolutionary technology was plagued with CVs exceeding 50%.[120]  This means that the

3   same exact test of the same exact sample run on Theranos' machines would yield results that would

4   vary, on average, over 50%.

5        Nicholas Haase, who has Ph.D. in chemistry and worked as a scientist in Theranos's assay

6   development group, recalled that Theranos would run "tests" for VIPs, but that they would actually

7   run the tests manually out of sight, as opposed to on their proprietary machines, because Theranos's

8   machines would not have yielded reliable results.[121]

9        In light of Theranos' intimidation tactics, it is remarkable that any employees have been

10  willing to speak out.  Many employees have confirmed the menacing culture that T. Shultz described.

11  Cheung and Niroomand confirmed the speak-up-and-lose-your-job atmosphere at Theranos.[122]

12  Anthony Nugent, a Theranos Product Development Vice President, witnessed Holmes lie to a

13  Cal/OSHA inspector about Theranos' handling of blood samples, and he also observed specific acts of

14  retaliation and intimidation directed at Theranos employees.  For example, one woman was fired after

15  objecting to the conditions in Theranos' lab.[123]

16        Even after Cheung left, Theranos, had her followed to learn her new temporary residence and

17  her new place of employment to deliver a letter threatening to sue her.[124]  Of course, some employees

18  refused to talk for fear of criminal responsibility for their role in Defendants' crimes.  For example,

19  former Theranos Team Manager Surekha Gangakhedkar asserted her Fifth Amendment privilege

20  against self-incrimination throughout her deposition.[125]

21

22  [119]  Exhibit Z (Deposition of Erika Cheung) at 146:13-22.

23  [120]  Exhibit R (Deposition of Mark Pandori) at 69:20-70:10.

24  [121]  Exhibit AA (Deposition of Nicholas Haase) at 22:19-23:16, 175:1-177:9, 188:7-12, 194:25-195:9.

25  [122]  Exhibit Z (Deposition of Erika Cheung) at 200:10-12; Exhibit BB (Deposition of Ashkon Niroomand) at 108:4-10.

26  [123]  Exhibit CC (Deposition of Anthony Nugent) at 17:23-20:22, 103:19-104:3.

27  [124]  Exhibit Z (Deposition of Erika Cheung) at 10:21-12:1, 21:1-22:2.

28  [125]  Exhibit DD (Deposition of Surekha Gangakhedkar) at 1-20

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                    - 23 -

**(6)      Theranos's Lies to and Settles with its Own Partner**

Aside from the phony Board, Theranos's claimed legitimacy by its partnership with Walgreen's, which was equally obtained via fraud.[126]  Walgreen's invested Theranos $140 million to contract with it to use its now-discredited and discontinued blood-testing system in in-store "Theranos Wellness Centers."[127]  By June 11, 2016, Theranos admitted to Walgreens that it had voided 31,000 blood-test reports provided to Walgreens' customers at the Theranos Wellness Centers.[128]  Without ever denying any of Walgreens' allegations, ███████████████████████████████████

███████████████████ ████████ ███████████████████████████████

██████████████████████████████████████████████████████████

███████████

The above evidence and admissions are far more compelling than many criminal fraud cases that result in convictions under the beyond-a-reasonable-doubt standard, which is a much higher bar than the preponderance standard for Plaintiffs' claims.

**b.      Plaintiffs Are Likely to Suffer Irreparable Harm Absent Preliminary Relief**

Absent the injunction, Theranos will further dissipate its assets and render Plaintiffs unable to obtain monetary relief.  Consequently, the irreparable harm factor weighs strongly in favor of the requested injunction.[131]

---

[126]  *See* Complaint [Dkt. No. 1] at ¶¶ 21, 24, 28.

[127]  *See* Exhibit B (Walgreens Litigation Complaint) at ¶¶ 3, 39.

[128]  *Id.* at ¶ 8.

[129]  Exhibit C (White Dep.) at 45:24-46:17.

[130]  *Id.* at 54:7-16.

