*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

Reed R. Kathrein (139304)
Peter E. Borkon (212596)
Danielle Charles (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com
daniellec@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead Counsel for the Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THERANOS, INC., et al.,<br><br>Defendants. | No. 5:16-cv-06822-NC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' RESPONSE AND PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO LIMIT THE CLASS DEFINITION**<br><br>Date: August 23, 2017<br>Time: 1:00 PM<br>Courtroom: 7, 4th Floor<br>Judge: Honorable Nathanael Cousins<br><br>DATE ACTION FILED: Nov. 28, 2016 |

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

III. ARGUMENT ..... 3

A. The Proposed Class Meets the Requirements of Rule 23(a) ..... 3

1. The Class Representatives' Claims Are Typical ..... 3

a. Uncommon Defenses Do Not Defeat Typicality ..... 3

b. Releases by Other Class Members Do Not Render the Class Representatives' Claims Atypical ..... 6

c. Forum Selection Clauses of the Direct Purchasers Do Not Render Plaintiffs' Claims Atypical ..... 7

d. There Are No Unique Defenses to the Named Plaintiffs' Claims ..... 9

2. Plaintiffs are Adequate Representatives of the Proposed Class ..... 10

3. Class Counsel Are Adequate ..... 11

B. Certification Under Rule 23(b)(1)(B) is Appropriate ..... 11

IV. CONCLUSION ..... 12

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190 (S.D.N.Y. 1985) .....9

*Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 777775 (N.D. Cal. Feb. 29, 2016) .....5

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .....9

*Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015) .....5, 7

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488 (N.D. Cal. 2010) .....4, 6

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) .....5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718 (N.D. Cal. June 20, 2013) .....3

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 WL 1048046 (N.D. Cal. Mar. 11, 2016) .....7

*Des Roches v. Calif. Physicians' Serv.*, 2017 WL 2591874 (N.D. Cal. June 15, 2017) .....4, 5

*In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240 (N.D. Cal. 2013) .....9

*Dickinson v. Burnham*, 197 F.2d 973 (CA2) .....8

*Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 1703375 (N.D. Cal. Apr. 19, 2013) .....7

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .....4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .....5, 10

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .....6, 9

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

*In re K–Dur Antitrust Litig.*,
2008 WL 2699390 (D.N.J. Apr. 14, 2008)....................4

*In re Live Concert Antitrust Litig.*,
247 F.R.D. 98 (C.D. Cal. 2007)....................4, 6

*Loritz v. Exide Tech., Inc.*,
2015 WL 6790247 (C.D. Cal. July 21, 2015)....................9

*Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
134 S. Ct. 568 (2013)....................7

*McKinnon v. Dollar Thrifty Automotive Grp., Inc.*,
2015 WL 4537957 (N.D. Cal. July 27, 2015)....................3

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
246 F.R.D. 293 (D.D.C. 2007)....................6

*Miletak v. Allstate Ins. Co.*,
2010 WL 809579 (N.D. Cal. Mar. 5, 2010)....................10

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig*.,
311 F.R.D. 532 (N.D. Cal. 2015)....................10

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016)....................5, 6

*In re Online DVD-Rental Antitrust Litig*.,
779 F.3d 934 (9th Cir. 2015)....................10

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)....................7, 11

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)....................7

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010)....................4

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007)....................4, 6

*Stott v. Capital Fin. Servs., Inc.*,
277 F.R.D. 316 (N.D. Tex. 2011)....................7

*In re THQ, Inc. Sec. Litig.*,
2002 WL 1832145 (C.D. Cal. 2002)....................9

*Wagner v. Prof'l Engineers In Calif. Gov't*,
2002 WL 398818 (E.D. Cal. Feb. 22, 2002)....................4

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..........5

*Walter v. Hughes Commc'ns, Inc.*, 2011 WL 2650711 (N.D. Cal. Jul. 6, 2011) ..........5

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848 (E.D. Pa. May 2, 2008)..........5, 6

*Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685 (M.D. Ala. 2006) ..........7

