**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

Reed R. Kathrein (139304)
Peter E. Borkon (212596)
Danielle Charles (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com
daniellec@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead
Counsel for the Class*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THERANOS, INC., et al., <br><br> Defendants. | No. 5:16-cv-06822-NC <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERTIFY A MANDATORY LIMITED FUND CLASS** <br><br> Date:          July 31, 2017 <br> Time:          1:00 p.m. <br> Courtroom:   7, 4th Floor <br> Judge:         Honorable Nathanael Cousins <br><br> DATE ACTION FILED: Nov. 28, 2016 |

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. DEFENDANTS HAVE FAILED TO SUBMIT COMPETENT EVIDENCE NEGATING THE OVERWHELMING EVIDENCE OF THEIR FRAUD AND THERANOS'S INSOLVENCY ......................................................................................................... 1

    A. Theranos's (New) Technology is Not Close to Launch ................................. 2

    B. Theranos's Own Numbers Prove Its Insolvency ........................................ 2

    C. Defendants' Use of Theranos New Powerless Board Confirms the Deceptiveness of Their Touting of Its Prior Powerless Board ................................................. 3

    D. Plaintiffs' Unrebutted Evidence of Theranos's Failed Technology ............................ 4

    E. Defendants Mischaracterize the Court's Order ........................................... 6

    F. The White Decl. is Incompetent ............................................................ 7

III. PLAINTIFFS HAVE SATISFIED ALL ELEMENTS FOR TEMPORARY INJUNCTIVE RELIEF ..................................................................................................... 7

    A. Defendants' Attempt to Invalidate Plaintiffs' Equitable UCL Claim Contradicts the Court's Earlier Ruling and Violates the Law of the Case Doctrine ......................... 8

    B. Plaintiffs Have Demonstrated a Likelihood of Success on the Merits Regarding All Claims ..................................................................................... 10

    C. Plaintiffs Have Established the Remaining Elements for Injunctive Relief ................ 11

IV. THE COURT SHOULD CERTIFY A MANDATORY CLASS ........................................... 13

    A. Theranos Cash and Assets Are a Limited Fund ........................................ 13

    B. Plaintiffs Have Proven Commonality, Typicality and Adequacy ........................... 14

V. CONCLUSION ................................................................................................. 15

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- i -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

## <u>TABLE OF AUTHORITIES</u>

Page(s)

FEDERAL CASES

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.),*
    770 F.2d 328 (2d Cir. 1985) .................................................................................8

*Barroca v. Santa Rita Jail,*
    2006 WL 571355 (N.D. Cal. Mar. 3, 2006) ...........................................................7

*Best Deals on TV, Inc. v. Naveed,*
    2007 WL 902564 (N.D. Cal. Mar. 22, 2007) .......................................................12

*Betz v. Trainer Wortham & Co.,*
    829 F. Supp. 2d 860 (N.D. Cal. 2011).................................................................9

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
    321 F.3d 878 (9th Cir. 2003) ................................................................................13

*Deckert v. Indep. Shares Corp.,*
    311 U.S. 282 (1940)........................................................................................8, 12

*Dickinson v. Burnham,*
    197 F.2d 973 (2d Cir. 1952) .................................................................................13

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.,*
    2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .....................................................9

*Fed. Ins. Co. v. Caldera Med. Inc.,*
    2016 WL 5922313 (C.D. Cal. Jul. 25, 2016) ......................................................14

*In re Focus Media Inc.,*
    387 F.3d 1077 (9th Cir. 2004) ...............................................................................9

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999)..........................................................................................8, 9

*Hannan v. Tulving Co.,*
    2014 WL 12567163 (N.D.Cal. Mar. 10, 2014) ...................................................13

*Horton v. California Credit Corp. Ret. Plan,*
    835 F. Supp. 2d 879 (S.D. Cal. 2011) .................................................................10

*Huynh v. Harasz,*
    2016 WL 2757219 (N.D. Cal. May 12, 2016)........................................................8

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC
- ii -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ...................................................................9

*Leitner v. Sadhana Temple of New York, Inc.*,
    2014 WL 12588645 (C.D. Cal. Jun. 10, 2014) .........................................10

*Moltan Co. v. Eagle-Picher Indus.*,
    55 F.3d 1171 (6th Cir. 1995) ....................................................................13

*Mont. Silversmiths, Inc. v. Taylor Brands, LLC*,
    850 F.Supp.2d 1172 (D.Mont. 2012) ........................................................12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ...........................................................................13, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) ..............................................8

*In re The Reserve Fund Securities and Derivative Litig.*,
    673 F. Supp. 2d 182 (S.D.N.Y. 2009) .....................................................12

*Robles v. Homeq Servicing, Inc.*,
    2009 WL 2046128 (C.D. Cal. Jul. 9, 2009) .............................................10

*Siegal v. Gamble*,
    2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ..........................................9

*Torres v. JC Penney Corp.*,
    2013 WL 1915681 (N.D. Cal. May 8, 2013) ............................................11

*Vasic v. PatentHealth, L.L.C.*,
    171 F. Supp. 3d 1034 (S.D. Cal. 2016) ...................................................10

*Zapata Fonseca v. Goya Foods Inc.*,
    2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ............................................9

**STATES CASES**

*Bowen v. Ziasun Techs., Inc.*,
    11 Cal. Rptr. 3d 522 (Ct. App. 2004) .........................................................9

