

510.725.3000  F 510.725.3001

Reed R. Kathrein
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 HEARST AVENUE, SUITE 202
BERKELEY, CA  94710
www.hbsslaw.com
**Direct (510) 725-3030**
reed@hbsslaw.com

November 9, 2017

<u>Via ECF</u>
Hon. Nathanael M. Cousins
United States Magistrate Judge
U.S. District Court for the Northern District of California,
San Jose Division
San Jose Courthouse, Courtroom 7 - 4th Floor
280 S. 1st Street
San Jose, CA 95113

      Re: <u>*Colman et al. v. Theranos, Inc. et al.*, Case No. 5:16-cv-06822-NC</u>
           <u>Joint Statement Regarding Discovery Dispute Between Plaintiffs and Defendant</u>
           <u>Theranos</u>

Hon. Magistrate Judge Cousins:

      Pursuant to this court's Civil Standing Order, the parties present this joint statement regarding unresolved issues concerning Plaintiffs' request that Defendant Theranos produce additional discovery from *Partner Investments et al. v Theranos et al.*, C.A. No. 2016-12816-VCL ("*Partners*").  Since July 31, 2017, pursuant to this Court's minute order on that date [Dkt. 124], the parties have met and conferred over that production but have been unable to reach any agreement. The parties' positions are set forth below.

## PLAINTIFFS' POSITION

      As set forth in prior papers, Defendants' conduct here is effectively the same as that at issue in *Partners*—to raise money from investors through falsehoods. *See, e.g.,* [Dkt. No. 87] (letter to Court describing overlapping allegations and issues between this litigation and *Partners*); [Dkt. Nos. 109-16 at 9-10, 13] (sealed motion, and declaration and exhibits in support, seeking certification of mandatory class and showing common legal and factual issues); [Dkt. No. 133] (public version of same).

      Defendants' financial situation is also precarious.  *Id* at 16-17; *see also* [Dkt. 109-7](sealed Ex. E to motion for mandatory class certification;[Dkt. 120-3 at 7-8] (sealed reply brief in support of

SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   NEW YORK   PHOENIX   SAN FRANCISCO   SAN DIEGO   WASHINGTON, D.C.

010650-11 998199 V1

motion for mandatory certification); [Dkt. No. 136] (public redacted version of same). Preserving Defendants assets, therefore, in the best interest of Plaintiffs and Defendants, and the only way to insure that Plaintiffs are not prejudiced.

Regardless, without any claim of prejudice, inefficiency or cost, Theranos insists that Plaintiffs can only propose keyword searches before they will produce any remaining documents from the *Partners* set. For two months, Plaintiffs have tried. The result consists of two proposed 50-page charts, based on the original keyword searches used in *Partners*, which cover agreement on likely 80% of the *Partners* production.[1] [See Exhibit A (Plaintiffs' final request) and Exhibit B (Defendants' reformatted response.]

Worse, despite having produced the documents in *Partners*, Defendants now insist on again incurring the time and expense to have attorneys look at each key-word identified document for an additional timely and costly "responsiveness" review, despite having been reviewed already in *Partners*.

Such a procedure unjustifiable under Rule 1 of the Federal Rules of Civil Procedure and the whole reason for using keywords. The whole point of using keywords is to avoid burdernsome and costly attorney review. *See*, *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E–Discovery,* 8 Sedona Conf. J. 189, 198-199, 203 (Fall 2007). Likewise, the reason Plaintiffs have limited the production to the already limited and defined *Partners* set, is to keep Defendants costs down, and preserve insurance coverage to the extent any is left. In other words, the justification for keyword review—to reduce cost, efficiency and management—is not valid here. In fact, using keywords will and threatens to continue to unjustifiably increase costs and reduce efficiency.

As much as they try, Defendants cannot distinguish their conduct and lies in *Partners*. Whether public or private, they are the same. *See* [Dkt. Nos. 109, 120, 133]. To the minor extent they differ, they were part of the same scheme to raise cash from investors. As part of the same course of conduct, they are also relevant to scienter, intent and credibility.

