*  *  * UNSEALED VERSION FILED PURSUANT TO COURT ORDER ECF NO. 213 DATED APR. 26, 2018 *  *  *

# EXHIBIT MM

*Confidential*

**AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP**

**OF**

**OPA HOLDINGS SPV, LP**

A Delaware Limited Partnership

THE PARTNERSHIP INTERESTS IN OPA HOLDINGS SPV, LP HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF EXCEPT IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS. THE PARTNERSHIP INTERESTS ARE ALSO SUBJECT TO SUBSTANTIAL RESTRICTIONS ON TRANSFER UNDER THIS AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP.

## AMENDED AND RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP

### OF

### OPA HOLDINGS SPV, LP

This **AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP** (this "***Agreement***") of OPA HOLDINGS SPV, LP (the "***Partnership***") is entered into and effective as of the 30th day of September, 2015, by and among PSP VENTURES, LLC, a Delaware limited liability company, as the general partner (the "***General Partner***"), and those persons who may become limited partners in the Partnership pursuant to the terms and conditions of this Agreement (collectively, the "***Limited Partners***"). The General Partner and the Limited Partners are hereinafter individually referred to as a "***Partner***" and collectively referred to as the "***Partners***". This Agreement amends and restates in its entirety that certain Agreement of Limited Partnership by and among the General Partner and the Limited Partners entered into as of June 1, 2015 (the "***Original Agreement***").

### BACKGROUND

The General Partner formed the Partnership by filing a Certificate of Limited Partnership with the Secretary of State of the State of Delaware on March 23, 2015 (the "***Formation Date***"), in accordance with the applicable provisions of the Delaware Revised Uniform Limited Partnership Act (the "***Act***"). The Partnership was established, principally, to acquire, hold for investment and ultimately divest shares of capital stock of Theranos, Inc. (the "***Target Company***").

The parties now desire to amend and restate the Original Agreement in its entirety and to enter into this Agreement to provide for, among other matters, the continuation of the Partnership under the Act, the management of the business of the Partnership, the allocation of profits and losses of the Partnership among the General Partner and the Limited Partners, the respective rights, obligations and interests of the parties hereto to each other and to the Partnership and certain other matters.

### AGREEMENT

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual covenants, conditions, and agreements set forth herein, the parties hereto, intending to be legally bound, agree as follows:

### ARTICLE I - THE PARTNERSHIP

Section 1.1    <u>Definitions.</u> For purposes of this Agreement, capitalized terms used herein shall have the meanings set forth in the Index of Additional Defined Terms attached hereto as <u>Schedule A</u> or as otherwise provided elsewhere in this Agreement.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Section 1.2     <u>Formation.</u> A Certificate of Limited Partnership was filed with the Secretary of State of the State of Delaware on the Formation Date, pursuant to the relevant provisions of the Act. By entering into this Agreement, each of the General Partner and the Limited Partners hereby agrees to be bound by the terms and conditions of this Agreement in their entirety. Except as otherwise provided herein, the relative rights and obligations of the General Partner and the Limited Partners shall be as provided in the Act.

Section 1.3     <u>Name and Office.</u> The name of the Partnership is "OPA HOLDINGS SPV, LP" and its business shall be conducted in such name and/or such other assumed, trade or fictitious names as the General Partner shall from time-to-time determine. The principal office and place of business of the Partnership shall be located at 1345 Avenue of the Americas, Suite 300, New York, New York 10105, or such other places as the General Partner may from time-to-time determine.

Section 1.4     <u>Purposes, Business and Objectives.</u> The purposes of the Partnership and the business to be carried on and the objectives to be attained by it are to purchase, hold for investment and ultimately divest shares of capital stock of the Target Company (collectively, "***Target Company Stock***") and to conduct such other activities as are necessary for or ancillary to such purposes and objectives. Notwithstanding the foregoing, each Limited Partner hereby acknowledges and agrees that it is investing in the Partnership and will acquire an equity interest in the Partnership, and will not, in connection with this Agreement and the Partnership's Subscription Agreement, directly own or acquire any shares of Target Company Stock, unless the Partnership subsequently makes a distribution in kind of shares of Target Company Stock to the Partners. In no event shall the Partnership invest in any entity which is registered as an "investment company" pursuant to the Investment Company Act of 1940 (the "***ICA***"). The Partnership shall be authorized to do whatever is required to carry on such business of the Partnership and attain its objectives, including, without limitation:

    (a)     to enter into and perform contracts of any kind necessary to, in connection with, or incidental to, the accomplishment of the purposes of the Partnership;

    (b)     to solicit Partners on behalf of the Partnership and otherwise seek potential investors in the Partnership;

    (c)     to negotiate for and conclude an agreement or agreements for the sale, exchange or other disposition of all or any part of the Partnership's property, including any Target Company Stock;

    (d)     to hire and compensate employees, agents, independent contractors, attorneys and accountants; and

    (e)     to carry on any other activities necessary or advisable to, in connection with, or ancillary or incidental to the foregoing.

Section 1.5     <u>Term.</u> The Partnership shall have perpetual existence unless sooner dissolved or terminated as herein provided or otherwise by law. Notwithstanding the foregoing, in the event the Target Company consummates an initial public offering of its capital stock to the general public pursuant to a registration statement filed with and declared effective by the Securities and Exchange Commission under the Securities Act of 1933, as amended (an "***IPO***"), upon the expiration of any and all applicable lockup periods and subject to any restrictions on

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     OPA00003

transfer imposed by the Target Company and/or applicable securities or other laws, the Partnership anticipates that it will either sell its shares of Target Company Stock and distribute the net proceeds therefrom or distribute shares of Target Company Stock in kind to the Partners in accordance with the terms and conditions set forth in greater detail herein. After all Target Company Stock has been sold or distributed, the Partnership shall be dissolved.

Section 1.6     Fiscal Year. The fiscal year of the Partnership shall be the calendar year.

Section 1.7     Partnership Interests. The Partnership shall have two (2) classes of Partnership Interests: "*General Partnership Interests*" and "*Limited Partnership Interests*". The Partnership may issue additional classes of General Partnership Interests or Limited Partnership Interests in accordance with Section 2.2 below.

Section 1.8     Partnership Assets.

(a)     The General Partner and the Limited Partners shall use the Partnership's credit and assets solely for the benefit of the Partnership. All real and personal property owned by the Partnership shall be owned by the Partnership as an entity. The General Partner's and each Limited Partner's interest in the Partnership shall be personal property for all purposes.

(b)     No Limited Partner shall, either directly or indirectly, take any action to require partition or appraisement of the Partnership or of any of its assets or cause the sale of any Partnership asset for other than a Partnership purpose, and notwithstanding any provision of applicable law to the contrary, each Limited Partner (and its legal representatives, successors and assigns) hereby irrevocably waives any and all right to maintain any action for partition or to compel any sale with respect to its Limited Partnership Interest or with respect to any assets of the Partnership, except as expressly provided in this Agreement.

(c)     Conflicts of Interest and Transactions with Affiliates.

(i)     The General Partner and the Limited Partners, as well as Affiliates of the General Partner and the Limited Partners, may engage in any business or profession or possess any interest in other businesses or professions of every nature and description, independently or with others, including, without limitation, investing in other private investments and securities. Neither the General Partner nor the Limited Partners shall be obligated to offer any business opportunity to the Partnership or any other Partner, and the Partnership, the General Partner and the Limited Partners shall not have any rights in such independent ventures, including, without limitation, any rights to the income or profits thereof by virtue of having become Partners in the Partnership.

(ii)     Each Limited Partner hereby acknowledges and agrees that (i) the General Partner may delegate certain of its investment management functions to another entity, which may be an Affiliate of the General Partner; (ii) certain members of the General Partner or their Affiliates may be Limited Partners in the Partnership; (iii) the General Partner will receive Carried Interest Distributions (as hereinafter defined) and the General Partner, the investment manager or an Affiliate thereof will receive the Management Fee (as hereinafter defined) for the services provided and reimbursement for costs incurred hereunder, as is described in more detail in Article IX hereof; (iv) no

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00004

unrelated third party will review or approve the amount of any fees paid to the General Partner; and (v) the General Partner holds a General Partnership Interest in the Partnership.

(d)     The Partnership may enter into any arrangement, contract, agreement or business venture that is not prohibited under the Act with the General Partner or any Limited Partner, or any of their respective Affiliates. The General Partner and each Limited Partner understands and acknowledges that the conduct of the business of the Partnership may involve business dealings with such other business ventures or undertakings of the other Partners and their Affiliates. It is expressly understood and agreed that the Partnership, at the sole discretion of the General Partner, may borrow funds from the General Partner or any Limited Partner, or from their respective Affiliates; *provided*, *however*, that any material transaction of the Partnership with any Partner or Affiliate thereof shall be on terms determined in good faith by the General Partner to be comparable to, or more favorable to the Partnership than, the terms which could be obtained from third parties.

## ARTICLE II - CAPITAL AND ADDITIONAL PARTNERSHIP INTERESTS

Section 2.1     Capital.

(a)     The capital of the Partnership shall be the aggregate amount of cash contributed by the General Partner and the Limited Partners to the Partnership. Unless otherwise agreed by the General Partner, the minimum amount of capital that any Limited Partner may contribute to the Partnership is Five Hundred Thousand Dollars ($500,000), which minimum amount may be waived by the General Partner in its sole discretion.

(b)     No Person shall be issued any Partnership Interest and admitted as a Partner of the Partnership unless (i) such purchaser pays the Capital Contribution established by the General Partner for the issuance of such Partnership Interest and (ii) such Person executes and delivers such documents and instruments, in forms satisfactory to the General Partner, as the General Partner may deem necessary, appropriate or advisable, to evidence the foregoing including a counterpart signature page to this Agreement in the form attached hereto.

Section 2.2     No Issuance of Additional Limited Partnership Interests; No Additional Capital Contributions.  Following the capitalization of the Partnership in the maximum amount of $15,050,000 and the acquisition of Target Company Stock in the maximum amount of 860,000 shares (subject to adjustment), the Partnership shall not issue any additional Limited Partnership Interests nor accept any additional Capital Contributions.

Section 2.3     Capital Accounts.

