Reed R. Kathrein (139304)
Peter E. Borkon (212596)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead
Counsel for the Class*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ROBERT COLMAN and HILARY TAUBMAN-DYE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THERANOS, INC., et al.,<br><br>Defendant. | No. 5:16-cv-06822-NC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RULE 26(c) PROTECTIVE ORDER**<br><br>Date: (Hr'g vacated per ECF 239)<br>Time: (Hr'g vacated per ECF 239)<br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael Cousins<br><br>DATE ACTION FILED: Nov. 28, 2016 |

**\* \* \* F I L E D   U N D E R   S E A L \* \* \***

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................2

II.  LEGAL STANDARDS FOR GRANTING A PROTECTIVE ORDER UNDER FED. F.R.C.P. 26(c) ....................................................................................................5

III.  ARGUMENT .......................................................................................................6

    A.  Defendants Fail To Show Good Cause To Amend The Protective Order To Preclude Discovery In This Matter Solely For Any Purpose Other Than This Action..............6

        1.  Defendants Fail to Show That Disclosure of Deposition Testimony Would Cause Substantial Embarrassment and Harm...................................................6

        2.  Defendants Fail to Show That Public and Private Interests Weigh in Favor of Granting a Protective Order.........................................................................10

        3.  Defendants Fail to Show That Particularized Redactions Would Fail to Protect Any Truly Sensitive Material..........................................................12

    B.  Defendants Fail To Show That Good Cause Exists To Preclude Filing Deposition Testimony Before Trial. ............................................................................13

    C.  Defendants Fail to Show Good Cause Exists to Preclude Adjudication of Defendants Confidentiality Designations. ......................................................................14

IV.  CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Am. News & Info. Svcs., Inc. v. Rovella*,
2017 WL 3736700 (D. Conn. Aug. 30, 2017) ........................................................... 14

*Bd. of Trs. of Cal. State Univ. v. Super. Ct.*,
132 Cal.App.4th 889, 34 Cal. Rptr. 3d 82 (2005), *review denied* ................................. 8

*Condit v. Dunne*,
225 F.R.D. 113 (S.D. N.Y. 2004) ...................................................................... 11, 12, 13

*Constand v. Cosby*,
112 F. Supp. 3d 308 (E.D. Pa. 2015), *vacated as moot,* 833 F.3d 405 (3d Cir.
2016) ........................................................................................................................ 7, 11

*Darnell v. Target Stores*,
16 F.3d 174 (7th Cir. 1994), overruled on other grounds by *Hill v. Tangherlini*,
724 F.3d 965 (7th Cir. 2013) ............................................................................................ 8

*Flaherty v. Seroussi*,
209 F.R.D. 295 (N.D.N.Y. 2001) .................................................................................. 10

*Flake v. Arpaio*,
2016 WL 4095831 (D. Ariz. Aug. 2, 2016) ............................................................. 13, 14

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ........................................................................................ 5, 14

*In re Gen. Motors LLC Ignition Switch Litig.*
2015 WL 4522778 (S.D.N.Y. July 24, 2015) ........................................................... 13, 14

*Glenmede Trust Co. v. Thompson*,
56 F.3d 476 (3d Cir. 1995) .................................................................................................. 6

*Grogan v. Osborne*,
1988 WL 49192 (S.D.N.Y. May 5, 1988) ...................................................................... 13

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y.2014) ...................................................................................... 15

*Low v. Trump Univ., LLC*,
2016 WL 4098195 (S.D. Cal. Aug. 2, 2016) ........................................................... 10, 11

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) .............................................................................................. 7

*Perma Research & Dev. Co. v. Singer Co.*,
   410 F.2d 572 (2d Cir. 1969) ............................................................ 8

*Phillips v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ................................................ 5, 6, 13, 14

*In re Roman Catholic Archbishop of Portland in Or.*,
   661 F.3d 417 (9th Cir. 2011) ............................................................ 5

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*,
   187 F.3d 1096 (9th Cir. 1999) ....................................................... 2, 5

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) .................................................................... 14

*Shingara v. Skiles*,
   420 F.3d 301 (3d Cir. 2005) ............................................................ 7

*U.S. v. Westchester Cty., New York*,
   2016 WL 3566236 (S.D.N.Y. June 27, 2016), *aff'd sub nom. U.S. v. Westchester Cty.*, 674 Fed. Appx. 82 (2d Cir. 2017) (unpublished) ................................. 9

*United States v. Crandall*,
   748 F.3d 476 (2d Cir. 2014) ............................................................ 9

STATUTES

Cal. Civ. Proc. Code § 2025.570 ........................................................... 8

OTHER AUTHORITIES

Fed.R.Civ.P. 26(c) .................................................................... 2, 5, 14

Fed.R.Civ.P. 26(c)(1) .................................................................... 5