[131]  *See Johnson*, 572 F.3d at 1085 ("[Defendant]'s own prior conduct establishes a likelihood that in the absence of an asset freeze and accounting, Plaintiffs will not be able to recover the improperly diverted funds and will thus be irreparably harmed."); *Microsoft Corp. v. Premier Selling Techs.*, C15-463RAJ, 2015 WL 1408915, at *3 (W.D. Wash. Mar. 26, 2015) ("[Plaintiff]'s evidence establishes not only that Defendants are profiting at [plaintiff]'s expense, but that Defendants have gone to great lengths to hide themselves and the assets that are the fruits of their unlawful conspiracy.  That [plaintiff] is unlikely to obtain monetary relief is further evidence of irreparable harm."); *Travelers*, 2013 WL 5537191, at *11 ("Concealing or dissipating assets can constitute irreparable harm. [Plaintiffs]' evidence, previously outlined, that the . . . defendants have secreted diverted assets, and the . . . defendants' lack of evidence that those activities were legitimate, supports a finding that [plaintiff] has no adequate remedy at law and would suffer irreparable harm if an injunction does not

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 24 -

### c. The Balance of Equities Weighs in Favor of a Preliminary Injunction

The inquiry is whether the danger that Plaintiffs will be unable to recover on their claims is greater than the harm to Theranos from a freeze of Theranos's assets pending trial.[132]  A temporary freeze of Theranos's assets will provide minimal harm to Theranos. It will merely restrict Theranos from providing preferential treatment to certain claimants to the detriment of Plaintiffs. Theranos has no equitable interest in rewarding unsecured claimants to the detriment of others.  Further, the Court can craft the injunction to allow Theranos to make limited expenditures that are necessary for any ongoing operations in the normal course of business—though the legitimacy of those operations are likely a mere continuation of the fraud.

### d. Public Interest

When the "reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] in [granting or] denying the preliminary injunction."[133]  This factor is either neutral or weighs in favor of an injunction.  Third parties, other than those trying to get preferential treatment, will not be affected.  Nonetheless, there is a public interest in stopping a continuing fraud.

## V.   CONCLUSION

Plaintiffs respectfully request that the Court: (a) issue the requested narrowly tailored temporary injunction; and/or (b) provisionally certify the requested mandatory class; (c) appoint Plaintiffs as Class Representatives; (d) appoint Plaintiffs' counsel as Class Counsel; and set further briefing and hearing dates.

---

issue."); *Consumer Opinion LLC v. Frankfort News Corp.*, 16-cv-05100-BLF, 2016 WL 6804607, at *5 (N.D. Cal. Nov. 17, 2016) ("A defendant's secretion or dissipation of assets may establish a likelihood of irreparable harm warranting injunctive relief.").

[132] *See Travelers*, 2013 WL 5537191, at *12 ("[T]he absence of evidence to the contrary, the danger that [plaintiff] will not be able to recover on its claims is greater than the harm the . . . defendants will suffer from a freeze of their assets before trial.").

[133] *Id.* ("Here, the court determines that, under the circumstances presented, and in light of defendants' ability to seek court approval for certain asset-related dealings of non-party entities which are affected by the relief, the reach of the injunction is narrow and limited enough that the public interest is not implicated in a significant way.").

010650-
11 972074 V1

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                      - 25 -

1      DATED: July 14, 2017              HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                         By       */s/ Reed R. Kathrein*            
Reed R. Kathrein (139304)

4                                         Peter E. Borkon (212596)
Danielle Charles (291237)

5                                         715 Hearst Ave., Suite 202
Berkeley, CA 94710

6                                         Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

7                                         reed@hbsslaw.com
peterb@hbsslaw.com

8                                         daniellec@hbsslaw.com

9                                         Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP

10                                       1918 Eighth Ave., Suite 3300
Seattle, WA 98101

11                                       Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

12                                       steve@hbsslaw.com

13                                       *Counsel for Plaintiffs and Proposed*

14                                       *Lead Counsel for the Class*

15                                       Paul J. Geller (admitted *Pro Hac Vice*)
ROBBINS GELLER RUDMAN

16                                          & DOWD LLP
120 East Palmetto Park Road, Suite 500

17                                       Boca Raton, FL 33432
Telephone: (561) 750-3000

18                                       Facsimile:  (561) 750-3364
pgeller@rdrdlaw.com

19

20                                       Dennis J. Herman
ROBBINS GELLER RUDMAN

21                                       & DOWD LLP

22                                       Post Montgomery Center
One Montgomery Street, Suite 1800

23                                       San Francisco, CA 94104
Telephone: (415) 228-4545

24

25

26

27

28

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC       

1

Facsimile:  (415) 288-4534
dennish@rgrdlaw.com

2

3

Jason A. Forge
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile:  (619) 231-7423
jforge@rgrdlaw.com

4

5

6

7

*Additional Counsel for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' NOTICE OF MOT. AND MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY
CERT. MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED *

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses, registered, as denoted on the attached Electronic Mail Notice List.  I hereby certify that I have caused the foregoing document or paper to be mailed via United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Reed R. Kathrein*
REED R. KATHREIN

010650-11 972074 V1

CERTIFICATE OF SERVICE - 5:16-cv-06822-NC