*Winkler v. DTE, Inc.*, 205 F.R.D. 235 (D. Ariz. 2001)..........4, 6

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ..........11

**STATES CASES**

*Prata v. Super. Ct.*, 91 Cal. App. 4th 1128 (2001) ..........8

**STATE STATUTES**

California Business and Professions Code §17203 ..........8

Cal. Corp. Code §25500 ..........9

**FEDERAL RULES**

Fed. Rule Civ. P. 23.......... *passim*

**STATE STATUTES**

Newberg on Class Actions §3:45 (5th ed.) ..........5

Newberg on Class Actions §3:75 (5th ed.) ..........10

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

**STATEMENT OF POSITION**

1. Plaintiffs agree to limit the putative Rule 23(b)(3) class definition to exclude direct purchasers of Theranos, Inc. ("Theranos" or "Company") securities;

2. Plaintiffs also agree that the mandatory limited fund Rule 23(b)(1)(B) class – or an injunction class under Rule 23(b)(2) – should be limited to exclude those direct purchasers who accepted a settlement ("Tender Offer"); and

3. Plaintiffs dispute Defendants' argument that Plaintiffs cannot satisfy the prerequisites of Rule 23(a) for a mandatory class certification pursuant to Rule 23(b)(1)(B).

## I. INTRODUCTION

Plaintiffs do not oppose Defendants' motion to limit the definition of a Rule 23(b)(3) putative class to exclude those who invested directly in Theranos securities. With all but two exceptions, those investors have accepted the Tender Offer that involves no depletion of Theranos assets.

Plaintiffs, however, do oppose limiting the definition of a class under Rule 23(b)(1) or Rule 23(b)(2) as Defendants are requesting. There are direct investors who did not accept the Tender Offer and who threaten to obtain preferential settlements that deplete the limited fund that should equitably satisfy the claims of all members of a certified class. Because Plaintiffs have the incentive to prove the fraud and preserve the limited remaining funds for the benefit of all investors, they can adequately represent such a class. Additionally, any issues with respect to releases or choice of forum clauses are viewed through the lens of predominance or superiority, and in any case, the few direct investors who have not permanently released their claims have their own counsel and can represent themselves concerning any defenses unique to them.

## II. STATEMENT OF FACTS

On May 24, 2017, Defendants proposed filing an early motion to strike class claims. Defendants suggested that this motion would be dispositive and narrow the remainder of the litigation. Instead, they filed the narrow Motion to Limit the Putative Class Definition [Dkt. No. 102] (the "Motion"), through which they seek to exclude only direct purchasers of Theranos securities from the class definition. The Motion does not address the class of indirect purchasers.

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

Prior to Defendants filing the Motion on June 30, 2017, Plaintiffs issued several subpoenas to direct purchasers to obtain information concerning both direct and indirect purchasers. The direct purchasers, however, have for the most part objected to those subpoenas, and since Defendants do not attack the class of indirect purchasers, or contest numerosity, Plaintiffs have held enforcement of those subpoenas in abeyance.

On June 22, 2017, Plaintiffs conducted a 30(b)(6) deposition during which Theranos identified direct and indirect purchasers [REDACTED]. Based on information obtained through that deposition and through discovery, Plaintiffs moved the Court to provisionally certify a mandatory class ("Proposed Class") under Rule 23(b)(1)(B) excluding all of the direct purchasers who released claims under the Tender Offer:

> All investors who purchased a direct or indirect interest in Theranos securities, with claims based on Defendants' common representations or omissions relating to its purported proprietary finger-stick technology for running a broad array of blood tests. Included in the Class are the Partner Plaintiffs and their investors and Walgreens. Excluded from the Class are any direct investors who have released claims against Defendants pursuant to the Tender Offer.[1]

Alternatively, Plaintiffs moved for a mandatory class of indirect purchasers:

> All persons or entities who purchased an indirect interest in Theranos securities, with claims based on Defendants' common representations or omissions relating to Theranos' Board of Directors and/or its technology for testing blood using just a few drops of finger-drawn blood.[2]

Plaintiffs, therefore, do not seek certification under Rule 23(b)(3) of a class including direct purchasers of Theranos securities. Nor do they seek to include in the mandatory classes those direct purchasers who accepted the Tender Offer. Rather, the Proposed Class includes only those direct purchasers who are making investment-related claims against the same diminishing assets and based on the same common course of conduct by Defendants.