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700, 113 Cal. Rptr. 2d 399 (2001) ...............................10

**FEDERAL STATUTES**

11 U.S.C. § 547 .................................................................................................14

28 U.S.C. §1746 ...........................................................................................1, 7

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC     - iii -

\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \*

STATE STATUTES

Cal. Bus. & Prof. Code §17203 ..........................................................................................10

Cal. Corp. Code §§ 25400(d) ............................................................................................10

FEDERAL RULES

Fed. R. Civ. P. 23 ................................................................................................................8

Fed. R. Civ. P. 56(e) ...........................................................................................................1

Fed. R. Civ. P. 65 ................................................................................................................8

Fed. R. Evid. 602 .............................................................................................................1, 7

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1  |  **I.      INTRODUCTION**

2  |     Defendants' Opposition to Plaintiffs' Motion for Injunctive Relief and to Provisionally

3  |  Certify a Mandatory Limited Fund Class (the "Opposition") [Dkt. No. 117] is based on

4  |  incompetent evidence[1] that cannot rebut the sworn testimony and documents comprising the

5  |  overwhelming evidence Plaintiffs have submitted. An entire Class of investors face a total loss,

6  |  while others are set to receive preferential payments from Theranos's limited funds.  Accordingly,

7  |  Plaintiffs respectfully request that the Court: (1) grant an injunction freezing the use of Theranos's

8  |  assets to settle investors' fraud claims, including staying the effect of any settlements with Partners,

9  |  Murdoch, Walgreens and ███████ to the extent those settlements involve Theranos's

10 |  assets other than equity; (2) and provisionally certify a mandatory limited fund class including

11 |  Partners, Murdoch, Walgreens and █████ (the "Direct Purchasers") pending their

12 |  ability to be heard, if they so desire.  Alternatively, Plaintiffs seek a mandatory class of just the

13 |  indirect investors.

14 |  **II.     DEFENDANTS HAVE FAILED TO SUBMIT COMPETENT EVIDENCE**
15 |     **NEGATING THE OVERWHELMING EVIDENCE OF THEIR FRAUD AND**
   **THERANOS'S INSOLVENCY**

16 |     Defendants  repeatedly resort to the same tactics that cost Theranos direct and indirect

17 |  investors hundreds of millions of dollars and have driven it to the brink of bankruptcy: (a) boasting

18 |  about a (new) revolutionary technology that is not remotely close to launch; (b) proclaiming that it

19 |  "expects its cash position to improve," ████████████████

20 |  █████████[2]; (c) touting the credentials of (another) seemingly powerless board of

21 |

---

22 |    [1]Defendants fail to submit any declarations from any officer or director, either individual
23 |  defendant or any of 73 scientists and engineers whom Theranos employs.  Rather, Defendants
submitted a facially deficient declaration from in-house lawyer, Alexander White (the "White
24 |  Decl.").  **The White Decl. is neither sworn nor signed under penalty of perjury** (*see* 28 U.S.C.
§1746) and is not based on personal knowledge (*see* Fed. R. Evid. 602). The Court should strike or
25 |  disregard this facially inadequate declaration and reject the Opposition that offers no other support.
*See* L.R. 7-5(b) ("An affidavit or declarations may contain only facts, must conform as much as
26 |  possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument.
Any statement made upon information or belief must specify the basis therefor.  An affidavit or
27 |  declaration not in compliance with this rule may be stricken in whole or in part.").

  [2]██████████████████████
28 |  ████████████████████.

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC        - 1 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1   directors; (d) attacking whistleblowers for having worked for Theranos "right of college," when

2   Theranos's sole decision maker, Elizabeth Holmes, never even graduated from college; and (d)

3   misrepresenting this Court's prior findings.

4   **A.      Theranos's (New) Technology is Not Close to Launch**

5          Defendants champions yet another technology without a single piece of evidence that it exists

6   or works.  Just three months after ████████████████████████████████████████,

7   Theranos proclaims that ████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ██████████████"[3]  This proclamation is the functional equivalent of a loan-seeking Powerball

10  player proclaiming to a bank that he is "currently preparing to seek to become a millionaire."

11  Remarkably, Theranos's hollow proclamation is even less reliable than the Powerball player's because

12  Theranos omits that faulty testing protocols forced the Company to withdraw an EUA application for

13  its Zika blood test.  And Defendants offer no evidence whatsoever of having corrected those

14  protocols.[4]

15         Moreover, since Theranos's last application for FDA authorization for its Zika blood tests

16  failed miserably, the HHS has sanctioned and banned Theranos from operating a clinical lab, and

17  Theranos has replaced its entire outside board of directors.  Under these circumstances, Defendants'

18  assertion that ████████████████████████████████████████ is absolutely

19  meaningless, and, more to the point, absolutely worthless.

20  **B.      Theranos's Own Numbers Prove Its Insolvency**

21         Defendants proclaim that ████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████

25

26         [3] Opp. [Dkt. No. 116] at 4.

27         [4] *See, e.g.,* Exhibit EE to the Declaration of Reed R. Kathrein in Further Support of Plaintiffs'
    Motion for Injunctive Relief and to Provisionally Certify a Mandatory Limited Fund Class ("Suppl.
28  Kathrein Decl.").