Defendants now "ha[ve] the burden of showing that discovery should not be allowed, and also ha[ve] the burden of clarifying, explaining and supporting [their] objections with competent evidence." *See Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). Theranos has not met that burden. Nor has Theranos made any claim of undue burden. To the contrary, they refuse to provide an estimate of the cost of producing the *Partners* set vs. the cost of keyword and relevance review. [See Exhibit C (09/01/2017 email chain.)].

Magistrate Judge Westmore recently held that such discovery is appropriate where two cases have "significant factual and legal overlap." *See, e.g.,* S*chneider v. Chipotle Mexican Grill, Inc.*, No. 16CV02200HSGKAW, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) (ordering clone discovery where "the instant lawsuit and [related litigation] have significant factual and legal

overlap, with both suits asserting claims under the same Florida statute based on Defendant's . . . advertising, in some instances citing the same advertisements").[2] While Judge Westmore excluded documents relating to earlier statements (though stating it was not clear there were any), the case involved false consumer advertising and did not present issues of intent, scienter, course of conduct nor issues of credibility.

Finally, Theranos now states that keyword searches, from the *Partners* list, did not work easily in *Partners* and, therefore, many were produced soley based on attorney review. Thus, admittedly here, the use of keywords from the *Partners* will not produce relevant documents. Yet Theranos will not identify what those documents are or what criteria was used. [See Exhibit C (09/01/2017 email chain.)]. Theranos also refuses to negotiate based on custodian, recipient and sender, along with all documents mentioning Defendants Holmes and Balwanti, as proposed as an alternative. [See Exhibit D (11/02/2017)]

Plaintiffs seek the *Partners* documents, rather than a completely new production, only to save time and cost, and for the sake of efficiency. But for this savings, Plaintiffs would not limit their request to *Partners*. Defendants' negotiation, on the other hand, has made clear that they would just as soon eat up the insurance policies with additional time-consuming attorney review. By insisting on keyword review only, and then a subsequent "responsiveness review" they threaten to waste the one likely remaining asset available for recovery—the insurance policies.

In sum, the only economical, and the least burdensome, production would be to order Theranos to produce, immediately, the documents they produced in *Partners*. If afterwards Plaintiffs seek more documents from Theranos, the searches can be better informed, targeted and non-duplicative, saving costs to both sides.

## DEFENDANTS' POSITION

The Court should deny Plaintiffs' motion based on the parties' June 20, 2017 agreement—accepted as a stipulation by the Court—whereby Theranos agreed to produce certain documents from its PFM Production and, in exchange, Plaintiffs *waived all rights to demand that Theranos produce the remainder of the PFM production wholesale or without review*. Agreements among parties, especially those accepted by the Court, have no meaning if one party can receive the benefit and then renege. Thus, the Court should deny this motion and award Theranos its costs incurred in responding, which costs should never have been necessary in light of the Parties' agreement.

By way of background, on May 9, 2017, Plaintiffs filed a joint discovery letter moving to compel Theranos to produce the entirety of its written and document discovery in the PFM Litigation. *See* ECF No. 75-3 at 2. On May 24, 2017, the Court heard argument regarding the

---

[2] *In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *4 (N.D. Cal. July 19, 2010) is inapposite. There the court recognized that the Ninth Circuit "'strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation.'" *Id.* at *2 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)). But in *eBay* there was "little or no overlap of issues." *Id.* at *3.

dispute, denied "Plaintiffs' request to just get all the discovery from the [PFM Litigaton]," and directed the parties to "confer together and look carefully . . . to identify the parts that are relevant and proportional to the needs of this case and to produce that information." May 24, 2017 Hr'g Tr. 30:2-31:24.  On June 14, 2017, Plaintiffs filed a second joint letter again seeking that the Court compel Theranos to produce the entirety of its PFM Production.  *See* ECF No. 87-03 at 3.  At a hearing held on June 20, 2017, the Court almost immediately sent the Parties to a conference room with the instruction to attempt to resolve their dispute by agreement.  June 20, 2017 Hr'g Tr. 7:4-7; 8:8-12.