(a)     A Capital Account shall be established for the General Partner and each Limited Partner. Each such Capital Account shall be increased by: (1) the amount of cash contributed by such Partner to the Partnership; (2) the Gross Asset Value, on the date of contribution, of property (other than cash) or services contributed by such Partner to the Partnership (net of liabilities secured by such contributed property that the Partnership is considered to assume or take subject to under Code Section 752); and (3) allocations to the Partner of Profits and any other items of income and gain. Each such Capital Account shall be decreased by: (1) the amount of cash distributed to such Partner by the Partnership (except as payments of principal and interest on any loans); (2) the Gross Asset Value, as of the date of distribution, of

-4-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    OPA00005

property (other than cash) distributed to such Partner by the Partnership (net of liabilities secured by such distributed property that the Partner is considered to assume or take subject to under Code Section 752); and (3) allocations to the Partner of Losses and any other items of loss and deduction. In all events, the Capital Account of each Partner will be determined and maintained throughout the term of the Partnership in accordance with Regulations Section 1.704-1(b)(2)(iv).

(b)     The General Partner, in its sole discretion, may elect to have the Capital Accounts adjusted to reflect a revaluation of Partnership assets on the Partnership's books (the "***Revaluation Adjustment***") in accordance with Regulations Section 1.704- 1(b)(2)(iv)(f), provided such adjustment is accomplished in a manner that maintains the Capital Accounts in accordance with Regulations Section 1.704(b)(2)(iv)(f).

(c)     Upon a Transfer of any Partnership Interest in accordance with the terms of this Agreement, the transferee of such Partnership Interest shall succeed to the Capital Account of the transferor to the extent it relates to the transferred Partnership Interest.

Section 2.4     <u>Limited Withdrawal or Redemption of Limited Partnership Interest.</u>

(a)     No Limited Partner shall have the right to withdraw such Limited Partner's Capital Contributions or to demand and receive property of the Partnership or any distribution in return for such Limited Partner's Capital Contributions, except as may be specifically provided in this Agreement or required by the Act.  Notwithstanding the foregoing, a Limited Partner may, at the termination of any and all applicable lockup periods following an IPO of the Target Company, or such other time as may be permitted by the General Partner, in its sole discretion, request in writing that such Limited Partner's Limited Partnership Interest be liquidated at the Fair Market Value of such Limited Partnership Interest.

(b)     The General Partner shall have the right to offset the amount such withdrawing Limited Partner would otherwise receive by (i) the Carried Interest Distributions and/or Management Fee to be charged to such withdrawing Limited Partner as well as (ii) charges incurred by the Partnership in effecting such withdrawal, which shall include, without limitation, legal, accounting and/or administrative expenses.

(c)     The Partnership Interest of a Limited Partner who has given notice of a withdrawal from the Partnership shall continue to be subject to the same risks as other Limited Partners until the date of actual withdrawal or earlier termination of the Partnership.

(d)     The General Partner may require any Limited Partner to withdraw from the Partnership at any time for any reason or no reason.

Section 2.5     <u>Partnership Interest General Provisions.</u>

(a)     The General Partner shall have no personal liability for the repayment of the Capital Contribution of any Limited Partner.

(b)     No interest shall be paid on or with respect to a Partner's Capital Contribution or Capital Account.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00006

(c)     Any Limited Partner who acquires any Limited Partnership Interest by means of the transfer to such Limited Partner of all or any part of the Limited Partnership Interest of any other Limited Partner shall, with respect to the Partnership Interest so transferred, be deemed to be a Limited Partner of the same class as the transferor.

(d)     Routine and other expenses of making investments and operating the Partnership shall be deemed to be expenses of the Partnership, and the Partnership shall have the authority and obligation to pay for such expenses out of the working capital of the Partnership.

Section 2.6     <u>Reserve Fund.</u> The Partnership may, in the discretion of the General Partner, establish a reserve fund to provide for working capital or for any other contingencies of the Partnership.

### ARTICLE III - RIGHTS, POWERS AND DUTIES OF PARTNERS

Section 3.1     <u>Conduct of Partnership Business.</u> The General Partner shall use its reasonable efforts to carry out the purposes, business and objectives of the Partnership. Except as otherwise provided herein, all decisions with respect to the management of the Partnership's business shall be made by the General Partner, which shall have general responsibility for all aspects of the Partnership's business and operations and which hereby is designated as the "tax matters partner" of the Partnership within the meaning of Code Section 6231(a)(7).

Section 3.2     <u>Powers of the General Partner.</u> The General Partner shall have the necessary powers to carry out the purposes, business and objectives of the Partnership and, except as otherwise provided herein or by the laws of the State of Delaware, shall possess and enjoy all of the rights and powers of a partner or a partnership without limited partners. Such powers shall include, but not be limited to, the following:

(a)     to execute and deliver, on the Partnership's behalf, evidences of indebtedness and documents granting security for the payment thereof (with or without warrant of attorney to confess judgment against the Partnership upon default);

(b)     to make such arrangements with respect to bank accounts and to authorize signatures for checks, notes and other instruments of the Partnership as the General Partner shall deem appropriate;

(c)     to borrow and to raise monies and, from time-to-time, to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, bonds, debentures, and other negotiable or non-negotiable instruments or evidences of indebtedness in the name of the Partnership, and to secure the payment of any other instrument of lien, conveyance or assignment in trust upon the whole or any part of the property of the Partnership, whether at that time owned or thereafter acquired, with the provision that no creditor making a loan may have or acquire, at any time, as a result of making the loan, any direct or indirect interest in the profits, capital or property of the Partnership other than as a secured creditor;

(d)     to assign any security interest granted to the Partnership by the Limited Partners in connection with any borrowing effected by the Partnership;

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00007

(e)     to engage in all portfolio transactions involving Partnership investments as the General Partner may deem appropriate;

(f)     to acquire or invest and reinvest funds in investments or in other securities or accounts as the General Partner deems appropriate in light of the purpose of the Partnership;

(g)     to employ, on behalf of the Partnership, agents, consultants, advisers, employees, accountants, lawyers, brokers, broker-dealers, broker-distributors and clerical help, and to obtain such other assistance and services as may seem proper and to pay such remuneration as the General Partner may in its sole discretion deem appropriate, whether or not such assistance or services are rendered by an Affiliate;

(h)     to possess, transfer, mortgage, pledge or otherwise deal in, and to exercise all rights, powers, privileges, and other incidents of ownership or possession with respect to investments;

(i)     to sue, be sued, complain, defend, and compromise and settle claims in the name of, or on behalf of, the Partnership;

(j)     to have and maintain one or more offices within the State of New York or in any other state and to rent or acquire office space, engage personnel, and do such other acts and things as may be necessary or desirable in the maintenance of such office or offices;

(k)     to enter into, make and perform contracts, agreements and other undertakings to the extent necessary or desirable in the accomplishment of Partnership purposes; and

(l)     to do all other things and engage in all other transactions, including the borrowing and lending of money and other property, that the General Partner shall deem necessary or appropriate to the exercise of the foregoing powers or to carry out the purpose of the Partnership. No rule of law for construction of contracts shall limit the powers of the General Partner to the powers specifically enumerated herein.

Section 3.3     <u>Duties and Obligations of the General Partner.</u>

(a)     The General Partner shall take any and all actions which may be necessary or appropriate for the continuation of the Partnership's valid existence as a limited partnership under the laws of the State of Delaware.

(b)     The General Partner shall not permit the funds of or belonging to the Partnership to be commingled with those of any other entity. The General Partner shall require any Person acquiring Partnership Interests to, prior thereto or contemporaneously therewith, enter into and agree to be bound by this Agreement. In no event shall the General Partner allow the Partnership to admit any investor who would cause the Partnership not to be excluded from the definition of "investment company" pursuant to Section 3(c)(1) or Section 3(c)(7) of the ICA. The General Partner shall require the Partnership to comply with any applicable regulations regarding the trading of commodities.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00008

(c)      The General Partner shall prepare or cause to be prepared and shall file on or before the due date (or any extension thereof) any federal, state or local tax returns required to be filed by the Partnership. The General Partner shall cause the Partnership to pay any taxes payable by the Partnership.

(d)      The General Partner shall, from time-to-time, submit to any appropriate state securities administrator such documents, papers, information and reports as are required to be filed with or submitted to such state securities administrator.

(e)      The General Partner shall, from time-to-time, prepare and file all certificates (or amendments thereto) and other similar documents required by law to be filed and recorded for any reason, in such office or offices as are required under the laws of the State of Delaware or any other state in which the Partnership is then-qualified or doing business. The General Partner shall do any and all other acts and things (including making publications or periodic filings of this Agreement of any limited partnership certificates or amendments thereto or other similar documents) which may now or hereafter be required or deemed by the General Partner to be necessary: (i) for the perfection and continued maintenance of the Partnership as a limited partnership under the laws of the State of Delaware and each other state in which the Partnership is then-qualified or doing business; (ii) to protect the limited liability of the Limited Partners as limited partners under the laws of the State of Delaware and each other state in which the Partnership is then-qualified or doing business; (iii) to cause such certificates or other documents to reflect accurately the agreement of the Partners, the identity of the Limited Partners and the General Partner and the amounts of their respective Capital Contributions; and (iv) to permit the Partnership to own its property and lawfully transact its business.

Section 3.4      Limited Partners. Except as otherwise expressly provided herein, the Limited Partners shall not participate in the management of the Partnership, have any control over the Partnership's business or assets or have any right or authority to act for or obligate the Partnership. Each Limited Partner hereby represents and warrants that it has received, read and fully understands this Agreement, along with the Subscription Agreement and the Risk Factors Supplement included therewith in connection with its investment in the Partnership and acquisition of Limited Partnership Interests.

Section 3.5      Limitation of Liability; Indemnification.

(a)      Neither the General Partner nor any of its officers, directors, members, partners, employees, agents, representatives or Affiliates shall be personally liable for the return of any Capital Contribution made to the Partnership by a Limited Partner. The General Partner, its partners, members, employees, agents, representatives and Affiliates shall have no liability to the Partnership or to any Limited Partner for any loss, cost or expense suffered or incurred by the Partnership or its Limited Partners that arises out of or relates to any action or inaction of any of such persons if such action or omission to act was undertaken, in good faith, upon a determination that such course of conduct was in the best interests of or not opposed to the best interests of the Partnership, and such act or omission did not constitute gross negligence, willful misconduct or knowing violation of law on the part of the General Partner or any such Persons.