*Model Protective Orders*, United States District Court of the Northern District of California, https://www.cand.uscourts.gov/model-protective-orders (last visited May 31, 2018) ......................................................................... 2

* * * UNSEALED VERSION FILED PURSUANT TO COURT ORDER ECF NO. 255 DATED JUNE 5, 2018 * * *

**STATEMENT OF ISSUES TO BE DECIDED**

Plaintiffs believe the following issues need to be decided:

1.      Whether Defendants are entitled to relief from the Stipulated Protective Order [ECF No. 62] each Defendant voluntarily entered into, and this Court entered, over a year ago, on April 14, 2016, before Defendants started producing any documents in this case, which, unlike some orders, does not limit use to this litigation and does not protect mass designations if materials not properly designated by Defendants.

2.      Whether Defendants should be relieved from the prohibition against mass designations, and relieved from the procedures laid out in the Stipulated Protective Order.

3.      Whether Defendants have carried their burden of proving that this Court should enter a new much more restrictive proposed protective order, that varies from the Model Protective Order which this District Court has approved after serious deliberation and weighing the burdens on the parties, and which has been followed in this Court for over a decade since 2005.

4.      Whether Defendants have carried their burden of proving that Mr. Gibney's use of the video of the depositions would cause substantial embarrassment and harm.

5.      Whether the proposed solutions, offered by Plaintiffs and Mr. Gibney, herein, whereby Mr. Gibney will agree to be bound by the order, select portions of interest, and then allow defendants review, alleviate any legitimate concerns and undue burden or harm to Defendants.

## I.      INTRODUCTION

The stipulated protective order agreed to by Defendants and entered by this Court on April 14, 2017, ("Protective Order") allows public disclosure of discovery not marked confidential or highly confidential:

> **The parties acknowledge** that this Order does not confer blanket protections on all disclosures or responses to discovery **and that the protection it affords** *from public disclosure and use* **extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles**.[1]

The Protective Order also limits what parties are allowed to designate as confidential, cautions parties to designate only those parts "that qualify – so that other portions . . . are not swept unjustifiably within the ambit of this Order", and prohibits "mass indiscriminate or routinized designations" which expose the Designating Party to sanctions.[2]

In the same vein, the Ninth Circuit has long held that "[i]t is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."[3] A district court may override this presumption only where "good cause" is shown under Rule 26(c).[4]

Here, Defendants have marked every document produced confidential, whether or not they have grounds under the protective order.  Plaintiffs have now asked Defendants to review those designations for deposition transcripts that are likely to be used at trial, and many of which have

---

[1] *See* Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, April 13, 2017, ECF No. 62 ("Protective Order").  The Protective Order is familiar to all the members of the bar of the Northern District of California as it is the model form available to litigants on the Northern District's website since at least 2005, and is suggested and not mandatory in most cases but in patent cases on an interim basis.  *See Model Protective Orders*, United States District Court of the Northern District of California, https://www.cand.uscourts.gov/model-protective-orders (last visited May 31, 2018).

[2] *See* Protective Order at ¶5.1.

[3] *San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose),* 187 F.3d 1096, 1103 (9th Cir. 1999).

[4] *Id.*

already been used in earlier motions.  Alex Gibney, an Oscar winning documentary producer, also seeks the video of these transcripts which have been produced by Defendants or taken in this litigation.  Defendants do not want to undertake the purported burden of reviewing these transcripts for proper and justified designation.  More importantly they do not want Alex Gibney, nor other members of the public, to have access to the video, arguing that deposition videos are *per se* protected from public access.  Neither claim is supported.

Defendants make no claim that anything in the depositions is confidential.  Defendants make no claim that Plaintiffs improperly sought or are seeking discovery.  Nor do Defendants claim any breach of the Stipulated Protective Order.[5]  Defendants also fail to make any particularized showing of prejudice or harm.

It is beyond argument that the public has been inundated with stories, articles, TV news and evidence that Defendants Holmes, Balwani and Theranos deceived the nation, including doctors and patients, into believing, using and investing in a purported proprietary blood-testing device that was supposedly accurate and new.[6]

To state the obvious, "media attention and scrutiny" of Theranos (Motion at 6) has already been occurring on a mass scale since well before the inception of this litigation.  Speculation concerning the company's impending bankruptcy, recent wide-scale lay-offs, and even the prospect

---

[5] Defendants know that Plaintiffs fully intend to use this testimony at trial, with in direct or rebuttal, preparation of witnesses, or in aid of confirming facts and refreshing recollection of witness.  Plaintiffs use should not be hamstrung by mass designations.  Accordingly, Plaintiffs asked Defendants for a stipulation allowing use at trial and Defendants are currently refusing on top of their refusal to identify portions truly confidential.  Declaration of Reed R, Kathrein ("Kathrein Decl.") Ex. A.