---

[1] *See* Plaintiffs' Notice of Motion and Motion for Injunctive Relief and to Provisionally Certify a Mandatory Limited Fund Class [Dkt. No. 109-3] ("Motion for Mandatory Class") at 1. Unless otherwise noted, this response utilizes all defined terms from Plaintiffs' Motion for Mandatory Class.

[2] *Id.*

* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED *

## III. ARGUMENT

### A. The Proposed Class Meets the Requirements of Rule 23(a)

Of the four requirements of Rule 23(a), Defendants contest only Plaintiffs' ability to show typicality and adequacy as to direct purchasers. As this Court has stated, this case involves a common contention that Defendants misleadingly represented that Theranos had "developed proprietary technology that would allow commercial pharmacies to run a multitude of highly accurate blood tests from a few drops of a patient's blood." *See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [Dkt. No. 63] ("Order") at 1.[3] And, as shown in Plaintiffs' Motion for Mandatory Class, all investors—including Partners, Walgreens, [REDACTED], and Murdoch (the "Direct Purchasers")—suffered from Defendants' misrepresentations.[4]

#### 1. The Class Representatives' Claims Are Typical

Defendants cannot credibly argue that Plaintiffs' claims are not typical. At best, Defendants can assert that class members' claims are based on the same lie seen in different places. But, because the lie is the same and all class members' claims arise from a common wrong, the little differences in circumstances do not negate typicality.[5]

##### a. Uncommon Defenses Do Not Defeat Typicality

Defendants chiefly claim that uncommon defenses that apply to direct investors – namely the signing of certain releases of claims, or forum selections clauses – render Plaintiffs' claims atypical. Notably, because Plaintiffs no longer seek to represent the direct investors who released claims under

---

[3] Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

[4] Motion for Mandatory Class at 6-7.

[5] Defendants' reliance on *McKinnon v. Dollar Thrifty Automotive Grp., Inc.*, No. CV 12-cv-04457-SC, 2015 WL 4537957, at *5 (N.D. Cal. Jul. 27, 2015), is misplaced. In *McKinnon*, the Court denied a class that "encompasse[d] three different products; transactions that have no connection to California or Oklahoma; and purchasers who benefited from their purchase, were provided with adequate disclosures, were never exposed to any of the alleged deceptive practices, and/or received refunds." On the other hand, the Court acknowledged that "[d]ifferences as to the various products purchased . . . do not negate a finding of typicality, provided the cause of action arises from a common wrong." *Id.* (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2013 WL 5429718, at *10 (N.D. Cal. Jun. 20, 2013)).

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

the Tender Offer, and accepted no payment, Defendants' argument relates only to the four Direct Purchasers. And that argument misses the mark.

In *Barnes*, the Court (Judge Patel) held that "defenses that may bar recovery for some members of the putative class, but that are not applicable to the class representative do not render a class representative atypical under Rule 23."[6] This is so because Rule 23(a)(3) is primarily concerned with ensuring that there is no "danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to [him]."[7]

Under this precedent, therefore, it is irrelevant if the Direct Purchasers face unique defenses. The inquiry is whether Plaintiffs Robert Colman ("Colman") or Hilary Taubman-Dye ("Taubman-Dye") might face unique defenses that do not apply to other class members (*e.g.*, the Direct Purchasers) and that, consequently, may "threaten to become the focus of the litigation."[8] The inquiry is *not* whether other class members might face additional defenses, and there is no evidence that either Colman or Taubman-Dye will be preoccupied with defenses that apply only to them and not to any other class members.

Additionally, Defendants' arguments ignore that typicality requires only common claims *or* defenses – not both. *See* Fed. R. Civ. P. 23(a)(3). Ultimately, "[t]ypicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability."[9] Furthermore, "[t]his requirement is 'permissive and

---

[6] *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010) (citing *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 117 (C.D. Cal. 2007) (holding that unique defenses against some class members do not make a class representative atypical)), *modified by*, 273 F.R.D. 562 (N.D. Cal. 2011); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 241-42 (D. Ariz. 2001) (holding that typicality requirement met where defendant argued "it ha[d] valid defenses and counterclaims it may assert against some class members but not the named representatives"); *see also In re K–Dur Antitrust Litig.*, 01-1652 (JAG), 2008 WL 2699390, at *6 (D.N.J. Apr. 14, 2008); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007).