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1

2

3

4

5      Theranos tries to hide this reality behind an unsubstantiated midnight-hour unsworn hearsay

6 assertion that

7      Opp. at 5. Theranos's support for this assertion is inadequate: an in-house lawyer's

8 declaration stating that

9

10

11      White Decl. ¶19. Again, it is meaningless to say the value of something ***could be as high as***

12 ***$X*** because the corollary is that the value ***could be as low as $0***. Yet, Defendants misrepresent even

13 the make-believe world of White's wholly deficient declaration:

14

15

16      There is no excuse for this subterfuge, but Defendants' resort to

17 such tactics speaks to parties with no choice but to fabricate evidence of solvency.

18 **C.**    **Defendants' Use of Theranos New Powerless Board Confirms the Deceptiveness of Their Touting of Its Prior Powerless Board**

19

20      Defendants concede that the illustrious board of directors that they relentlessly marketed, and

that Holmes has admitted was critical to its success, had no power whatsoever. Opp. at 23-24.

21 Defendants offer no rebuttal whatsoever to one of its former board member's sworn testimony that,

22 "We never took any votes at Theranos. It was pointless. Elizabeth was going to decide whatever she

23 decided." Opp. at 20. Remarkably, by touting a reconstituted board of similarly well-credentialed

24 members, Defendants try to lend credence to Theranos's (new) new technology. Yet, not one of these

25 board members submitted a declaration attesting to the reliability or existence of this technology or

26 indicating that the new well-credentialed board has any more power than the old well-credentialed

27 board. Nor did any of the new board members submit any declarations attesting to the reliability of

28

010650-
11 974933 V1     PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC     - 3 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1   Theranos's (new) new technology.  Defendants' opposition confirms their use of Potemkin boards to

2   create a false façade of a commercially ready revolutionary technology.  After all, with such brilliant

3   minds at their disposal, why else would Defendants actively **withhold** from them the tools to test

4   Theranos's technology?  "[A]s a medical board, the assumption is that you have reviewed scientific

5   data that you are counseling, advising on scientific data.  And we had not done that, hadn't been

6   provided the tools to do that."  Frist at 75:19-23.

7          Hence, it is unrebutted that Defendants' illustrious board was nothing more than a Potemkin

8   board.  Without any citation, Theranos's only response to this reality is its unsupported assertion that

9   "[t]hat is an accepted and nuanced distinction in governance; it is not 'Potemkin' governance."  (Opp.

10   at 24 (citing nothing)).

11          Defendants' unsubstantiated denial that they deceived Theranos's prior board also fails.  They

12   offer no rebuttal to Admiral Roughead's testimony that Theranos led him to believe it used its own

13   proprietary devices to accurately run 2,000 different blood tests from fingertip draws, which was false.

14   Mtn. at 20.  Defendants likewise concede Secretary Shultz's testimony that Defendants gave him the

15   impression that Theranos ran all of its blood tests on its own proprietary devices, which it did not.  *Id.*

16   Defendants' own Opposition acknowledges that Senator Frist believed that Theranos's "fingerstick

17   testing was a 'huge comparative advantage'" (Opp. 24), yet they concede, by not disputing,

18   Theranos's former lab director's testimony that, as of December 2013, 90% of Theranos's blood tests

19   were venous draws, not fingerstick draws.  Mtn. at 19.

20   **D.     Plaintiffs' Unrebutted Evidence of Theranos's Failed Technology**

21          Using, *inter alia*, governmental findings, Theranos's own admissions, and the sworn testimony

22   of four former employees, Plaintiffs' Motion demonstrates that Defendants misrepresented what was a

23   failed technology.  Mot. at 17-23.  Defendants fail to rebut any of this evidence.  They claim that

24   Theranos employs "73 full-time scientists and engineers engaged in research and development efforts"

25   (Opp. at 2), yet not one submitted a declaration supporting Defendants' class-period (false)

26   representations about having a commercially ready proprietary technology for reliably running a full

27   panel of blood tests on just a few drops of finger-drawn samples.  Instead, Defendants criticize two

28

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 4 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1  former employees for having gone to work for Theranos "right out of college" (Opp. at 24), yet

2  Defendants ignore that Holmes, who made all the decisions at Theranos, did not even graduate from

3  college.  Defendants falsely assert that one of these whistleblowers, T. Shultz, "had no background in

4  statistics" (Opp. at 24), when he merely testified that his *degree* was not in biostatistics.  T. Shultz at

5  342:10-12.  Applying Defendants' leap of logic, Holmes has "no background" in anything because she

6  does not have a degree in anything.  Likewise, T. Shultz may not know how many blood tests

7  Theranos "developed," but he knew how many it had *validated*: seven.  Mot. at 7.

8        Moreover, Defendants do not question, let alone rebut, the testimony of Theranos's own

9  former Laboratory Director or its own former scientist – both of whom provided sworn testimony that

10  directly contradicted Defendants' class-period misrepresentations about having a commercially ready

11  proprietary technology for reliably running a full panel of blood tests on just a few drops of finger-

12  drawn samples.  Mot. at 23.  Nor do Defendants contest the fact that the actual coefficients of variation

13  for Theranos's tests were far greater than what Defendants had represented publicly.  Mot. at 22-23.

14        Unable to muster any actual evidence, Defendants resort to incredible speculation, they do not

15  even attempt to support.  In response to Theranos voiding hundreds of thousands of blood tests,

16  Defendants offer the following whopper: "Indeed, the fact that a test was voided or corrected does not

17  even mean that the result was wrong—voiding or correction *means only that the test result is not*

18  *reliable*, typically because of imperfect quality ('QC') protocols."  Opp. at 23.  What a relief for the

19  hundreds of thousands of people who paid for these possibly correct, probably incorrect, definitely

20  unreliable blood tests.