The parties then negotiated for nearly two hours and ultimately reached agreement. The Parties returned to the Court to recite on the record their agreement in "full resolution of the pending motion."  June 20, 2017 Hr'g Tr. 9:23-24.  Pursuant to that agreement, Theranos agreed to "promptly . . . produce to the Plaintiffs the portion of the Company's PFM Production that hits on the search terms that were proposed by the Company to the Plaintiffs . . . on June the 2nd," with "no further review of any kind."  *Id.* at 9:25-10:9.  Theranos also agreed to "produce all deposition transcripts and exhibits of current and former Theranos personnel," *id.* at 11:2-4, as well as "all the exhibits from the PFM matter that are documents that were in the first instance produced by the Company," *id.* at 11:8-10.  In return, Plaintiffs agreed to "**waive all rights to demand the wholesale production** of the remainder of the Company's PFM Production," and agreed that "[a]ny additional production will be conducted ***pursuant to search terms and review criteria***."  *Id.* at 10:16-19 (emphasis added).

As Plaintiffs do not dispute, Theranos held up its end of the agreement.  Theranos promptly produced all documents from its PFM Production that hit upon the June 2, 2017 search terms (nearly 500,000 documents) without any further review, produced all deposition transcripts of Theranos personnel, produced all deposition exhibits produced in the first instance by Theranos, and, with third party consent, produced deposition exhibits produced in the first instance by those third parties.

Theranos has also made a very detailed proposal for an additional production based on search terms and review criteria.  *See* Ex. B.  That proposal evaluates each search term proposed by Plaintiffs, accepts those which Plaintiffs have justified as relevant and proportional to Plaintiffs' claims in this case, and agrees to review the documents that hit on those search terms to determine whether they meet responsiveness criteria.[3]

Plaintiffs, however, have simply continued their pursuit of the entire PFM Production. Notwithstanding the Parties' agreement, Plaintiffs immediately reverted to arguing during discovery meet and confers, and even in Court, that Theranos should produce the entire PFM Production. *See* Ex. E at 2; *see also* July 31, 2017 Hr'g Tr. 69:3-7.  And Plaintiffs now bring this motion seeking precisely the relief that they ***waived*** all rights to seek, *i.e.*, wholesale production of the PFM Production.  Thus, the Court should enforce the Parties' agreement, deny the motion, and award

---

[3] Theranos has proposed four broad categories of responsiveness criteria based on Plaintiffs' allegations in their Complaint: (1) Theranos's public statements; (2) Theranos's technology; (3) Theranos's regulatory approvals; and (4) Theranos's capital raising strategy.  *See* Ex. B at 1-25.  Theranos has also proposed responsive criteria unique to particular search terms, *see, e.g., id.* at 24, or agreed to search terms subject to agreement on responsiveness criteria, *see id.* at 31-33.

November 9, 2017
Page 5

Theranos its costs incurred in briefing a motion that never should have been brought. Any other result would punish Theranos for upholding the agreement, and reward Plaintiffs for their breach.

Further, although the Parties' agreement alone resolves this motion, Plaintiffs' various assertions in this letter are wrong:

- "Review[ing] each document for 'responsiveness'" is not "unjustifiable"; it is what Plaintiffs agreed to do. It is also the standard way parties identify documents for production. *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E–Discovery,* 8 Sedona Conf. J. 189, 209 (Fall 2007) ("[I]n many cases, both automated and manual searches will be conducted: with initial searches by automated means to cull down a large universe of material . . . , followed by a secondary manual review process").