(b)      The General Partner, its partners, members, employees, agents, representatives and Affiliates shall be indemnified by the Partnership against any losses or threat

-8-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00009

of losses, judgments, liabilities, expenses incurred in settling any claim or threatened action or incurred in any finally adjudicated legal proceeding, including reasonable attorneys' fees and costs of removing any liens affecting property of the indemnitee, and/or amounts paid in settlement of any claims sustained by it arising from or relating to the Partnership, provided that the same were not the result of gross negligence, willful misconduct or knowing violation of law on the part of the General Partner or such Persons.

(c)       Notwithstanding the foregoing, the General Partner, its partners, members, employees, agents, representatives and Affiliates, shall not be indemnified for liabilities arising under federal and state securities laws unless (i) there has been a successful adjudication on the merits of such count involving securities law violations, (ii) such claim or claims have been dismissed with prejudice on the merits by a court of competent jurisdiction, or (iii) a court of competent jurisdiction approves a settlement of such claim or claims. The Partnership shall not incur the cost of any portion of any insurance which insures any party against any liability as to which such party is herein prohibited from being indemnified.

(d)       Indemnification shall be made solely from assets of the Partnership and no Limited Partner shall be personally liable to any indemnitee.

(e)       This Section 3.5 shall inure to the benefit of the General Partner, its officers, directors, shareholders, members, partners, employees, agents, representatives and Affiliates, and the employees, agents and representatives of the Partnership, and their respective heirs, executors, administrators, successors and assigns.

## ARTICLE IV - ALLOCATIONS AND DISTRIBUTIONS

Section 4.1       <u>Distributions of Cash Available for Distribution.</u>  Subject to Section 4.3 and except as otherwise provided in this Agreement, Cash Available for Distribution shall be distributed to the Partners, to the extent available, at such times as the General Partner may determine in its sole discretion, in accordance with the following order of priority:

(a)       First, to each Limited Partner in proportion to and to the extent of the unpaid Priority Return;

(b)       Second, to the Partners in proportion to and to the extent of their Unreturned Capital Balances;

(c)       Third, (A) Eighty Percent (80%) to the Partners, pro rata in accordance with their relative Percentage Interests, and (B) Twenty Percent (20%) to the General Partner until such time as the General Partner has received Twenty Percent (20%) of (i) in the case of the IPO of the Target Company, the difference between the price at which the Partnership will purchase Target Company Stock (the "*Original Purchase Price*") and the price per share of Target Company Stock established by the underwriters in such IPO (net of any applicable fees as determined in good faith by the General Partner), multiplied by the number of shares of Target Company Stock acquired by the Partnership; (ii) in the case of the sale of Target Company Stock prior to the IPO, the difference between the Original Purchase Price and the price per share of Target Company Stock established in such sale (net of any applicable fees as determined in good faith by the General Partner), multiplied by the number of shares of Target Company Stock acquired by the Partnership; and (iii) in the case of an acquisition of the Target Company or Target Company Stock, as the case may be,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00010

prior to the IPO, the difference between the Original Purchase Price and the price per share of Target Company Stock established in such acquisition (net of any applicable fees as determined in good faith by the General Partner), multiplied by the number of shares of Target Company Stock acquired by the Partnership; and

        (d)    Thereafter, One Hundred Percent (100%) to the Partners, pro rata in accordance with their relative Percentage Interests.

        Section 4.2   <u>Distributions Upon Liquidation</u>.  If all or substantially all of items of Partnership Property are sold in connection with a liquidation of the Partnership, or if the Partnership is otherwise dissolved pursuant to Article VI, the items of Partnership Property shall be distributed through the procedures outlined in Article VI in the following order and priority:

        (a)    first, to payment of the debts and liabilities of the Partnership (other than those to Partners) in the order of priority provided by law, provided that the Partnership shall first pay, to the extent permitted by law, liabilities with respect to which any Partner is or may be personally liable;

        (b)    second, to payment of the expenses of liquidation of the Partnership in the order of priority provided by law, provided that the Partnership shall first pay, to the extent permitted by law, liabilities or debts owed to Partners;

        (c)    third, to the setting up of such reserves as the General Partner, or other liquidator of the Partnership, may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the business of the Partnership, provided that any such reserve will be held by the Partnership for the purposes of disbursing such reserves in payment of any of the aforementioned contingencies and at the expiration of such period as the General Partner shall deem advisable (but in no case to exceed eighteen (18) months from the date of liquidation unless an extension of time is consented to by Partners holding at least a Majority-In-Interest), to distribute the balance thereafter remaining in the manner hereinafter provided; and

        (d)    the balance of the proceeds, if any, to be distributed on or before the later of (i) the end of the Allocation Year during which such liquidation occurs or (ii) ninety (90) days after the date of such liquidation, to the Partners in accordance with the order and priority set forth in Section 4.1 (the "***Final Distribution***"). Immediately prior to the Final Distribution, the Capital Account balances of the Partners shall be adjusted, taking into account all contributions, distributions, and allocable items for all periods, such that the Capital Account of each Partner prior to the Final Distribution equals (to the fullest extent possible) the distribution to be received by such Partner pursuant to the Final Distribution.

        Section 4.3   <u>Intent of Distributions.</u>  The distributions received by the General Partner pursuant to Sections 4.1(c) shall be referred to herein as the "***Carried Interest Distributions***". Notwithstanding anything to the contrary herein, the intent of Section 4.1 is to make Carried Interest Distributions to the General Partner with respect to each of the amounts to be received by each Limited Partner other than a Limited Partner who is a Related Party ("***Related Party Limited Partner***"). Accordingly, no Carried Interest Distributions will be charged to any Related Party Limited Partner, and the distributions to such Related Party Limited Partner will be calculated as

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        OPA00011

if 100% of Cash Available for Distribution were available for distribution solely to the Limited Partners.  The Carried Interest Distributions to the General Partner in such case shall be reduced accordingly.

Section 4.4    Tax Distributions.  To the extent there is any Cash Available for Distribution, the General Partner may, in its sole discretion, distribute to each Partner, with respect to such Allocation Year, such Cash Available for Distribution in an amount equal to such Partner's Presumed Tax Liability for such Allocation Year (a "**Tax Distribution**").

(a)    All amounts distributed to a Partner pursuant to this Section 4.4 shall be reduced by any distributions made pursuant to Section 4.1(d) for such Allocation Year or prior to the expiration of the ninety (90) day period following the end of such Allocation Year, provided that such amounts were not applied to such Partners Presumed Tax Liability for a prior Allocation Year.

(b)    Any amount distributed pursuant to this Section 4.4 will be deemed to be an advance distribution of amounts otherwise distributable to the Partners pursuant to Section 4.1(d) and will reduce the amounts that would subsequently otherwise be distributable to the Partners pursuant to Section 4.1(d) in the order set forth in Section 4.1.

(c)    The Partnership may distribute Tax Distributions in quarterly installments on an estimated basis prior to the end of an Allocation Year, but if the amounts distributed by the Partnership as estimated quarterly Tax Distributions exceed the greater of the total amount of distributions to which such Partner is entitled for such Allocation Year, then the Partner shall, within fifteen (15) days after the tax return for such Allocation Year is filed, return such excess to the Partnership and such excess will be treated as a distribution to such Partner pursuant to Section 4.1(d) until it is returned (or if for any reason such excess is not returned, then such excess will be set off against any future distributions to which such Partner otherwise would have been entitled).

(d)    The Partnership is authorized to withhold from payments and distributions, or with respect to allocations to the Partners, and to pay over to any federal, state and local government or any foreign government, any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law or any foreign law. All amounts so withheld pursuant shall be treated as amounts paid or distributed, as the case may be, to the Partners with respect to which such amount was withheld pursuant to this Section 4.4(d) for all purposes under this Agreement.

(e)    Upon written notice to the Partnership, a Partner may waive the right to receive all or any portion of a Tax Distribution to which it would otherwise be entitled pursuant to this Section 4.4.

Section 4.5    Profits and Losses.  After giving effect to the special allocations set forth in Sections 4.6 and 4.7 hereof, Profits and Losses for any Allocation Year shall be allocated among the Partners in a manner such that the Capital Account balance of each Partner is, as nearly as possible, equal to the excess (which may be negative) of: (i) the distributions that would be made to such Partner if the Partnership were dissolved, its affairs wound up and each of its assets sold for cash equal to its respective Gross Asset Value, all Partnership liabilities were satisfied (limited with respect to each nonrecourse liability to the Gross Asset Value of the assets securing such

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00012

liability) in accordance with their terms, and the net assets of the Partnership were distributed pursuant to Section 4.1 of this Agreement to the Partners immediately after making such allocations, minus (ii) the sum of (A) the amount (if any) that such Partner would be obligated to contribute to the capital of the Partnership, and (B) such Partner's share of Partnership Minimum Gain and Partner Nonrecourse Debt Minimum Gain, computed immediately prior to the hypothetical sale of assets described in (i) above.

Section 4.6    Special Allocations.  The following special allocations shall be made in the following order:

(a)    *Minimum Gain Chargeback*.  Notwithstanding any other provision of this Article IV, if there is a net decrease in Partnership Minimum Gain during any Allocation Year, each Partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in accordance with Regulations Section 1.704-2(f).  Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto.  The items to be so allocated shall be determined in accordance with Regulations Sections 1.704-2(f) and 1.704-2(j)(2).  This Section 4.6(a) is intended to comply with the minimum gain chargeback requirement in Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)    *Partner Minimum Gain Chargeback*.  Except as provided in Regulations Section 1.704-2(i)(4), notwithstanding any other provision of this Article IV except Section 4.6(a), if there is a net decrease in Partner Nonrecourse Debt Minimum Gain attributable to a Partner Nonrecourse Debt during any Allocation Year, each Partner who has a share of the Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(5), shall be specially allocated items of Partnership income and gain for such Allocation Year (and, if necessary, subsequent Allocation Years) in accordance with Regulations Section 1.704-2(i)(4).  Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto.  The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(i)(4).  This Section 4.6(b) is intended to comply with the minimum gain chargeback requirement in such Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)    *Qualified Income Offset*.  In the event any Partner who is not obligated (or treated as obligated) to restore a deficit balance in its Capital Account unexpectedly receives any adjustments, allocations, or distributions described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6), items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of such Partner as quickly as possible, provided that an allocation pursuant to this Section 4.6(c) shall be made if and only to the extent that such Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article IV have been tentatively made as if this Section 4.6(c) were not in the Agreement.