[6] *See e.g.*, John Carreyrou, *Theranos Inc.'s Partners in Blood*, Wall Street Journal (May 18, 2018, 12:47 PM), https://www.wsj.com/articles/theranos-inc-s-partners-in-blood-1526662047 (essay adapted from John Carreyrou, *Bad Blood: Secrets and Lies in a Silicon Valley Startup* (2018)) (Kathrein Decl. Ex. B).

1    of Theranos's sale has been widely reported in a letter to shareholders obtained by the press.[7]

2    The press has already been inundated with and has reported on information from whistleblowers and

3    government investigations by the CMS and SEC.  Just two weeks ago, 60 Minutes aired an exposé

4    on Defendants, the Wall Street Journal carried a feature on Theranos, and the book "Bad Blood:

5    Secrets and Lies in a Silicon Valley Startup" hit the market.[8]

6         In the meantime, Defendants have refused to submit to press questions, have refused to

7    respond to detailed questions about their public denials, and former employees continue fear

8    violating harshly used NDAs.[9]  Theranos has continued and is continuing to spin its story, court

9    investors and the medical field while enforcing a black box of information to the public, which has

10   already cost investors nearly $1 billion, cost patients and doctors an untold sum of money, as well as

11   wasted time, efforts and finances of universities, hospitals, the department of defense and others who

12   have been lulled into Theranos story.

13        Under the circumstances, there is no good reason to hide the factual testimony of actual

14   witnesses of the fraud from the public, and to allow it to view and judge the facts, instead of

15   Theranos "fake news."  Any embarrassment or additional public exposure caused by testimony under

16   oath (as opposed to TV interviews) would be modest at best, weigh in the favor of the public

17   interests against past fraud, continuing fraud, and consumer safety.  Moreover, this Court can

---

[7] See ft. nt. 18 *infra*.

[8] See *Id*.

[9] See e.g., Kathrein Decl. Ex. C (Excerpts from Deposition of Adam Rosendorff, M.D.) (describing fear of "getting sued by Theranos", and stating:  "It's caused me anxiety.  Wondering who is going to depose me.  Wondering if I'm going to be prosecuted by the federal government.  Thinking that I might go to prison." at 181:19-21 and 182:21-24); *See also Id*. at 179:17-19 ("Sunny [Balwani] was harassing me.  Mona Ramamurthy, the HR counsel, was calling me on a daily basis after I left Theranos"; *See also* Kathrein Decl. Ex. D (letters from Theranos to Tyler Shultz following Shultz's resignation, containing statements asserting Shultz's "Continuing Obligations to Protect Theranos' Confidential and Proprietary Information").

* * * UNSEALED VERSION FILED PURSUANT TO COURT ORDER ECF NO. 255 DATED JUNE 5, 2018 * * *

condition the release based on conditions that alleviate any concerns.  For instance, Plaintiffs have proposed solutions such as timing of any documentary, masking voices or faces, allowing review of the edits.  While Defendants have refused to consider any such solution, the Court must consider such alternatives to an outright ban.

## II.   LEGAL STANDARDS FOR GRANTING A PROTECTIVE ORDER UNDER FED. F.R.C.P. 26(c)

The legal standard in the 9th Circuit for issuing a protective order, not agreed to by the parties, is set forth in *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 423-25 (9th Cir. 2011).  There, the Ninth Circuit reiterated its long followed holdings that, as a general rule, the public is permitted "access to litigation documents and information produced during discovery."[10]  While under Fed.R.Civ.P. 26(c)(1) "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," the party opposing disclosure has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted.[11]  If a party takes steps to release documents subject to a stipulated order, the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material.[12] "*Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not*

---

[10] C*iting Phillips v. Gen. Motors Corp.,* 307 F.3d 1206, 1210 (9th Cir. 2002) and *San Jose Mercury News,* 187 F.3d at 1103 ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.").

[11] *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 423-425; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

[12] *Id. citing Phillips,* 307 F.3d at 1211 n. 1. ("the burden of proof will remain with the party seeking protection when the protective order was a stipulated order and no party had made a 'good cause' showing").

*satisfy the Rule 26(c) test.*"[13]  The person seeking protection from disclosure must "allege specific prejudice or harm."[14]

If the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance "the public and private interests to decide whether [maintaining] a protective order is necessary."[15]  Even then, if this two-part test weighs in favor of protection, a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure.[16]

> Accordingly, in determining whether to protect discovery materials from disclosure under Rule 26(c), a court must not only consider whether the party seeking protection has shown particularized harm, and whether the balance of public and private interests weighs in favor, but also keep in mind the possibility of redacting sensitive material.[17]

Here, Defendants motion fails in all three aspects.