[7] *Barnes*, 270 F.R.D. at 494.

[8] *See Wagner v. Prof'l Engineers In Calif. Gov't*, No. CIV.2-00-1692 GEB DA, 2002 WL 398818, at *2 (E.D. Cal. Feb. 22, 2002) (holding that an arbitration-based defense that applied to class representatives but not all class members did not "threaten[] to become the focus of the litigation").

[9] *Des Roches v. Calif. Physicians' Serv.*, No. 16-CV-02848-LHK, 2017 WL 2591874, at *13 (N.D. Cal. June 15, 2017); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("The test of typicality is whether other

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical.'"[10] Plaintiffs have exceeded this permissive standard.

Defendants' sole citation that an uncommon defense defeats typicality is *Avilez*.[11] However, as pointed out by Judge Seeborg in rejecting application of *Avilez*, "It is worth noting *Avilez* is an unpublished memorandum disposition, and is neither precedential nor binding. *See* 9th Cir. R. 36-3."[12] Judge Koh, moreover, recently rejected a similar argument that uncommon defenses defeat typicality.[13]

In reality, Defendants' argument is an attack on predominance or superiority, as is required under Rule 23(b)(3) but not under 23(b)(1) or (2).[14] Even if predominance and superiority were at issue, the uncommon defenses asserted by Defendants do not defeat class certification.

In sum, the question for the Court is whether any defense faced by the class representatives would be a "major focus" of the litigation.[15] There are no such defenses. And, in any case, the defenses that may apply to the Direct Purchasers – even if somehow applicable to the typicality analysis – "present[] a question of law that can readily be resolved by the Court without skewing the

---

members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

[10] *Des Roches*, 2017 WL 2591874, at *13 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *Walter v. Hughes Commc'ns, Inc.*, No. 09-2136 SC, 2011 WL 2650711, at *8 (N.D. Cal. July 6, 2011) ("It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.").

[11] *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015).

[12] *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-cv-02182-RS, 2016 WL 777775, at *4 n.6 (N.D. Cal. Feb. 29, 2016).

[13] *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016).

[14] *Compare Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 375 (2011), *Justice Ginsburg concurring in part and dissenting in part*, joined by Justice Breyer, Justice Sotomayor, and Justice Kagan ("The Court blends Rule 23(a)(2)'s threshold criterion with the more demanding criteria of Rule 23(b)(3), and thereby elevates the (a)(2) inquiry so that it is no longer easily satisfied.").

[15] William Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Actions §3:45 (5th ed.) ("A unique defense will render the proposed class representative's claims atypical only if it is likely to be a 'major focus' of the litigation and not if it is insignificant or improbable.").

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

focus of the litigation."[16] Indeed, typicality has been found even where indirect purchasers and direct purchasers within a class faced unique defenses, as those defenses were addressable without skewing the litigation.[17]

**b. Releases by Other Class Members Do Not Render the Class Representatives' Claims Atypical**

Despite the above law, Defendants argue that releases by some class members render the class representatives' claims atypical. Judge Koh rejected such an argument in *Nitsch*[18] where some class members had arbitration or release agreements with some defendants and the named plaintiffs were not parties to the same agreements. Judge Koh held that "defenses that may bar recovery for some members of the putative class, but that are not applicable to the class representative do not render a class representative atypical under Rule 23."[19] In contrast, "affirmative defenses" may pose a bar to typicality "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." [20] In such a case, "class certification should not be granted if there is a danger that absent class members will suffer if *their representative* is preoccupied with defenses

---

[16] *Id.* (citing *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 305 (E.D. Mich. 2001) (finding typicality in a suit alleging price-fixing by drug manufacturers even though proposed class representative was subject to the unique defense that it was an indirect purchaser of the drug whose claims had been illegitimately assigned); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848 (E.D. Pa. May 2, 2008) (finding typicality in a suit alleging that SmithKline Beecham had prosecuted sham patent suits in order to extend its monopoly over the drug Wellbutrin despite the existence of the unique defense that the claims of direct wholesale purchasers of Wellbutrin had been assigned illegitimately to plaintiff SAJ)).

[17] *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 300, (D.D.C. 2007) (finding typicality because the unique defenses of the named plaintiffs, indirect purchasers, and smaller wholesalers representing a class including direct purchasers and larger wholesalers could be addressed without skewing the litigation).