21        Defendants do not dispute, yet fail to acknowledge, that Theranos paid Partners ███████

22  ███████████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████

24  ███████████████  [5]  These undisputed facts comprise the only reasonable inference as to why

25  Partners cancelled the remaining depositions in its case against Theranos.  Yet, Defendants try to

───────────────────

27  [5] ████████████████████████████████████████████  *See* Ex. GG at pg. 19-20, Suppl.

28  ████████████████████████████████  Kathrein Decl. (Transcript of Proceeding 4/11/17).

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                              - 5 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1  convince the Court to accept their incredible speculation that "PFM canceled the depositions of all

2  Theranos's senior scientists, presumably because they understood that more experienced laboratory

3  scientists would undermine Shultz and Cheung." Opp. at 25. Though Defendants offer a plainly

4  unreasonable inference, it is entirely reasonable to infer that Defendants fail to submit a single

5  declaration from a single "senior scientist" because no honest scientist is willing to sacrifice his or her

6  reputation by embracing Defendants' false representation about Theranos's commercially ready

7  revolutionary technology for reliably running a full panel of blood tests on fingerstick samples.

8       Similarly, the sworn testimony of Secretary (and former director) Shultz clearly establishes that

9  Holmes orchestrated a stunning ambush of his whistleblowing grandson at Shultz's house. Mot. at 21.

10  In response, again without any citation whatsoever, Defendants aver that "the notion that Holmes

11  personally orchestrated an ambush at a director's home is ludicrous." Opp. at 24. Where is the

12  declaration from Holmes refuting Secretary Shultz's sworn testimony? Defendants' failure to provide

13  any competing evidence confirms the accuracy of Secretary Shultz's testimony.

14       Likewise, Defendants' entire argument that they did not deceive Walgreens comprises two

15  paragraphs without a single citation (Opp. at 25.) and are contradicted by the Delaware Federal

16  Court's denial of their motion to dismiss today.[6] These paragraphs offer unsubstantiated, implausible

17  theories for the collapse of the Walgreens relationship, yet somehow justifying a settlement with

18  Walgreens                 The paragraphs, do not acknowledge the hundreds of

19  thousands of Wellness Center blood tests that Theranos had to void or the fact that Theranos had to

20  close its clinical lab – neither of which would have happened if Theranos's technology had been

21  represented.

22       The ugliness of the foregoing facts does not undermine their accuracy. Plaintiffs are not

23  "mudslinging." Fraud schemes are dirty. People who expose them are not.

24  **E.  Defendants Mischaracterize the Court's Order**

25       Defendants' deceptiveness extends to mischaracterizing, by misquoting, this Court's Order on

26  Defendants' Motion to Dismiss. Defendants attempt to cast the Court as having been duped into

27

28       [6] Ex. FF to Suppl. Kathrein Decl. (Report and Recommendation filed July 27, 2017.)

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC        - 6 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1    believing Plaintiffs were direct purchasers of Theranos securities: "In deciding Defendants' Motion to

2    Dismiss, the Court appeared to accept Plaintiffs' allegation as true, *see* ECF No. 63 at 2 ('Plaintiffs . . .

3    purchased Theranos securities.) . . . ."  Opp. at 13 n.9.  In truth, the sentence from the Court's Order

4    that Defendants purport to quote in this parenthetical reads, "Plaintiffs Robert Colman and Hilary

5    Taubman-Dye purchased Theranos securities *through third-party investment funds*."  Dkt. 63 at 2

6    (emphasis added).  Defendants intentionally excised the highlighted language by ending the quote with

7    a period rather than ellipses.  Defendants do this to fuel a false narrative that Plaintiffs had tricked the

8    Court into believing that they were direct purchasers.

9    **F.    The White Decl. is Incompetent**

10         The White Decl. confirms its inadequacy and incompetence: "I . . . have personal knowledge of

11   and/*or* have confirmed *or otherwise investigated* and am competent to testify about the factual matters

12   asserted herein.  White Decl. ¶1 (emphasis added).  White's *disjunctive* list means that his "testimony"

13   may be based on nothing more than "otherwise investigated" the "factual matters asserted herein" says

14   nothing about the accuracy and does *not* establish White's competence to testify about them.  *See* Fed

15   R. Evid. 602.  White does not even express his *belief* in the accuracy of his declaration, and his own

16   uncertainty is epitomized by his refusal to submit either a sworn affidavit or a declaration signed under

17   penalty of perjury.  *See, e.g.,* 28 U.S.C. § 1746.  Accordingly, the Court should disregard the White

18   Decl. and reject as unsubstantiated all of Defendants' arguments based on that incompetent

19   declaration.[7]

20   **III.    PLAINTIFFS HAVE SATISFIED ALL ELEMENTS FOR TEMPORARY
           INJUNCTIVE RELIEF**

21

22        Defendants raise three overarching arguments against a preliminary injunction.  First,

23   Defendants repeat their rejected contest of a viable equitable claim and, consequently, that the

24   Court lacks the power to issue an injunction.  Second, Defendants contend that Plaintiffs have not

25   presented evidence establishing a likelihood of success on the merits of the UCL claim.  Third,

26        [7] A declaration is not admissible as evidence if not verified as true and correct and signed under
27   penalty of perjury. *Barroca v. Santa Rita Jail*, C04-0482 VRW (PR), 2006 WL 571355, at *4
     (N.D. Cal. Mar. 3, 2006) (citing *Adickes v S. H. Kress & Co.*, 398 U.S. 144 n.17 (1970)).
28   Moreover conclusions or arguments such as claims of irreparable damage in White Decl. ¶¶37-39
     or unsupported valuations (¶19) should be stricken. *See* L.R. 7-5(b).