- Plaintiffs' assertions that they have "tried" to negotiate over search terms and responsiveness criteria is disingenuous. Demanding that Theranos run all but a handful of search terms used in the PFM litigation and produce all documents that hit on those terms without further review ignores the express terms of the Parties' agreement, and ignores this Court's direction to "look carefully . . . to identify the parts [of the PFM Production] that are relevant and proportional to the needs of this case." May 24, 2017 Hr'g Tr. 30:2-31:24.

- Contrary to Plaintiffs' assertion, the allegations in this case have never been "effectively the same" as those in the PFM Litigation. Plaintiffs are not Theranos shareholders and never interacted with Theranos or its personnel. And the statements they challenge—indeed, the only statements Plaintiffs *can* challenge—are *public* statements, not the varied statements Theranos made directly to shareholders at issue in PFM. These differences are even more stark now that the Court has excluded all Theranos shareholders from this action. *See* ECF No. 143 at 2.

- Even if there were "significant factual and legal overlap," *Schneider* does not entitle Plaintiffs to "clone discovery." Judge Westmore merely granted the plaintiffs discovery in the related case that was relevant to the claims they had asserted; the plaintiffs were *not* entitled to discovery related to statements they did not challenge. *See* 2017 WL 1101799 at *4.[4]

- Assertions that a document review would financially "burden" Theranos are irrelevant. Theranos has competent in-house and outside counsel who are perfectly capable of managing Theranos's costs. And nothing in the federal rules gives one party a seat at the table to set another party's litigation budget. If Plaintiffs are genuinely concerned about Theranos's costs, they should cease their frivolous motion practice on an issue that they expressly waived.

In sum, the Court should deny Plaintiffs' motion to compel.

---

[4] *Cf. King Cty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("'Cloned discovery', requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case. . . . It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.").

|  |  |
|---|---|
|  | Sincerely, |
| HAGENS BERMAN SOBOL<br>SHAPIRO LLP | WILMER CUTLER PICKERING |
| By: */s/ Reed R.Kathrein* | By: */s/ Michael A. Mugmon* |
| Reed R. Kathrein (139304) | Michael A. Mugmon (251958) |
| Peter E. Borkon (212596) | 950 Page Mill Road |
| Danielle Charles (291237) | Palo Alto, CA 94304 |
| 715 Hearst Ave., Suite 202 | Telephone: (650) 858-6000 |
| Berkeley, CA 94710 | Facsimile:  (650) 858-6100 |
| Telephone: (510) 725-3000 | michael.mugmon@wilmerhale.com |
| Facsimile:  (510) 725-3001 |  |
| reed@hbsslaw.com | Christopher Davies (admitted *Pro Hac Vice*) |
| peterb@hbsslaw.com | WILMER CUTLER PICKERING |
| daniellec@hbsslaw.com | HALE AND DORR LLP |
|  | 1875 Pennsylvania Ave., NW |
| Steve W. Berman (admitted *Pro Hac Vice*) | Washington, DC 20006 |
| HAGENS BERMAN SOBOL<br>SHAPIRO LLP | Telephone: (202) 663-6000 |
| 1918 Eighth Ave., Suite 3300 | Facsimile:  (202) 663-6363 |
| Seattle, WA 98101 | christopher.davies@wilmerhale.com |
| Telephone: (206) 623-7292 |  |
| Facsimile:  (206) 623-0594 | Timothy Perla (admitted *Pro Hac Vice*) |
| steve@hbsslaw.com | Robert K. Smith (admitted *Pro Hac Vice*) |
|  | Megan E. Barriger (admitted *Pro Hac Vice*) |
|  | WILMER CUTLER PICKERING |
| *Counsel for Plaintiffs and Proposed Lead*<br>*Counsel for the Class* | HALE AND DORR LLP |
|  | 60 State Street |
|  | Boston, MA 02109 |
|  | Telephone: (617) 526-6000 |
|  | Facsimile:  (617) 526-5000 |
|  | timothy.perla@wilmerhale.com |
|  | robert.smith@wilmerhale.com |
|  | megan.barriger@wilmerhale.com |
|  |  |
|  | *Attorneys for Defendant Theranos, Inc.* |