(d)    *Gross Income Allocation*.  In the event any Partner has a deficit Capital Account at the end of any Allocation Year that is in excess of the sum of (i) the amount such Partner is obligated to restore pursuant to any provision of this Agreement, and (ii) the amount

-12-

such Partner is deemed to be obligated to restore pursuant to Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Partner shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 4.6(d) shall be made if and only to the extent that such Partner would have a deficit Capital Account balance in excess of such sum after all other allocations provided for in this Article IV have been tentatively made as if Section 4.6(c) hereof and this Section 4.6(d) were not in the Agreement.

(e)     *Nonrecourse Deductions*.  Nonrecourse Deductions for any Allocation Year shall be allocated among the Partners in the same manner as Profits and Losses are allocated pursuant to Section 4.5.

(f)     *Partner Nonrecourse Deductions*.  Any Partner Nonrecourse Deductions for any Allocation Year shall be specially allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Regulations Section 1.704-2(i).

(g)     *Section 754 Adjustment*.  To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m)(2) or Regulations Section 1.704-1(b)(2)(iv)(m)(4), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Partners in accordance with their interests in the Partnership in the event that Regulations Section 1.704-1(b)(2)(iv)(m)(2) applies, or to the Partner to whom such distribution was made in the event that Regulations Section 1.704-1(b)(2)(iv)(m)(4) applies.

(h)     *Allocations Relating to Taxable Issuance of Partnership Interests*.  Any income, gain, loss or deduction realized as a direct or indirect result of the issuance of an interest by the Partnership to a Partner (the "***Issuance Items***") shall be allocated among the Partners so that, to the extent possible, the net amount of such Issuance Items, together with all other allocations under this Agreement to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Issuance Items had not been realized.

(i)     *Limit on Loss Allocations*.  The Losses allocated pursuant to Section 4.5 hereof shall not exceed the maximum amount of Losses that can be so allocated without causing any Partner to have an Adjusted Capital Account Deficit at the end of any Allocation Year.  In the event some but not all of the Partners would have Adjusted Capital Account Deficits as a consequence of an allocation of Losses pursuant to Section 4.5 hereof, the limitation set forth in this Section 4.6(i) shall be applied on a Partner by-Partner basis so as to allocate the maximum permissible Losses to each Partner under Regulations Section 1.704-1(b)(2)(ii)(d).

Section 4.7   Curative Allocations.  The allocations set forth in Section 4.6(a), (b), (c), (d), (e), (f), (g) and (i) hereof (the "***Regulatory Allocations***") are intended to comply with certain requirements of Regulations Section 1.704-1(b).  Notwithstanding any other provisions of this Article IV (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Profits, Losses, and items of income, gain, loss, and deduction among the Partners so that, to the extent possible, the net amount of such allocations of Profits, Losses and

-13-

other items and the Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Regulatory Allocations had not occurred. Notwithstanding the preceding sentence, Regulatory Allocations relating to (a) Nonrecourse Deductions shall not be taken into account except to the extent that there has been a reduction in Partnership Minimum Gain, and (b) Partner Nonrecourse Deductions shall not be taken into account except to the extent that there would have been a reduction in Partner Minimum Gain if the loan to which such deductions are attributable were not made or guaranteed by a Partner within the meaning of Regulations Sections 1.704-2(b)(4) and 1.704-2(i) or a person related to a Partner within the meaning of such Sections of the Regulations. In exercising the discretion under this Section 4.7, future Regulatory Allocations under Section 4.6(a) and 4(b) that are likely to offset other Regulatory Allocations previously made under Section 4.6(e) and 4.6(f) shall be taken into account.

Section 4.8    Tax Allocations:  Code Section 704(c).

(a)    In accordance with Code Section 704(c) and the Regulations thereunder, income, gain, loss, deduction, and Depreciation with respect to any property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Gross Asset Value.

(b)    In the event the Gross Asset Value of any Partnership asset is adjusted pursuant to clause (ii) of the definition of Gross Asset Value, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Code Section 704(c) and the Regulations thereunder.

(c)    Any elections or other decisions relating to allocations pursuant to this Section 4.8 shall be made by the General Partner in any manner that reasonably reflects the purpose and intention of this Agreement.  Allocations pursuant to this Section 4.8 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Partner's Capital Account or share of Profits, Losses, other items, or distributions pursuant to any provision of this Agreement.

Section 4.9    Code Section 754 Election. The General Partner may, in its sole discretion, cause the Partnership to elect, pursuant to Code Section 754, to adjust the basis of Partnership property as provided in Code Sections 734(b) and 743(b). The General Partner shall be responsible for determining the adjustments required or permitted by said sections of the Code, provided that, in the case of any adjustment required or permitted under Code Section 743(b), the transferee Limited Partner or Limited Partners shall be solely responsible for determining the adjustments required thereunder unless such Limited Partner or Limited Partners provide the General Partner with all the information necessary for the General Partner to determine the adjustments. If any adjustments to the basis of Partnership property are made pursuant to Code Sections 732(d), 734(b) or 743(b), the Capital Accounts of the Limited Partners shall be adjusted as specified in Regulations Section 1.704-1(b)(2)(iv)(m).

-14-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00015

## ARTICLE V - CERTAIN CHANGES OF GENERAL PARTNER

Section 5.1   <u>Voluntary Withdrawal of General Partner.</u> The General Partner shall not voluntarily withdraw from or sell, assign, transfer or otherwise dispose of all or any part of its interest in the Partnership.

Section 5.2   <u>Involuntary Withdrawal of a General Partner.</u>

(a)   The General Partner shall automatically be deemed to have withdrawn as General Partner without action by the other Partners if the General Partner dissolves or a final adjudication of Bankruptcy is rendered against the General Partner.

(b)   The General Partner may be removed by the action of Limited Partners whose aggregate Percentage Interests are at least 80% of the Percentage Interests in the Partnership only in the following events: (i) the General Partner willfully and materially breaches any of any of its obligations under this Agreement and such breach has not been cured within thirty (30) days following the date on which written notice of such breach has been delivered to the General Partner by Limited Partners whose aggregate Percentage Interests are at least two-thirds of the Percentage Interests in the Partnership, (ii) the General Partner has been finally adjudged by a court of competent jurisdiction to have committed a felony or engaged in fraud, or (iii) the General Partner has been grossly negligent in connection with activities relating to the Partnership which act or omission, in the case of any of clause (i), (ii) or (iii) above, has had, or is reasonably likely to have, a material adverse effect on the business of the Partnership.  The interest of a General Partner who is removed shall be treated as provided in Section 5.4 hereof.

Section 5.3   <u>Sole Remaining General Partner.</u>  The withdrawal under Section 5.2 of the sole remaining General Partner shall cause the dissolution and liquidation of the Partnership, unless within 180 days of such event, Partners holding a Majority-In-Interest of the remaining Partnership Interest agree in writing to continue the business of the Partnership and a replacement General Partner is substituted.

Section 5.4   <u>Status of Former General Partner.</u>  The Partnership Interest owned by a General Partner who involuntarily withdraws as provided in Section 5.2, which is not sold or otherwise transferred shall be converted to a limited partner interest of a special class and the former General Partner (or its representative or trustee) may not participate in the management of the business of the Partnership, shall not be deemed a Limited Partner for purposes of any action requiring the approval of Limited Partners, may not vote on any partnership matter and shall not be entitled to any amount allocable or distributable to the Limited Partners.  Such special limited partner shall be entitled to all allocations and distributions which would have been allocable or distributable if such special limited partner had remained a General Partner with respect to that portion of its interest not sold or transferred in accordance with this Agreement.

Section 5.5   <u>Changes of General Partner Generally.</u> Any substitute general partner shall, immediately upon admission as a general partner, become the owner of the Partnership Interests of the General Partner whose place it is taking.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00016

## ARTICLE VI - TERMINATION, DISSOLUTION AND WINDING UP

Section 6.1     No Termination of Partnership because of a Partner. Except as otherwise provided herein, the Partnership shall not be terminated by the death, disability, substitution, admission or withdrawal of the General Partner or any Limited Partner.

Section 6.2     Termination of the Partnership.

(a)     The Partnership shall be terminated and dissolved and its affairs wound up upon the first of the following to occur:

(i)     the simultaneous sale or other disposition of all or substantially all of the Partnership's assets;

(ii)     the withdrawal, dissolution or Bankruptcy of the General Partner, within ninety (90) days of such event, the Limited Partners holding a majority of the Percentage Interest consent to the continuation of the Partnership and elect a substitute general partner to continue the Partnership's business;

(iii)     the determination in writing of the General Partner that the Partnership should be dissolved; or

(iv)     the Bankruptcy or insolvency of the Partnership.

(b)     Notwithstanding anything contained herein to the contrary, upon a Capital Transaction at a gain, where all or any portion of the consideration payable to the Partnership is to be received by the Partnership more than ninety (90) days after the date on which such Capital Transaction occurs, the Partners may elect to continue the Partnership solely for purposes of collecting the deferred payments and making distributions to the Partners.

Section 6.3     Dissolution and Winding Up. Upon the Partnership's termination, the following steps shall be taken in the following order of priority:

(a)     Each Capital Account shall be determined. Profits or Losses from Operations to the date of termination, including realized gain (whether or not recognized for tax purposes) or loss arising from a sale or other disposition, or the damage and destruction of all or substantially all of the Partnership's assets, shall be allocated as set forth in Section 4.5 above and credited or charged to the Partners' Capital Accounts.