## III.   ARGUMENT

**A.**   **Defendants Fail To Show Good Cause To Amend The Protective Order To Preclude Discovery In This Matter Solely For Any Purpose Other Than This Action.**

   **1.**   **Defendants Fail to Show That Disclosure of Deposition Testimony Would Cause Substantial Embarrassment and Harm.**

Defendants posit three potential harms that might result.  The first, cloaked under-seal from the public is nothing more than a variation what is already known about the company, as revealed in

---

[13] *Id.* citing *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992).

[14] *See id.*

[15] *Id.* citing *Phillips,* 307 F.3d at 1211 (directing courts doing this balancing to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995)).

[16] *Id.* citing *Foltz,* 331 F.3d at 1136-37 (concluding that medical records could "be redacted easily to protect third-party privacy interests while leaving other meaningful information.").

[17] *Id.*

Defendant Holmes letter to shareholders.[18]  It is also a variation of the argument Defendants made over a year ago, when it opposed Plaintiffs' motion for injunctive relief and a mandatory class. Time has already prejudiced Plaintiffs, and now they ask for more, with nothing more to show that their efforts but an even worse financial situation.

Defendants' second potential harm is an unsupported claim that access by the media of the transcripts and video would "risk exposure" of non-party deponents "to harassment, derision, embarrassment, and humiliation", whose names even Defendants don't claim are not public. *See* Smith Decl. ¶¶ 3-5.  Not one of the deponents, however, has shown particularized harm. No declarations have been filed.  None have shown why their testimony (and video) is nothing more than what is inherent in video or testimony in court.  Indeed the opposite is true.  For this reason alone, Defendants' motion most be denied.[19]

Moreover, the deponents are not mere bystanders.  All the deponents, but one, are current or former employees or directors of Theranos with direct knowledge of the underlying claims of

---

[18] "The most viable option that we have identified to forestall a near-term sale or a potential default under our credit agreement is further investment by one or more of you."  Ryan Mac, *Theranos' Letter to Shareholders Shows the Company Is On Its Deathbed*, BuzzFeed News (Apr. 11, 2018, 9:55 AM), https://www.buzzfeed.com/ryanmac/theranos-ceo-elizabeth-holmes-desperate-letter-shareholders?utm_term=.lu0qa5m1Q#.owJ0qyPlx (Kathrein Decl. Ex E).

[19] *See Constand v. Cosby*, 112 F. Supp. 3d 308, 317-18 (E.D. Pa. 2015), *vacated as moot,* 833 F.3d 405 (3d Cir. 2016) ("The Third Circuit has stated that, 'because release of information not intended . . . for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.' [citing *Cipollone v. Liggett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)] . . . Although of course intense media scrutiny into one's private matters would almost always cause embarrassment [citation omitted], this is the type of general allegation that does not satisfy [*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)].  Defendant has not specifically shown why his embarrassment would be "particularly serious" at this time and in the context of this case.  In short, Defendant has failed to show what specific and severe injuries he would suffer upon release of the deposition testimony at this time which he has not already experienced.");  *See also Shingara v. Skiles,* 420 F.3d 301, 307 (3d Cir. 2005) (requiring a showing of a "risk that particularly serious embarrassment will result from the release of the documents" (internal quotation marks omitted)).

Theranos fraud, and who kept the fraud secret while Defendants reaped the benefit.[20]  Many have

been the subject already of interviews and news articles by the press, including in the recent 60

minutes program, and John Carreyrou's book, "Bad Blood."[21]  Some have stood in public to vouch

for Theranos.[22]

      The only non-party is Walgreens, whose partnership with Theranos was jointly publicized[23]

and Walgreens publicly sued Theranos over the very same fraud.[24]  Currently, Walgreens is being

sued by the patients whose blood tests were taken and voided years later.[25]  Yet even Walgreens has

remained mum as to what really happened and refuses to talk publicly about its involvement.[26]

      Deposition transcripts and video are not *per se* harmful and do not per se cause prejudice.

Under California law, the public has a presumptive right to deposition transcripts *and video*.[27]

---

[20] *See e.g.*, Kathrein Decl. Ex. B (*WSJ*: "Theranos Inc.'s Partners in Blood") (mentioning Defendants' enforcement of "a corporate culture of secrecy and fear").

[21] *See* Kathrein Decl. Ex. F (*CBS News* article quoting *60 Minutes* interviews aired on May 20, 2018: "The Theranos Deception").

[22] *See also* Kathrein Decl. Ex G (email quoting joint statement submitted to *New York Times* on behalf of Dick Kovacevich, Tim Draper, Bill Frist, and Channing Robertson); *See also* Kathrein Decl. Ex. E (news article publishing letter from Elizabeth Holmes to shareholders dated April 10, 2018).

[23] Kathrein Decl. Ex. H (press release announcing Walgreens partnership).