[18] 315 F.R.D. at 284.

[19] *Id.* (citing *Barnes*, 270 F.R.D. at 494; *see also Live Concert*, 247 F.R.D. at 117 (holding that the fact that "some potential class members are unlikely to recover because of a unique defense" is "not relevant to typicality"); *Scientific-Atlanta*, 571 F. Supp. 2d at 1327 (holding that typicality was satisfied even though "certain class members may be subject to unique reliance-based defenses separate and apart from those of the class representatives"); *Winkler*, 205 F.R.D. at 241-42 (holding that typicality was satisfied despite the defendant's argument that "it has valid defenses and counterclaims it may assert against some class members but not the named representatives").

[20] *Nitsch*, 315 F.R.D. at 284 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

unique to it."[21] (emphasis added). That concern is absent where, as Defendants argue here, there may be defenses unique to some class members *other than the class representatives*. Notably, Defendants do not contend that typicality is defeated here based on any unique defenses faced by the named Plaintiffs that "threaten to become the focus of the litigation." *Id.*; Defendants' Opposition to Plaintiffs' Motion for Mandatory Class [Dkt. No. 117] ("Defs' Opp.") at 11. Thus, the fact that Defendants may have affirmative defenses against some absent class members does not affect the Court's typicality analysis.

**c. Forum Selection Clauses of the Direct Purchasers Do Not Render Plaintiffs' Claims Atypical**

First, as noted above, Defendants' reliance on *Avilez* is misplaced. Not only is it unpublished and not precedential, but it has been rejected in this District, as discussed above, and it only dealt with class action waivers, not forum selection clauses.[22]

Second, forum selection clauses are not immutable. A district court may consider arguments about public interest factors.[23] Public interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."[24]

Moreover, *Avilez* and Defendants' other cases do not deal with the 23(b)(1)(B) limited fund context, where the purpose is to preserve the fund and assure fair distribution to those with common claims on a fund, such as here where a limited fund of fraudulently obtained investments must be

[21] *Id.*

[22] Similarly, *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-cv-04000-EMC, 2016 WL 1048046, at *9 (N.D. Cal. Mar. 11, 2016), was not a limited fund case and involved a subclass of those who signed class action waivers, not forum selection clauses. The rationale in *Regus* was that the class representatives who did not sign the waivers could not prosecute the invalidity of those waivers. Representatives were needed for that subclass. *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02549 WHA, 2013 WL 1703375, at *5 (N.D. Cal. Apr. 19, 2013), faced the same problem, as there was no one to represent a class of those who signed forum selection clauses. More importantly, the import of the laws of those many jurisdictions – the U.K., Malaysia, and Singapore – was too unwieldy, which is a (b)(3) consideration. *Id.*

[23] *Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013).

[24] *Id.* at 581 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)).

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

distributed to the remaining investors with claims.[25] As stated in *Ortiz*: "The concept driving this type of suit was insufficiency, which alone justified the limit on an early feast to avoid a later famine."[26] A prime example of a proper limited fund, as discussed in *Ortiz,* is just this sort of investor action, where different investors were defrauded by the same defendants:

> The Advisory Committee cited *Dickinson v. Burnham,* 197 F.2d 973 (CA2), cert. denied, 344 U.S. 875, 97 L. Ed. 678, 73 S. Ct. 169, (1952), as illustrative of this tradition. ***In Dickinson, investors hoping to save a failing company had contributed some $600,000, which had been misused until nothing was left but a pool of secret profits on a fraction of the original investment. In a class action, the District Court took charge of this fund, subjecting it to a constructive trust for division among subscribers who demonstrated their claims, in amounts proportional to each class member's percentage of all substantiated claims***. 197 F.2d, at 978. The Second Circuit approved the class action and the distribution of the entire pool to claimants, noting that "although none of the contributors has been paid in full, no one . . . now asserts or suggests that they should have full recovery . . . as on an ordinary tort liability for conspiracy and defrauding. The court's power of disposition over the fund was therefore absolute and final." *Id.* at 980. As the Advisory Committee recognized in describing *Dickinson,* equity required absent parties to be represented, joinder being impractical, where individual claims to be satisfied from the one asset would, as a practical matter, prejudice the rights of absent claimants against a fund inadequate to pay them all.[27]