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                    - 7 -

* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED *

1

Defendants contend that Plaintiffs have not established the remaining elements for an injunction.[8]

2

As explained below, each argument is inapposite.

3

**A.    Defendants' Attempt to Invalidate Plaintiffs' Equitable UCL Claim Contradicts the Court's Earlier Ruling and Violates the Law of the Case Doctrine**

4

5

Relying on *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc*., 527 U.S. 308

(1999), Defendants contend that the Complaint does not seek equitable relief and, therefore, that

6

the Court lacks the power to issue injunctive relief.[9]  Defendants aver that Plaintiffs' equitable

7

claim under the UCL is invalid because that statute does not apply to conduct involving securities

8

transactions or to cases where monetary damages might be available.  Defendants are wrong. [10]

9

"Under the law of the case doctrine, 'a court is generally precluded from reconsidering an

10

issue that has already been decided by the same court.'"[11]  Moreover, "the law of the case

11

addresses legal issues decided by a court.  If no factual issues have changed between the initial

12

decision and the instant motion, 'the law of the case is still applicable.'"[12]

13

14

15

16

---

[8] Rule 65 does not circumscribes the Court's authority under the All Writs Act to issue an injunction protecting the interests of a certified Class.  *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985) ("While the issuance of the injunction here did not comply with the requirements that Fed.R.Civ.P. 65 prescribes for the issuance of preliminary injunctions, this is not a fatal defect. . . .  We do not believe that Rule 65 was intended to impose such a limit on the court's authority provided by the All-Writs Act to protect its ability to render a binding judgment."); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., No. 05-MD-1720 JG, 2014 WL 4966072, at *32 (E.D.N.Y. Oct. 3, 2014) ("Injunctions issued under the All Writs Act stem from very different concerns than those motivating . . . injunctions governed by Fed. R. Civ. P. 65, and accordingly a court's authority to issue an injunction under the Act is not limited by Rule 65.").

17

18

19

20

[9] *Grupo* does not apply to the Courts powers under Rule 23 as those are equitable in derivation (See Notes of Advisory Committee on Rules-1937) nor the All Writs Act in aid of the court's jurisdiction.

21

22

[10] The equitable powers under the UCL—which fill a gap in state law regarding equitable relief—are no different than the equitable powers of federal courts in securities cases to issue injunctions where a plaintiff proves "that [the defendant company] is insolvent, that its business is practically halted, that it is threatened with many lawsuits, that its assets are endangered, and that preferences to creditors are probable." *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 288 (1940) (cited with approval in *Grupo Mexicano*, 527 U.S. at 324).

23

24

25

26

[11] *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2016 WL 2757219, at *20 (N.D. Cal. May 12, 2016) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

27

[12] *Id.* (quoting *Bollinger v. Oregon*, 172 Fed.Appx. 770, 771 (9th Cir. 2006)).

28

010650-11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                                - 8 -

* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, the Court previously rejected the exact *legal* arguments that Defendants seek to rehash.  In their Motion to Dismiss, Defendants argued that "the UCL does not apply to securities transactions" and that "the UCL's equitable relief is available only where alternate legal claims cannot remedy Plaintiffs' loss."[13]  In support, Defendants cited the same cases cited in the Opposition.[14]  In response, Plaintiffs noted that California courts are split on the breadth of the UCL vis-à-vis securities transactions, and Plaintiffs explained why their concurrent legal claims did not require dismissal of a valid claim under the UCL.[15]  After reviewing the parties' briefing and holding oral argument, the Court did not find that any of Defendants' arguments or authority required dismissal of Plaintiffs' claim for equitable relief under the UCL.  Consequently, the Court has ruled, and Defendants cannot relitigate the same arguments.[16]

Because Plaintiffs' equitable UCL claim stands, and Defendants incorrectly in assert that *Grupo Mexicano*, 527 U.S. 308, eradicates the Court's power to issue a preliminary injunction.  Indeed, the Ninth Circuit has explicitly acknowledged that "*Grupo Mexicano* . . . exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought."[17]  And the UCL specifically

---

[13] *See* [Dkt. No. 29 at 15-16].

[14] *Compare* [Dkt. No. 29 at 15-16] *with* [Dkt. No. 117 at 17-18] (both relying on *Bowen v. Ziasun Techs., Inc*., 11 Cal. Rptr. 3d 522, 533 (Ct. App. 2004); *Siegal v. Gamble*, No.13-CV-03570-RS, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016); *Betz v. Trainer Wortham & Co*., 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011); *Zapata Fonseca v. Goya Foods Inc*., No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016); *Duttweiler v. Triumph Motorcycles (Am.) Ltd*., No. 14-CV-04809-HSG, 2015 WL 4941780, at *8-9 (N.D. Cal. Aug. 19, 2015).

[15] *See* [Dkt. No. 31 at 20-24].