(b)     The Partnership shall be dissolved and its affairs shall be wound up. All debts and obligations of the Partnership shall be paid, discharged or provided for by setting up appropriate reserves, which shall include a reserve to provide for a return of capital to the Partners.

(c)     Any balance then remaining shall be distributed to the Partners in the order of priority set forth in Section 4.2.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00017

## ARTICLE VII - PARTNERSHIP INTERESTS OF LIMITED PARTNERS

Section 7.1     <u>Assignment.</u>

(a)     A Partnership Interest of a Limited Partner may not be sold, assigned, transferred, or otherwise disposed of except as permitted by this Article VII. Except as expressly provided herein, no Limited Partner shall assign, transfer or otherwise dispose of its Partnership Interest or any portion thereof to any Person without the prior written consent of the General Partner, which consent may be withheld for any reason in the sole discretion of the General Partner. Notwithstanding the foregoing, upon the death of a Limited Partner who is an individual, such Limited Partner's Partnership Interest shall pass to his or her estate or other designee, and such a transfer shall not require the consent of the General Partner.

(b)     Neither the Partnership nor any Partner shall be bound by: (i) an attempted pledge, mortgage or hypothecation which has not been made in accordance with the terms of this Agreement; or (ii) a permitted assignment until a counterpart of the instrument of such assignment, executed and acknowledged by the parties thereto, is delivered to the General Partner.

(c)     Except as otherwise set forth in this Agreement, without the prior written consent of all of the Partners, no assignment may be made of a Partnership Interest of a Limited Partner which would cause the termination of the Partnership under Code Section 708(b).

Section 7.2     <u>Redemption of Certain Limited Partnership Interests.</u>

(a)     Upon the occurrence of any of the following events, the Partnership shall have the right, in the sole discretion of the General Partner, to redeem all of the Limited Partnership Interest of any holder thereof:

(i)     any transfer, assignment, conveyance or sale of any Limited Partnership Interest to which the General Partner did not consent or which is otherwise not in compliance herewith;

(ii)     any involuntary Transfer of a Limited Partnership Interest or any part or all of the beneficial interest therein, by operation of law or otherwise (including, without limitation, all executions or legal processes attaching such Limited Partnership Interest or affecting the beneficial interest of the Limited Partner therein);

(iii)     any pledge or the creation of any encumbrance on any Limited Partnership Interest, or any portion thereof, without the consent of the General Partner;

(iv)     the occurrence of an event of Bankruptcy with respect to the Limited Partner;

(v)     the entry of any divorce decree, order for equitable division of marital property or similar order of court, the effect of which is to vest any part or all of the Limited Partner's Limited Partnership Interest, or any beneficial interest therein, in a Limited Partner's spouse;

(vi)     upon the death of a Limited Partner, the transfer of such Limited Partner's Partnership Interest hereunder to such Limited Partner's proposed designee or

-17-

transferee would violate applicable securities or other laws, in which case, notwithstanding anything herein to the contrary, the Partnership shall redeem such interests; or

(vii)    the General Partner determines in good faith that any Limited Partner is violating or is planning to violate any laws, has acted or is planning to act adversely to the best interests of the Partnership, or disrupted or is planning to disrupt the affairs of the Partnership, and such disruption or action has, or is likely to have, a material adverse effect on the Partnership.

Any Limited Partner with respect to whom one of the events herein specified occurs shall, if applicable, promptly give notice thereof to the General Partner. The right of the Partnership to redeem all or any part of the Limited Partnership Interest of any Limited Partner pursuant to this Section 7.2 shall be exercisable for a period of ninety (90) days from the date on which such notice is given, or if no notice is given, such right shall continue indefinitely. If the General Partner elects to exercise the Partnership's option under this Section 7.2, it shall give notice thereof (the "*Redemption Notice*") to the applicable Limited Partner. As of the last day of the calendar quarter in which the Redemption Notice is given (the "*Redemption Effective Date*"), all of such Limited Partner's Partnership Interest that is subject to this redemption option (the "*Subject Partnership Interest*") shall be redeemed, and the General Partner shall deliver to such Limited Partner in exchange for such redeemed Subject Partnership Interest cash or other Partnership assets equal to the fair value of the Subject Partnership Interest so redeemed as determined in Section 7.2(c), in the manner and at the time prescribed in Section 7.2.

(b)    Each Subject Partnership Interest shall be valued at such amount as the General Partner and Limited Partners mutually agree. To the extent that the Partners cannot agree on such value within thirty (30) days after the Redemption Notice or reduction, as applicable, then such Subject Partnership Interest shall be appraised by two (2) independent appraisers. If such appraisers are unable to agree on the value of the Subject Partnership Interest, they jointly shall appoint a third independent appraiser, whose determination shall be final and binding.

Section 7.3    <u>Redemption of Limited Partnership Interest.</u> Payment in redemption of the Subject Partnership Interest pursuant to Section 7.2(a) shall be made within thirty (30) days following the Redemption Effective Date; *provided*, *however*, that the General Partner may elect to make all or part of such payment in installments, as follows:

(a)    Any part of such payment that the General Partner elects to make in installments shall be payable in five (5) equal annual installments, the first of which installment shall be due within thirty (30) days following the Redemption Effective Date, and shall bear interest at the minimum rate of interest as shall be necessary to avoid imputation of interest for federal income tax purposes, on the unpaid balance thereof, which interest shall also be payable monthly commencing with the payment of the first installment of principal. Installment payments shall be applied first to accrued interest and the balance in reduction of principal; and

(b)    The unpaid balance, if any, shall be evidenced by a promissory note or notes (the "*Redemption Note*") which shall contain a fifteen (15) day grace period, after written notice, within which to cure any default, shall provide that no judgment may be entered thereon unless a default continues after the expiration of the grace period, shall provide that the maker may prepay any installment without premium or penalty, but with interest to the date of prepayment (any such

-18-

payment to be applied to the remaining payments due in inverse order), shall be nonnegotiable, and shall be delivered to the Limited Partner whose Partnership Interest is being redeemed no later than the due date of the first installment payment under this Section 7.3(b).

Section 7.4    Substitution of Limited Partners.

(a)    No assignee of a Limited Partner shall have the right to be admitted to the Partnership as a substitute Limited Partner unless all of the following conditions are satisfied:

(i)    the General Partner affirmatively consents to such admission in writing, which consent may be given or withheld in the absolute discretion of the General Partner;

(ii)    the fully executed and acknowledged written instrument of assignment which sets forth the intention of the assignor that the assignee become a Limited Partner in its place has been filed with the General Partner;

(iii)    the assignor and assignee execute and acknowledge such other instruments as the General Partner deems necessary or desirable to effect such admission, including the written acceptance and adoption by the assignee of the provisions hereof and the assumption by the assignee of all obligations of the assignor hereunder; and

(iv)    the assignee has paid all reasonable expenses incurred by the Partnership (including its legal fees) in connection with such transfer, including, without limitation, the Management Fee and Carried Interest Distributions attributable to the assignor's Partnership Interest, if applicable, and the cost of preparing, filing and publishing any amendment to the Partnership's limited partnership certificate or any amendments of filings under fictitious name registration statutes.

(b)    Once the above conditions have been satisfied, the assignee shall become a Limited Partner on the first day of the next following calendar month. The Partnership shall, upon substitution of a Limited Partner pursuant to this Section 7.4, thereafter make all further distributions on account of the Partnership Interest so assigned to the assignee for such time as the Partnership Interests are registered on its books in accordance with the above provisions. Any Person so admitted to the Partnership as a Limited Partner shall be subject to all provisions hereof as if originally a party hereto.

Section 7.5    Additional Limited Partners. The General Partner shall have the authority and right to admit additional Limited Partners and substitute Limited Partners in its sole and absolute discretion, without the consent of the Limited Partners nor their respective agreement to the terms upon which such additional and/or substitute Limited Partners are admitted.

Section 7.6    Estate Planning. Notwithstanding anything in this Article VII or this Agreement to the contrary, any Limited Partner may, at any time, Transfer any part or all of such Limited Partner's Partnership Interest (i) to such Limited Partner's immediate family members solely for the purposes of estate planning or such Limited Partner's descendants; (ii) to a trust for such Limited Partner's benefit, for the benefit of any Person in such Limited Partner's immediate family or for the benefit of a descendant of such Limited Partner; (iii) if such Limited Partner is a trust, to the beneficiaries of such Limited Partner or any descendants of such beneficiary; or (iv)

-19-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00020

to such Limited Partner's executor or other legal representative for the purpose of settling a deceased Limited Partner's estate ((i) – (iv), a "**Permitted Transfer**"); *provided*, *however*, any such Partnership Interest Transferred pursuant to this Section 7.6 shall nevertheless remain subject, at all times, to the terms and conditions, including and restrictions and obligations, of this Agreement.

## ARTICLE VIII - ACCOUNTING AND RECORDS

Section 8.1    Books and Records. The General Partner shall maintain full and accurate books of the Partnership at the Partnership's principal place of business, showing all receipts and expenditures, assets and liabilities, profits and losses, and all other records necessary for recording the Partnership's business and affairs, including those sufficient to record the allocations and distributions provided for in Article IV. The books of the Partnership shall be kept on a cash or accrual basis method of accounting, as shall be determined by the General Partner to be in the best interests of the Partnership. During regular business hours and upon reasonable notice, each Limited Partner and its duly authorized representatives shall have access to and may inspect and copy any of such books and records; *provided*, *however*, that identifying information about each Limited Partner may be redacted by the General Partner in its sole discretion.

Section 8.2    Reports.

(a)    Within ninety (90) days after the end of each Allocation Year of the Partnership, to the extent reasonably available by such time, the General Partner shall furnish each Limited Partner with such information as is necessary for the preparation of such Limited Partner's income tax returns.

(b)    Within one hundred twenty (120) days after the end of each Allocation Year of the Partnership, commencing with Allocation Year 2015, the General Partner shall furnish each Limited Partner with an audited statement showing the income and expenses of the Partnership for such Allocation Year and the balance sheet of the Partnership as of the end of such year.

Section 8.3    Bank Accounts. All funds of the Partnership shall be deposited in its name in such checking and savings accounts or time deposits or certificates of deposit as shall be designated by the General Partner from time-to-time. Withdrawals therefrom shall be made upon such signature(s) as the General Partner may designate.