[24] *See Walgreen Co. v. Theranos, Inc.*, No. 16-cv-01040 (D. Del. filed Nov. 8, 2016).

[25] *See In re: Arizona Theranos, Inc., Litigation*, No. 16-cv-02138 (D. Ariz. filed Jun. 29, 2016).

[26] Attached is an email from Walgreens counsel objecting to the public release of the deposition and video of the officer who testified.  *See* Kathrein Decl. Ex. I.

[27] Cal. Civ. Proc. Code § 2025.570 ("Notwithstanding subdivision (b) of Section 2025.320, unless the court issues an order to the contrary, a copy of the transcript of the deposition testimony made by, or at the direction of, any party, *or an audio or video recording of the deposition testimony*, if still in the possession of the deposition officer, shall be made available by the deposition officer to any person requesting a copy, on payment of a reasonable charge set by the deposition officer." (emphasis added)).  *See also Bd. of Trs. of Cal. State Univ. v. Super. Ct.*, 132 Cal.App.4th 889, 34 Cal. Rptr. 3d 82 (2005), *review denied* (The Public Records Act's pending litigation exemption does not apply to deposition transcripts, since they are available to the public, absent an objection and protective order, under another statutory scheme.).

* * * UNSEALED VERSION FILED PURSUANT TO COURT ORDER ECF NO. 255 DATED JUNE 5, 2018 * * *

Deposition testimony inherently "carr[ies] an increased level of reliability [because they] are adversarial in nature and provide the opportunity for direct and cross-examination."[28]  It is inherently more reliable than an affidavit.[29]  Certainly it is inherently more reliable than a book, news article or interview not under oath.  And it is more useful to the public than inconsistent and unsworn public positions between parties and the media and fake news.

Judge Denise Cote recently ordered the release of the video tape depositions of County officials, recognizing that video tapes of depositions are the best means to convey the substance and meaning of testimony and the credibility of the witness to the public:

> Videotapes are regularly taken of deponents in civil litigation, despite the attendant expense, because litigators understand that the videotaped witness testimony is far more effective in conveying the substance and meaning of the testimony to the fact finder than the dry words on a printed page.[30]

The court rejected as the arguments many of the same arguments raised by Defendants here, as speculative, and without substance:

> The County also speculates that the videotapes may be used against Astorino in a misleading fashion at some point in the future by someone "as part of partisan political attacks" by, for example, presenting heavily edited passages from the videotapes.  This speculation does not counsel against disclosure.  First, the County has not identified any passage that may be particularly susceptible to unfair manipulation.  The Court has given the County an

---

[28] *Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir. 1994), overruled on other grounds by *Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013).

[29] *See Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 577-78 (2d Cir. 1969).

[30] *U.S. v. Westchester Cty., N.Y.*, No. 06 Civ. 2860 (DLC), 2016 WL 3566236, at *9 (S.D.N.Y. June 27, 2016), *aff'd sub nom. U.S. v. Westchester Cty.*, 674 Fed. Appx. 82 (2d Cir. 2017) (unpublished) (citing *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 30 (2d Cir. 2002) (noting that there is a "preference for live testimony" because "demeanor evidence is important," and "videotaped depositions . . . could afford the jury an opportunity to assess" a witness's credibility); *cf. United States v. Crandall,* 748 F.3d 476, 483 (2d Cir. 2014) (noting that a "Court of Appeals must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says" (citation omitted)).

opportunity to request redactions from the videotapes before public disclosure. It declined to make such a request. Moreover, it is significant to note what the County has not argued. It does not argue that any information conveyed during the depositions was of a personal nature, that the questioning concerned anything other than the deponent's performance of his and her public duties, that the questioning went beyond what was permitted by the Court, that the questioning was abusive or otherwise unfairly prejudicial, or that any of the witnesses' deposition answers requires correction . . . . Whether given in a courtroom or not, the testimony was given under oath, pursuant to court order, and in connection with ongoing federal court litigation with the County.[31]

Defendants rely heavily on *Low v. Trump Univ., LLC,* [32] where the parties had agreed to a stipulated protective order that permitted a party to designate the entire deposition confidential, and prohibited the filing of depositions in court unless they were under seal. Here there is not such agreement. In fact, in the stipulated protective order, the parties acknowledged the limitations on protection. Moreover, *Trump,* as do several of the cases relied upon in *Trump* consider video as inherently harmful, based on logic and the speculation of what could happen with the video – and not the actual facts of the case. This turns the burden of showing good cause on its head.

Defendants have made no showing the Mr. Gibney would use the video for sensationalism, treat the deponents' testimony unfairly, nor use the video for some other improper purpose. Just the opposite, Mr. Gibney has stated exactly what his intent is, and his past work is subject to scrutiny by Defendants if they so choose.