Enforcing a choice of forum clause and forcing claims to be tried in various fora would be against the very purpose of a Rule 23 mandatory class, as discussed above, and would also circumvent a California Business and Professions Code Section 17203 injunction and receivership. The purpose of Section 17200, *et seq*. is "to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains."[28] "The Legislature considered this purpose so important that it authorized courts to order restitution without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice."[29]

---

[25] *See, e.g.*, *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 692 (M.D. Ala. 2006) (recognizing appropriate use of class actions under Rule 23(b)(1)(B) for cases "involving a limited fund, in which numerous individual claims against an insufficient fond would impair the ability of all members of the class to protect their interests"); *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 326 (N.D. Tex. 2011) (recognizing that the concept of a "limited fund" settlement long predates Rule 23).

[26] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-39 (1999).

[27] *Id.* at 834-36.

[28] *See Prata v. Super. Ct.*, 91 Cal. App. 4th 1128, 1136 (2001).

[29] *See id*.

Here, the forum selection defenses apply only to four class members (the Direct Purchasers), and Defendants have already attempted settlements with each for a significant portion of their claim. This defense is simply a defense of convenience or procedure, not substance or merits. Finally, unlike *Regus*,[30] there is no dispute that the Direct Purchasers have their own representation and can adequately address these procedural defenses in the context of a mandatory class.

**d. There Are No Unique Defenses to the Named Plaintiffs' Claims**

Defendants argue that unique defenses apply to Colman and Taubman-Dye because it was unreasonable for them to rely upon statements made by Defendants through their own press releases, web site, and news sources. While Defendants call this a "strong defense," they provide no support for it in law or fact.[31] It is not even pled in their answer.[32] And neither privity nor reliance is an element of Cal. Corp. Code §25500.[33]

Moreover, Defendants' reliance on *Hanon*[34] is inapposite. In *Hanon*, the named plaintiff's reliance would have been "subject to serious dispute as a result of his extensive experience in prior securities litigation, his relationship with his lawyers, his practice of buying a minimal number shares of stock in various companies, and his uneconomical purchase of only ten shares of stock in Dataproducts."[35] In other words, the plaintiff appeared to be a professional plaintiff who bought shares just to sue. None of these circumstances applies to Colman or Taubman-Dye.

---

[30] 2016 WL 1048046.

[31] Motion at 20.

[32] Answer to Class Action Complaint [Dkt. No. 67].

[33] Order at 4.

[34] 976 F.2d at 508.

[35] *Id.*; *compare Loritz v. Exide Tech., Inc.*, No. 2:13-cv-02607-SVW-E, 2015 WL 6790247, at *6 (C.D. Cal. July 21, 2015) (rejecting non-reliance as a defense to class certification); *see In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252-53 (N.D. Cal. 2013) (finding plaintiff typical where plaintiff relied on its investment advisor, which relied on its own "research and review of publicly available information"); *see also In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145, at *4 (C.D. Cal. 2002) ("The fact that a purchaser . . . considered a number of other factors in making his decision to purchase does not render him subject to a unique defense, so long as he substantially or significantly relied upon either the challenged statements or the integrity of the market.") (quoting *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 195 (S.D.N.Y. 1985)).

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

**2. Plaintiffs are Adequate Representatives of the Proposed Class**

Under Rule 23(a)(4),"[r]epresentatives must be part of the class and possess the same interest and suffer the same injury as the class members."[36] No conflict exists between the named Plaintiffs or the Direct Purchasers. They were all fraudulently induced into investing in Theranos by Theranos's lies and omissions. As this Court stated in its Order, "[t]he purpose of Section 25400(d) is prevent the manipulation of the market by fraud, and it focuses on the actions of the seller of the securities, not the relationship between seller and buyer."[37]

Colman and Taubman-Dye were allegedly injured in the same manner and seek the same relief as that sought by the class – namely, the return of all or part of their investments in Theranos.[38] These facts do not create any conflicts.[39] Moreover, each has confirmed that they will vigorously prosecute this action on behalf of the class, and each has thus far actively overseen and participated in the litigation.[40]

Defendants still try to concoct irrelevant distinctions. Their claim that the Investor Rights Agreement creates an insurmountable conflict that prevents Plaintiffs from being adequate representatives of the Proposed Class is not even raised in their answer. Defendants cite no authority for this claim. Only conflicts that are "fundamental to the suit and that go to the heart of the litigation

[36] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95, 627 (1997) (holding that in a Rule 23(b)(3) class, the injured and exposure only classes have two distinct conflicting interests – one wants immediate payment, the other wants an inflation adjusted fund for future payments. The court also criticized the fact that the parties had not constructed a "structural assurance of fair and adequate representation for the diverse groups and individuals affected.").