[16] Even if the Court did consider Defendants' renewed legal arguments [*See* [Dkt. No. 29 at 15-16]], those arguments fail for the same reasons Plaintiffs identified in their Opposition to the Motion to Dismiss.  *See* [Dkt. No. 31 at 20-24].  Moreover, the injunctive relief here is only tangentially related to securities, as it seeks to prevent the unfair preferential dissipation of assets, not to obtain the award of damages.  *Compare id.* at 21 n.81.

[17] *In re Focus Media Inc*., 387 F.3d 1077, 1085 (9th Cir. 2004); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083–84 (9th Cir. 2009) ("[T]holding of *Grupo Mexicano* is limited to cases in which only monetary damages are sought.  The Supreme Court expressly stated that a preliminary injunction barring asset transfer is available where the suit seeks equitable relief.").

010650-11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- 9 -

provides for injunctive relief absent a money judgment.[18]  In sum, Plaintiffs seek equitable relief, and the Court has the power to issue the requested injunction.[19]

**B.     Plaintiffs Have Demonstrated a Likelihood of Success on the Merits Regarding All Claims**

Defendants contend that Plaintiffs have not demonstrated the likelihood of success on the merits of the UCL claim and, therefore, cannot obtain a preliminary injunction.  More specifically, Defendants take issue with the Motion's references to the elements of §§25400 and 25500 when describing the overwhelming evidence of Defendants' fraud.  This argument is baseless.

It is axiomatic that a UCL violation can be predicated on the violation of another law.[20] Courts, therefore, commonly sustain UCL claims where the defendants have violated other laws.[21]

Accordingly, Defendants' violations under §§25400 and 25500—as well as their other claims—necessarily establish liability under the UCL.  Indeed, the Court previously refused to dismiss Plaintiffs' UCL claim, which is based in part on the allegation that "Defendants engaged in unlawful business practices in violation of the Unfair Competition Law by violating the Corporate Securities Law of 1968, Cal. Corp. Code §§ 25400(d) . . . 25500[.]"[22]  Thus, as demonstrated by

---

[18] Cal. Bus. & Prof. Code §17203 provides: "Any person who . . . has engaged . . . in unfair competition **may be enjoined in any court of competent jurisdiction**.  The court may make such orders or judgments, **including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition** . . . or as may be necessary to restore to any person in interest any money . . . which may have been acquired by means of such unfair competition."

[19] Additionally, Defendants ignore that Plaintiffs have sought equitable remedies, such as restitution and rescission, for the fraud and negligence-based claims (*e.g.*, Counts IV, V, VI, VII). *See* Complaint at 53; *Robles v. Homeq Servicing, Inc.*, No. CV 09-3622 CAS MANX, 2009 WL 2046128, at *1 (C.D. Cal. Jul. 9, 2009) ("Under California law, rescission is available as a remedy for fraud."); *Leitner v. Sadhana Temple of New York, Inc.*, No. CV 13-07902 MMM (EX), 2014 WL 12588645, at *12 (C.D. Cal. Jun. 10, 2014) ("[A] plaintiff can recover restitution as a remedy for a defendant's fraud.").  The Court, moreover, has sustained those fraud-based causes of action. *See* [Dkt. No. 63 at 8].

[20] *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717–18, 113 Cal. Rptr. 2d 399, 414 (2001), as modified (Nov. 20, 2001) ("An 'unlawful' business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law.").

[21] *See, e.g., Horton v. California Credit Corp. Ret. Plan,* 835 F. Supp. 2d 879, 893–94 (S.D. Cal. 2011) ("An act is 'unlawful' under § 17200 if it violates an underlying state or federal statute or common law..."); *Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034, 1042 (S.D. Cal. 2016).

[22] *See* Complaint ¶ 98.

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

the abundant evidence submitted in support of the Motion—and described above—Defendants

perpetrated a fraud that gives rise to liability under §§25400 and 25500 **and** under the UCL.[23]

Additionally, the overwhelming evidence establishes that Defendants are liable under the

fraud and negligent-based causes of action, which also provide for equitable remedies[24] and which

the Court previously acknowledged have elements incorporated in the §§ 25400/25500 claim.[25]

Defendants cannot legitimately dispute the evidence that Plaintiffs relied on Defendants'

misrepresentations and omissions.[26]

Thus, Defendants' arguments fail.[27]  Because Plaintiffs have established a likelihood of

success on the merits as to all claims—including claims for which equitable relief is available—the

Court should issue the requested injunction.

**C.    Plaintiffs Have Established the Remaining Elements for Injunctive Relief**

First, Defendants aver that it is "speculation" that Theranos has limited funds or that

Plaintiffs will suffer irreparable harm absent injunctive relief preventing litigation settlements that

further deplete those limited funds.  However, the record evidence establishes that ████████████

████████████████████████████████.

---

[23] The evidence submitted by Plaintiffs establishes that Defendants violated the fraudulent and unfair prongs of the UCL as well.  *See, e.g., Torres v. JC Penney Corp.,* No. 12-CV-01105-JST, 2013 WL 1915681, at \*6 (N.D. Cal. May 8, 2013) ("The UCL prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.  An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent.").  Defendants' conduct in misrepresenting fundamental aspects of Theranos's business was likely to deceive and unfair.  Defendants' misrepresentation and omissions had no benefit to consumers, investors; left investors without any means of obtaining complete and accurate information about Theranos; and caused substantial harm to Plaintiffs and the Class.  *See id.* at \*8 ("An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided.").