Section 8.4    Accounting Decisions. All decisions with respect to accounting matters shall be made by the General Partner. The Limited Partners agree that, for financial and accounting purposes, the Partnership may elect to treat certain items differently from the manner in which such items are treated for tax purposes. For tax purposes, Capital Accounts shall be determined in accordance with tax accounting principles in the same manner as the Partnership prepares its federal income tax return.

Section 8.5    Income Tax Elections. Except as specifically provided to the contrary herein, all decisions as to income tax matters shall be made by the General Partner.

Section 8.6    Meetings. The General Partner shall not be required to call any annual meetings of the Partners. However, upon the request of the General Partner and Limited Partners owning at least a Majority-In-Interest, the General Partner shall promptly call a meeting of the Partners.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00021

Section 8.7   Documents. The General Partner shall not have an obligation to deliver copies of any filed Partnership certificates or amendments thereof to any Limited Partner unless specifically requested to do so by such Limited Partner.

## ARTICLE IX - COMPENSATION FOR SERVICES

Section 9.1   Management Fee. The Partnership shall pay to the General Partner, as full payment for services rendered according to the terms of this Section 9.1, a management fee (the "**Management Fee**") equal to an annual fee of one percent (1.0%) of aggregate Capital Contributions, which shall be payable to the General Partner quarterly in advance.   The Management Fee shall not be considered a distribution of profits or a return of capital for the purpose of any provision of this Agreement, but shall be considered an expense of the Partnership, and shall be deducted from Profits or added to Losses in determining the Profits or Losses of the Partnership.   The General Partner may, in its sole discretion, in effect, waive or reduce the Management Fee to be paid by Related Party Limited Partners, relatives of such Persons and certain other Persons.

Section 9.2   Reimbursement of Expenses.   In addition to the Management Fee above, the Partnership shall assume or reimburse the General Partner or any Affiliate of the General Partner for all expenses of the Partnership (or incurred by the General Partner or any Affiliate of the General Partner for or on behalf of the Partnership) which relate to the formation and organization of the Partnership, or are incurred in the purchase, holding, sale, exchange or other disposition of investments (collectively, "**Partnership Expenses**").   Such Partnership Expenses include, without limitation, (i) all organizational and offering expenses of the Partnership and the General Partner and their Affiliates (collectively, "**Organizational Expenses**"); (ii) legal, accounting, audit, administrative, custodial, consulting and other professional fees; (iii) banking, brokerage, broken-deal, registration, qualification, finders, depositary and similar fees or commissions; (iv) transfer, capital and other taxes, duties and costs incurred in acquiring, holding, selling or otherwise disposing of Target Company Stock and other Partnership assets; (v) insurance premiums (including directors' and officers' insurance), indemnifications, costs of litigation and threatened litigation involving the Partnership and other extraordinary expenses; (vi) preparation and distribution costs for financial and other reports to Partners; (vii) marketing costs; (viii) travel costs and other out-of-pocket expenses related to investigating investment opportunities (whether or not consummated); (ix) expenses relating to meetings (including any related travel and report printing expenses) of or with Limited Partners and all other meetings concerning the Partnership which are attended by officers of the Partnership or any of its Affiliates; and (x) expenses incurred by the General Partner in serving as the tax matters partner of the Partnership.   All Partnership Expenses will be capped at an aggregate of $75,000 per annum, and the General Partner shall be solely responsible for any Partnership Expenses in excess of $75,000 per annum. Without limiting anything contained herein to the contrary, Organizational Expenses will be capitalized and amortized to the extent allowable under Code Section 709.

Section 9.3   Acquisition Fee. In the event the price per share of the Target Company Stock (the "**Original Purchase Price**") is less than the anticipated price of $17.50 per share, the Partnership shall pay to the General Partner the difference in the form of a one-time fee (the "**Acquisition Fee**"); *provided, however,* in the event the Original Purchase Price is greater than $17.50 per share, the Management Fee shall be reduced by the difference between the Original

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00022

Purchase Price and $17.50 multiplied by the number of shares of Target Company Stock purchased, such offset not to exceed the aggregate Management Fee due.

Section 9.4    No Additional Fees. Other than the payment of Carried Interest Distributions, the Management Fee, the Acquisition Fee and reimbursement of expenses of the Partnership paid by the General Partner pursuant to the terms of this Agreement, the Partnership does not intend to pay the General Partner any additional amounts.

## ARTICLE X - GENERAL PROVISIONS

Section 10.1    Investment Purposes. Each Limited Partner represents and warrants that such Limited Partner has acquired such Limited Partner's Limited Partnership Interest for such Limited Partner's own account, as part of a private offering exempt from registration under the Securities Act of 1933, as amended (the "*1933 Act*"), and applicable state blue sky or securities laws for investment purposes and not with a view to the resale or distribution thereof, and that such Limited Partner has had access to any and all information necessary to arrive at such Limited Partner's decision to acquire such Limited Partnership Interest. In addition to the restrictions on Transfer of Limited Partnership Interests otherwise set forth herein, no Limited Partnership Interest may be sold, transferred, assigned or otherwise disposed of by any Limited Partner in the absence of registration under the 1933 Act and applicable state blue sky or securities laws or, upon the request of the Partnership, an opinion of counsel experienced in securities matters and satisfactory to the General Partner that such assignment or other disposition will not be in violation of the 1933 Act or state blue sky or securities laws. No Limited Partner shall have any right to require registration of such Limited Partner's Limited Partnership Interest under the 1933 Act or applicable state law and, in view of the nature of the Partnership and its business, such registration is neither contemplated nor likely. Each Limited Partner further acknowledges that it understands that the effect of the foregoing representation and warranty and restriction on assignment or other disposition is generally to require that such Limited Partnership Interest be held indefinitely unless it is registered or an exemption from registration is available. Each Limited Partner further represents that it is qualified to acquire its respective Limited Partnership Interest and the acquisition thereof does not violate applicable securities and other laws. Each Limited Partner shall indemnify the Partnership, the General Partner and the other Limited Partners from any fines, penalties, losses, claims and/or expenses incurred by the Partnership, the General Partner and/or other Limited Partners as a result of such Limited Partner's breach of this Section or other misrepresentation in connection with the acquisition of its Limited Partnership Interests or otherwise.

Section 10.2    Confidentiality. Except as contemplated hereby or required by a court of competent authority, each Partner shall keep confidential and shall not disclose to others and shall use its reasonable efforts to prevent its present or former employees, agents and representatives from disclosing to others without the prior written consent of the General Partner or the disclosing Limited Partner, as the case may be, any information which (i) pertains to this Agreement, any negotiations pertaining thereto, any of the transactions contemplated hereby, or the business of the Partnership, or (ii) pertains to confidential or proprietary information of any Partner or the Partnership or which any Partner has labeled in writing as confidential or proprietary, and any further information made available to such Partner. No Partner shall use any information which (A) pertains to this Agreement, any negotiations pertaining hereto, any of the transactions

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00023

contemplated hereby, or the business of the Partnership, or (B) pertains to the confidential or proprietary information of any Partner or the Partnership or which any Partner has labeled in writing as confidential or proprietary, except in connection with the transactions contemplated hereby.

Section 10.3   Notices. Except as otherwise provided in this Agreement, all notices, consents, waivers, directions, requests, or other instruments or communications provided for under this Agreement shall be in writing, signed by the party giving the same and shall be deemed properly given only if sent by registered or certified United States mail, postage prepaid, addressed: (a) in the case of the Partnership or the General Partner, as the case may be, to the Partnership at its principal place of business set forth in Article I, and (b) in the case of any Limited Partner, to such Limited Partner at its address set forth in its subscription agreement. Each Partner may, by notice to the Partnership, specify any other address for the receipt of such instruments or communications. Any notice so given shall be effective on the date on which it is mailed. In any case where the consent of a Limited Partner shall be required, such consent shall be deemed to have been given upon the failure of such Limited Partner to send notice withholding its consent within thirty (30) days following the effective time of notice requesting such consent. A copy of all notices and other communications given hereunder by any Limited Partner shall be sent to the General Partner.

Section 10.4   Power of Attorney. Each Limited Partner irrevocably constitutes and appoints the General Partner its true and lawful agent and attorney-in-fact, in its name, place and stead, to make, execute, acknowledge and file:

(a)      this Agreement and any and all amendments hereto as required by the relevant provisions of the Act, including amendments required for the admission or substitution of a Limited Partner;

(b)      any cancellation of this Agreement as required by the relevant provisions of the Act upon the termination of the Partnership;

(c)      any instruments or papers required to continue the business of the Partnership;

(d)      all such other instruments, documents and certificates which may from time-to-time be required by the laws of the State of Delaware, the United States or any other jurisdiction in which the Partnership shall be qualified or doing business (or any political subdivision or agency thereof) to effectuate, implement, continue and defend the valid and subsisting existence of the Partnership; and

(e)      any business certificate, fictitious name certificate, certificate of limited partnership, amendment thereto or other instrument or document of any kind necessary to accomplish the business, purposes and objectives of the Partnership in accordance with this Agreement.

It is expressly intended by the Limited Partners that the foregoing power of attorney is coupled with an interest and that the power of attorney shall survive any transfer or assignment by any Limited Partner of all or any part of its Limited Partnership Interest.