## 2. Defendants Fail to Show That Public and Private Interests Weigh in Favor of Granting a Protective Order.

Defendants' cases, including *Trump,* acknowledge that even if good cause is shown to prohibit Mr. Gibney's access to the video, if there is a significant and legitimate public interest in

---

[31] *Id.* at 11.

[32] *Low v. Trump Univ., LLC,* No. 3:13-CV-02519-GPC-WVG, 2016 WL 4098195, at *8 (S.D. Cal. Aug. 2, 2016).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR RULE 26(C) PROTECTIVE ORDER          - 10 -
Case No.: 5:16-cv-06822-NC
010650-11 1035968 V1

those videos, then the videos do not deserve special protections.[33]  As the court correctly noted, the

public is "hankering to know the facts behind this case."[34]  A legitimate public interest exists due to,

*inter alia*, Defendants' wide-scale promotion to consumers and investors of a purportedly new

technology that could perform a comprehensive set of blood tests from a few drops of blood, the

widely-publicized findings of the Centers for Medicare and Medicaid Services that conditions at

Theranos' laboratories "has already caused, is causing, or is likely to cause, at any time, serious

injury or harm, or death, to individuals served by the laboratory or to the health and safety of the

general public", and the Securities and Exchange Commission's (SEC) subsequent charges that

Defendants committed a "massive fraud" against investors.

The *Trump* court also cited a diminished privacy interest where the persons are public figures

experienced in dealing with the media.[35]  Here, Defendants Elizabeth Holmes and Ramesh "Sunny"

---

[33] *Id.* at *6 citing *Felling v. Knight*, No. IP01-0571-C-T/K, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001) (initially sealing video depositions of non-parties in lawsuit involving battery allegations against Bobby Knight, the well-known Indiana college basketball coach, to protect those non-parties from potential embarrassment, and then releasing the video depositions after the case settled, both on the grounds that the potential for embarrassment had decreased following settlement of the case, and on the grounds that any remaining potential for embarrassment was "outweighed by the public's right to know," since "[s]eemingly few topics in the state of Indiana have generated more attention or public debate in recent times than the events surrounding Knight's termination"), and *Flaherty v. Seroussi*, 209 F.R.D. 295, 300 (N.D.N.Y. 2001) (releasing video depositions of mayor and other public officials where the underlying litigation alleged improper official action, since the public interest outweighed any interest in preventing "modest embarrassment" to the mayor). *See also Condit v. Dunne*, 225 F.R.D. 113, 118-20 (S.D. N.Y. 2004) (television commentator's video deposition in defamation case brought by Congressman accused of involvement in death of intern was released as the case was of public concern).  *See Constand,* 112 F. Supp. 3d at 315-16 vacated, (3d Cir. 2016) (district court found Cosby had reduced privacy interests because he had "donned the mantle of public moralist"; because his subsequent appeal of the unsealing order was moot, appellate court vacated the order so that parties not bound by order the appellate court could not review).

[34] Order, ECF No. 213 at 4; *See also* Kathrein Decl. ¶ 2 (noting additional press inquiries received by Plaintiffs' counsel).

[35] *Id.* citing *Estate of Rosenbaum v. City of N.Y.*, 1993 U.S. Dist. LEXIS 15908, at *7 (E.D.N.Y. Aug. 13, 1993) (permitting news media to be present at the depositions of the Mayor and other city officials where "the case [was] of high public interest, th[e] depositions . . . sought are depositions of parties, not of third persons[,] . . . the parties whose depositions at issue are parties experienced in dealing with the media . . . [and] these parties have themselves already spoken out . . . on a number

Balwani, as well as witnesses George Shultz, Admiral Roughead, Channing Robertson and recently Tyler Shultz and Erica Cheung, have each been instrumental in making numerous public statements, are acknowledged whistleblowers, or are themselves public figures.[36]  Walgreens participated in the press releases and publicity.  In addition, Christian Holmes, Jeffrey Blickman and Dan Edlin also are not media neophytes, as they were instrumental in putting together the Theranos narrative for Elizabeth Holmes and Sunny Balwani, and worked with the public relations and advertising firms to distribute the "Theranos Story."[37]

### 3. Defendants Fail to Show That Particularized Redactions Would Fail to Protect Any Truly Sensitive Material.

As noted above, in a meet and confer after Defendants filed their motion, the parties engaged in a meet and confer.  During that meet and confer, Plaintiffs' counsel proposed possible redactions and timing to alleviate Defendants concerns.  These allowed Mr. Gibney to sign onto the protective

---

of occasions to members of the press"); *see also Constand*, 112 F. Supp. 3d at 315-16 (finding a diminished privacy interest where the "party seeking to use [that privacy interest] as a shield is a public person subject to legitimate public scrutiny," and where that party "has freely entered the public square and thrust himself into the vortex of these public issues," *id.* (citations omitted) (internal quotation marks omitted)).