[37] Order at 5.

[38] *See* Plaintiffs' Motion for Mandatory Class; Declaration of Hilary Taubman-Dye [Dkt 109-14] ("Taubman-Dye Dec.") at ¶¶4-10; Declaration of Robert Colman [Dkt 109-13] ("Colman Dec.") at ¶¶4-10.

[39] *See, e.g.*, *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2010 WL 809579, at *12 (N.D. Cal. Mar. 5, 2010) ("In this case, Plaintiff's interests coincide with the interests of other members of the proposed class because they were allegedly injured in the same manner and seek the same relief. Thus, Plaintiff does not have any apparent conflict of interest with the proposed class.").

[40] Each Plaintiff is also prepared to testify at deposition, attend and testify at Court hearings, and participate in settlement negotiations, as necessitated by the litigation. *See* Taubman-Dye Dec at ¶¶4-8; Colman Dec. at ¶¶4-8.

prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement."[41] And these defenses, at best, appear to be created out of whole cloth.

### 3. Class Counsel Are Adequate

In "general, class counsel may represent multiple sets of litigants – whether in the same action or in a related proceeding – so long as the litigants' interests are not inherently opposed."[42] Here, the litigants' interests in the fund are not aligned. To the extent the Direct Purchasers want to argue preferential treatment, each has its own counsel and can continue to represent any individual preference claims in the context of the limited fund. The Court's oversight and allocation of those funds assure adequate representation.[43]

## B. Certification Under Rule 23(b)(1)(B) is Appropriate

For the reasons stated above, Defendants' claim that Plaintiffs cannot meet Rule 23(a)'s threshold requirements is incorrect. Defendants cite *Ortiz*, 527 U.S. 815, and *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), to support the proposition that no limited fund exists. However, the court in *Ortiz* acknowledged

[41] *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 540 (N.D. Cal. 2015) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015)).

[42] Newberg on Class Actions §3:75 (5th ed.)

[43] In addition, *see Hanlon*, 150 F.3d at 1021 ("[a]lthough there are no fixed standards by which vigor can be assayed, considerations include competency of counsel"); *see also* Ex. H (Firm Resume for Hagens Berman Sobol Shapiro LLP); Ex. I (Firm Resume for Robbins Geller Rudman & Dowd LLP) [Dkt. No. 109].

[44] 

1 █████████████████████████████████████████████████████████

2 █████████████████████████████████████████████████.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court: (a) grant without prejudice Defendants' Motion to limit the putative 23(b)(3) class definition to exclude *direct* purchasers of Theranos securities; (b) partially grant Defendants' Motion to limit the mandatory limited fund 23(b)(1)(B) class without prejudice – or an injunction class under Rule 23(b)(2) – to exclude those direct purchasers who signed releases in the Tender Offer; and (c) deny Defendants' Motion as to all other investors.

DATED: July 27, 2017                HAGENS BERMAN SOBOL SHAPIRO LLP

By _____*/s/ Reed R. Kathrein*_____
Reed R. Kathrein (139304)
Peter E. Borkon (212596)
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Ave., Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead*
*Counsel for the Class*

Paul J. Geller (admitted *Pro Hac Vice*)
ROBBINS GELLER RUDMAN
   & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364
pgeller@rdrdlaw.com

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

Dennis J. Herman
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 228-4545
Facsimile: (415) 288-4534
dennish@rgrdlaw.com

Jason A. Forge
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
jforge@rgrdlaw.com

*Additional Counsel for Plaintiffs*

*** REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED ***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed and served via the Court's ECF filing system on all attorneys of record on this 27th day of July, 2017.

*/s/ Reed R. Kathrein*
Reed R. Kathrein