[24] *See* note 19, *supra.*

[25] *See* Order on Motion to Dismiss [Dkt. No. 63 at 7] ("The core of Plaintiffs' pleadings is an allegation of fraud, the elements of which are incorporated in the code sections discussed above and in the common law causes of action. In the interest of efficiency, the Court will only analyze the elements of fraud, as these apply to most of the substantive claims in the case.").

[26] *See, e.g.*, Colman Decl. [Dkt. No. 109-13] ¶2; Taubman-Dye Decl. [Dkt. No. 109-14] ¶2.

[27] Defendants' suggestion that Plaintiffs have somehow waived relief arising from the UCL— or any other claims—is specious.  *See* [Dkt. No. 117 at 16-17]. Plaintiffs explicitly described that they are seeking equitable relief.  *See* [Dkt. No. 109 at 15-16].

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                                     - 11 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1    Furthermore, ██████████████████████████████████████

2    ██████  As demonstrated by the Partners settlement—████████████████

3    ██████████████████████████████████████████████████

4    ██████████████████████████████████████████████████

5    ████████████████[28]  Absent injunctive relief, therefore, Theranos will make additional

6    preferential settlement payments that dissipate the limited fund (███████████████████

7    ████████████ , leaving Plaintiffs without any recourse. [29]

8        Second, Defendants aver that the balance of equities tips in their favor because the

9    injunction will put the company out of business.  However, as the Supreme Court found in similar

10   circumstances in *Deckert*,[30] a temporary injunction can be narrowly tailored to maintain the status

11   quo,  allowing legitimate business operations and payment of legal fees while restricting any

12   payments to settle competing litigation by Class Members.

13       Finally, Defendants' argument that the requested injunction would require a "massive

14   bond"[31] is a legally and factually incorrect attempt to dissuade the Court from providing justified

15   equitable relief.  The Court has wide discretion in setting the amount of a bond, and that amount

16   may be zero if there is no evidence that Defendants will suffer damages from the injunction.[32]

17   Here, Defendants effectively concede that narrowly-tailored injunctive relief restricting settlement

18   payments will not prevent Theranos from conducting operations.[33]

19

20

21   ────────────────

22       [28] *See* Partner Litigation Settlement Agreement (Exhibit D to Kathrein Decl.) [Dkt. No. 109-6].

         [29] *See In re The Reserve Fund Securities and Derivative Litig.*, 673 F. Supp. 2d 182, 195
23   (S.D.N.Y. 2009) (enjoining bankruptcy plan that "would ensure that the remaining assets are
     allocated among investors arbitrarily" and instead setting up a *pro rata* distribution).

24       [30] *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940).

25       [31] *See* Defendants' Opposition To Plaintiffs' Motion For Injunctive Relief And To
     Provisionally Certify A Mandatory Limited Fund Class [Dkt. 117] at 22:7.

26   [32] *Deckert* at 290; *Best Deals on TV, Inc. v. Naveed*, No. C 07-1610 SBA, 2007 WL 902564, at \*2
27   (N.D. Cal. Mar. 22, 2007); *See also Mont. Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F.Supp.2d
     1172, 1189 (D.Mont. 2012).

28   [33] White Decl. ¶¶37-39.

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC                              - 12 -

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1    Moreover, Defendants have an obligation of presenting evidence that a bond is needed.[34]

2    The White Declaration—which is unsworn, violative of the Local Rules, and inadmissible—

3    provides no evidentiary basis for a finding that the injunction ███████████████████

4    ████████████████████████████████████████████████████████████

5    ██████████████████████████████   In addition, an injunction restricting settlement

6    payments would not force Theranos to "petition the Court to authorize payments".[35]

7    Thus, given the danger of dissipation or concealment of assets by Defendants,[36] the strong

8    likelihood of Plaintiffs' success on the merits, and the strong public interest involved,[37] Plaintiffs

9    request that no bond be required.

10   **IV.     THE COURT SHOULD CERTIFY A MANDATORY CLASS**

11   "*For what we have here is property held in constructive trust by reason of fraud*

12   *perpetrated upon those who made the original contributions.*"  *Dickinson v. Burnham*, 197 F.2d

13   973, 980 (2d Cir. 1952) case cited in *Ortiz* from the Advisory Committee Comments as illustrative

14   of the proper use of Rule 23(b)(1)(B).[38]

15   **A.     Theranos Cash and Assets Are a Limited Fund**

16   Indisputably, Theranos's cash came from the investors: Plaintiffs, and the Direct Purchasers

17   (defined above) and the entire putative class.  They have all alleged the same lies, and they all seek

18   the same recovery: a return of their fraudulently obtained investments.  Accordingly, Plaintiffs

19   effectively seeks a constructive trust imposed on those limited assets (or such assets which are

20   being dissipated in settlement) such that Defendants do not preferentially and inequitably remit

21

22   [34] *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)

23   [35] July 24, 2017 Decl. of Alexander White ("White Decl.") at ¶ 39(c).

24   [36] *See Hannan v. Tulving Co*., No. 14-cv-01054-EJD, 2014 WL 12567163 at \*2 (N.D.Cal. Mar. 10, 2014) (*citing Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003)) (requiring no bond given "the nature and magnitude of the harms already suffered by Plaintiff and other members of the proposed Classes" and the temporary nature of the freeze and the threat of dissipation if order delayed.).