-23-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00024

Section 10.5   Dispute Process. The parties hereby agree to cooperate in good faith with each other for a period of thirty (30) days after receiving formal written notice from the party who claims a dispute has arisen to resolve any dispute whatsoever relating to the interpretation, validity or performance of this Agreement or any other dispute arising in any way out of this Agreement. To the extent such dispute is not resolved within such thirty-day period, the parties shall have the right to refer such dispute, controversy or claim arising under or relating to this Agreement to binding common law arbitration. Arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("*AAA*") in effect at the time of the arbitration, except as the same may be modified in this Section 10.5 or by mutual agreement of the General Partner and any other Partner party to such dispute, controversy or claim. Exclusive venue for such arbitration shall be in New York, New York.  Any such arbitration shall be conducted by three arbitrators.  A party giving notice of any dispute relating to this Agreement (the "*Claimant*") shall appoint an arbitrator in such notice.  A party receiving any such notice (the "*Respondent* ") shall appoint an arbitrator within ten (10) business days of receiving such notice and shall notify the Claimant of such arbitrator's identity in writing.  The arbitrators appointed by the parties shall not be required to satisfy any standard of independence.  If the Respondent fails to appoint an arbitrator within such ten (10)-day period, the arbitrator for the Respondent shall be appointed by the Executive Director of the regional office of AAA having jurisdiction over New York, New York. The two arbitrators appointed by or for the parties shall appoint a third arbitrator within ten (10) days after the Respondent's arbitrator is appointed.  If the two arbitrators appointed by or for the parties fail so to appoint a third arbitrator, then the appointment of the third arbitrator shall be made by the in accordance with the procedures of the AAA. The third arbitrator will (i) have no past or present professional, business, or personal relationship with the parties, their respective counsel or the arbitrators appointed by the parties, (ii) be an attorney who has been licensed to practice law in the State of New York for at least fifteen (15) years, and (iii) have experience in dealing with partnership related matters and disputes. The arbitrators shall permit such discovery as they determine is appropriate in the circumstances, taking into account the needs of the parties and the desirability of making discovery expeditious and cost-effective. Any such discovery shall be limited to information directly related to the controversy or claim in arbitration and shall be concluded within thirty (30) days after appointment of the arbitration panel.  The arbitrators' award shall be in writing, shall set forth the findings and conclusions upon which the arbitrators based the award and shall be final and binding on the parties. The arbitrators shall have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve a dispute, controversy or claim hereunder. Each party will bear its own costs and expenses in connection with any arbitration, including the compensation to be paid to the arbitrator selected by it, as well as 50% of the compensation to be paid to the third arbitrator in any such arbitration; *provided*, *however*, that the arbitrators may award to the prevailing party in the arbitration an amount equal to the costs and expenses incurred by such prevailing party in the arbitration if the arbitrators decide that it is just to do so under the circumstances. The cost of any transcript will be paid by the party requesting the same. Judgment upon the arbitration award may be entered in any federal or state court sitting or located in New York County, New York.

Section 10.6   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. This Agreement may also be executed and delivered by facsimile or PDF signature and in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00025

Section 10.7    Amendment of Partnership Agreement. This Agreement may not be amended without the written consent of the General Partner; *provided*, *however*, that if any amendment would materially and adversely change the specifically enumerated rights or duties of a party or class of parties hereto (the "***Adversely Affected Partner***") in a way that is materially and adversely different from the manner in which such specifically enumerated rights or duties of the other parties or classes hereto are affected by such amendment, then such amendment shall not be effective as to any Adversely Affected Partner unless consented to by those Adversely Affected Partners holding a majority of the Percentage Interest held by all such Adversely Affected Partners. Any amendment, variation, modification or change so effected shall be binding upon the Partnership, each of the parties hereto and any assignee of any such party.

Section 10.8    Waiver of Partition. The Limited Partners hereby waive any right of partition or any right to take any action which may otherwise be available to them for the purpose of severing the relationship to the Partnership or their interests in the assets held by the Partnership from the interest of the other Limited Partners.

Section 10.9    Singular and Plural/Gender. Wherever from the context of this Agreement it appears appropriate, each term stated in either the singular or the plural shall include the singular or the plural, and pronouns stated in either the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.

Section 10.10    Severability. Invalidation or a holding of unenforceability of any provision of this Agreement shall in no way affect any other provision hereof which other provisions shall remain in full force and effect.

Section 10.11    Integration. This Agreement embodies the entire agreement and understanding among the Partners relating to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

Section 10.12    Applicable Law. This Agreement and the rights of the Partners shall be governed by and construed and enforced in accordance with the laws of the State of Delaware. Any dispute brought against the General Partner or the Partnership by any Limited Partner or otherwise in connection with this Agreement shall be brought in the applicable state courts in the County of New Castle County, Delaware, or the U.S. District Court for the District of Delaware.

Section 10.13    Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Partners and their respective heirs, personal representatives, successors and permitted assigns.

Section 10.14    Headings. The descriptive headings of the Articles and Sections hereof are inserted for convenience only and shall not affect the interpretation or meaning thereof.

Section 10.15    Conflicts; Waiver.

(a)    Each Partner understands and acknowledges that the conduct of the business of the Partnership may involve business dealings with such other businesses or undertakings of a Partner or of his, her or its Affiliates, presently or in the future.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00026

(b)     Each Partner acknowledges that Royer Cooper Cohen Braunfeld LLC, counsel for the Partnership and the General Partner, may now or in the future perform legal services for the Partnership, the General Partner and/or certain of the Partners in matters unrelated to the transactions described in this Agreement, including the representation of the Partnership, the General Partner and/or such Partners in financings and other matters.  Accordingly, each Partner hereby (a) acknowledges that he, she or it has had an opportunity to ask for information relevant to this disclosure; and (b) gives his, her or its informed consent to Royer Cooper Cohen Braunfeld LLC's representation of the Partnership, the General Partner and/or the Partners in such unrelated matters and to Royer Cooper Cohen Braunfeld LLC's representation of the Partnership and the General Partner in connection with this Agreement and the transactions contemplated hereby.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00027

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date first above written.

<u>GENERAL PARTNER:</u>

PSP VENTURES, LLC

By: _____
Name:
Title:

*[Signature Pages of Limited Partners Follow]*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**COUNTERPART SIGNATURE PAGE OF LIMITED PARTNERS TO**
**AMENDED AND RESTATED**
**AGREEMENT OF LIMITED PARTNERSHIP OF**
**OPA HOLDINGS SPV, LP**
**DATED AS OF SEPTEMBER 30, 2015**

In accordance with Section 2.1(c) of that certain Amended and Restated Agreement of Limited Partnership of OPA Holdings SPV, LP, dated as of September 30, 2015 (the "*Agreement*"), the undersigned, by its signature hereto, agrees to become a Limited Partner of the Partnership and be bound by all of the terms and conditions in the Agreement, effective as of the date set forth below, and shall make the Capital Contribution set forth on such Person's Subscription Agreement executed and delivered to the Partnership with this signature page to the Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

The undersigned, subject to acceptance by the General Partner, hereby becomes a Limited Partner pursuant to the Agreement and hereby agrees to all of the terms of the Agreement and agrees to be bound by the terms and provisions thereof, hereby ratifying and approving all actions heretofore taken by the General Partner in respect of the Partnership.

(Partnership, Corporation, Trust
or Qualified Plan Signature)

(Individual Signatures)

_____
Name of Entity (Print)

_____
Printed Name (First, Middle, Last)

By_____

_____
(Signature)

(Signature)

_____
Name (Print)

_____
Social Security or Taxpayer Identification Number

_____
Title

Business Address:

Home Address:

_____
Street

_____
Street

_____
City          State          Zip Code

_____
City          State          Zip Code

Send Notices to (Check One):

Business Address: □     Home Address: □

Email:_____

US$ _____
Amount of Capital Contribution

**(JOINT PURCHASERS SHOULD COMPLETE THE FOLLOWING PAGE)**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00029

**Joint Purchaser, if any:**

_____
Printed Name (First, Middle, Last)

_____
Signature

_____
Legal Form of Ownership

_____
Social Security Number

<u>Home Address</u>:

<u>Business Address</u>:

_____
Street

_____
Street

_____
City                          State                Zip Code

_____
City                          State                Zip Code

**ACCEPTED:**

OPA HOLDINGS SPV, LP

By:   PSP Ventures, LLC,
        Its General Partner

By:   _____
        Name:
        Title:

Dated: _____

SCHEDULE A

INDEX OF ADDITIONAL DEFINED TERMS

**Term:**                      **Definition:**

*Adjusted Capital Account Deficit*

With respect to any Partner, the deficit balance, if any, in such Partner's Capital Account as of the end of the relevant Allocation Year, after giving effect to the following adjustments: (i) credit to such Capital Account any amounts which such Partner is obligated to restore or is deemed to be obligated to restore pursuant to Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5); and (ii) debit to such Capital Account the items described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) and 1.704-1(b)(2)(ii)(d)(6). The fore-going definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

*Affiliate:*

A Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the Person in question and any officer, director, general partner, trustee, employee, or limited partner or stockholder (in either case owning ten percent (10%) or more of the equity) of the Person in question or such other Person. For purposes of this definition, "control" of an Entity means the power to direct the management of such Entity, whether by ownership, control or otherwise.

*Allocation Year:*

(i) The period commencing on the date hereof and ending on the last day of the Partnership's first taxable year, (ii) any subsequent period commencing on the first day of the Partnership's taxable year and ending on the last day of the Partnership's taxable year, or (iii) any portion of the period described in clause (ii) for which the Partnership is required to allocate Profits, Losses, and other items of Partnership income, gain, loss, or deduction pursuant to Article IV.

*Bankruptcy:*

With respect to any Partner, such Partner making an assignment for the benefit of creditors, becoming a party or subject to any liquidation or dissolution action or proceeding with respect to such Partner, the institution of any bankruptcy, reorganization, insolvency or other proceeding for the relief of financially distressed debtors with respect to such Partner, or a receiver, liquidator, custodian or trustee being appointed for such Partner or a substantial part of such Partner's assets and, if any of the same occur involuntarily, the same is not dismissed, stayed or discharged within sixty (60) days; or the entry of an order for relief against such Partner under Title II of the United States Code

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY         OPA00031

entitled "Bankruptcy;" or such Partner taking any action to effect, or which indicates its acquiescence in, any of the foregoing.

**Capital Account:** A separate account maintained for each Partner and adjusted in accordance with the Regulations under Code Section 704 and Section 2.3 of this Agreement.

**Capital Contribution:** Any amount of cash or property contributed by a Partner to the Partnership in respect of its equity interest therein in accordance with the Partnership Agreement.