[36] *See e.g.*, Yashar Ali, *The Reporter Who Took Down a Unicorn*, New York Magazine (May 24, 2018, 4:19 PM), http://nymag.com/daily/intelligencer/2018/05/john-carreyrous-new-book-on-silicon-valley-bad-blood.html. ("Carreyrou calls three former Theranos employees who were his primary sources "heroes" — Tyler Shultz, the grandson of Theranos board member George Shultz, Erika Cheung, and a former Theranos lab director whom he calls Alan Beam.  All three faced repercussions; they were followed by private investigators and threatened with litigation and ruin.") (Kathrein Decl. Ex. J).  Tyler Shultz and Erica Cheung appeared in the 60 minutes program, *The Theranos deception*, 60 Minutes, at https://www.cbsnews.com/video/the-theranos-elizabeth-holmes-deception (last visited May 31, 2018).  *See also* Kathrein Decl. Ex. K (December 9, 2015 email correspondence from Elizabeth Holmes reflecting the coordinated removal of a *Forbes* article) and Brit McCandless Farmer, *Was the Media Duped by Elizabeth Holmes?*, 60 Minutes Overtime (May 20, 2018), https://www.cbsnews.com/news/was-the-media-duped-by-elizabeth-holmes-theranos.

[37] *See e.g.*, Kathrein Decl. Ex. N and O (email correspondence involving Christian Holmes, Jeffrey Blickman, Dan Edlin, Elizabeth Holmes and Sunny Balwani coordinating media and/or marketing messaging); *See also* Kathrein Decl. Ex. L and M (emails regarding launch plan and launch plan presentation).

order to select what portions of the video he desired, and then allowing Defendants to identify proper "good cause" to protect it; discussing the timing of any project to determine if it truly might interfere with certain events or trial, and the possible use of obscuring voices or faces of certain witnesses. Defendants refused any such compromises or "redactions." No reasons have been given.

**B.      Defendants Fail To Show That Good Cause Exists To Preclude Filing Deposition Testimony Before Trial.**

Defendants' claim that media access "*could* irrevocably taint the jury pool for trial."

Again, this claim is unsupported. In *Condit v. Dunne* the court rejected similar arguments:

> To that end, the Court is not convinced that the jury pool will be tainted if this protective order is not issued. As defendant's motion papers leave much open for speculation, the Court assumes defendant fears that media misrepresentation of his videotaped deposition will taint the jury pool and deprive him of a fair trial. However, it is unclear how the media would create such an erroneous and lasting impression of Dunne.[38]

The court deferred to the Second Circuit's cogent view that publicity is unlikely to color incurably jurors' views, even in the most high-profile cases.[39] Even assuming part or all of the video is disseminated to the public, memories fade and any tainting of the jury pool can be remedied through voir dire.[40] Moreover, Defendants' fear of "trial by media" is newfound. It did not stop Defendants, with the aid of many of their employees and directors, from repeatedly thrusting into the media themselves.[41]

---

[38] *Condit*, 225 F.R.D. at 118.

[39] *Id.* citing *In re NBC, Inc.,* 635 F.2d 945, 948 (2d Cir. 1980) (noting that only eight or ten jurors had more than a general recollection of Abscam); *Grogan v. Osborne,* No. 87 Civ. 7024 (KC), 1988 WL 49192, *2-3 (S.D.N.Y. May 5, 1988) (citing high-profile cases where the jury panel was negligibly affected by the publicity).

[40] *Id.* citing *In re NBC, Inc.,* 635 F.2d at 948 (demonstrating that potential tainting of the jury is easily cured in voir dire).

[41] *Compare Flake v. Arpaio,* No. CV-15-01132-PHX-NVW, 2016 WL 4095831, at *5 (D. Ariz. Aug. 2, 2016) ("However, Sheriff Arpaio's fear of "trial by media" is newfound. It did not stop him from repeatedly thrusting into the media himself, his investigation, and his recommendation of

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR RULE 26(C) PROTECTIVE ORDER          - 13 -
Case No.: 5:16-cv-06822-NC
010650-11 1035968 V1

**C.     Defendants Fail to Show Good Cause Exists to Preclude Adjudication of Defendants Confidentiality Designations.**

Defendants' refusal to adjudicate its mass designations of confidentiality, without good cause, amounts to a blanket protective order long prohibited by the Ninth Circuit.[42]  Even in the more restrictive Second Circuit[43], the court in *In re Gen. Motors LLC Ignition Switch Litig.* has held such orders prohibitive and in a case like this here, where the public has a pre-existing public interest, such orders are particularly discouraged:

> Although, as noted, the public may not have a presumptive right to discovery materials produced during this litigation [citation omitted], its interest in access to documents—and certainly non-confidential ones—is properly considered in determining whether to enter a protective order, particularly a "blanket" protective order.[citation omitted].  Whether or not this MDL involves a 'weighty interest in public safety,' "as Lead Counsel asserts [citation omitted] it has indisputably captured the attention of scores of GM consumers and shareholders, not to mention the attention of the press and public more generally that "pre-existing public interest ... cuts in favor of allowing public access to the [discovery materials], not against it."[44]

---

charges against the Flakes.  Even after the charges were dropped, he posted a video online predicting that the charges would be re-filed. (Doc. 91-4 at 2.)  He thereby forfeited any substantial claim to privacy regarding the rest of his own account of the investigation and charges.").

[42] *See* Section II *infra.*

[43] Unlike the Second Circuit, the Ninth Circuit has not squarely addressed whether the 2000 amendments to the Rules affect the Rule-based presumption of public access to discovery.  However, the Ninth Circuit appears to have applied this presumption in cases after 2000, *e.g.*, [*Phillips,* 307 F.3d at 1210], including a case where the discovery material at issue had not been filed with the court, *see Foltz*, 331 F.3d at 1130-31.  Thus, although the presumption rests on uncertain legal footing, it is not clear whether this Court may abandon it.  *Flake*, 2016 WL 4095831 at *4.

[44] *In re Gen. Motors LLC Ignition Switch Litig.* No. 14-MS-2543 JMF, 2015 WL 4522778, at *4 (S.D.N.Y. July 24, 2015).  *See also Am. News & Info. Svcs., Inc. v. Rovella*, No. 3:15CV1209 (RNC), 2017 WL 3736700, at *3 (D. Conn. Aug. 30, 2017) ("Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of 'substantial embarrassment' or harm.").

1    Defendants citation to *Seattle Times* in inapposite.  In *Seattle Times*, the parties entered

2    into a protective order on a showing of good cause.[45]  As stated in *In re Gen. Motors LLC*

3    *Ignition Switch Litig.*:

4
           Nevertheless, just because the public is not presumed to have access
5          to pretrial discovery materials, it does not follow that parties should
           be—or are—*barred* from sharing them publicly, particularly in light
6          of Rule 26(c)'s enduring "good cause" requirement.  Instead, it is
           well established that, "[i]n the absence of . . . a [Rule 26(c)]
7          protective order, parties to a law suit may disseminate materials
           obtained during discovery as they see fit."[46]
8

9                            **IV.    CONCLUSION**

10   For the reasons stated above, Plaintiffs and the Class respectfully request that the Court deny

11   Defendants motion for a protective order, and relief from its obligations under the current protective

12   order.

13
     DATED: June 1, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP
14

15
                                            By: */s/ Reed R. Kathrein*
16                                              Reed R. Kathrein (139304)
                                            Peter E. Borkon (212596)
17                                          Danielle Smith (291237)
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
18                                          715 Hearst Avenue, Suite 202
                                            Berkeley, CA 94710
19                                          Telephone: (510) 725-3000
                                            Facsimile:  (510) 725-3001
20                                          reed@hbsslaw.com
                                            peterb@hbsslaw.com
21                                          danielles@hbsslaw.com

22       [45] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) ("We therefore hold that where, as in
     this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is
23   limited to the context of pretrial civil discovery, and does not restrict the dissemination of the
     information if gained from other sources, it does not offend the First Amendment.").

24       [46] *In re Gen. Motors,* 2015 WL 4522778, at *3 *citing Schiller v. City of N.Y.,* No. 04 Civ. 792
25   KMK JCF, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (internal quotation marks omitted).  "A
     plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has
26   the burden of showing that good cause exists for issuance of that order.  It is equally apparent that the
     obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not
27   receive judicial protection and therefore would be open to the public for inspection."  Further, such
     harm "must be significant, not a mere trifle."  *John Wiley & Sons, Inc. v. Book Dog Books, LLC,* 298
28   F.R.D. 184, 186-87 (S.D.N.Y.2014) (internal quotation marks omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiffs and Proposed Lead
Counsel for the Class*

Paul J. Geller (admitted *Pro Hac Vice*)
Constantine P. Economides (admitted *Pro Hac Vice*)
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364
pgeller@rgrdlaw.com
ceconomides@rgrdlaw.com

Dennis J. Herman
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 228-4545
Facsimile:  (415) 288-4534
dennish@rgrdlaw.com

Jason A. Forge
Kevin S. Sciarani
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile:  (619) 231-7423
jforge@rgrdlaw.com
ksciarani@rgrdlaw.com

*Additional Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and served via the Court's ECF filing system on all attorneys of record on this 1st day of June, 2018.


_/s/ Reed R. Kathrein_
Reed R. Kathrein