25

26

27   [37] *Moltan Co. v. Eagle-Picher Indus., 55 F.3d 1171, 1176 (6th Cir. 1995) (finding no bond required where plaintiff had a strong likelihood of success and the strong public interest involved).*

28   [38] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-39 (1999).

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

1    those limited funds to a select few defrauded investors who pose the most immediate litigation

2    threat.

3    ███████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████

5    ████ ██████████████████████████████████████████████████

6    ████████████████████████████  ⁰ An "upper limit" is established.[41]  The investor

7    claims of Plaintiffs and the Direct Purchasers far exceed this upper limit.[42]

8            *Caldera*[43] is of no help to Defendants.  As in *Ortiz*, *Caldera* was an agreed estimated

9    settlement fund, and "without evidence regarding Caldera's potential liquidated value, the Court

10   could not determine whether the settlement sum included the maximum amount of funds possible."

11   Here, it is a reality, not an estimate, that ████████████████████████

12   **B.      Plaintiffs Have Proven Commonality, Typicality and Adequacy**

13           Plaintiffs have responded to Defendants' commonality, typicality and adequacy arguments

14   in Plaintiffs' Response and Partial Opposition to Defendants Motion to Limit the Class Definition

15   ("Pltf. Resp. Class Def.") filed simultaneously and which Plaintiffs incorporate by reference and do

16   not repeat herein.  In short, the claims are all based on the same fraud, and can be productively

17   litigated by common proof that Defendant misrepresented and omitted material information in

18   order to induce the Class to invest in Theranos. As to adequacy, the named Plaintiffs have no

19

20           [39] *See* Ex. H to White Decl.; *See also Ortiz* at 853.  ("[I]f Fibreboard's own assets would not
21   have been enough to pay the insurance shortfall plus any claims in excess of policy limits, **the
     projected insolvency of the insurers and Fibreboard would have indicated a truly limited
     fund**.").

22           [40] Defendants "asset valuation" for its patent portfolio deserves not credibility as stated above.

23           [41] ███████████████████████████████████████████████████████
24   ███████████████████████████████████████████████████████
     ███████████████████████████████████

25           [42] Although Defendants feign ignorance, Plaintiffs' $100 million damages estimate for indirect
26   purchasers is a generously discounted estimate taken from information provided by Mr. White.
     Plaintiffs will bring to the hearing a copy of those calculations, and supporting exhibits form as the
27   White Deposition.
             [43] *Fed. Ins. Co. v. Caldera Med. Inc.*, 15-cv-00393-SVW-PJW, 2016 WL 5922313, at \*3 (C.D.
28   Cal. Jul. 25, 2016).

1   conflicts that would prevent them from proving Defendants' common misrepresentations and

2   omissions.

3          Finally, Defendants concede that the mandatory class should include the other Direct

4   Purchasers with claims, as that would lessen the harm to Theranos.[44]  For the same reason it would

5   mitigate the irreparable harm to Plaintiffs.

6   **V.     CONCLUSION**

7          Plaintiffs respectfully request that the Court: (1) grant an injunction freezing the use of

8   Theranos's assets to settle investors' fraud claims, including staying the effect of any settlements with

9   Partners, Murdoch, Walgreens and ▮▮▮▮▮▮▮▮▮ to the extent those settlements involve

10  Theranos's assets other than equity; and (2) provisionally certify a mandatory limited fund class

11  including Partners, Murdoch, Walgreens and ▮▮▮▮▮▮▮▮▮ (the "Direct Purchasers") pending

12  their ability to be heard, if they so desire.

13

14  DATED: July 27, 2017                    HAGENS BERMAN SOBOL SHAPIRO LLP

15                                          By _____/s/ Reed R. Kathrein_____
                                            Reed R. Kathrein (139304)
16                                          Peter E. Borkon (212596)
                                            Danielle Charles (291237)
17                                          715 Hearst Ave., Suite 202
                                            Berkeley, CA 94710
18                                          Telephone: (510) 725-3000
                                            Facsimile: (510) 725-3001
19                                          reed@hbsslaw.com
                                            peterb@hbsslaw.com
20                                          daniellec@hbsslaw.com

21                                          Steve W. Berman (admitted *Pro Hac Vice*)
22                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1918 Eighth Ave., Suite 3300
23                                          Seattle, WA 98101
                                            Telephone: (206) 623-7292
24                                          Facsimile: (206) 623-0594
                                            steve@hbsslaw.com
25

26                                          *Counsel for Plaintiffs and Proposed*
                                            *Lead Counsel for the Class*
27

        _____
28      [44] White Decl. at 38a. and 38b.

**\* REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED \***

Paul J. Geller (admitted *Pro Hac Vice*)
ROBBINS GELLER RUDMAN
   & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364
pgeller@rdrdlaw.com

Dennis J. Herman
ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 228-4545
Facsimile:  (415) 288-4534
dennish@rgrdlaw.com

Jason A. Forge
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile:  (619) 231-7423
jforge@rgrdlaw.com

*Additional Counsel for Plaintiffs*

010650-
11 974933 V1

PLTFS'REPLY BRIEF ISO MOT. FOR INJUNCTIVE RELIEF AND TO PROVISIONALLY CERT. A
MANDATORY LIMITED FUND CLASS - 5:16-cv-06822-NC

- 16 -