**Capital Transaction:** Unless the General Partner determines in its sole discretion that such transaction is not a Capital Transaction, any disposition of all or any part of the assets of the Partnership, including, without limitation, a sale, exchange, condemnation, or casualty, or the borrowing of money by the Partnership not in the ordinary course of business, or any other similar transaction which is, in accordance with generally accepted accounting principles in the United States, treated as a capital or financing transaction

**Cash Available for Distribution:** Net Cash Flow From Operations and Net Proceeds From a Capital Transaction, which in the opinion of the General Partner is available for distribution to the Partners.  Distributions of cash, if any, shall be determined by the General Partner from time to time in its discretion. The General Partner shall consider the needs of the Partnership for working capital, reserves for repairs and maintenance, reserves for debt service, cash needs for capital improvements, reserves against possible losses and the payment or making provisions for the payment when due of obligations of the Partnership and obligations secured by pledge of, lien on, or security interest in property of the Partnership, and other cash requirements in determining whether there is cash for distribution at any particular time.

**Code:** The Internal Revenue Code of 1986, as the same may be amended from time-to-time. Any reference herein to any section of the Code shall mean and include any and all corresponding provisions of succeeding law.

**Depreciation:** For each taxable year, an amount equal to the depreciation, amortization or other cost recovery reduction allowable with respect to an asset for such year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such taxable year (as a result of the revaluation of such asset or its contribution to the Partnership by a Partner), Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization or other cost recovery deduction for such taxable year bears to such beginning adjusted tax basis; provided that if the beginning adjusted tax basis is

A-2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

zero, Depreciation for such taxable year shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the General Partner.

**Entity:** An organization or being that possesses separate existence for tax purposes, such as a partnership, limited liability company, corporation, estate, trust, joint venture or association.

**Fair Market Value:** (i) With respect to the value of any contribution to or asset of the Partnership, Fair Market Value shall mean the value as determined by the General Partner in its reasonable discretion, taking into account, *inter alia*, such relevant factors as appropriate discounts for lack of marketability, blockage, and restrictions on transferability. Without limiting the General Partner's discretion to make such a valuation or requiring that any such appraisal be made, the determination of the Fair Market Value of any asset by the General Partner on the basis of the valuation thereof by an independent appraiser shall be deemed a reasonable exercise of such discretion.

(ii) With respect to the value of a Limited Partnership Interest, Fair Market Value shall mean, the average daily closing price of the shares of Target Company Stock on the relevant stock exchange for a period of twenty (20) trading days prior to the date the request for redemption or withdrawal was made.

(iii) With respect to the Partnership as a whole, Fair Market Value shall mean the price at which the Partnership would change hands between a hypothetical willing buyer and a hypothetical willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of all relevant facts, and including all limitations imposed by this Agreement and the Act with respect to distributions to Partners, and the ability or inability of any Partner to cause the dissolution and liquidation of the Partnership, as determined by the General Partner using its good faith, reasonable business judgment.

**General Partner:** The first paragraph of the Agreement, who may be replaced from time to time in accordance herewith.

**Gross Asset Value:** With respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(i)      The initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be the gross Fair Market Value of such asset, as determined by the contributing Partner and the General Partner;

(ii)      The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross Fair Market Values, as determined by the

A-3

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          OPA00033

General Partner, as of the following times:

    (a)    the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a <u>de</u> <u>minimis</u> Capital Contribution;

    (b)    the distribution by the Partnership to a Partner of more than a <u>de</u> <u>minimis</u> amount of Partnership property other than money, as consideration for an interest in the Partnership;

    (c)    the liquidation of the Partnership for federal income tax purposes within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g) (other than pursuant to Code Section 708(b)(1)(B)); and

    (d)    in connection with the grant of an interest in the Partnership (other than a *de minimis* interest) as consideration for the provision of services to or for the benefit of the Partnership by an existing Partner acting in a partner capacity, or by a new Partner acting in a partner capacity in anticipation of being a Partner; *provided*, *however*, that the adjustments pursuant to clauses (a), (b), and (d) above shall be made only if the General Partner reasonably determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners in the Partnership;

(iii)    The Gross Asset Value of any Partnership asset distributed to any Partner shall be the gross Fair Market Value of such asset on the date of distribution as determined by the General Partner in accordance with the definition of Fair Market Value hereof;

(iv)    The Gross Asset Values of Partnership assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to (A) Regulations Section 1.704-1(b)(2)(iv)(m) and (B) subparagraph (vi) of the definition of Profits and Losses and Section 4.02(g) hereof; *provided*, *however*, that Gross Asset Values shall not be adjusted pursuant to this clause (iv) to the extent the General Partner determines that an adjustment pursuant to clause (ii) hereof is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this clause (iv); and

(v)    If the Gross Asset Value of an asset has been determined pursuant to subparagraphs (i), (ii), or (iv) hereof, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with

A-4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    OPA00034

respect to such asset for purposes of computing Profits and Losses.

***Majority-In-Interest:***  Percentage Interests exceed fifty percent (50%) of the Percentage Interests in the Partnership.

***Net Cash Flow From Operations:***  For any Allocation Year or other period, the excess of the amount of gross cash receipts of any kind received by the Partnership (other than Net Proceeds From a Capital Transaction and proceeds from a liquidation of the Partnership), including from any reserves previously established which the General Partner determines are no longer required by the Partnership, over (i) operating expenses, (ii) any reserves reasonably necessary for the operation of the Partnership, including, but not limited to, reserves for working capital and maturing debt obligations or cash requirements of the Partnership for reasonably foreseeable future expenses, and (iii) amounts received by the Partnership as Capital Contributions.

***Net Proceeds From a Capital Transaction:***  The net proceeds to the Partnership from a Capital Transaction after transaction costs and expenses and repayment of any indebtedness.

***Nonrecourse Deductions:***  The meaning set forth in Regulations Section 1.704-2(b)(1) and 1.704-2(c).

***Nonrecourse Liability:***  The meaning set forth in Regulations Section 1.704-2(b)(3).

***Partner Nonrecourse Debt:***  The meaning set forth in Regulations Section 1.704-2(b)(4).

***Partner Nonrecourse Debt Minimum Gain:***  An amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Regulations Section 1.704-2(i)(3).

***Partner Nonrecourse Deductions:***  The meaning set forth in Regulations Sections 1.704-2(i)(1) and 1.704-(2)(i)(2).

***Partnership Interest:***  The entire ownership interest in the Partnership, including the Partner's right to share in income, gains, losses, deductions, credits or similar items of, and to receive distributions from, the Partnership pursuant to this Agreement and the Act, the right to vote or participate in the management of the Partnership to the extent herein provided or as specifically required by the Act, and the right to receive information concerning the business and affairs of the Partnership to the extent herein provided.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00035

| | |
|---|---|
| ***Partnership Minimum Gain:*** | The aggregate amount determined under Regulations Section 1.704-2(d). |
| ***Percentage Interest:*** | As of the date of calculation, the quotient, expressed as a percentage, obtained by dividing the sum of the Capital Contributions made by such Partner hereunder by the sum of all Capital Contributions made by all Partners hereunder. |
| ***Person:*** | Any individual or Entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person where the context so admits. |
| ***Presumed Tax Liability:*** | For any Partner for an Allocation Year means an amount equal to the product of (a) the amount of taxable income (including any tax items required to be separately stated under Section 703) allocated to such Partner for that Allocation Year pursuant to Article IV, multiplied by (b) the combined effective federal, state, and local income tax rate, adjusted for the federal deduction for state income taxes, applicable during the Allocation Year for computing regular ordinary income tax liabilities (without reference to minimum taxes, alternative minimum taxes, or income tax surcharges) of a natural person in the highest bracket of taxable income. |
| ***Priority Return:*** | An amount equal to eight percent (8.0%) of such Limited Partner's Capital Contributions.  Distributions of Priority Return shall be made from Cash Available for Distribution and shall be made at the sole discretion of the General Partner. |
| ***Profits* and *Losses:*** | As the case may be, shall mean for each Allocation Year, an amount equal to the Partnership's taxable income or loss for such Allocation Year, determined in accordance with Code Section 703(a) (for these purposes, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments: |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00036

(i)      Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to the foregoing shall be added to such taxable income or loss;

(ii)     Any expenditures of the Partnership described in Code Section 705(a)(2)(B) or that are treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i) and not otherwise taken into account in computing Profits or Losses pursuant to the foregoing shall be subtracted from such taxable income or loss;

(iii)    In the event the Gross Asset Value of any Partnership asset is adjusted pursuant to clause (ii) of the definition of Gross Asset Value, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(iv)     Gain or loss resulting from any disposition of Partnership property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(v)      In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Allocation Year or other period, computed in accordance with the definition of Depreciation under this Agreement; and

(vi)     To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) is required pursuant to Regulations Section 1.704-1(b)(2)(iv)(m)(4) to be taken into account in determining Capital Accounts as a result of a distribution other than in complete liquidation of a Partner's Partnership Interest, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis of the asset) from the disposition of the asset and shall be taken into account for purposes of computing Profits or Losses; and

(vii)    Notwithstanding the above, any items which are specially allocated pursuant to Section 4.6 or Section 4.7 hereof shall not be taken into account in computing Profits and Losses.

The amounts of the items of Partnership income, gain, loss, or deduction available to be specially allocated pursuant to Sections 4.6 and 4.7 shall be determined by applying rules analogous to those set forth in

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                OPA00037

subparagraphs (i) through (vi) above.

*Related Party:*   (i) the General Partner; (ii) each member and each direct or indirect equity owner of the General Partner; (iii) any Affiliate, or in the case of an individual each member of the immediate family, of any person referred to in clauses (i) or (ii); (iv) each Legal Representative, successor or assignee of any person referred to in the preceding clauses (i) through (iii); (v) each trustee of a trust for the benefit of any person referred to in the preceding clauses (i) through (iii); and (vi) each employee of the General Partner.

*Regulations:*   The Income Tax Regulations promulgated under the Code, as such regulations, may be amended from time-to-time.

*Transfer:*   A pledge, sale, assignment, conveyance or other relinquishment of legal, equitable, or beneficial ownership of an Interest.

*Unreturned Capital Balance*:   With respect to any Partner, the excess, if any, of the aggregate amount of all Capital Contributions contributed by such Partner to the Partnership, over the aggregate amount of distributions made to such Partner pursuant to Section 4.1(b) and/or Section 4.1(c) of this Agreement, as the case may be.

A-8

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY   OPA00038